Raymond M. DiGuiseppe
California State Bar No. 228457
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE NGUYEN, an individual;
DOMINIC BOGUSKI, an individual;
JAY MEDINA, an individual;
FRANK COLLETTI, an individual;
JOHN PHILLIPS, an individual;
PWGG, L.P., a California Limited
Partnership; DARIN PRINCE, an
individual; NORTH COUNTY
SHOOTING CENTER, INC., a
California Corporation; FIREARMS
POLICY COALITION, INC.; SAN
DIEGO COUNTY GUN OWNERS
PAC; and SECOND AMENDMENT
FOUNDATION,

               Plaintiffs,

    vs.

XAVIER BECERRA, Attorney General
of California; and LUIS LOPEZ,
Director of the Attorney General's
Department of Justice Bureau of
Firearms,

             Defendants.

Case No. **'20 CV 2470 WQH WVG**

**COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF**

Plaintiffs MICHELLE NGUYEN, DOMINIC BOGUSKI, JAY MEDINA, and FRANK COLLETTI ("Individual Plaintiffs"), JOHN PHILLIPS and PWGG, L.P., and DARIN PRINCE and NORTH COUNTY SHOOTING CENTER, INC. ("Retailer Plaintiffs"), FIREARMS POLICY COALITION, INC., SAN DIEGO COUNTY GUN OWNERS PAC, and SECOND AMENDMENT FOUNDATION ("Institutional Plaintiffs") (collectively "Plaintiffs"), by and through counsel of record, bring this complaint for injunctive and declaratory relief against the named Defendants, and allege as follows:

## INTRODUCTION

1.     The Second Amendment protects "the right of the people to keep and bear Arms"—*plural*—which "shall not be infringed."

2.     Through their enforcement of the State of California's laws and their regulations, policies, and practices, and customs, Defendants Attorney General Xavier Becerra and California Department of Justice ("DOJ") Bureau of Firearms ("BoF") Director Luis Lopez (collectively "Defendants") unconstitutionally prohibit—under pain of criminal penalty—the typical, law-abiding adult who is not prohibited from possessing and acquiring firearms—even those known to Defendants as such—from purchasing or receiving more than one new handgun at a

time. *See*, *e.g.*, Cal. Penal Code § 27535.[1] And as of July of 2021, that prohibition will extend to all semiautomatic centerfire rifles, thus applying to *two* large categories of constitutionally protected firearms that are unquestionably in common use for lawful purposes.

3.      By preventing the Individual Plaintiffs and other law-abiding individuals like them from acquiring more than one arm in a single transaction, Defendants are infringing upon their fundamental right to keep and bear arms.

4.      "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) (*Heller*). This includes Defendants' restraints upon the right of law-abiding citizens to acquire more than one new constitutionally protected arm at a time, which patently lack a substantial relation to any legitimate government interest—much less a compelling one—and which Defendants have actively pursued with no effort to implement any less restrictive alternatives.

5.      Moreover, Defendants have other, less restrictive means of addressing any public safety interests that the State of California may have with respect to responding to illegal firearm trafficking and straw purchases. And the State's exemptions to this ban, including for the acquisition of firearms transferred through

---

[1] Statutory references are to the California Penal Code unless otherwise indicated.

the Private Party Transfer ("PPT") process, Penal Code § 28050, undermine their interests.

6.      Under the Supreme Court's categorical test established in *Heller*, Defendants' laws, policies, and enforcement practices are per se unconstitutional. But even under an interest-balancing approach, Defendants' regulations fail any form of heightened scrutiny. *See*, *e.g.*, *Heller v. District of Columbia*, 801 F.3d 264, 272 (D.C. Cir. 2015) (*Heller III*) (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) (*Heller II*) (even under intermediate scrutiny, the government bears the burden of demonstrating a restriction on the Second Amendment right "'promotes a substantial governmental interest that would be achieved less effectively absent the regulation,' and … that 'the means chosen are not substantially broader than necessary to achieve that interest'").

## PARTIES

7.      Plaintiff Michelle Nguyen is a natural person, a citizen of the United States, and a resident of San Diego County, California. Plaintiff Nguyen is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

8.      Plaintiff Dominic Boguski is a natural person, a citizen of the United States, and a resident of San Diego County, California. Plaintiff Boguski is a member

of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

9.     Plaintiff Jay Medina is a natural person, a citizen of the United States, and a resident of San Diego County, California. Plaintiff Medina is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

10.     Plaintiff Frank Colletti is a natural person, a citizen of the United States, and a resident of San Diego County, California. Plaintiff Colletti is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

11.     Plaintiff John Phillips is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff Phillips is an owner and operator of firearm retailer Plaintiff PWGG, L.P, and an individual licensee associated with that retailer, including through Defendants' DOJ Bureau of Firearms. Plaintiff Phillips is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

12.     Plaintiff PWGG, L.P. ("PWG"), a California limited partnership doing business as "Poway Weapons & Gear" and "PWG Range," is a licensed firearms retailer, shooting range, and training facility in the City of Poway, within San Diego County, California. Plaintiff PWG is a member of Plaintiffs Firearms Policy

Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

13.     Plaintiff Darin Prince is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff Prince is an owner and operator of firearm retailer North County Shooting Center, Inc., and an individual licensee associated with that retailer, including through Defendants' DOJ Bureau of Firearms. Plaintiff Prince is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

14.     Plaintiff North County Shooting Center, Inc. ("NCSC"), a California corporation, is a licensed firearms retailer, shooting range, and training facility, in the City of San Marcos, within San Diego County, California. Plaintiff NCSC is a member of Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, and Second Amendment Foundation.

15.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware, with a place of business in California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation

and legal efforts, research, education, outreach, and other programs. FPC represents its members and supporters—who include gun owners, prospective gun owners, licensed firearm retailers, and others—and brings this action on behalf of itself, its members, including the named Plaintiffs herein, and supporters who possess all the indicia of membership. FPC's members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. Because of Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein, FPC has and continues to suffer a diversion of resources to identify and/or counteract the unlawful actions, as well as a frustration of the organization's mission.

16.     Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a local political organization whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, California, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, SDCGO sues on its own behalf and on behalf of its members and supporters.

17.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF is a 501(c)3 under Title 26 of the United States Code. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical and economic research, publishing, and legal action programs focused on the civil right guaranteed by the Second Amendment to the U.S. Constitution. SAF has members and supporters nationwide, including in California. SAF brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, who seek to exercise their right to carry loaded firearms outside their homes for self-defense in case of confrontation. SAF has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Individual Plaintiffs, including through this action.

18.     Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity. Under Article 5, § 13 of the California Constitution, Attorney General Becerra is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." Defendant Becerra is the head of the California Department of Justice ("DOJ"). Defendant Becerra's DOJ and its Bureau of Firearms regulate and enforce

state law related to the sales, transfer, possession, and ownership of firearms. The Attorney General and DOJ maintain an office in San Diego, California.

19.     Defendant Luis Lopez is the Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Lopez reports to Attorney General Becerra, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations and policies regarding firearm sales, possession, transfers. Defendant Lopez is sued in his official capacity.

20.     The DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, transfer, possession, and ownership of firearms.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

22.     Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought. Further, the venue rules of this State specifically permit this action to be

filed in San Diego, since the Attorney General and California Department of Justice maintain an office within this District; Cal. Code of Civ. Pro. § 401(1).

# STATEMENT OF FACTS

## *Constitutional Background*

23.    The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

24.    The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

25.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (*McDonald*); *id.* at 805 (Thomas, J., concurring).

26.    The "right to keep and bear arms is guaranteed by the Fourteenth Amendment as a privilege of American citizenship." *McDonald*, 561 U.S. at 858 (Thomas, J., concurring).

27.     Individuals in California have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

28.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. And it "elevates above all other interests"—including Defendants'—"the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

29.     The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780.

30.     "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right *is really worth* insisting upon," *Heller*, 554 U.S. at 634, because "[t]his decision is a freedom calculus decided long ago by Colonists who cherished individual freedom more than the subservient security of a British ruler," *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1186 (S.D. Cal. 2019). "The freedom they fought for was not free of cost then, and it is not free now." *Id.*

31.     Individuals not prohibited under federal or state laws have a right to keep, bear, and use arms for all lawful purposes.

32.     The fundamental, individual right to keep and bear loaded, operable firearms in the home includes the right to acquire more than one firearm at a time.

### Defendants' Firearm Transfer Ban & Regulatory Scheme

33.     In California, individuals are required to purchase and transfer firearms through state and federally licensed dealers in face-to-face transactions or else they face serious criminal penalties.

34.     If firearms and ammunition could be purchased online in California like other constitutionally protected artifacts, such as paper, pens, ink, and technology products that facilitate speech, then individuals could simply purchase what they need and have the items delivered to their doorsteps.

35.     People in California cannot exercise their Second Amendment right to keep and bear arms without going in person to such federally and state-licensed firearm dealers—those like and including Retailer Plaintiffs—that must comply with the State's regulatory scheme on pain of criminal liability and loss of their license to do business for any violation of the scheme.

36.     California law provides that "[w]here neither party to [a] [firearm] transaction holds a dealer's license issued pursuant to Sections 26700 to 26915,

inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050)." Penal Code § 27545.

37.    In California, "No person shall make an application to purchase more than one handgun within any 30-day period." Penal Code § 27535(a). And starting July 1, 2021, "[a] person shall not make an application to purchase more than one handgun or semiautomatic centerfire rifle within any 30-day period," which indeed "does not authorize a person to make an application to purchase both a handgun and semiautomatic centerfire rifle within the same 30-day period." *Id*. as repealed (in Sec. 4) and added by Stats. 2019, Ch. 737, Sec. 5. (Senate Bill 61)) (Effective January 1, 2020, and operative July 1, 2021, by its own provisions.).

38.    "Until July 1, 2021, a handgun shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535" (creating a narrow set of exemptions rarely applicable to the average person). Penal Code § 27540(f).

39.    "Commencing July 1, 2021, a handgun or semiautomatic centerfire rifle shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser has made another application

13

to purchase either a handgun or semiautomatic centerfire rifle and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535." Penal Code § 27540(g).

40.   "Until July 1, 2021, for purposes of this subdivision, each application to purchase a handgun in violation of Section 27535 is a separate offense." Penal Code § 27590(e)(4)(A).

41.   "Commencing July 1, 2021, for purposes of this subdivision, each application to purchase a handgun or semiautomatic centerfire rifle in violation of Section 27535 is a separate offense." Penal Code § 27590(e)(4)(B).

42.   A violation of these laws constitutes, at a minimum, a misdemeanor criminal offense. *See* Penal Code, § 19.4 ("When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor.").

43.   Additionally, a license to transact in firearms "is subject to forfeiture for a breach of any of the prohibitions and requirements of [Article 2, Penal Code §§ 26800 – 26915]" (with narrow exceptions not applicable here). Penal Code § 26800.

44.   Exceptions to the State's multiple-firearm purchase ban, Penal Code § 27535(b), include:

        (1) Any law enforcement agency;

        (2)   Any   agency   duly   authorized   to   perform   law enforcement duties;

(3) Any state or local correctional facility;

(4) Any private security company licensed to do business in California;

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer;

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm;

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540;

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050);

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2;

(10) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement;

(11) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to

the completion of the application to purchase the replacement handgun;

(12) The return of any handgun to its owner; and,

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

45.     Typical, law-abiding individuals have at least as much right to acquire more than one handgun or semiautomatic, centerfire firearm at a time as do private security companies, licensed collectors, and motion picture, television, video, entertainment, and theatrical companies.

46.     In processing firearm transactions, dealers licensed by Defendants must use Defendants' Dealer's Record of Sale (DROS) DROS Entry System (DES) ("DROS DES"). DES can be accessed at https://des.doj.ca.gov/.

47.     The "California Department of Justice Bureau of Firearms DROS Entry System (DES) Firearms and Ammunition Dealer User Guide" published and enforced by Defendants, dated "1/15/2020" and marked "Rev. 4," is available at https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/pdf/dros-des-firearms-ammunition-dealer-user-guide.pdf.

48.     Under California's statutory scheme onerously restricting the exercise of Second Amendment rights, the Attorney General is required to "procure from any available source, and file for record and report in the office of the bureau, all

descriptions, information, photographs, and measurements of all persons convicted of a felony, or imprisoned for violating any of the military, naval, or criminal laws of the United States, and of all well-known and habitual criminals." Penal Code § 11101.

49.     Further, Defendant Becerra's "Department of Justice shall maintain state summary criminal history information." Penal Code § 11105.

50.     And among other related mandates, "[i]n order to assist in the investigation of crime, the prosecution of civil actions by city attorneys [], the arrest and prosecution of criminals, and the recovery of lost, stolen, or found property, the Attorney General shall keep and properly file a complete record of all of the" information listed under Penal Code § 11106, including but not limited to:

> - All copies of fingerprints;
>
> - Copies of licenses to carry firearms issued pursuant to Section 26150, 26155, 26170, or 26215;
>
> - Information reported to the Department of Justice pursuant to subdivision (e) of Section 18120, Section 26225, 26556, 27875, 27920, 27966, 29180, or 29830;
>
> - Dealers' Records of Sale of firearms; Reports provided pursuant to Article 1 (commencing with Section 27500) of Chapter 4 of Division 6 of Title 4 of Part 6, or pursuant to any provision listed in subdivision (a) of Section 16585;
>
> - Forms provided pursuant to Section 12084, as that section read prior to being repealed on January 1, 2006;
> - Reports provided pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with

Section 26800) of Chapter 2 of Division 6 of Title 4 of Part 6, that are not Dealers' Records of Sale of firearms;

- Information provided pursuant to Section 28255; and,

- Reports of stolen, lost, found, pledged, or pawned property in any city or county of this state.

51.     California law also requires Defendant Becerra to "permanently keep and properly file and maintain all information reported to the Department of Justice . . . as to firearms and maintain a registry thereof[.]" Penal Code § 11106(b).

52.     "Upon submission of firearm purchaser information," Defendants' "Department of Justice shall examine its records, as well as those records that it is authorized to request from the State Department of State Hospitals pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." Penal Code § 28220(a).

53.     Beyond this, Defendants are required to participate in the National Instant Criminal Background Check System (NICS). Penal Code § 28220(b). Defendants can and do electronically access the federal government's NICS databases.

54.     Defendants collect or are otherwise provided with, and maintain, carry license applicant and licensee information under Penal Code § 26150, *et seq*.,

18

including the applicants' and licensees' background check information. *See*, *e.g.*, Penal Code §§ 26185, 26195, and 26225.

55.     Consequently, through Defendants' own databases and by their access to federal databases, Defendants can electronically query such databases to determine if an individual is or could be a person that is legally prohibited from acquiring or possessing firearms.

56.     Such electronic database queries do not take months or even days to complete and return a response; indeed, the results can be ascertained within minutes in many, if not most, cases.

57.     A similar situation exists with all those who already hold a "certificate of eligibility" ("COE"). This is a certificate issued by Defendants' DOJ:

> which states that the Department has checked its records and the records available to the Department in the National Instant Criminal Background Check System and determined that the applicant is not prohibited from acquiring or possessing firearms pursuant to Penal Code sections 18205, 29800, 29805, 29815 through 29825, and 29900, or Welfare and Institutions Code sections 8100 and 8103, or Title 18, sections 921 and 922 of the United States Code, or Title 27, Part 478.32 of the Code of Federal Regulations at the time the check was performed and which ensures that a person who handles, sells, delivers, or has under his or her custody or control any ammunition, is eligible to do so pursuant to Penal Code section 30347.

Cal. Code Regs. tit. 11 § 4031(d).

58.    A "certificate holder" means a person who obtains a valid Certificate of Eligibility. Cal. Code Regs. tit. 11 § 4031(e).

59.    On information and belief, a COE certificate holder is placed into a system, such as a "rap back" service, which alerts Defendants' Department of Justice to criminal activity that might or does make a certificate holder ineligible to possess firearms.

60.    On information and belief, Defendants can query their databases to verify a COE holder's valid certificate and the holder's legal eligibility to possess or acquire firearms.

61.    On information and belief, other individuals in California, including those who hold a license to carry under Penal Code § 26150, *et seq*. ("CCW"), are placed into a "rap back" or similar service or system, such as Defendants' databases, which could be used by Defendants to quickly verify an applicant's legal eligibility to possess or acquire firearms.

62.    On information and belief, Defendants could use other technology in its possession to verify an applicant's legal eligibility to possess or acquire firearms.

63.    Indeed, but for Defendants' laws, polices, practices, and customs, including its "Point of Contact" agreement with the federal government, a dealer could contact FBI's NICS program to verify an applicant's legal eligibility to possess or acquire firearms.

64.     In addition to these mechanisms for quickly and easily ruling out those disqualified from acquiring firearms, Defendants have an array of laws and law enforcement mechanisms that they can and do use to address prohibited persons who take possession of firearms subsequent to a transfer, thereby negating any claimed need for the restrictions at issue as purported means to ensure sufficient time and opportunity to determine legal eligibility to possess or acquire firearms or to address the illegal acquisition or use of firearms by prohibited persons.

65.     For example, Defendants can, and often do, arrest and prosecute prohibited persons, who acquire or possess firearms, under a great number of laws that prohibit acquisition and possession by prohibited persons. *See*, *e.g.*, Penal Code §§ 29800, 29805, 29815, 29825; *see also* 18 U.S.C §§ 922(b)(2), 922(d), 922(g).

66.     Defendants can also undertake outreach and educational campaigns designed to request, encourage, or otherwise incent prohibited persons to comply with applicable laws and dispossess themselves of illegally possessed items.

67.     Defendants are not only able but required to notify both the licensed firearm dealer and local law enforcement to respond to prohibited persons that attempt to use a licensed dealer to acquire a firearm. "If the [Defendants' DOJ] determines that [a] purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm or is a person described in subdivision (a) of Section 27535, it shall immediately notify the dealer and the chief of the police

department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact." Penal Code § 28220(c).

68.    And Defendants also have significant infrastructure, systems, and personnel, even dedicated teams, to seek out and dispossess prohibited persons of any firearms they possess. For example, the State's Armed Prohibited Persons System (APPS) allows Defendants' and their agents to identify individuals known to be both armed and prohibited, allowing them to seek out such individuals and make contact with them, or apply for a warrant for their arrest and/or seizure of firearms, ammunition, and regulated firearm parts.

69.    "In 2006, the State of California became the first and only state in the nation with a system for monitoring known firearm owners who might fall into a prohibited status. The Armed and Prohibited Persons System (APPS) database cross-references firearms purchasers against other records for individuals who are prohibited from possessing firearms. The Department of Justice Bureau of Firearms (Bureau) utilizes Crime Analysts, Special Agents and Special Agent Supervisors to locate and disarm prohibited persons identified through the APPS database, thereby preventing and reducing incidents of violent crime." Defendant's 2019 Annual

Report to the Legislature on the APPS System, online at https://bit.ly/ca-doj-apps-2019-report, at p.2.[2]

70.    While imposing this onerous scheme of unconstitutional and unnecessary restraints upon the Second Amendment rights of the average law-abiding California, at the same time, Defendants carve out thirteen (13) categories of exceptions to their purchase ban, Penal Code § 27535(b), including another instance of Defendants' 'Hollywood' exemption for their friends in the entertainment business (*see* § 27535(b)(6), exempting "[a]ny motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm").

71.    Among other things, under Defendants' laws, policies, and enforcement practices, and customs, a motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm is not subject to the firearm purchase restrictions.

72.    Defendants have many laws and law enforcement mechanisms they can use to fight crime, including by using their own systems to monitor sales and

_____

[2] See also Defendants' published video, entitled "Meet the APPS Team," online at https://www.youtube.com/watch?v=2AtMaRTE_r4 ("Get to know the APPS Program: keeping firearms out of the hands of dangerous and violent individuals is our top priority. To learn more about the APPS program and our dedicated team, read our 2019 APPS report.").

investigate potential straw purchases and trafficking of arms, as well as seizing firearms and ammunition from persons who become prohibited after a transfer.

### *Impact on Individual Plaintiffs*

73.     Plaintiff Nguyen is an active-duty Army National Guard soldier who has training in the safe handling of handguns and semiautomatic centerfire rifles. Plaintiff Nguyen is not prohibited under state or federal law from acquiring or possessing firearms, a fact known to Defendants. Plaintiff Nguyen is not in Defendants' APPS or other related databases, a fact known to Defendants. Plaintiff Nguyen currently does not own or possess any firearms at her residence. Plaintiff Nguyen desires and intends to purchase two or more handguns in a single transaction within a 30-day period from a licensed dealer after submitting the transaction through Defendants' systems which, among other things, facilitate a background check and record the items transferred, and she would do so, but for Defendants' laws, policies, enforcement practices, and customs. Plaintiff Nguyen also desires and intends to purchase two or more semiautomatic centerfire rifles in a single transaction within a 30-day period, presently, and continuing through and after July 1, 2021. Defendants have enforced, are continuing to enforce, and are threatening to enforce their laws, policies, practices, and customs against Plaintiff Nguyen in violation of her right to keep and bear arms, and the rights of others similarly situated

to her who seek to purchase and transfer more than one firearm within a 30-day period and not be subject to sanctions, fees, and delays imposed by Defendants.

74.     Plaintiff Boguski is an active-duty Marine stationed at Camp Pendleton, San Diego. While serving as a Marine, Plaintiff Boguski has obtained substantial training with firearms. Plaintiff Boguski has also obtained "pistol qualification" through the Marine Corps Combat Pistol Program. Plaintiff Boguski is not prohibited under state or federal law from acquiring or possessing firearms, a fact known to Defendants. Plaintiff Boguski is not in Defendants' APPS or other related databases, a fact known to Defendants. Plaintiff Boguski desires and intends to purchase two or more handguns in a single transaction within a 30-day period from a licensed dealer after submitting the transaction through Defendants' systems which, among other things, facilitate a background check and record the items transferred, and he would, but for Defendants' laws, policies, enforcement practices, and customs. Plaintiff Boguski also desires and intends to purchase two or more semiautomatic centerfire rifles in a single transaction within a 30-day period, presently, and continuing through and after July 1, 2021. Defendants have enforced, are continuing to enforce, and are threatening to enforce their laws, policies, practices, and customs against Plaintiff Boguski in violation of his right to keep and bear arms, and the rights of others similarly situated to him who seek to purchase and transfer more than

one firearm within a 30-day period and not be subject to sanctions, fees, and delays imposed by Defendants.

75.     Plaintiff Medina is not prohibited under state or federal law from acquiring or possessing firearms, a fact known to Defendants. Plaintiff Medina is not in Defendants' APPS or other related databases, a fact known to Defendants. Plaintiff Medina has been forced to purchased multiple firearms one at a time in separate transactions, each imposing against him substantial fees and delays. Defendants' laws, policies, enforcement practices, and customs, have prohibited Plaintiff Medina from the purchase and transfer of more than one handgun within a 30-day period. The multiple transactions have resulted in additional costs and delays being imposed upon Plaintiff Medina, who would have otherwise acquired at least some of those firearms in transactions of more than one at a time. Further, Plaintiff Medina has previously purchased more than one semiautomatic centerfire rifle in a single transaction and within a 30-day period. He desires to do so again, by retaining the ability, presently and continuing through and after July 1, 2021, to acquire more than one semiautomatic centerfire rifle in a single transaction within a 30-day period.

76.     Plaintiff Medina desires and intends to purchase two or more handguns in a single transaction within a 30-day period from a licensed dealer after submitting the transaction through Defendants' systems which, among other things, facilitate a background check and record the items transferred, and he would do so, but for

26

Defendants' laws, policies, enforcement practices, and customs. Plaintiff Medina also desires and intends to purchase two or more semiautomatic centerfire rifles in a single transaction within a 30-day period, presently, and continuing through and after July 1, 2021. Defendants have enforced, are continuing to enforce, and are threatening to enforce their laws, policies, practices, and customs against Plaintiff Medina in violation of his right to keep and bear arms, and the rights of others similarly situated to him who seek to purchase and transfer more than one firearm within a 30-day period and not be subject to sanctions, fees, and delays imposed by Defendants.

77.   Plaintiff Colletti is not prohibited under state or federal law from acquiring or possessing firearms, a fact known to Defendants. Plaintiff Colleti is not in Defendants' APPS or other related databases, a fact known to Defendants. Plaintiff Colletti possesses a valid certificate of eligibility ("COE") issued by Defendants' DOJ, a fact known to Defendants. Plaintiff Colletti also holds an active CCW license to carry issued by his county sheriff, after proving his good cause and good moral character to his licensing authority, successfully completing a course of training on the law and firearms proficiency under Penal Code § 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("rap back"), a fact known to Defendants. Plaintiff Colletti desires and intends to

purchase two or more handguns in a single transaction within a 30-day period from a licensed dealer after submitting the transaction through Defendants' systems which, among other things, facilitate a background check and record the items transferred, and he would, but for Defendants' laws, policies, enforcement practices, and customs. Plaintiff Colletti also desires and intends to purchase two or more semiautomatic centerfire rifles in a single transaction within a 30-day period, presently, and continuing through and after July 1, 2021. Defendants have enforced, are continuing to enforce, and are threatening to enforce their laws, policies, practices, and customs against Plaintiff Colletti in violation of his right to keep and bear arms, and the rights of others similarly situated to him who seek to purchase and transfer more than one firearm within a 30-day period and not be subject to sanctions, fees, and delays imposed by Defendants.

78. By utilizing their systems and the federal system they have access to, Defendants know and could quickly confirm that the Individual Plaintiffs are not prohibited from purchasing and possessing firearms.

79. Defendants have no evidence to support a belief that any of the Individual Plaintiffs have engaged or would engage in illegal trafficking in firearms or straw purchases, but Defendants are enforcing their unconstitutional purchase ban laws and policies against them anyway.

80.     Individual Plaintiffs' injuries are representative of those experienced by others similarly situated to them, a fact known to Defendants.

81.     Defendants know or could ascertain the names of the individuals who have applied for more than one handgun or semiautomatic centerfire rifle purchase in a 30-day period but were denied those transactions for reasons other than a firearm disability under state or federal law.

### Impact on Retailer Plaintiffs & Their Customers

82.     Plaintiff Phillips is listed as a firearms dealer in Defendants' DOJ Centralized List of Firearms Dealers for Plaintiff PWG. Plaintiff PWG is federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

83.     Plaintiff Prince is listed as a firearms dealer in Defendants' DOJ Centralized List of Firearms Dealers for Plaintiff NCSC. Plaintiff NCSC is federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

84.     PWG and NCSC are two of the largest firearms retailers in the San Diego County area.

85.     Many ordinary law-abiding citizens in San Diego County rely on the Retailer Plaintiffs and others like them for lawful firearms transfers.

86.    Because of Defendants' laws, policies, enforcement practices, and customs, the Retailer Plaintiffs, and other retailers like them, are likewise bound to Defendants' statutory scheme and cannot sell or transfer more than one firearm within a 30-day period to law-abiding individuals.

87.    In their time in business, the Retailer Plaintiffs have been forced to deny many law-abiding purchasers who have sought to purchase multiple handguns in a single transaction—i.e., more than one within a 30-day period—because of Defendants' laws, policies, and enforcement practices.

88.    Retailer Plaintiffs often have individuals visit their stores who seek to purchase more than one handgun in a single transaction within a 30-day period, sometimes multiple times per week. These intended multiple-firearm purchases often take the form of a person who intends to acquire such firearms for self-defense in the home, and for carry in public. Defendants' laws, policies, enforcement practices, and customs prevent the Retailer Plaintiffs from making those sales and transfers and prevent the individuals from acquiring and taking possession of those firearms.

89.    In many cases, the Retailer Plaintiffs' customers do not return to purchase and take possession of the additional firearms they would have purchased during the initial purchase and transfer application transaction.

90.     And even where the purchaser does pay for more than one firearm in a single transaction, Defendants' laws, policies, enforcement practices, and customs impose upon Retailer Plaintiffs an additional burden and liability of having to store the firearms for at least another 30-day period. Retailer Plaintiffs face additional costs with having to store additional firearms for at least 30 days, and Retailer Plaintiffs lose storage space that they could otherwise use for other products.

91.     The Retailer Plaintiffs will be forced to continue to deny many law-abiding purchasers who seek to purchase multiple handguns in a single transaction—i.e., more than one within a 30-day period—because of Defendants' laws, policies, and enforcement practices.

92.     The Retailer Plaintiffs will also be forced to deny many law-abiding purchasers who seek to purchase multiple semiautomatic, centerfire rifles in a single transaction—i.e., more than one within a 30-day period—because of Defendants' laws, policies, and enforcement practices when Senate Bill 61 takes effect on July 1, 2021.

93.     But for Defendants' laws, policies, practices, and customs enforcing the State's ban on applying for, purchasing, and receiving more than one handgun—and on and after July 1, 2021, more than one semiautomatic, centerfire rifle—in any 30-day period, the Retailer Plaintiffs would make available for sale and would sell and

otherwise transfer more than one firearm in a 30-day period to their law-abiding customers who are not exempt from the State's ban.

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

94.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

95.    There is an actual and present controversy between the parties.

96.    Defendant Xavier Becerra has enforced the challenged laws, policies, practices, and customs against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

97.    Defendant Luis Lopez has enforced the challenged laws, policies, practices, and customs against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, practices, and customs against Plaintiffs.

98.    Defendants Becerra and Lopez are responsible for the formulation, issuance, and/or implementation of the laws, policies, practices, and customs at issue in this case.

99.    The Second Amendment protects "the right of the people to keep and bear Arms."

100.   Plaintiffs, Plaintiffs' members and customers, and those similarly situated to them, wish to exercise their fundamental, individual right to keep and bear arms and would do so, but for Defendants' laws, policies, enforcement practices, and customs, and reasonable fear of enforcement.

101.   The Individual Plaintiffs are legally eligible under State and Federal law to acquire and possess arms, including firearms, and bring this action on their own behalf and on behalf of all similarly situated individuals.

102.   The Individual Plaintiffs and others like them cannot make an application to purchase more than one handgun or semiautomatic centerfire rifle (beginning July 1, 2021) within any 30-day period without violating Defendants' laws and being subject to penalties.

103.   The Retailer Plaintiffs are subject to Defendants' laws, policies, enforcement practices, and customs, which include serious civil and criminal penalties, as well as the loss of their dealership, for violations thereof.

104.   The Institutional Plaintiffs have an interest in defending and asserting the rights of their members against Defendants' laws, policies, enforcement practices, and customs.

105.   Defendants' laws, policies, enforcement practices, and customs target and impact all normal, legally eligible individuals who are constitutionally entitled

to purchase, take possession of, keep, bear, and use arms for all lawful purposes, including self-defense in the home.

106.   Defendants' laws, policies, enforcement practices, and customs are paternalistic and untailored, severely burdening the Second Amendment rights of every responsible, gun-owning citizen desiring to lawfully buy firearms.

107.   Defendants' laws, policies, enforcement practices, and customs systematically prohibit or deter an untold number of law-abiding California citizen-residents from purchasing multiple firearms in the exercise of the right to keep and bear arms, forcing them to incur substantial fees and delays to acquire firearms otherwise in common use and available for purposes of exercising this right.

108.   The Supreme Court has explained that the Second Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780.

109.   The Supreme Court has made clear the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms as among those fundamental rights *necessary* (i.e., essential) to our system of ordered liberty, *McDonald*, 561 U.S. at 778, 791, and as a privilege and immunity of citizenship, *id*. at 805 (Thomas, J., concurring).

110.   In order to secure "the core right to possess a firearm for self-defense," the Second Amendment's protections extend to "necessary," "ancillary rights,"

including the right to acquire firearms and ammunition. *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017).

111.   The "core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira*, 873 F.3d at 677 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), and citing *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)).

112.   The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. at 780, and it cannot "be singled out for special—and specially unfavorable—treatment," *id.* at 778–79.

113.   The government has no power "to decide on a case-by-case basis whether the right is *really worth* insisting upon," *Heller*, 554 U.S. at 635 (emphasis in original), because the Constitution elevates Plaintiffs' rights above Defendants' convenience or administrative concerns. "[T]he prospect of additional administrative inconvenience has not been thought to justify invasion of fundamental constitutional rights." *Carey v. Population Servs. Int'l*, 431 U.S. 678, 691 (1977). And "it is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them." *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963).

114. Defendants' laws, policies, enforcement practices, and customs prevent law-abiding individuals not legally prohibited from possessing or acquiring firearms and ammunition from taking possession of constitutionally protected arms.

115. Defendants' laws, policies, enforcement practices, and customs are more extensive than necessary and are not the least restrictive means.

116. In *Heller*, the Supreme Court declared unconstitutional the District of Columbia's laws that, among other things, prevented Mr. Heller from having "operable for the purpose of immediate self-defense." 554 U.S. at 635.

117. By preventing legally eligible Californians, like and including Plaintiffs, Plaintiffs' members and customers, and others similarly situated to them, from purchasing and taking possession of constitutionally protected arms that they are otherwise entitled to purchase and possess, Defendants have violated, are continuing to violate, and threatening to violate the Plaintiffs' rights protected under the Second and Fourteenth Amendments by denying them those arms for the purpose of immediate self-defense and all lawful purposes.

118. "As the venerable adage about preparedness advises, 'Two is one, one is none.'" U.S. Naval Institute, *Two is One, One is None*, Major Michael E. Clark, U.S. Marine Corps[3] (making the case for the Navy's acquisition of a fleet of

---

[3] https://www.usni.org/magazines/proceedings/2015/november/two-one-one-none.

specialized fixed-wing attack aircrafts in addition to its conventional attack aircrafts because, by themselves, the conventional fleet was incapable to meeting the threats of modern warfare). The adage holds just as true here, with the reality that proper and adequate preparedness for the forms of lawful self-defense enshrined as constitutional rights under the Second Amendment sometimes calls for firearms of different types and calibers—or least more than one firearm—to fully exercise these individual rights.

119.   Because Defendants' laws, policies enforcement practices, and customs of delaying firearm transactions and imposing duplicative fees violates Plaintiffs' right to keep and bear arms, Plaintiffs seek declaratory and injunctive relief to invalidate them and enjoin their enforcement or application.

120.   Defendants' laws, policies, and enforcement practices, and customs prevent legally eligible firearm purchasers and transferees from taking possession of constitutionally protected property to which they are entitled under law and the Constitution.

121.   Defendants are actively enforcing the State of California's laws and their policies which prevent and deny by delay and excessive fees untold numbers of legally eligible individuals from taking possession of lawfully purchased firearms to which they are constitutionally for self-defense and all lawful purposes.

122.   Defendants carve out numerous exceptions to their laws, policies, practices, and customs imposing delays on the acquisition and possession of arms. These same exemptions are not available to all responsible, legally eligible Californians who are constitutionally entitled to acquire and possess firearms. Defendants allow over a dozen categories of government-favored people to freely exercise the right to acquire and take possession of arms without being subject to delays or subjecting the transferee or licensee to criminal liability or the risk of arrest and prosecution.

123.   For example, these exemptions extend to "[a]ny motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm." Penal Code § 27353(b)(6).

124.   Like the regulatory regime that failed constitutional muster in *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999), Defendants' laws, polices, enforcement practices, and customs are "so pierced by exemptions and inconsistencies that [they] cannot hope to exonerate [them]." *Id*. at 190.

125.   The State's interests certainly cannot and do not take priority over the Constitution's textual enshrinement of a fundamental right that "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller,* 554 U.S. 570 at 635.

126.   That the State of California and Defendants allow certain categories of government-favored people to freely exercise their right to bear arms without being subject to the purchase ban shows a governmental interest that is inconsistently pursued.

127.   Especially in light of the numerous exemptions and allowances, the government's interests are not and cannot be a substantial interest for constitutional purposes. This inconsistent treatment among similarly situated individuals also demonstrates a lack of tailoring in the government's restrictions.

128.   Unlike those categories of exempt individuals, Individual Plaintiffs and other Californians like them, including many of Institutional Plaintiffs' members and supporters as well as Retailer Plaintiffs' customers, have been and will continue to be subject to Defendants' laws, policies, enforcement practices, and customs, which deny access to, exercise of, and violates their right to keep and bear arms, including but not limited to the core right to immediate self-defense in case of confrontation.

129.   Defendants' laws and enforcement policies, practices, and customs challenged herein are not longstanding or presumptively lawful.

130.   Defendants' laws and enforcement policies, practices, and customs have no basis in our Nation's history and traditions.

131.   Defendants' laws and enforcement policies, practices, and customs preventing legally eligible individuals from taking possession of and purchasing

firearms violates the enumerated, fundamental, individual right to keep and bear arms.

132.   Defendants have and will continue to enforce their laws, policies, practices, and customs against Plaintiffs and similarly situated persons.

133.   Plaintiffs reasonably fear that Defendants will enforce against them their laws and related enforcement policies, practices, and customs.

134.   Plaintiffs thus seek declaratory, preliminary, and permanent injunctive relief, and this action involves matters of substantial public interest.

135.   Defendants' laws, policies, enforcement practices, and customs violate the right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution.

136.  Defendants' laws, policies, practices, customs, and ongoing enforcement against the Individual Plaintiffs, the Institutional Plaintiffs' members, the Retailer Plaintiffs and their customers, and similarly situated members of the public, which violate the rights of Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public, are thus causing injury and damage actionable under 42 U.S.C. § 1983.

**COUNT TWO**
**DEPRIVATION OF CIVIL RIGHTS**
**EQUAL PROTECTION**
**U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**

137.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

138.   Defendants' laws, policies, enforcement practices, and customs allow some individuals, including "[a]ny motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm," to acquire more than one handgun, and on and after July 1, 2021, semiautomatic, centerfire rifles and handguns, in any 30-day period, but deny the same to other legally eligible individuals, like Individual Plaintiffs and those similarly situated to them, who seek to acquire firearms in exercise of their fundamental right to keep and bear arms for lawful purposes including but not limited to self-defense, proficiency, competition, sport, and hunting.

139.   Defendants' laws, policies, enforcement practices, and customs favor some classes of individuals, such as those who seek to acquire firearms for entertainment purposes, and disfavor other typical law-abiding individuals who seek to acquire firearms for constitutionally protected lawful purposes, including but not limited to self-defense, proficiency, competition, sport, and hunting.

140.   Defendants' laws, policies, enforcement practices, and customs are arbitrary, capricious, irrational, and make constitutionally unjustifiable distinctions

41

between those individuals whom Defendants allow to acquire more than one firearm in any 30-day period and other law-abiding individuals, like Individual Plaintiffs, and those similarly situated to them, whom they do not.

141.  No legitimate—much less compelling—state interest exists in establishing this arbitrarily disparate treatment.

142.  Defendants' laws, policies, enforcement practices, and customs violate the Fourteenth Amendment's Equal Protection Clause.

143.  Defendants' laws, policies, practices, customs, and ongoing enforcement against the Individual Plaintiffs, the Institutional Plaintiffs' members, the Retailer Plaintiffs and their customers, and similarly situated members of the public, which violate the rights of Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public, are thus causing injury and damage actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.  A declaratory judgment that Defendants' laws and enforcement policies, practices, customs, and actions individually and collectively prevent Plaintiffs, Plaintiffs' members and customers, and similarly situated individuals not prohibited from possessing and acquiring firearms, from applying for, purchasing, and taking possession of more than one handgun and/or semiautomatic, centerfire

rifle in any 30-day period violate the right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution;

2.     A declaratory judgment that Defendants' laws and enforcement policies, practices, customs, and actions individually and collectively treat Plaintiffs, Plaintiffs' members and customers, and similarly situated individuals not prohibited from possessing and acquiring firearms, differently than similarly situated individuals who are not likewise restricted from applying for, purchasing, and taking possession of more than one handgun and/or semiautomatic, centerfire rifle in a 30-day period, in violation of the Fourteenth Amendment's Equal Protection Clause;

3.     A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, all persons in concert or participation with them, and all who have notice of the injunction, from enforcing Defendants' laws and enforcement policies, practices, customs, and actions that individually and collectively prevent Plaintiffs, Plaintiffs' members and customers, and similarly situated individuals not prohibited from possessing and acquiring firearms, from applying for, purchasing, and taking possession of more than one handgun and/or semiautomatic, centerfire rifle in a 30-day period;

4.     All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable; and,

5.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted this 18th day of December 2020.

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com

*Attorney for Plaintiffs*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF