Raymond M. DiGuiseppe
California State Bar No. 228457
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE NGUYEN, et al, Plaintiffs<br><br>vs.<br><br>ROB BONTA, Attorney General of California, et al, Defendants. | Case No. 3:20-cv-02470-WQH-WVG<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO PRECLUDE TESTIMONY OF GEORGE A. MOCSARY<br><br>Date: May 20, 2022<br>Time: No oral argument unless requested by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B<br>Action Filed: Dec. 18, 2020 |

## I. Introduction

Defendants move to preclude the testimony of George A. Mocsary, Plaintiffs' constitutional law expert, claiming he lacks the "specialized knowledge" necessary to qualify him as an expert, and that his opinions in this case "are not based on sufficient facts" and "are not the product of reliable research," under the standards of Rule 702 of the Federal Rules of Evidence. Dkt. No. 30 ("Motion") at 1-3.

Defendants' contention is not only wrong but disingenuous based on the record and the applicable standards, under which Prof. Mocsary is eminently qualified to render the opinions he has—opinions directly relevant to factual issues important to a proper resolution of the Second Amendment claim at the heart of this case. Notably, Defendants do not even suggest that Prof. Mocsary's opinions are not *relevant* here. Rather, they merely complain, disingenuously, that *his* opinions are not *reliable* and thus that *he* shouldn't be permitted to speak on these issues.

Prof. Mocsary is as qualified an expert as they come here, and the foundational quality of his opinions well exceeds the low threshold of admissibility under Rule 702, which must be "applied consistent with the '*liberal* thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2104) (quoting *Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993, 1004 (9th Cir.2001) (italics added).

## II.  Applicable Legal Principles

The Ninth Circuit applies the following basic test in determining the eligibility of an expert witness and the admissibility of his or her opinions as expert evidence:

> [1] Whether the opinion is based on scientific, technical, or other specialized knowledge;
> [2] Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
> [3] Whether the expert has appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on that subject matter. [Citations.];

2

[4] Whether the testimony is relevant and reliable. [Citations];
[5] Whether the methodology or technique the expert uses 'fits' the conclusions (the expert's credibility is for the jury). [Citations]; [and]
[6] Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

"As the terms of the rule state, an expert may be qualified either by 'knowledge, skill, experience, training, or education.' " *U.S. v. King*, 703 F.Supp.2d 1063, 1067 (D. Haw. 2010) (quoting Fed.R.Evid. 702). Under *Daubert*, factors for a trial court to consider in determining reliability include whether the theory, technique, or method employed by the expert can be tested, has been subjected to peer review and publication, is subject to controlling standards, and is generally accepted within the field. *U.S. v. King*, 703 F.Supp.2d 1063, 1068 (D. Haw. 2010). These factors are "not definitive." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). This "is a fact-specific inquiry," dependent on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *Hankey*, 203 F.3d at 1168.

Both the requisite reliability and relevancy of the testimony may be based upon "professional studies or personal experience." *Kumho*, 526 U.S. at 152. Essentially, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2017). In all events, the trial court is

3

vested with "broad discretion" and "latitude" under Rule 702, *Hankey*, 203 F.3d at 1168, granting it "considerable leeway" in determining reliability of expert evidence, *Kumho* at 152. This power is to be applied liberally based on the "'broad conception of expert qualifications'" contemplated under Rule 702, *King*, 703 F.Supp.2d at 1067 (quoting *Thomas v. Newton Intern. Enterprises*, 42 F.3d 1266, 1269 (9th Cir.1994)), and "the 'liberal thrust' of the Federal Rules" aimed at "relaxing the traditional barriers to opinion testimony," *Jinro Am. Inc.* 266 F.3d at 1004.

So long as the evidence meets this threshold, it is admissible, with the weight and credibility left for the trier of fact to decide. *Primiano*, 598 F.3d at 564-65.

**III. Professor Mocsary is Exceptionally Qualified to Render These Opinions**

As Prof. Mocsary explained in his deposition, he has been researching and writing about firearms laws from a historical perspective since at least 2007, when he was in law school. Opp., Ex. 1 at 13. He published the first edition of a treatise on firearms law in 2010, shortly after graduating from law school in 2009 (first in his class, by the way; Motion, Ex. A at 17). *Id.* at 13. The book has seen three editions so far, the last of which was in 2021. Opp., Ex. 1 at 5; *see* https://www.aspenpublishing.com/Johnson-SecondAmendment3. It traces the history of firearms law from the founding era to today. *Id.* at 6. David Kopel, one of Prof. Mocsary's co-authors, is a renowned authority in firearms law. *See e.g.,* https://davekopel.org/; https://i2i.org/about/our-people/dave-kopel/, with whom

4

Mocsary has co-authored other recent publications concerning firearms law. *See* https://davekopel.org/ (where Kopel cites a 2021 law review article that they co-authored concerning the Ninth Circuit's decision in *Young v. State of Hawaii*).

Prof. Mocsary has taught a law school class for four years focused on firearms law, which included tracing the law from the founding era to modern times, using his treatise on the law. Opp., Ex. 1 at 5-6. As his curriculum vitae shows, Prof. Mocsary has 17 publications, five legal briefs, and numerous presentations and workshops to his name concerning firearms law. Motion, Ex. A at 10-18.

Prof. Mocsary regularly works with Joseph Greenlee, an attorney employed by FPC Action Foundation ("FPCAF"), on legal briefs concerning firearms law, Opp. Ex. 1 at 6, and he writes an article of his own on a quarterly basis for Firearms Policy Coalition ("FPC"), *id.* at 7. He has previously served as an expert witness for FPC in similar cases. *Id.* Specifically, he provided expert declarations in *Renna v. Bonta*, 20-cv-2190 (S.D. Cal.), *Miller v. Becerra*, 3:19-cv-01537 (S.D. Cal.), and *Walters v. Kemp*, 1:20-cv-01624 (N.D. Ga.). Those declarations are attached as Exhibits 2, 3, and 4 to this Opposition.

As Prof. Mocsary explained in his deposition, he served in substantially the same expert capacity in those cases as he does here—specifically, one who provided the relevant "historical perspective" of firearms law for the case. Opp., Ex. 1 at 8. For example, in *Renna*, Prof. Mocsary opined that "historically," there have been no

restrictions on home building and no handgun rosters, both of which "are very new things." *Id.* at 8. And, "as part of that historical analysis, there was a discussion of how many jurisdictions currently have handgun rosters or restrictions on home-built firearms." *Id.* at 8. Similarly in *Walters*, Prof. Mocsary provided expert evidence that that "licensing laws are a relatively new thing," because historically "public carry was not restrictively licensed." *Id.* Again, in *Miller*, Prof. Mocsary provided expert evidence concerning "how the first ban on so-called assault weapons would have been in California in 1988, and so it's relatively new." *Id.*

So it is in this case: the "main focus" of Prof. Mocsary's testimony concerns the factual question of "whether there's historical precedent"—i.e., laws during the "founding" or "colonial" era—involving "one gun a month or restricting firearm purchases to a certain number over some time period, more broadly," with the end conclusion being that "OGM laws were a very new thing." Opp., Ex. 1 at 9-10.

**IV. Professor Mocsary's Opinions Are Well Grounded in the Reliable Facts and Research He Has Accumulated Over His Many Years of Experience**

Defendants misrepresent the record in claiming that "Mocsary spent only 10 to 15 hours researching historical sources" and "his research was limited to a google search and review of his book collection." Motion at 3. Indeed, in another part of his deposition that Defendants don't mention, Defendants' counsel specifically noted that Prof. Mocsary wrote in his declaration, "[m]y opinions expressed here are

6

1  formed in light of my scholarship and study of the Second Amendment," and asked
2  what he had meant by that. Opp., Ex. 1 at 13. Prof. Mocsary's reply made very clear
3  that he was drawing from his entire wealth of knowledge and prior research here:

> I look at Second Amendment and firearms law issues for a living, let's say, or for part of my living as a - as a professor, so those -- so that that work gives me a … familiarity with what I can expect to be out there and where I can expect to find them and so on.
>
> So my -- the opinions that I express in that report are based on what I knew and some additional research that I did and just to check various places to see if there's anything I might have missed here or there or what have you about, you know, OGM laws.

9  *Id.* That is, his opinions were based on all the research and information within his
10 knowledge from the many books he had collected "over the years" and his general
11 research and study of the history of firearms law, *in addition to* his 10 to 15 hours of
12 *further* research into investigating the existence of any historical precedents for
13 OGM laws during the relevant period of the Nation's founding. *Id.* at 12.

14   It was this knowledge base that informed Prof. Mocsary's judgment that
15 consulting the "Duke Center for Firearms database" would not be fruitful. As he
16 explained in his deposition, he was "familiar with that database," had "looked in
17 there quite a bit before," and "never seen anything in this vein in that database."
18 Opp., Ex. 1 at 13. That Defendants would cite Prof. Mocsary's *informed* decision
19 not to consult this database as a basis in support of their Motion, Motion at 3, is
20 emblematic of their disingenuity here—particularly when they don't even attempt to

7

claim there's actually anything within that database relevant to this historical inquiry. In fact, here's the link to it: https://firearmslaw.duke.edu/repository/search-the-repository/. Nothing about it suggests the database is at all pertinent here.

What's plain from both Prof. Mocsary's declaration and testimony is that his prior knowledge and study of firearms law already provided him the vast majority of information he needed to answer this question, such that it was mostly a matter of confirming the non-existence of a historical precedent for OGM laws. No minimal amount of *additional* research or hours is necessary to qualify him as an expert or his opinions as reliable here, as Defendants imply. The fact is, sometimes the available information on a subject may be minimal, simply because "the issue may be too particular, new, or of insufficiently broad interest, to be in the literature." *Primiano*, 598 F.3d at 565. But Rule 702 is "flexible" to accommodate this reality. *See id.* at 567 ("When a relevant experience base is unavailable, physicians must use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties" to mak[e] a sound judgment.").

And Prof. Mocsary went beyond his own knowledge and his own books here. He discussed the question with others in the field, asking "if they could think of anything like that, and nobody could." Opp., Ex. 1 at 12. He named as Joseph Greenlee as one, saying Greenlee "has good historical knowledge" relevant to the topic. *Id.* He

8

believed he also inquired with David Kopel and that Kopel had indicated no knowledge of any OGM laws during the relevant historical period. *Id.* at 12.

Moreover, as detailed in Plaintiffs' motion for summary judgment, the historical record firmly supports Prof. Mocsary's findings and conclusions about the absence of OGM laws during the relevant historical period, notably including an article that Defendants themselves introduced during his deposition. Dkt. No. 23-1 at 8-9. What better evidence to demonstrate the "reliability" of Prof. Mocsary's expert opinions than the entirely *independent* historical evidence introduced by Defendants?

"[C]ourts have relied on a variety of measures to assess reliability of attorney expert testimony," such as the following that one court has compiled:

> (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; [citations];
> (2) whether the expert sufficiently explained why he or she reached an opinion; [citations];
> (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; [citations]; **or**
> (4) whether the expert demonstrated that his opinion is accepted by his peers; [citations].

*McDevitt v. Guenther*, 522 F.Supp.2d 1272, 1291-92 (D. Hawaii 2007) (emphasis added). "[T]he expert testimony need not satisfy all of these criteria to be deemed reliable," as is evident given that the list is *disjunctive*. *Id.* Prof. Mocsary's testimony actually satisfies all of them. In any event, it easily crosses the low threshold for admissibility under the liberal and relaxed standards of Rule 702.

9

1  In light of all this, the seven-year difference between the effective date of Maryland's OGM law (1996) and the date Prof. Mocsary cited in his report (2003) doesn't amount to a hill of beans. *See* Motion at 3. What matters to this inquiry is that there were no OGM laws for "practically all of American history"—more specifically, "from the start of the nation until … the mid [19]70s," i.e., "1776 to 1975." Opp., Ex. 1 at 11. Defendants' attempt to fault him for not mentioning the *city ordinance* of New York in his discussion of OGM laws at the *state* level, Motion at 3, similarly falls flat. Obviously, the most relevant and pertinent restrictions are those that apply across the board to an entire state's population. In any event, one more *modern day* OGM at a *municipal* level clearly wouldn't change the calculus in an analysis focused on the state of the law at the time of the Nation's founding.

"Given that the judge is 'a gatekeeper, not a fact finder,' the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it." *Primiano*, 598 F.3d at 568. Defendants' motion must be denied.

Respectfully submitted April 11, 2022,

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
*Attorney for Plaintiffs*