Rob Bonta
Attorney General of California
Anthony R. Hakl
Supervising Deputy Attorney General
Jerry T. Yen
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE NGUYEN, et al.,**<br><br>                      Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California, et al.,**<br><br>                      Defendants | Case No. 3:20-cv-02470-WQH-MDD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        May 20, 2022<br>Time:       No oral argument unless requested by the Court<br>Judge:      Hon. William Q. Hayes<br>Courtroom: 14B<br>Action Filed: Dec. 18, 2020 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

Introduction ................................................................................................................. 1
Argument .................................................................................................................... 1
    I.    The Appropriate Level of Scrutiny is Intermediate Scrutiny ............... 1
    II.   California's OGM Law is Constitutional Under Intermediate Scrutiny ............................................................................................... 3
    III.  Plaintiffs' Fail to Show that the OGM Law Violates Equal Protection ............................................................................................ 8
Conclusion .................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bolger v. Youngs Drug Prods. Corp.*
  463 U.S. 60 (1983) ............................................................................................. 4

*City of Renton v. Playtime Theatres, Inc.*
  475 U.S. 41 (1986) ............................................................................................. 6

*District of Columbia v. Heller*
  554 U.S. 570 (2008) ........................................................................................... 2

*Duncan v. Bonta*
  19 F.4th 1087 (9th Cir. 2021) ................................................................... 3, 4, 6, 7

*FCC v. Beach Commc'ns, Inc.*
  508 U.S. 307 (1993) ........................................................................................... 8

*Jackson v. City & Cnty. of S.F.*
  746 F.3d 953 (9th Cir. 2014) .......................................................................... 4, 6

*Kachalsky v. Cnty. of Westchester*
  701 F.3d 81 (2d Cir. 2012) ................................................................................ 5

*Kolbe v. Hogan*
  849 F.3d 114 (4th Cir. 2017) ............................................................................. 7

*Minority Television Project, Inc. v. FCC*
  736 F.3d 1192 (9th Cir. 2013) .......................................................................... 4

*Pena v. Lindley*
  898 F.3d 969 (9th Cir. 2018) ................................................................... 2, 3, 6, 7

*Silvester v. Harris*
  843 F.3d 816 (9th Cir. 2016) .......................................................................... 1, 2

*Turner Broad. Sys., Inc. v. FCC*
  512 U.S. 622 (1994) ........................................................................................... 5

*Turner Broad. Sys., Inc. v. FCC*
  520 U.S. 180 (1997) ........................................................................................... 5

ii

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (3:20-cv-02470)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013).................................................................................3

*Wollard v. Gallagher*
   712 F.3d 865 (4th Cir. 2014).....................................................................................5

*Young v. Hawaii*
   992 F.3d 765 (9th Cir. 2021).....................................................................................1

**STATUTES**

California Penal Code § 27535(b)...............................................................................3

# INTRODUCTION

Plaintiffs' motion for summary judgment does nothing to call into question the State's evidence supporting the law limiting the purchase of handguns and semiautomatic centerfire rifles to one every thirty days (one-gun-a-month or OGM). The State has provided numerous studies as well as expert reports showing that California's OGM law is a reasonable measure aimed at reducing illegal firearms trafficking and disrupting the ability of criminals to obtain a large number of firearms within a short period of time. Plaintiffs take issue with the results of certain studies, but do not dispute that states experience a reduction in illegal firearms trafficking after passing OGM laws. Therefore, California's OGM law satisfies the relevant standard of scrutiny, intermediate scrutiny. This Court should thus deny Plaintiffs' motion for summary judgment, and enter judgment in favor of Defendants on their cross-motion.

# ARGUMENT

**I. THE APPROPRIATE LEVEL OF SCRUTINY IS INTERMEDIATE SCRUTINY**

Plaintiffs acknowledge that the Ninth Circuit has established a two-step inquiry when reviewing Second Amendment challenges – (1) a court first asks whether the law burdens conduct protected by the Second Amendment, and (2) if so, it applies the appropriate level of scrutiny. *See* Dkt. No. 23-1 (Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment) ("Plaintiffs' MSJ") at 9-10 (citing *Young v. Hawaii*, 992 F.3d 765, 783-84 (9th Cir. 2021)). Under the first step, a regulation that "amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 10 (citing *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016)). For purposes of the parties' summary judgment motions, the Attorney General assumes, at the first step, that California's OGM law implicates the Second Amendment.[1] At

---

[1] As noted in Defendants' Motion for Summary Judgment (Defs' MSJ),

the second step, a law that "severely burdens [the Second Amendment right] warrants strict scrutiny. Otherwise intermediate scrutiny is appropriate." *Silvester*, 843 F.3d at 821 (citations omitted).

Here, limiting the purchase of handguns and semiautomatic centerfire rifles to one every thirty days does not come close to destroying or severely burdening the Second Amendment right. Without citing any authority, Plaintiffs claim that the OGM law implicates the core of the Second Amendment because it "bans the exercise of fundamental guarantees secured under the Second Amendment."[2] Plaintiffs' MSJ at 15. However, the core of the Second Amendment right is the use of firearms for defense of home.[3] *See Heller*, 554 U.S. at 628, 635; *see also*

---

OGM laws could be considered a limitation on whom licensed firearms could sell to. Dkt. No. 29 at 11 n.10. This would be permissible under *Heller* as a law "imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). Instead of "having to define the contours of the commercial sales category," the Ninth Circuit follows the "well-trodden and 'judicious course'" of assuming, without deciding, that California's law implicates the Second Amendment. *Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018).

[2] Plaintiffs suggest that these "fundamental guarantees" include any conduct that was permitted when the Second Amendment was adopted. *See* Plaintiffs' MSJ at 9-10. There is no basis for such an assertion. If that were the case, then a number of firearms regulations, such as forbidding the carrying of firearms at schools and government buildings or laws imposing conditions on the commercial sale of firearms, would violate the core of the Second Amendment.

[3] Plaintiffs provide an incomplete, and sometimes inaccurate, discussion on the ability to purchase firearms without restrictions on quantity or frequency during the founding era and OGM laws in American history. Plaintiffs' MSJ at 6-9. Instead of correcting every misstatement here, Defendants incorporate the attached Response to Plaintiffs' statement of material facts (RSOMF). *See* RSOMF Nos. 10-28. Defendants also note that none of the cited evidence shows that, during the founding era, individuals actually purchased multiple firearms within a short period of time or that the government was concerned with firearms trafficking. In addition, contrary to Professor Mocsary's characterization that the purchase of

*Duncan v. Bonta*, 19 F.4th 1087, 1103 (9th Cir. 2021) ("the core Second Amendment right of self-defense in the home"). As explained in Defendants' Motion for Summary Judgment, California's OGM law does not severely restrict the right of self-defense of the home. Dkt. No. 29 at 12. In addition, the law does not eliminate the ability to obtain a firearm. *Id*. Indeed, the Individual Plaintiffs[4] admit that they are able to obtain a firearm for self-defense. *Id*. (citing DX-33, DX-34, DX-35, and DX-36)[5]. There are also exceptions to California's OGM law (Cal. Penal Code § 27535(b)), such as exceptions for private party transactions and collectors, which lessens any burden on the Second Amendment right. *Pena*, 898 F.3d at 979 ("substantial burden . . . is lightened by . . . exceptions") (quoting *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)). In sum, the OGM law does not destroy or severely burden the Second Amendment right, and intermediate scrutiny applies.

## II. CALIFORNIA'S OGM LAW IS CONSTITUTIONAL UNDER INTERMEDIATE SCRUTINY

Under intermediate scrutiny, the government's interest must be "significant, substantial, or important," and there must be a "reasonable fit" between the challenged regulation and the asserted objective. *Duncan*, 19 F.4th at 1108 (citation omitted). There should be no dispute that the State has an important

---

firearms "has been unregulated as to the quantity of firearms that may be purchased within a given timeframe *for practically all of American history*," the first OGM law was enacted in 1975. (Emphasis added). In other words, OGM laws have existed for nearly 50 years, a substantial portion of American history.

[4] Individual Plaintiffs refer to Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti.

[5] "DX" followed by the exhibit number are citations to Defendants' exhibits accompanying the Declaration of Jerry T. Yen in support of Defendants' Motion for Summary Judgment (Dkt. No. 29-4).

interest in reducing illegal firearms trafficking and disrupting the ability of criminals to obtain a large number of firearms within a short period of team.[6] So, the only remaining question is whether there is a "reasonable fit" between those interests and California's OGM law. "'The test is not a strict one,' and the government need not use 'the least restrictive means.'" *Id*. (citations omitted).

Here, as detailed in Defendants' summary judgment motion, the State has cited to numerous studies and provided expert reports showing that OGM laws reduce illegal firearms trafficking and make it more difficult for criminals to acquire firearms. *See* Defs' MSJ at 4-7, 13-18. In particular, several studies found a significant reduction in illegal firearms trafficking after states enacted an OGM law. *Id*. at 14 (citing DX-23 (Weil & Knox 1996) at 1760; DX-24 (Braga 2017) at 89; DX-25 (Virginia State Crime Commission study) at 3, 5, 6; and DX-27 (Koper 2014) at 305). When two of those states repealed their OGM law, illegal firearms trafficking in those states increased. *Id*. at 14-15 (citing DX-24 at 90 and DX-17 (Klarevas Expert Rept.) ¶ 20). Studies and other reports also show that firearms purchased as part of multiple sale have been linked to firearms used in violent crime. *Id*. at 16-17. Neither Plaintiffs nor their experts dispute this.

---

[6] Plaintiffs seem to suggest that the State can only identify an important state interest in these proceedings if the relevant interest is somehow reflected in the legislative history. Plaintiffs' MSJ at 15-16, 18, 21. This is wrong. The Court may consider "the legislative history of the enactment **as well as studies in the record** or cited in pertinent case law." *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 966 (9th Cir. 2014) (emphasis added); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 (1983) (permitting government to "advance[] interests that concededly were not asserted when the prohibition was enacted into law. This reliance is permissible since the insufficiency of the original motivation does not diminish other interests that the restriction may now serve"); *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192 (9th Cir. 2013) (en banc) (stating that, "[a]s a matter of course, in multiple First Amendment cases, the [Supreme] Court has looked beyond the record before Congress at the time of enactment").

Instead, Plaintiffs appear to make four main arguments that ignore the standard for reviewing a law under intermediate scrutiny. First, they claim that the studies do not support OGM laws because there is a lower risk of firearms being used in a crime when the firearms are purchased on the same day compared to firearms purchased as part of a multiple sale over a short period of time.[7] Plaintiffs' MSJ at 19-20. However, those same studies also conclude that guns sold as part of a multiple sale, whether on the same day or on separate days within a thirty-day period, were at higher risk of being used in a crime. *See* Defs' MSJ at 7. This amounts to a dispute with the Legislature's judgment about the appropriate length of time an individual must wait before purchasing another firearm. In such a case, "[i]t is the legislature's job, not [the courts'], to weigh [that] evidence and make policy judgments." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012); *accord Wollard v. Gallagher*, 712 F.3d 865, 881-82 (4th Cir. 2014); *see also Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) ("*Turner II*") (courts must "accord substantial deference to the predictive judgments of the [legislature]"). More importantly, as discussed above, there is sufficient evidence supporting the Legislature's judgment that limiting purchases of handguns and semiautomatic centerfire rifles to one every thirty days reduces illegal firearms trafficking and makes it more difficult for criminals to acquire firearms. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) (plurality) ("*Turner*") (the court's narrow role is to "assure that, in formulating its judgments, [the government] has drawn reasonable inferences based on substantial evidence").

Second, Plaintiffs and their expert rely on whether there is a "statistically significant" connection between California's OGM law and firearm homicides.

---

[7] To the extent Plaintiffs mischaracterize statements from articles or Defendants' experts or take them out of context (*see* Plaintiffs' MSJ at 18-22), Defendants address those issues in their Response to Plaintiffs' statement of material facts. *See* RSOMF Nos. 41-68.

1  Plaintiffs' MSJ at 20-22.  This is simply an effort to discount the results of studies
2  showing that there is a decrease in homicide rates in a state after it passes an OGM
3  law.  *See* Defs' MSJ at 17-18 (citing studies finding a lower murder rate in states
4  with OGM laws).  Plaintiffs cite no authority requiring a "statistically significant"
5  connection in order for a law to survive intermediate scrutiny.  To the contrary, the
6  "evidence need only 'fairly support[]' [the government's] conclusions," which it
7  easily does in this case.  *Pena*, 898 F.3d at 982 (quoting *Jackson*, 746 F.3d at 969);
8  *see also Duncan*, 19 F.4th at 1108 ("we do not require scientific precision")
9  (citation omitted); DX-29 (Wasserstein) at p. 2 ("a label of statistical significance
10 does not mean or imply that an association or effect is highly probable, real, true, or
11 important.  Nor does a label of statistical nonsignificance lead to the association or
12 effect being improbable, absent, false, or unimportant").
13     Third, Plaintiffs argue that California's OGM law is unnecessary because
14 there are other state and federal laws that criminalize illegal firearms trafficking and
15 the State has other investigative tools to "disarm criminals."  Plaintiffs' MSJ at 16-
16 18.  This is irrelevant.  Just because there are other laws or policies aimed at illegal
17 firearms trafficking does not mean that the government is foreclosed from enacting
18 additional regulations in that area.  *See Jackson*, 746 F.3d at 969-70 (stating that the
19 government "must be allowed a reasonable opportunity to experiment with
20 solutions to admittedly serious problems") (quoting *City of Renton v. Playtime*
21 *Theatres, Inc.*, 475 U.S. 41, 52 (1986)).  Moreover, Plaintiffs fail to provide any
22 evidence that other laws or the State's investigative tools are just as effective as
23 OGM laws in reducing illegal firearms trafficking.
24     Finally, Plaintiffs claim that California's OGM law is not tailored to its goal.
25 Plaintiffs' MSJ at 22-24.  Plaintiffs go on to contend that the State must prove that a
26 thirty-day limitation is more effective than a limitation with a shorter time frame
27 and provide explanations for the exceptions to the OGM law.  *Id*. at 22-23.  By
28 requiring such proof, Plaintiffs appear to improperly conflate the narrow tailoring

and least restrictive-means requirements under strict scrutiny into the intermediate scrutiny analysis. *See Duncan*, 19 F.4th at 1103. The proper question under intermediate scrutiny is whether the evidence "fairly supports" the law. *Pena*, 898 F.3d at 982. And, as discussed earlier and in Defendants' summary judgment motion, the State has referred to a number of studies and provided expert reports showing that OGM laws help reduce illegal firearms trafficking and make it more difficult for criminals to obtain firearms. Defs' MSJ at 13-18. All of this supports California's OGM law.

As for the exceptions to the OGM law, the Ninth Circuit considered a similar argument regarding similar exceptions (e.g., law enforcement, entertainment industry, private party transfers) to a law requiring certain safety equipment on semiautomatic pistols. *Pena*, 898 F.3d at 974, 981. The court ultimately held that the exceptions "do[] not doom the [safety equipment] requirements under intermediate scrutiny." *Id*. at 981. In addition, Defendants have provided support for the exceptions. For example, Defendants' expert, Joseph Bisbee, a former federal Bureau of Alcohol, Tobacco, Firearms and Explosives special agent with more than 25 years of experience investigating firearms trafficking, stated that, in his experience, the entities exempt from California's OGM law "have rarely, if ever, been involved in the criminal misuse of firearms purchased as part of a multiple sale. DX-19, Dkt. No. 29-4, ¶ 24.

At bottom, the thirty-day limitation and exceptions to California's OGM law are the type of policy-making decisions that are left to the legislature. *See Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017) ("The judgment made by the [legislature] in enacting the [firearms regulation] is precisely the type of judgment that legislatures are allowed to make without second-guessing by a court").

### III. PLAINTIFFS' FAIL TO SHOW THAT THE OGM LAW VIOLATES EQUAL PROTECTION

Plaintiffs' arguments that the OGM law violates the Equal Protection Clause completely lack merit. Plaintiffs merely make conclusory allegations that the exemptions to California's OGM law are "arbitrary or irrational." Plaintiffs' MSJ at 25. This is not enough to find a violation of the Equal Protection Clause. As explained in Defendants' summary judgment motion, Plaintiffs fail to describe how they are similarly situated to the groups that are exempt from the OGM law. Defs' MSJ at 20. In particular, Plaintiffs appear to take issue with the exemption for motion picture, television, and video production companies. Complaint, Dkt. No. 1 ¶ 138. However, Plaintiffs' summary judgment motion does not make any arguments regarding how they are similarly situated to those companies.

Plaintiffs also fail to meet their burden of negating every conceivable basis for the exemptions. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). In fact, Defendants' summary judgment motion identifies several rational bases for exempting motion picture, television, and other entertainment companies from the OGM law. Defs' MSJ at 22-23 (e.g., those companies benefit an important sector of the California economy, weapons used in film and television are not intended to be used for live fire, and the entertainment industry has not been involved in illegal firearms trafficking). Without making any arguments negating these rational bases, Plaintiffs are not entitled to summary judgment on their equal protection claim.

### CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

Dated: April 29, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Jerry T. Yen*
JERRY T. YEN
Deputy Attorney General
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

# CERTIFICATE OF SERVICE

Case Name: **Nguyen, Michelle, et al. v. Rob Bonta, et al.**    No. **3:20-cv-02470**

I hereby certify that on April 29, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on April 29, 2022, at Sacramento, California.

| Eileen A. Ennis | *Eileen A. Ennis* |
|---|---|
| Declarant | Signature |

SA2020305120
36136986.docx