Raymond M. DiGuiseppe
California State Bar No. 228457
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE NGUYEN, et al, Plaintiffs<br><br>vs.<br><br>ROB BONTA, Attorney General of California, et al, Defendants. | Case No. 3:20-cv-02470-WQH-MDD<br><br>PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT<br><br>Date: May 20, 2022<br>Time: No oral argument unless requested by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.1(f)(3) of the Local Rules, Plaintiffs submit these Responses to Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment (Dkt. No. 29-1) ("DSUF"). Plaintiffs generally object to the DSUF for failure to state "material" facts in support of the motion based on the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("it is the substantive law's

1

1    identification of which facts are critical and which facts are irrelevant that governs").

2    Subject to that objection and the specific objections stated herein to certain of

3    Defendants' assertions in the DSUF, Plaintiffs provide the following responses.

4    These responses are intended to respond to the factual assertions in the DSUF by

5    identifying the assertions that Plaintiffs dispute for purposes of Defendants' motion

6    for summary judgment ("DMSJ"). Such disputes relate only to the factual assertions

7    that Defendants have proffered and otherwise have no bearing on Plaintiffs' motion

8    for summary judgment ("PMSJ") or the factual support that Plaintiffs have proffered

9    for their motion in their statement of undisputed material facts ("SOMF"). Plaintiffs

10   maintain that there are no genuine issues of material fact with respect to the grounds

11   entitling them to summary judgment, as set forth in their motion and the SOMF.

12   Defendants' factual assertions and asserted supporting evidence are set out

13   verbatim below with Plaintiffs' responses immediately following:

14   DSUF No. 1

15   *Assertion*: In 1975, South Carolina passed a law limiting the purchase of

16   handguns to one every thirty days.

17   *Asserted Supporting Evidence*: Defendants' Request for Judicial Notice ("RJN"),

18   Exh. 1 at 585.

19   *Plaintiffs' Response*:

20

2

1    Plaintiffs do not dispute DSUF No. 1 to the extent it cites the existence of the

2    South Carolina OGM law referenced in pages 2 through 6 of Exhibit 1 to

3    Defendants' Request for Judicial Notice ("RJN"). However, Plaintiffs dispute DSUF

4    No. 1 to the extent Defendants rely on this law as materially analogous to

5    California's OGM law and as pertinent factual or legal authority for purposes of

6    supporting their contention that Defendants are entitled to summary judgment on

7    either the Second Amendment or the Equal Protection claim.

8    The restriction that Defendants cite in DSUF No. 1 consists solely of an OGM

9    law. Defendants have produced no evidence, or made any claim, that South

10   Carolina's OGM law is or ever has been part of a firearms regulatory scheme

11   involving restrictions substantially similar in nature, scope, or depth as California's

12   regulatory scheme. Nor have Defendants produced any evidence, or made any claim,

13   that South Carolina's OGM law is or ever has been subject to exemptions

14   substantially similar in nature, scope, or depth of the exemptions under California's

15   OGM law at issue in this action.

16   Without any evidence that the referenced South Carolina OGM law is or ever has

17   been part of a firearms regulatory scheme involving restrictions substantially similar

18   in nature, scope, or depth to California's firearms regulatory scheme, and without

19   any evidence that it is or ever has been subject to exemptions substantially similar in

20   nature, scope, or depth to the exemptions under California's OGM law, it is

1   irrelevant and does not state a material fact in support of Defendants' position

2   regarding the constitutionality of California's OGM law.

3       Plaintiffs further dispute and object to DSUF No. 1 on the same grounds to the

4   extent Defendants rely on it for the proposition that the existence of a modern OGM

5   law in another jurisdiction justifies or substantially supports California's OGM law.

6

7   DSUF No. 2

8       *Assertion*: In 2004, South Carolina repealed its law limiting the purchase of

9   handguns to one every thirty days.

10      *Asserted Supporting Evidence*: RJN, Exh. 2.

11      *Plaintiffs' Response*:

12      Plaintiffs do not dispute DSUF No. 2 to the extent it cites the existence of the

13  repeal of the South Carolina OGM law referenced in Exhibit 2 of Defendants' RJN.

14  However, to the extent Defendants rely on South Carolina's OGM law as materially

15  analogous to California's OGM law and as pertinent factual or legal authority for

16  purposes of supporting their contention that Defendants are entitled to summary

17  judgment on either the Second Amendment or the Equal Protection claim, Plaintiffs

18  incorporate by reference and reassert herein the disputes and objections raised in the

19  responses to DSUF No. 1 above as equally applicable to DSUF No. 2.

20

4

DSUF No. 3

*Assertion*: In 1993, Virginia passed a law limiting the purchase of handguns to one every thirty days.

*Asserted Supporting Evidence*: RJN, Exh. 3 at 582.

*Plaintiffs' Response*:

Plaintiffs do not dispute DSUF No. 3 to the extent it cites the existence of the Virgina OGM law referenced in pages 13 through 24 of Exhibit 3 of Defendants' RJN. However, to the extent Defendants rely on Virginia's OGM law as materially analogous to California's OGM law and as pertinent factual or legal authority for purposes of supporting their contention that Defendants are entitled to summary judgment on either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate by reference and reassert as equally applicable here the disputes and objections raised in response to DSUF Nos. 1 and 2 concerning the South Carolina law. That is, without any evidence that the referenced Virginia OGM law is or ever has been part of a firearms regulatory scheme involving restrictions substantially similar in nature, scope, or depth to California's firearms regulatory scheme, and without any evidence that it is or ever has been subject to exemptions substantially similar in nature, scope, or depth to the exemptions under California's OGM law, it is irrelevant and does not state a material fact in support of Defendants' position regarding the constitutionality of California's OGM law.

Plaintiffs further dispute and object to DSUF No. 3 on the same grounds to the extent Defendants rely on it for the proposition that the existence of a modern OGM law in another jurisdiction justifies or substantially supports California's OGM law.

DSUF No. 4

*Assertion*: In 2012, Virginia repealed its law limiting the purchase of handguns to one every thirty days.

*Asserted Supporting Evidence*: RJN, Exh. 4 at 445-46.

*Plaintiffs' Response*:

Plaintiffs do not dispute DSUF No. 4 to the extent it cites the existence of the repeal of the Virgina OGM law referenced in Exhibit 4 of Defendants' RJN. However, to the extent Defendants rely on Virginia's OGM law as materially analogous to California's OGM law and as pertinent factual or legal authority for purposes of supporting their contention that Defendants are entitled to summary judgment on either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate by reference and reassert herein the disputes and objections raised in the responses to DSUF Nos. 1, 2, and 3 above as equally applicable to DSUF No. 4.

1    DSUF No. 5

2    *Assertion*: In 2020, Virginia reenacted its law limiting the purchase of handguns

3    to one every thirty days.

4    *Asserted Supporting Evidence*: RJN, Exh. 5 at 1903; Va. Code Ann. § 308.2:2(R).

5    *Plaintiffs' Response*:

6    Plaintiffs do not dispute DSUF No. 5 to the extent it cites the existence of the

7    Virginia OGM law referenced in pages 34 through 42 of Exhibit 5 of Defendants'

8    RJN. However, to the extent Defendants rely on that law as materially analogous to

9    California's OGM law and as pertinent factual or legal authority for purposes of

10   supporting their contention that Defendants are entitled to summary judgment on

11   either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate

12   by reference and reassert as equally applicable herein their responses to DSUF Nos.

13   1, 2, 3, and 5, and thereby dispute and object to DSUF No. 5 on the same grounds.

14

15   DSUF No. 6

16   *Assertion*: In 1996, Maryland passed the Maryland Gun Violence Act of 1996,

17   which included a limitation on purchases of handguns and assault weapons to one

18   every thirty days.

19   *Asserted Supporting Evidence*: RJN, Exh. 6 at 3150, 3159.

20   *Plaintiffs' Response*:

1    Plaintiffs do not dispute DSUF No. 6 to the extent it cites the existence of the

2    Maryland OGM law referenced in pages 44 through 54 of Exhibit 6 of Defendants'

3    RJN. However, to the extent Defendants rely on that law as materially analogous to

4    California's OGM law and as pertinent factual or legal authority for purposes of

5    supporting their contention that Defendants are entitled to summary judgment on

6    either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate

7    by reference and reassert as equally applicable herein their responses to DSUF Nos.

8    1, 2, 3, 4, and 5, and thereby dispute and object to DSUF No. 6 on the same grounds.

9

10   DSUF No. 7

11   *Assertion*: In 2003, Maryland recodified its law limiting the purchases of

12   handguns and assault weapons to one every thirty days in the Public Safety Code.

13   *Asserted Supporting Evidence*: RJN, Exh. 7 at 238; Md. Code Ann., Pub. Safety

14   § 5-128(b).

15   *Plaintiffs' Response*:

16   Plaintiffs do not dispute DSUF No. 7 to the extent it cites the existence of the

17   Maryland OGM law referenced in pages 56 through 74 of Exhibit 7 of Defendants'

18   RJN. However, to the extent Defendants rely on that law as materially analogous to

19   California's OGM law and as pertinent factual or legal authority for purposes of

20   supporting their contention that Defendants are entitled to summary judgment on

8

either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate

by reference and reassert as equally applicable herein their responses to DSUF Nos.

1, 2, 3, 4, 5, and 6, and thus dispute and object to DSUF No. 7 on the same grounds.

<u>DSUF No. 8</u>

*Assertion*: In 1999, California passed a law limiting the purchase of handguns to one every thirty days.

*Asserted Supporting Evidence*: Cal. Stats. 1999, ch. 128 (Assemb. B. 202), § 2 (codified as Cal. Penal Code § 27535).

*Plaintiffs' Response*: Undisputed.

<u>DSUF No. 9</u>

*Assertion*: In 2019, California expanded the law to include semiautomatic centerfire rifles and limited the purchase of handguns or semiautomatic centerfire rifles to one every thirty days.

*Asserted Supporting Evidence*: Cal. Stats. 2019, ch. 737 (S.B. 61), § 5 (amending Cal. Penal Code § 27535).

*Plaintiffs' Response*: Undisputed.

<u>DSUF No. 10</u>

*Assertion*: There are some exceptions to California's law that permit specified individuals or companies to purchase more than one handgun or semiautomatic centerfire rifle every thirty days. Some of these exceptions include peace officers, licensed private security businesses, licensed gun collectors, and movie production companies.

*Asserted Supporting Evidence*: Cal. Penal Code § 27535(b).

*Plaintiffs' Response*:

Plaintiffs do not dispute DSUF No. 10 insofar as it recites the basic fact that California's OGM law creates a series of exemptions to the prohibitions at issue. However, Plaintiffs dispute and object to Defendants' varying characterizations of these exceptions as contradictory, misleading, and as mischaracterizations of the evidence. Specifically, in their MSJ, Defendants say "[t]here are some limited exceptions to California's OGM law," and they cite DSUF No. 10 in support of this assertion. DMSJ at 4. But then they drop "limited" from DSUF No. 10 and say instead "[t]here as some exceptions." Also, both of these characterizations contrast with the Legislature's own characterization of the exceptions as being "numerous" in nature. NLF, Exh. 12 at 4. Plaintiffs refer the Court to the legislative record for the complete and accurate statement of the Legislature on this point. *Id.*

DSUF No. 11

*Assertion*: Some transactions under California law are also exempt from the limit of one handgun or one semiautomatic centerfire rifle every thirty days.

*Asserted Supporting Evidence*: Cal. Penal Code § 27535(b)(7) and (8).

*Plaintiffs' Response*:

Plaintiffs do not dispute DSUF No. 11 insofar as it recites the basic fact that "some" transactions are exempt from the prohibitions at issue. However, Plaintiffs dispute and object to DSUF No. 11 as misleading, inaccurate, and incomplete insofar as Defendants' characterization conflicts with the Legislature's characterization of these exemptions. *See* NLF, Exh. 12 at 4 ("The bill also provides numerous exemptions . . ."). Plaintiffs refer the Court to the legislative record for the complete and accurate statement of the Legislature on this point. *Id.*


DSUF No. 12

*Assertion*: In 2009, New Jersey passed a law limiting the purchase of handguns to one every thirty days.

*Asserted Supporting Evidence*: RJN, Exh. 8 at 1325-26, 1331; N.J. Code Ann. §§ 2c:58-2(a)(7) and 2c:58-3(i).

*Plaintiffs' Response*:

Plaintiffs do not dispute DSUF No. 12 to the extent it cites the existence of the New Jersey OGM law referenced in pages 76 through 87 of Exhibit 8 of Defendants' RJN. However, to the extent Defendants rely on that law as materially analogous to California's OGM law and as pertinent factual or legal authority for purposes of supporting their contention that Defendants are entitled to summary judgment on either the Second Amendment or the Equal Protection claim, Plaintiffs incorporate by reference and reassert as equally applicable herein their responses to DSUF Nos. 1, 2, 3, 4, 5, 6, and 7, and thereby dispute and object to DSUF No. 12 on the same grounds. Plaintiffs similarly dispute and object to DSUF No. 12 to the extent that Defendants characterize the enactment of the New Jersey OGM law in 2009 as purportedly reflecting a pattern of firearms regulatory regimes substantially similar in nature, scope, or depth to California's firearms regulatory regime with no supporting evidence that the New Jersey regime is substantially similar to California's regime. *See* DMSJ at 2 (characterizing the enactment of this law as follows: "New Jersey became the fifth state to pass an OGM law in 2009.").

DSUF No. 13

*Assertion*: In 2005, New York City passed an ordinance preventing firearms dealers from selling a rifle or shotgun to any individual who purchased a firearm within the prior ninety days.

1    *Asserted Supporting Evidence*: RJN, Exh. 9.

2    *Plaintiffs' Response*:

3    Plaintiffs do not dispute DSUF No. 13 to the extent it cites the existence of the

4    New York City ordinance concerning the purchase frequency of rifles and shotguns,

5    referenced on page 88 of Exhibit 9 of Defendants' RJN. However, to the extent

6    Defendants rely on this ordinance as materially analogous to California's OGM law

7    and as pertinent factual or legal authority for purposes of supporting their contention

8    that Defendants are entitled to summary judgment on either the Second Amendment

9    or the Equal Protection claim, Plaintiffs incorporate by reference and reassert as

10   equally applicable herein their responses to DSUF Nos. 1, 2, 3, 4, 5, 6, 7, and 12

11   (with the exception of the dispute and objection to Defendants' characterization of

12   the New Jersey law, which is relates to DSUF No. 12 alone), and thus dispute and

13   object to DSUF No. 13 on the same grounds. Plaintiffs further object that the New

14   York City ordinance is even further attenuated from a relevancy perspective than the

15   state laws that Defendants cite given its limited application to a single municipality.

16   *See* DX-17 at ¶9 (where the defense's own expert relied only on "*state* laws").

17

18   <u>DSUF No. 14</u>

19   *Assertion*: In 2006, New York City passed an ordinance limiting the purchase of

20   firearms to one every ninety days.

                                        13

1    *Asserted Supporting Evidence*: RJN, Exhs. 10 and 11.

2    *Plaintiffs' Response*:

3    Plaintiffs do not dispute DSUF No. 14 to the extent it cites the existence of the

4    New York City ordinance concerning the purchase frequency of firearms, referenced

5    in page 91 through 99 of Exhibits 10 and 11 of Defendants' RJN. However, to the

6    extent Defendants rely on this ordinance as materially analogous to California's

7    OGM law and as pertinent factual or legal authority for purposes of supporting their

8    contention that Defendants are entitled to summary judgment on either the Second

9    Amendment or the Equal Protection claim, Plaintiffs incorporate by reference and

10   reassert as equally applicable herein their responses to DSUF Nos. 1, 2, 3, 4, 5, 6, 7,

11   12, and 13 (with the exception of the dispute and objection to Defendants'

12   characterization of the New Jersey law, which is relates to DSUF No. 12 alone), and

13   thereby dispute and object to DSUF No. 14 on the same grounds, as well as on the

14   grounds that the New York City ordinance is even further attenuated from a

15   relevancy perspective given its limited application to a single municipality within a

16   state. *See* DX-17 at ¶9 (where the defense's own expert relied only on "*state* laws").

17

18   <u>DSUF No. 15</u>

19   *Assertion*: One of the legislative goals in limiting handgun purchases to one every

20   thirty days in California is "to stop one gun purchaser from buying serval firearms

14

1    and transferring a firearm to another person who does not have the legal ability to

2    buy a gun him/herself."

3        *Asserted Supporting Evidence*: Defendants' Notice of Legislative Facts in

4    Support of Their Motion for Summary Judgment ("NLF"), Ex. 12 at 3.

5        *Plaintiffs' Response*:

6        Plaintiffs do not dispute that the legislative record contains the language quoted

7    in DSUF No. 15. However, in DSUF No. 15, Defendants characterize the quoted

8    legislative intent as "*one* of the legislative goals" behind AB 202, whereas the factual

9    assertion in their MSJ for which they cite DSUF No. 15 as support employs a

10   different characterization of this intent—that it was the *sole* legislative goal behind

11   the law. DMSJ at 3 (italics added) ("*The* purpose of this law is 'to stop one gun

12   purchaser from buying several firearms and transferring a firearm to another person

13   who does not have the legal ability to buy a gun him/herself.'").

14       To the extent of this contradictory and incomplete statement about the legislative

15   intent of AB 202, Plaintiffs dispute and object to DSUF No. 15 as incomplete,

16   misleading, vague and ambiguous, and as a mischaracterization of the evidence.

17   Plaintiffs refer the Court to Exhibit 5 to their MSJ (Legislative History), pages 1

18   through 30, for an accurate and complete description of the relevant legislative intent

19   behind AB 202.

20

15

<u>DSUF No. 16</u>

*Assertion*: The author of the bill (AB 202) limiting handgun purchases to one every thirty days in California noted that "There is no limit on the number of handguns that may be purchased from a dealer. This makes it easy for straw purchasers to acquire guns for another person or for street dealers to acquire guns legitimately. Handguns make up an overwhelming share of crime guns and a significant number are traceable to dealer transactions. AB 202 will curtail the illegal gun market, disarm criminals, and save lives by preventing multiple purchases of handguns through legitimate channels.

*Asserted Supporting Evidence*: NLF, Exh. 12 at 3.

*Plaintiffs' Response*:

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 16. However, Plaintiffs dispute and object to DSUF No. 16 as incomplete, misleading, vague and ambiguous, and as a mischaracterization of the evidence to the extent it fails to provide an accurate and complete description of the legislative intent behind AB 202. Plaintiffs refer the Court to Exhibit 5 to their MSJ (Legislative History), pages 1 through 30, for an accurate and complete description of the relevant legislative intent behind AB 202.

DSUF No. 17

*Assertion*: The author of the bill (SB 61) limiting semiautomatic centerfire rifles purchases to one every thirty days in California noted that "More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same."

*Asserted Supporting Evidence*: NLF, Exh. 13 at 3.

*Plaintiffs' Response*:

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 17. However, Plaintiffs dispute and object to DSUF No. 17 as incomplete, misleading, and as a mischaracterization of the evidence to the extent it fails to present a complete and accurate description of the stated legislative purposes behind SB 61, which included, for example, the stated purpose of "creat[ing] a safer process for the purchasing and delivering of all types of firearms in California." Ex. 5 to PMSJ (Legislative History), at p. 72. Plaintiffs refer the Court to Exhibit 5 to the PMSJ (Legislative History), pages 31 through 77, for an accurate and complete description of the relevant legislative purposes behind SB 61.

DSUF No. 18

*Assertion*: In support of SB 61, the Ventura County Board of Supervisors stated that "the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides."

*Asserted Supporting Evidence*: NLF, Exh. 13 at 4.

*Plaintiffs' Response*:

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 18. However, Plaintiffs dispute and object to DSUF No. 18 as incomplete, misleading, and as a mischaracterization of the evidence to the extent it suggests this was a statement of the Legislature or anything more than an *argument for* SB 61 by a proponent of the bill, while also failing to acknowledge the existence of the arguments *against* SB 61 by its several opponents, including the then-Governor. NLF, Exh. 13 at 4-6; *id.* at 4 ("California already bans the purchase of more than one handgun per month" and "this bill would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need"); *id.* at 5 ("Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.").

Plaintiffs further dispute and object to DSUF No. 18 as unsupported by the evidence and speculative to the extent it suggests that California's OGM law "reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides," or has otherwise had any impact on the instance of "accidental," "intentional," or "mass homicides," DMSJ at 4. As Plaintiffs have pointed out, and as Defendants' own expert witness has conceded, there is no evidence of a causal or correlative relationship between California's OGM law and mass homicides. PMSJ at 21; SOMF ¶¶ 59-64. Nor have Defendants or the State produced or identified any evidence of such a relationship between California's OGM law and "accidental" or "intentional" homicides.

DSUF No. 19

*Assertion*: The legislative history of AB 202 states that "The bill also provides numerous exemptions which are salutary because they encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange."

*Asserted Supporting Evidence*: NLF, Exh. 12 at 4.

*Plaintiffs' Response*:

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 19. However, Plaintiffs dispute and object to DSUF No. 19 as

misleading, inaccurate, and as a mischaracterization of the evidence insofar as Defendants cite it as factual support for a substantively different assertion in their MSJ. Specifically, Defendants cite DSUF No. 19 as evidence that "[t]he Legislature provided these exemptions because they are 'salutary' and 'encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange.'" DMSJ at 4. But the legislative history that Defendants cite as support does not say the exemptions were created *because* they are (purportedly) salutary and encourage lawful activity. It simply reflects a legislative statement regarding the purported *effect* of the exemptions; it's not explaining *why* the exemptions were created in the first instance. NLF, Exh. 12 at 4 (the quoted language says the exemptions are "salutary because they encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange").

Further, Plaintiffs dispute and object to DSUF No. 19 as inaccurate, unsupported, and as a mischaracterization of the evidence insofar as Defendants rely on it to claim that all or most of the "numerous exemptions" are in fact "salutary," and/or in fact "encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange." There is no evidence that each and every, or even most, of the exemptions are actually "salutary" in their effect. *See* https://www.merriam-webster.com/dictionary/salutary

("salutary" means "producing a beneficial effect" in the sense of being "remedial" or "promoting health" in the sense of being "curative"). And there is no evidence that multi-gun exchanges conducted in accordance with the exemptions are the *only* such transactions that can or would otherwise be conducted "lawfully."

DSUF No. 20

*Assertion*: A 1996 study published in the *Journal of the American Medical Association* found a reduction in the likelihood that a crime gun was acquired in Virginia after Virginia's one-gun-a-month law took effect and concluded that "restricting purchases of handguns to 1 per month is an effective way to disrupt the illegal movement of guns across state lines."

*Asserted Supporting Evidence*: DX-23 at 1760-61.

*Plaintiffs' Response*:

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 20. However, Plaintiffs dispute and object to the rest of the assertion in DSUF No. 20 as misleading, inaccurate, and incomplete in that it fails to clarify that the referenced the study was limited to crime guns recovered in a handful of southeastern states over a limited number of years before and after the Virginia OGM was enacted. *See* DX-23 at 1759-60. Further, DSUF No. 20, and the assertions in Defendants' MSJ for which it is cited as the factual support, *see* DMSJ at 4, are misleading,

21

1    inaccurate, and incomplete because they fail to acknowledge the "several

2    limitations" to the study, the need for "additional research" to clarify the potential

3    impact of certain factors, and the inherent uncertainty arising from "other

4    unidentified factors," which the authors themselves admit leave their findings and

5    conclusions subject to reasonable doubt. DX-23 at 1761 ("Such factors could lead to

6    results that are inappropriately attributed to implementation of the law.").

7        More broadly, whatever the weight or reliability of this study's findings and

8    conclusions, Plaintiffs dispute and object to DSUF No. 20 to the extent Defendants

9    rely on these findings and conclusions about the potential effects of Virginia's OGM

10   law as materially significant factual or legal authority for their position. To that end,

11   Plaintiffs incorporate by reference and reassert as equally applicable the disputes and

12   objections raised in the response to Defendants' other assertions based on the

13   potential effects of OGM laws in other jurisdictions—i.e., without any evidence that

14   the referenced Virginia OGM law is or ever has been part of a firearms regulatory

15   scheme involving restrictions substantially similar in nature, scope, or depth to

16   California's firearms regulatory scheme, and without any evidence that it is or ever

17   has been subject to exemptions substantially similar in nature, scope, or depth to the

18   exemptions under California's OGM law, this evidence as a whole is irrelevant and

19   does not state a material fact in support of Defendants' position regarding the

20   constitutionality of California's OGM law.

22

1    DSUF No. 21

2        *Assertion*: A study published in the *Russell Sage Foundation Journal of the*

3    *Social Sciences* found a reduction [in] the likelihood that a Boston handgun would

4    be traced to Virginia after Virginia's one-gun-a-month law took effect and the results

5    [were] "congruent with the findings of Weil and Knox's 1996 study and suggest that

6    restricting handgun purchases to one per month may change where criminals get

7    their guns."

8        *Asserted Supporting Evidence*: DX-24 at 89-90.

9        *Plaintiffs' Response*:

10       Plaintiffs do not dispute that this study contains the quoted language in DSUF

11   No. 21. However, Plaintiffs dispute and object to the rest of the assertion in DSUF

12   No. 21 as misleading, inaccurate, and incomplete in that it fails to clarify that the

13   referenced finding was "relative to licensed dealers elsewhere in I-95 southern,"

14   because it was focused on crime guns recovered in a handful of southeastern states

15   over a limited number of years while Virginia's initial OGM law was in effect. *See*

16   DX-24 at 89-90. Further, DSUF No. 21, and the assertions in Defendants' MSJ for

17   which it is cited as factual support, *see* DMSJ at 5, are misleading, inaccurate, and

18   incomplete because they fail to acknowledge the clear limitations of the study, which

19   the authors repeatedly emphasize: "direct evidence is scant that successful regulatory

20   and enforcement actions against supply lines of guns to criminals and juveniles will

23

actually reduce availability and hence gun use in crime," DX-24 at 77, "[f]urther research on the structure of illegal gun markets and experimentation with market disruption tactics is sorely needed," *id.*, "[e]xperimental evidence also needs to be developed to determine whether interventions designed to limit illegal transfers of firearms can indeed reduce gun violence," *id.* at 79, and "whether these market-based interventions reduced the overall availability of guns to criminals and whether supply-side interventions have a measureable impact on gun violence remain unclear," *id.* at 93. DSUF No. 21 is similarly objectionable because the authors acknowledge that "the bulk of Boston's serious gun violence problem is generated by a relatively small number of criminally active gang members," *id.* at 93, not law-abiding citizens like Plaintiffs' whose rights are actually at stake here.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 21 on the same grounds that they dispute and object to DSUF No. 20 to the extent Defendants rely on these findings and conclusions about the potential effects of Virginia's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law.

1   DSUF No. 22

2   *Assertion*: A study published by the Virginia State Crime Commission reported

3   that "Virginia no longer [was] the main source state for firearms trafficking to New

4   York City since the one-gun-a- month law was passed" and found that the one-gun-

5   a-month law "had its intended effect of reducing Virginia's status as a source state

6   for gun trafficking."

7   *Asserted Supporting Evidence*: DX-25 at 5, 7.

8   *Plaintiffs' Response*:

9   Plaintiffs do not dispute that this study contains the quoted language in DSUF

10   No. 22. However, Plaintiffs otherwise dispute and object to DSUF No. 22 as

11   misleading, inaccurate, and incomplete to the extent that it fails to acknowledge the

12   limitations or the contrary findings of the study. The purported causal link was

13   ultimately stated in tenuous terms along with a notable disclaimer: "the Virginia law

14   does *not* necessarily reduce the number of guns used in criminal activity," although

15   "gun purchasers who are criminally involved *probably* had to look elsewhere to buy

16   weapons." DX-25 at 6 (italics added). Indeed, this study was apparently based

17   primarily on the findings of Weil & Knox study at the basis of DSUF No. 20, DX-

18   25 at 6, in which the authors themselves acknowledge significant shortcomings that

19   diminish the reliability of the findings and conclusions, as discussed above. This

20   study also acknowledged that even with Virginia's OGM law in place, "Virginia

25

counties immediately adjacent to Washington, D.C., continue[d] to be a main source (29.6%) for the flow of firearms into the nation's capitol [*sic*], with Maryland a close second at (26.9%)." DX-25 at 5. Further, DSUF No. 22 misleadingly makes no mention of the opposing statements that challenged the tracing data at the center of these analyses as unreliable in analyzing the impacts of the OGM law and that contended the underlying studies did not properly consider or control for the potential effects of other firearms regulations. DX-25 at E-2 – E-3.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 22 on the same grounds that they dispute and object to DSUF Nos. 20 and 21 to the extent Defendants rely on these findings and conclusions about the potential effects of Virginia's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law.

DSUF No. 23

*Assertion*: The same study published by the Virginia State Crime Commission noted that "prior to passage of the one- gun-a-month law, South Carolina was a leading source state for guns traced to New York City, accounting for 39% of guns recovered in criminal investigations. Following implementation of the law, South

1    Carolina virtually dropped off of the statistical list of source states for firearms

2    trafficked to the northeast."

3        *Asserted Supporting Evidence*: DX-25 at 3.

4        *Plaintiffs' Response*:

5        Plaintiffs do not dispute that this study contains the quoted language in DSUF

6    No. 23. However, Plaintiffs otherwise dispute and object to DSUF No. 23 as

7    misleading, inaccurate, incomplete, irrelevant, and as not stating a material fact in

8    support of Defendants' case, to the same extent and on the same grounds that

9    Plaintiffs dispute and object to DSUF No. 22.

10

11   DSUF No. 24

12       *Assertion*: A study published in *Criminology and Public Policy* found that "guns

13   sold in multiple sales in Maryland before the state's OGM law were roughly 25%

14   more likely than those sold in single sales to be recovered by police in the

15   neighboring jurisdiction of Washington, D.C." and concluded that the research

16   "supports the efficacy of OGM laws as a method for disrupting gun trafficking" and

17   that "[a]n OGM law should disrupt straw purchasing operations, thereby reducing

18   the flow of guns from the primary market into criminal channels."

19       *Asserted Supporting Evidence*: DX-26 at 769-70.

20       *Plaintiffs' Response*:

27

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 24. However, Plaintiffs otherwise dispute and object to DSUF No. 24 to the extent that it fails to acknowledge the limitations or the contrary findings. The study itself acknowledged the inherent unreliability of attempting to draw any potential link between Maryland's OGM law and a reduction in firearm violence "because the law was passed simultaneously with other state gun control measures, most notably new restrictions on secondhand gun transfers," DX-26 at 754, n. 12, "including restrictions on secondhand sales of handguns and a state provision explicitly banning straw purchases," *id.* at 772. "Further, non-firearm homicides dropped after the law by more than did firearm homicides," which "implies that factors other than the OGM law may have caused the decline in gun homicides." *Id.* The study disclosed that the data available for studying a link between "multiple sales" and crimes were very limited. *See e.g.*, DX-26 at 753, 754, 771-72 (describing the data as "fragmentary," "scant," "sparse," "cloud[ed]" by the uncertainty of the impact of other various federal and state laws).

Plaintiffs further dispute and object to DSUF No. 24 as misleading, inaccurate, and incomplete because, while study generally considered "multiple sales" to mean "the purchase of two or more handguns by the same person from any dealer(s) within a thirty-day period," DX-26 at 757, the actual focus was on sales occurring simultaneously or within very short periods of time, *id.* ("82% of the guns purchased

in multiple sales as defined herein also met the federal definition of a multiple sale (i.e., the purchase of more than one handgun from the same dealer within five business days), *in almost all cases involving same-day*, same-dealer purchases.") (italics added); *see also id.* at 750 (discussing "multiple sale" as meaning "[t]he *simultaneous or rapid* purchase of multiple guns by one individual") (italics added).

DSUF No. 24 is similarly objectionable and disputed because the ultimate conclusion of the study was stated in clearly tenuous terms: "A 1996 Maryland law restricting handgun buyers to one purchase per month *may* have produced *modest* reductions in the flow of guns to criminals in Maryland and particularly in Washington, D.C." DX-26 at 749 (italics added). In fact, the study actually documented, to the contrary, that "guns sold in multiple sales had a lower risk of being used in crime." *Id.* at 760.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 24 on the same grounds that they dispute and object to DSUF Nos. 20, 21, 22, and 23 to the extent Defendants rely on these findings and conclusions about the potential effects of Maryland's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law. *See* DX-26 at 769 ("We must also be cautious about generalizing these findings to other states. Gun control measures in Maryland, particularly its waiting period on handgun sales and ban on

29

1    many SNS firearms, may have discouraged repetitive trafficking from retail sources

2    even before the state's OGM law.").

3

4    DSUF No. 25

5    *Assertion*: The same study published in *Criminology and Public Policy* showed

6    that "handguns sold in multiple sales were 24% to 29% more likely to have been

7    used in crime at each year of follow-up" and that "[g]uns sold in multiple sales

8    accounted for about one quarter of crime guns and, more importantly, were at

9    elevated risk for criminal use."

10   *Asserted Supporting Evidence*: DX-26 at 767, 769.

11   *Plaintiffs' Response*:

12   Plaintiffs do not dispute that this study contains the quoted language in DSUF

13   No. 25. However, Plaintiffs otherwise dispute and object to DSUF No. 25 as

14   misleading, inaccurate, incomplete, irrelevant, and as not stating a material fact in

15   support of Defendants' case, to the same extent and on the same grounds for the

16   disputes and objections that Plaintiffs raise in response to DSUF No. 24.

17

18   DSUF No. 26

19   *Assertion*: A study published in the *Journal of Quantitative Criminology* found

20   that Maryland's "one-gun-a-month provision reduced trafficking from Maryland

1    into Washington, DC via multiple sales" and that guns sold in multiple sales "were

2    more likely to have been purchased by straw purchasers or traffickers."

3          *Asserted Supporting Evidence*: DX-27 at 305, 306.

4          *Plaintiffs' Response*:

5          Plaintiffs do not dispute that this study contains the quoted language in DSUF

6    No. 26. However, Plaintiffs otherwise dispute and object to DSUF No. 26 as

7    misleading, inaccurate, and incomplete to the extent that it fails to acknowledge the

8    limitations or the contrary findings of the study. As Plaintiffs detailed in their MSJ,

9    that study was based on several factors unrelated to the potential effect of the

10   "multiple-sale" factor, it only considered "multiple sales" in the aggregate to the

11   extent that factor was considered, and even then it found only 3.2% of all the firearms

12   sold during the relevant period had a "chance" of becoming crime guns. PMSJ at 20;

13   SOMF ¶50; DX-27 at 285, 290. Further, the study ultimately found no "statistically

14   significant" risk that "guns would be at higher risk if sold in multiple sales and/or

15   before the GVA" (Maryland's OGM law). PMSJ at 20; SOMF ¶51; DX-27 at 304.

16   And it also acknowledged the documented findings that "guns purchased in same-

17   day multiple sales were at *greater* risk of criminal use than those purchased in other

18   30-day multiple sales." PMSJ at 20; SOMF ¶52; DX-27 at 298 (italics added).

19          More broadly, whatever the weight or reliability of this study's findings and

20   conclusions, Plaintiffs dispute and object to DSUF No. 26 on the same grounds that

31

1    they dispute and object to DSUF Nos. 20, 21, 22, 23, 24, and 25 to the extent

2    Defendants rely on these findings and conclusions about the potential effects of

3    Maryland's OGM law as materially significant factual or legal authority for their

4    position regarding the constitutionality of California's OGM law.

5

6    <u>DSUF No. 27</u>

7        *Assertion*: The same study published in the *Journal of Quantitative Criminology*

8    confirmed that "[g]uns sold in multiple sales were also more likely to be used in a

9    crime."

10        *Asserted Supporting Evidence*: DX-27 at 306.

11        *Plaintiffs' Response*:

12        Plaintiffs do not dispute that this study contains the quoted language in DSUF

13    No. 27. However, Plaintiffs otherwise dispute and object to DSUF No. 27 as

14    misleading, inaccurate, incomplete, irrelevant, and as not stating a material fact in

15    support of Defendants' case, to the same extent and on the same grounds for dispute

16    and objection that Plaintiffs raise in response to DSUF No. 26.

17

18    <u>DSUF No. 28</u>

19        *Assertion*: A study published in the *Journal of Urban Health* found that, in

20    California, "[h]andguns purchased by individuals who bought multiple similar guns

1    were 58% more likely to be used in crime than were handguns purchased by

2    individuals who purchased only one handgun in 1996."

3        *Asserted Supporting Evidence*: DX-28 at 362.

4        *Plaintiffs' Response*:

5        Plaintiffs do not dispute that this study contains the quoted language in DSUF

6    No. 28. However, Plaintiffs otherwise dispute and object to DSUF No. 28 as

7    misleading, inaccurate, and incomplete to the extent it fails to acknowledge the

8    limitations or the contrary findings of the study, in particular the absence of any

9    actual connection between the *one-gun-per-month* restriction of the OGM law. As

10   the quoted language makes plain, this statistic did not concern multiple purchases in

11   *separate* transactions over a period of time, whether one month or some other time

12   interval, but instead concerned only multiple purchases in a *single* transaction.

13       DSUF No. 28 is similarly objectionable and disputed because this study actually

14   found that "handguns purchased by the same individual within 30 days of another

15   handgun purchase, but not on the same day, were *less* likely to be traced." PMSJ at

16   19; SOMF ¶44; DX-28 at 356-357 (italics added). More precisely, as the evidence

17   shows, "a handgun acquired in a series of purchases over 30 days has a 38% smaller

18   likelihood of being a trace gun." PMSJ at 19; SOMF ¶¶45, 46; Ex. 13 to PMSJ at 10.

19

20

1    <u>DSUF No. 29</u>

2         *Assertion*: Professor Klarevas has offered an opinion that, based on his expertise

3    and review of the relevant literature, bulk and multiple firearm purchases facilitate

4    straw purchases and illegal firearms trafficking as well as the acquisition of multiple

5    firearms by potential mass shooters.

6         *Asserted Supporting Evidence*: DX-17 (Klarevas Report) ¶ 9.

7         *Plaintiffs' Response*:

8         Plaintiffs do not dispute DSUF No. 29 insofar as it recites that Klarevas relied on

9    literature concerning "bulk and multiple firearm purchases" in rendering his opinions

10   on behalf of Defendants. However, Plaintiffs dispute and object to DSUF No. 29 as

11   misleading and as ultimately failing to state a material fact in support of Defendants'

12   position to the extent Defendants rely on it as supporting the constitutionality of

13   California's OGM law. As Plaintiffs pointed out in their MSJ, Klarevas's reliance

14   on data concerning multiple-firearms purchases in single or "bulk" transactions, on

15   the same day, within a handful of days, or aggregated data concerning all forms and

16   timing of multiple-firearms purchases, without distinguishing such purchases over a

17   30-day period of time, illustrates a logical and legal disconnect between the data

18   Klarevas cites as supportive and his opinions concerning matter actually at issue—

19   multiple-firearms purchases *over a one-month period*.

20

34

1    Plaintiffs further dispute and object to DSUF No. 29 as misleading, vague and

2    ambiguous, and inaccurate insofar as it refers to "the acquisition of multiple firearms

3    by potential mass shooters," which is inconsistent with the language in both

4    Klarevas's report itself and Defendants' characterization of it in their MSJ.

5    Klarevas's report refers to "the acquisition of multiple weapons by potential active

6    shooters seeking to perpetrate mass murder," DX-17 at ¶19, while the MSJ refers to

7    "the acquisition of multiple firearms by potential active shooters," DMSJ at 8.

8    Neither uses the term "potential mass shooters" that appears in DSUF No. 29.[1] These

9    terms and phrases referring to "potential" "active" or "mass" shooters are undefined

10   and explained as to their meaning, individually or collectively, rendering them vague

11   and ambiguous generally and specifically as to subject of concern.

12   Moreover, Plaintiffs dispute and object to DSUF No. 29 as misleading,

13   inaccurate, as a mischaracterization of the record, and as lacking evidentiary support

14   to the extent Defendants rely on it to claim the existence of an established link

15   between California's OGM law and a reduction in the instances, frequency, severity

16   of, or "potential" for, "mass" shootings or other "active" shooter gun crimes, or any

17

18

19   [1]   DSUF No. 29 is not actually specifically cited in Defendants' MSJ, though it's
     reasonably inferable that Defendants intended to cite it as support for the above-
20   referenced assertion in their MSJ.

35

1   other established link between that law and the number or frequency of firearms

2   purchases by perpetrators of such gun violence. As Plaintiffs have explained, no such

3   evidence exists, PMSJ at 21; SOMF ¶¶59-61, and Klarveas has conceded as much,

4   PMSJ at 21-22; SOMF ¶¶59-61; PMSJ, Ex. 8 (Klarevas Expert Report) at 22-23;

5   PMSJ, Ex. 14 (Klarevas Depo.) at 90-91, 199-201.

6

7   DSUF No. 30

8   *Assertion*: Professor Klarevas has offered an opinion that, based on his expertise

9   and review of the relevant literature, (1) multiple firearm purchases facilitate straw

10  purchases, illegal firearms trafficking, and the acquisition of multiple firearms by

11  potential active shooters; (2) laws restricting the purchase of firearms to one per

12  month mitigate the risks and dangers associated with bulk and multiple firearm

13  purchases; and (3) one-gun-a-month laws disrupt illicit firearm markets, reduce

14  firearms trafficking and straw purchases, and have the potential to save lives.

15  *Asserted Supporting Evidence*: DX-17 ¶¶ 9, 39.

16  *Plaintiffs' Response*:

17  Plaintiffs dispute and object to DSUF No. 30 as misleading, vague and

18  ambiguous, and inaccurate insofar as it misstates or mischaracterizes Klarevas's

19  opinions and contains the undefined and explained term "potential active shooters."

20  Regarding (1), again, Klarevas's actual opinion referred to "the acquisition of

multiple weapons by potential active shooters seeking to perpetrate mass murder." DX-17 at ¶9. Regarding (2), Klarevas's actual opinion referred to *"state* laws," *id.*, not just any "laws," as stated in DSUF No. 30, and thus would *not* include the New York City ordinance that Defendants cite for support in DSUF Nos. 13 and 14. Further, Plaintiffs dispute and object to Klarevas's opinion here as unsupported by the record and speculative insofar as it characterizes one-gun-per-month laws as "tailored policies." DX-17 at ¶9. Whatever causal or correlative relationship may exist between multiple purchases and the criminal activity the State claims to be targeting, the actual evidence shows any such risk exists only in relation to multiple purchases made on the same day or within short window of time, generally five days or fewer, and there is no evidence that a period greater than five days but less than 30 days would not just as effective. PMSJ at 22-23; PMSJ, Ex. 14 at 190 (where Klarevas conceded there is no evidence "to show that a five-day or a seven-day or a ten-day is not alone as effective as a 30-day" limitation in meeting the claimed justifications behind California's OGM law).

Regarding (3) of DSUF No. 30, the opinion that "one-gun-a-month laws disrupt illicit firearm markets, reduce firearms trafficking and straw purchases, and have the potential to save lives," Plaintiffs dispute and object to this opinion as resting on unsupported speculation insofar as it suggests, and insofar as Defendants rely on it to support the notion that, one-gun-a-month laws are necessary or of any meaningful

37

1    effect in achieving the State's claimed interests in the absence of any evidence that

2    periods greater than five days but less than 30 days wouldn't be just as effective.

3

4    DSUF No. 31

5    *Assertion*: Professor Klarevas has offered an opinion that, based on his expertise

6    and review of the relevant literature, limiting the purchase of handguns and

7    semiautomatic centerfire rifles to one every thirty days is a reasonable measure for

8    reducing illegal firearms trafficking and firearm homicides.

9    *Asserted Supporting Evidence*: DX-17 ¶¶ 10, 40.

10    *Plaintiffs' Response*:

11    Plaintiffs do not dispute that DSUF No. 31 insofar as it represents a partial

12    recitation of Klarevas's opinion here. However, Plaintiffs dispute and object to

13    DSUF No. 31 as misleading, incomplete, inaccurate, and a mischaracterization of

14    the evidence insofar as it omits Klarevas's additional unsupported speculation about

15    "mass shootings," which undermines the credibility of the entire opinion. DX-17 ¶¶

16    10, 40 ("it is my conclusion that one-gun-a-month laws, like California's law

17    limiting the purchase of handguns or semiautomatic centerfire rifles to one every 30

18    days, are reasonable measures for helping reduce illegal firearm trafficking and

19    firearm homicides, *including mass shootings*") (italics added).

20

1    Plaintiffs further dispute and object to DSUF No. 31 as misleading, incomplete,

2    inaccurate, a mischaracterization of the evidence, and as failing to state any material

3    fact in support of its position to the extent of Klarevas's claim that one-gun-a-month

4    laws are "reasonable" measures, given the absence of any evidence that periods

5    greater than five days but less than 30 days wouldn't be just as effective in "reducing

6    illegal firearms trafficking and firearm homicides" and given the absence of

7    evidence that the State has tried and failed at the same objectives with the less

8    restrictive alternatives readily available to it within its firearms regulatory scheme.

9

10   DSUF No. 32

11   *Assertion*: Mr. Bisbee has offered an opinion that, based on more than 25 years

12   as a Bureau of Alcohol, Tobacco, and Firearms (ATF) special agent focused on

13   firearms trafficking, limiting the purchase of handguns and semiautomatic centerfire

14   rifles to one every thirty days helps reduce the incidence of illegal firearms

15   trafficking and the use of firearms in crimes.

16   *Asserted Supporting Evidence*: DX-19 (Bisbee Report) ¶¶ 25-26.

17   *Plaintiffs' Response*:

18   Plaintiffs do not dispute DSUF No. 32 insofar as it summarizes opinions

19   contained in Bisbee's report. However, Plaintiffs dispute and object to DSUF No. 32

20   insofar as the recited opinions are unsupported, unreliable, and based on

1  inadmissible hearsay. First, Bisbee's own rendition of his law enforcement

2  experience in firearms trafficking reveals that his opinions are based largely on his

3  experience with "multiple sales" and "multiple purchases" generally, which he

4  himself defines as "the sale of more than one handgun to an individual by a licensed

5  retail gun dealer *within five consecutive business days*" (italics added), or otherwise

6  over "a short period of time," and not sales or purchases over longer periods like the

7  30-day period actually issue here. DX-19 at ¶¶10, 11, 13, 14, 15, 16, 17, 22.

8      When it comes to his opinions specifically about one-gun-per-month laws, Bisbee

9  makes bald declarations resting on inadmissible hearsay statements presented for the

10  truth of the matters asserted. DX-19 at ¶18 (citing a quote of himself in a March 2008

11  news article, Exhibit 3 to Bisbee's report, where Bisbee defended the DC handgun

12  ban later struck down in *Heller*); *id.* at ¶¶19-21 (citing quotes and statements from

13  an online publication, Exhibit 4 to Bisbee's report, purportedly repeating out-of-

14  court statements of someone convicted of illegal firearms trafficking).

15      The other assertions Bisbee makes about one-gun-per-month laws are based on

16  the 2014 Koper study, the 1996 Weil & Knox study, and the Virginia State Crime

17  Commission report, DX-19 at ¶22-23, which are not reliable sources for drawing

18  conclusions about the purported efficacy of California's OGM law as it relates to

19  "the incidence of illegal firearms trafficking and the use of firearms in crimes," as

20  detailed above in Plaintiffs' responses to DSUF Nos. 21, 22, and 26.

1    DSUF No. 33

2       *Assertion*: In Mr. Bisbee's experience as an ATF agent, many of the entities

3    exempt from California's one-gun-a-month law have "rarely, if ever, been involved

4    in the criminal misuse of firearms purchases a part of a multiple sale."

5       *Asserted Supporting Evidence*: DX-19 ¶ 24.

6       *Plaintiffs' Response*:

7       Plaintiffs do not dispute that the recited quotation appears in Bisbee's report.

8    However, Plaintiffs dispute and object to DSUF No. 33 unsupported, unreliable, and

9    irrelevant to any material fact in support of Defendants' position. Bisbee cites no

10   evidence or even anything anecdotal, in making this claim. Further, even if accepted,

11   this baseless rationale could only undermine Defendants' defense of California's

12   OGM law, as Plaintiffs have contended. PMSJ at 24; SOMF ¶75.

13

14   DSUF No. 34

15      *Assertion*: Plaintiffs Dominic Boguski, Jay Medina, and Frank Colletti own at

16   least one firearm that is used for self-defense.

17      *Asserted Supporting Evidence*: DX-33, DX-34, DX-35, and DX-36 (Responses

18   to Request for Admission No. 1).

19      *Plaintiffs' Response*:

20

1   Plaintiffs do not dispute that the referenced requests for admission contain the

2   cited admissions. However, Plaintiffs dispute and object to DSUF No. 34 on the

3   grounds they have asserted in response to those requests for admissions. DX-33, DX-

4   34, DX-35, DX-36 (Objections to Requests for Admission No. 1).

5

6   DSUF No. 35

7   *Assertion*: Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank

8   Colletti are able to purchase at least one firearm for self-defense.

9   *Asserted Supporting Evidence*: DX-33, DX-34, DX-35, and DX-36 (Responses

10  to Request for Admission No. 2).

11  *Plaintiffs' Response*:

12  Plaintiffs do not dispute that the referenced requests for admission contain the

13  cited admissions. However, Plaintiffs dispute and object to DSUF No. 34 on the

14  grounds they have asserted in response to those requests for admissions. DX-33, DX-

15  34, DX-35, DX-36 (Objections to Requests for Admission No. 2).

16

17  DSUF No. 36

18  *Assertion*: Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank

19  Colletti desire to purchase two or more handguns and semiautomatic rifles in a single

20  transaction within a thirty-day period.

42

1          *Asserted Supporting Evidence*: Docket No. 1, Complaint ¶¶ 73-77.

2          *Plaintiffs' Response*: Undisputed.

3

4     Respectfully submitted April 29, 2022,

                                    /s/ *Raymond M. DiGuiseppe*
5                                   Raymond M. DiGuiseppe
                                    The DiGuiseppe Law Firm, P.C.
6                                   4320 Southport-Supply Road, Suite 300
                                    Southport, NC 28461
7                                   Tel.: 910-713-8804
                                    Email: law.rmd@gmail.com
8                                   *Attorney for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20