Rob Bonta
Attorney General of California
Anthony R. Hakl
Supervising Deputy Attorney General
Jerry T. Yen
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official*
*capacity as California Attorney General, and*
*Luis Lopez, in his official capacity as*
*Director of the Department of Justice Bureau*
*of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE NGUYEN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California, et al.,**<br><br>Defendants. | Case No. 3:20-cv-02470-WQH-MDD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 20, 2022<br>Time: No oral argument unless requested by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B<br>Action Filed: Dec. 18, 2020 |

1

# TABLE OF CONTENTS

2

**Page**

Introduction .................................................................................................... 1

Argument ....................................................................................................... 1

    I.    California's OGM Law Does Not Severely Burden Plaintiffs'
           Second Amendment Right ....................................................... 1

    II.   California's OGM Law Survives Intermediate Scrutiny ...................... 2

        A.    Intermediate Scrutiny Requires the Law to be a
              "Reasonable Fit" ............................................................... 2

        B.    Substantial Evidence Supports California's OGM Law ............. 3

             1.    Studies Show that OGM Laws Reduce Illegal
                    Firearms Trafficking and Keep Criminals From
                    Obtaining Guns ......................................................... 3

             2.    Defendants' Expert Reports Also Support
                    California's OGM Law .............................................. 7

    III.  Plaintiffs' Equal Protection Claim Fails as a Matter of Law ............... 9

Conclusion .................................................................................................. 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Reply ISO Motion for Summary Judgment (3:20-cv-02470)

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5     *Albright v. Oliver*
        510 U.S. 266 (1994) ................................................................ 9

6

7     *Carson Harbor Village, Ltd. v. Unocal Corp.*
        270 F.3d 863 (9th Cir. 2001) ................................................. 8

8

9     *Clady v. Los Angeles County*
        770 F.2d 1421 (9th Cir. 1985) ............................................... 8

10

11    *Contreras v. City of Los Angeles*
        656 F.2d 1267 (9th Cir. 1981) ............................................... 8

12

13    *Dillon v. Arizona*
        Case No. CV 08–796–PHX–DGC, 2010 WL 3307309 (D. Ariz.
        Aug. 19, 2010) ....................................................................... 1

14

15    *District of Columbia v. Heller*
        554 U.S. 570 (2008) ........................................................... 1, 2

16

17    *Drake v. Filko*
        742 F.3d 426 (3rd Cir. 2013) ............................................. 7, 8

18

19    *Dukes v. Wal-Mart Stores, Inc.*
        964 F. Supp. 2d 1115 (N.D. Cal. 2013)................................. 8

20

21    *Duncan v. Bonta*
        19 F.4th 1087 (9th Cir. 2021) ...................................... 1, 2, 3, 7

22

23    *FCC v. Beach Commc'ns, Inc.*
        508 U.S. 307 (1993) ............................................................ 10

24

25    *Flanagan v. Harris*
        No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at *5 (C.D.
        Cal. Feb. 23, 2017) ............................................................... 9

26

27    *Fyock v. Sunnyavle*
        779 F.3d 991 (9th Cir. 2015) ................................................. 3

28

Defendants' Reply ISO Motion for Summary Judgment (3:20-cv-02470)

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*Gallinger v. Becerra*
  898 F.3d 1012 (9th Cir. 2018)................................................................10

*In re Roundup Products Liability Litigation*
  390 F. Supp. 3d 1102 (N.D. Cal. 2018)...................................................8

*International Broth. of Teamsters v. U.S.*
  431 U.S. 324 (1977) ...............................................................................8

*Kachalsky v. Cnty. of Westchester*
  701 F.3d 81 (2d Cir. 2012) .....................................................................6

*National Rifle Association v. McGraw*
  719 F.3d 338 (5th Cir. 2013) ..................................................................9

*Nordyke v. King*
  681 F.3d 1041 (9th Cir. 2012) ................................................................9

*Pena v. Lindley*
  898 F.3d 969 (9th Cir. 2018)..........................................................1, 4, 9

*Safeway Inc. v. City and County of San Francisco*
  797 F. Supp. 2d 964 (N.D. Cal. 2011)..................................................10

*Silvester v. Harris*
  843 F.3d 816 (9th Cir. 2016)..................................................................2

*U.S. v. Chovan*
  735 F.3d 1127 (9th Cir. 2013).................................................................2

*Wollard v. Gallagher*
  712 F.3d 865 (4th Cir. 2014)..................................................................7

**STATUTES**

California Penal Code
  § 27535 ................................................................................................1, 4

Md. Code Ann., Pub. Safety
  § 5-128....................................................................................................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>
**(continued)**

<u>Page</u>

N.J. Code Ann.
  § 2c:58-2(a)(7) ........................................................................................................4
  § 2c:58-3(i) .............................................................................................................4

S.C. Code Ann.
  § 23-31-140 (repealed 2004) ..................................................................................4

Va. Code Ann.
  § 308.2:2(R) ...........................................................................................................4

Defendants' Reply ISO Motion for Summary Judgment (3:20-cv-02470)

**INTRODUCTION**

As detailed in their Motion for Summary Judgment (Defs' MSJ), Defendants have provided substantial evidence showing that California's OGM law[1] withstands intermediate scrutiny because it is a reasonable fit with the important governmental interests of reducing illegal firearms trafficking and disrupting the ability of criminals to obtain a large number of firearms within a short period of time. Because the State has met its evidentiary burden, Defendants are entitled to judgment in their favor.

**ARGUMENT**

**I.   CALIFORNIA'S OGM LAW DOES NOT SEVERELY BURDEN PLAINTIFFS' SECOND AMENDMENT RIGHT**

The parties agree that the first step in analyzing a Second Amendment claim is whether "the challenged law affects conduct that is protected by the Second Amendment." *Duncan v. Bonta*, 19 F.4th 1087, 1100 (9th Cir. 2021) (en banc). For purposes of summary judgment, the Attorney General assumes that California's OGM law implicates the Second Amendment even though the OGM law is arguably a presumptively lawful condition on the commercial sale of firearms.[2] This approach is in accord with Ninth Circuit precedent. *See Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018) ("follow[ing] th[e] well-trodden and 'judicious course'" of "avoid[ing] [the need] to define the contours of the commercial sales category [by] assum[ing] the Second Amendment applied").

---

[1] California's OGM law primarily refers to California Penal Code section 27535.

[2] Plaintiffs incorrectly suggest that Defendants have waived any argument regarding the OGM law and the permissible regulation of commercial sales under *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) in this case.  Pltfs' Opp'n, Dkt. No. 34, at 3-4.  An argument not raised in a summary judgment motion does not mean that the argument is waived for trial.  *See Dillon v. Arizona*, Case No. CV 08–796–PHX–DGC, 2010 WL 3307309, *2 (D. Ariz. Aug. 19, 2010).

The analysis then moves to step two where the appropriate level of scrutiny is applied. *Duncan*, 19 F.4th at 1100. Plaintiffs appear to argue that strict scrutiny is appropriate because purchasing multiple firearms within a thirty-day period was lawful at the "time of founding" and the first OGM law was not enacted until 1975. *See* Pltfs' Opp'n at 4-5. But strict scrutiny does not apply just because an OGM law may not have existed at the "time of founding." The level of scrutiny depends on "how close the law comes to the core of the Second Amendment right" and "the severity of the law's burden on the right." *U.S. v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (citation omitted). The core of the Second Amendment refers to "the right of a law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. (quoting *Heller*, 545 U.S. at 635). As discussed in Defendants' summary judgment motion, a law "severely burdens" the core of the Second Amendment if it imposes a ban on a class of firearms, eliminates the ability to obtain a firearm, or affects a person's ability to defend themselves. Defs' MSJ at 12 (citations omitted). It is undisputed that the OGM law does not do any of those things. *See* DX-33, DX-34, DX-35, and DX-36[3] (Individual Plaintiffs[4] admitting that already own, or could obtain, a firearm for self-defense). Thus, intermediate scrutiny applies. *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016).

**II. CALIFORNIA'S OGM LAW SURVIVES INTERMEDIATE SCRUTINY**

**A. Intermediate Scrutiny Requires the Law to be a "Reasonable Fit"**

Under intermediate scrutiny, the challenged regulation "requires a reasonable fit with an important governmental interest." *See Duncan*, 19 F.4th at 1087

---

[3] "DX" followed by the exhibit number refers Defendants' exhibits attached to the Declaration of Jerry T. Yen in support of Defendants' Motion for Summary Judgment (Dkt. No. 29-4).

[4] Individual Plaintiffs refer to Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti.

(citation omitted).  It does not require narrow tailoring nor "the least restrictive means."[5]  *See id*.  Rather, the "reasonable fit" requirement under intermediate scrutiny is satisfied if the regulation "promotes a 'substantial government interest that would be achieved less effectively absent the regulation.'"  *Fyock v. Sunnyavle*, 779 F.3d 991, 1000 (9th Cir. 2015) (citation omitted).  California's OGM law easily meets this requirement.

**B.   Substantial Evidence Supports California's OGM Law**

**1.   Studies Show that OGM Laws Reduce Illegal Firearms Trafficking and Keep Criminals From Obtaining Guns**

As discussed in Defendants' summary judgment motion, there are numerous studies supporting the Legislature's judgment that OGM laws reduce illegal firearms trafficking and prevent criminals from obtaining a number of firearms in a short period of time.  Dkt. No. 29 at 14-19.  For example, several studies found a significant reduction in illegal firearms trafficking after states enacted an OGM law.  *Id*. at 14 (citing DX-23 (Weil & Knox 1996) at 1760; DX-24 (Braga 2017) at 89; DX-25 (Virginia State Crime Commission study) at 3, 5, 6; and DX-27 (Koper 2014) at 305).  When two of those states repealed their OGM law, illegal firearms trafficking in those states increased.  *Id*. at 14-15 (citing DX-24 at 90 and DX-17 (Klarevas Expert Rept.) ¶ 20).  In sum, Defendants' evidence shows that OGM laws are effective at reducing illegal firearms trafficking.  Plaintiffs do not dispute this.

Instead, Plaintiffs argue that the studies are not "material" because they involve OGM laws in "remote jurisdictions" and because the OGM and firearms laws in those jurisdictions are not "substantially similar" to California's laws.

---

[5] Plaintiffs' assertions to the contrary—largely accompanied by citations to inapposite First Amendment cases (*see*, *e.g.*, Pltfs' Opp'n at 6-7)—are simply wrong.  As a result, their opposition, resting entirely on the faulty notion that the OGM law must pass the "least restrictive means" test (*see id*. at 7-12, 18-19), falls flat.

Pltfs' Opp'n at 13-14.  This is an incredible stretch.  As an initial matter, one study noted that California "has gun laws much like those in Maryland."  DX-27, Dkt No. 29-6, at 308.  In addition, all of the OGM laws, including California's law, limit handgun purchases to one every thirty days with some exceptions.  *See* S.C. Code Ann. § 23-31-140 (repealed 2004); Va. Code Ann. § 308.2:2(R); Md. Code Ann., Pub. Safety § 5-128; N.J. Code Ann. §§ 2c:58-2(a)(7) and 2c:58-3(i); Cal. Penal Code § 27535.  There may be some variations in the laws, but that does not make the studies immaterial.  Moreover, Plaintiff cite no authority requiring that, under intermediate scrutiny, laws being studied must come from a certain geographic proximity to, or have the same exact language as, the challenged law.  It is enough that the studies "fairly support" the law.  *Pena*, 898 F.3d at 982.

Plaintiffs next claim that the studies have limitations and are "deficient" based on various statements in those studies taken out of context.  Pltfs' Opp'n at 14-17.  For example, in the Weil & Knox 1996 study, Plaintiffs focus on "several limitations" and "factors that could lead to results that are inappropriately attributed to implementation of the law."  *Id*. at 14 (citing DX-23 at 1761).  Those "limitations" mostly involve clarifications on the data used in the study, and the "factors" refer to "unidentified factors . . . that may have been present at the time the law took effect."  DX-23, Dkt No. 29-6, at 1761.  Nevertheless, the authors still concluded that the "***study provides evidence*** that limiting purchase of handguns to no more than 1 per month per person is an effective means of disrupting the illegal interstate transfer of firearms."  *Id*. (emphasis added).

As for Plaintiffs' alleged "deficiencies" with six other studies, those "deficiencies" do not even relate to firearms trafficking, but again take statements out of context regarding the impact of OGM laws on gun violence and gun crimes.  In the first study, the Virginia State Crime Commission, in reporting the results of a study from the Center to Prevent Handgun Violence, noted that "the Virginia law does not necessarily reduce the number of guns used in criminal activity, but that

4

1   gun purchasers who are criminally involved probably had to look elsewhere to buy

2   weapons."   DX-25, Dkt No. 29-6, at 6-7.  However, the study focused on tracing

3   crime guns purchased in Virginia, not on the number of guns used in crimes within

4   Virginia.  *Id*.

5       Second, for a study published in *Criminology and Public Policy*, Plaintiffs cite

6   to a portion of a sentence saying that "guns sold in multiple sales had a lower risk

7   of being used in crime."  Pltfs' Opp'n at 16 (citing DX-26 at 760).  However,

8   Plaintiffs ignore earlier portion of the sentence explaining that the "lower risk"

9   referred to "the percentage of multiple sales recovered (3.3%) [compared to] that

10  for single sales (3.7%)."  DX-26 at 760.  And Plaintiffs ignore the preceding

11  sentence stating that "25% of the guns recovered by police were sold in multiple

12  sales."  *Id*.  Plaintiffs next point to a statement that Maryland's OGM law "was

13  passed simultaneously with other state gun control measures."  Pltfs' Opp'n at 15

14  (citing DX-26 at 754 n. 12).  But, the study sought "[t]o provide a more direct

15  assessment of the role of multiple sales in supplying crime guns."  DX-26, Dkt. No.

16  29-6, at 755.  In doing so, the study concluded that "[g]uns sold in multiple sales

17  accounted for about one quarter of crime guns, and, more importantly, were at

18  elevated risk for criminal use."[6]  *Id*. at 769.

19      Third, Plaintiffs seem to argue that the study in the *Journal of Quantitative*

20  *Criminology* was "deficient" because "it only considered 'multiple sales' in the

21  aggregate," found no "statistically significant" risk that guns sold as part of a

22  multiple sale were at higher risk before passage of Maryland's OGM law, and

23  "same-day multiple sales were at greater risk of criminal use than those purchased

24  in other 30-day multiple sales."  Pltfs' Opp'n at 16.  Even though the author made

25  those statements in explaining the data, the results of his analysis showed that

26  

27      [6] The study referred to "multiple sale" as "the purchase of two or more

28  handguns by the same person from any dealer(s) within a 30-day period."  *Id*. at
    757.

"[g]uns sold in multiple sales were [] more likely to be used in crime . . . suggesting these guns were more likely to have been purchased by straw purchasers or traffickers."  DX-27, Dkt No. 29-6 at 306.

Fourth, Plaintiffs reference a study of handguns purchased in California before the State passed an OGM law.  Pltfs' Opp'n at 16 (citing DX-28).  Although it noted that handguns purchased within thirty days were less likely to be traced than handguns purchased on the same day, the study also found that "[h]andguns purchased by individuals who bought multiple similar guns were 58% more likely to be used in crime than were handguns purchased by individuals who purchased only one handgun in 1996."  DX-28 at 362.

Fifth, Plaintiffs take issue with a study that focused on Maryland's ban of "Saturday Night Special" handguns.  Pltfs' Opp'n at 16-17.  Nevertheless, after analyzing the data, the author still concluded that "Maryland's one-gun-per-month law was associated with a significant decrease in firearm homicide rates [which] suggest[s] that such laws may also have important independent effects."  Pltfs' Exh. 15, Dkt. No. 24, at 411.

Finally, Plaintiffs' expert, Dr. Calisle Moody, discounts his previous study showing a statistical relationship between states with OGM laws and lower homicide rates.  Pltfs' Opp'n at 17.  However, another study also found that "passage of one gun a month laws may reduce murder rates."  DX-17 ¶ 36 (citation omitted).  Thus, two studies found that OGM laws may reduce firearm homicides.

Ultimately, none of the "deficiencies" or "limitations" raised by Plaintiffs changes the conclusions reached in the studies that OGM laws reduce illegal firearms trafficking and the ability of criminals to obtain guns.  Even if Plaintiffs' arguments regarding the studies were valid (they are not), it would simply amount to conflicting evidence.  In such a case, "[i]t is the legislature's job, not [the courts'], to weigh conflicting evidence and make policy judgments."  *Kachalsky v.*

*Cnty. of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012); *accord Wollard v. Gallagher*, 712 F.3d 865, 881-82 (4th Cir. 2014).

### 2. Defendants' Expert Reports Also Support California's OGM Law

Defendants' experts – Professor Louis Klarevas and Mr. Joseph Bisbee – are experts in gun violence and illegal firearms trafficking, respectively.  *See* DK-17 ¶¶ 3-4; DX-19 ¶¶ 3-5.  Based on their expertise and analysis, they have submitted expert reports concluding that OGM laws reduce both illegal firearms trafficking and the use of firearms in crimes.  *See* DK-17 ¶¶ 39 -40; DX-19 ¶¶ 25-26.

Plaintiffs make several irrelevant arguments in an attempt to discredit these conclusions.  First, Plaintiffs take issue with Defendants' expert reports because they do not show that a thirty-day period is more effective than a shorter period of time.  Pltfs' Opp'n at 18-19.  Intermediate scrutiny does not require such precision. *See Duncan*, 19 F.4th at 1108 ("we do not require scientific precision").  It is enough that there are studies showing that OGM laws reduce illegal firearms trafficking and that, when OGM laws are repealed, states experience an increase in firearms trafficking.  Moreover, as discussed in Defendants' Opposition to Plaintiffs' summary judgment motion, the appropriate length of time in order to further the State's interest in reducing illegal firearms trafficking is a policy judgment for the Legislature to decide.  Dkt. No. 33 at 5.

Next, Plaintiffs claim that there is no link between OGM laws and mass shooters and that the State cannot raise additional government interests (i.e., preventing mass shooters from obtaining multiple firearms in a short period of time) not expressly stated by the Legislature.  Pltfs' Opp'n at 18-19, 23-24.  This is wrong.  Under intermediate scrutiny, the State can identify additional interests. *See, e.g., Drake v. Filko*, 742 F.3d 426, 437 n.17, 438 (3rd Cir. 2013) (considering New Jersey's interests in its handgun law and "justifiable need" standard even though there was a "lack [of] an explicit statement by New Jersey's legislature

explaining why it adopted the 'justifiable need' standard"). And Professor Klarevas noted that the 2017 Las Vegas mass shooter acquired his arsenal by legally purchasing multiple firearms within a thirty-day period. DX-17 ¶ 38. If those purchases were restricted by an OGM law, it "would have been more difficult for him to purchase so many firearms in such a short timeframe." *Id*.

Third, Plaintiffs resort to suggesting that Mr. Bisbee cannot rely on news articles because they are "inadmissible hearsay." Pltfs' Opp'n at 19. This is a futile attempt at undermining Mr. Bisbee's expert opinion. It is black letter law that "experts are entitled to rely on hearsay in forming their opinions." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001).

Fourth, Plaintiffs seem to argue that statistical significance between the government's interest and the challenged law is required under intermediate scrutiny. Pltfs' Opp'n at 20-22. No such requirement exists and the cases cited by Plaintiffs are easily distinguishable. Most of those cases involve discrimination claims and a statistical significance level suggested by guidelines. *Contreras v. City of Los Angeles* 656 F.2d 1267, 1270, 1273 (9th Cir. 1981); *Clady v. Los Angeles County*, 770 F.2d 1421, 1428-29 (9th Cir. 1985) (citing *Conteras*, 656 F.2d at 1274-75); *see also International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 339 (1977) (statistical analysis "serve[d] an important role") (citations omitted); *Dukes v. Wal-Mart Stores, Inc.*, 964 F. Supp. 2d 1115, 1119-20 (N.D. Cal. 2013) (requiring "significant proof" of discrimination). The other case cited by Plaintiffs is a products liability case requiring evidence of causation. *In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102, 1117 (N.D. Cal. 2018). None of those cases involve analyzing a constitutional challenge to a law under intermediate scrutiny.

Finally, Plaintiffs erroneously claim that Defendants have not rebutted their expert's – Dr. Carlisle Moody's – statistical analysis. Pltfs' Opp'n at 22. Defendants' summary judgment motion points out a number of issues with Dr.

8

Moody's analysis, such as his failure to consider whether the firearms used in homicides originated from a multiple firearm purchase and ignoring the impact of OGM laws on illegal firearms trafficking as well as crimes involving firearms other than homicides.  Defs' MSJ at 18-19.

Despite all of Plaintiffs' issues with the studies and expert reports, there should be no question that Defendants have provided substantial evidence supporting California's OGM law as an effective regulation for reducing both illegal firearms trafficking and the ability of criminals to obtain firearms within a short period of time.

## III.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW

Plaintiffs essentially admit that their equal protection claim is subsumed by their Second Amendment claim.  *See* Pltfs' Opp'n at 24; *see also Pena v. Lindley*, 898 F.3d 969, 986 (9th Cir. 2018) ("To the extent that the Equal Protection challenge is based on the Second Amendment's fundamental right to bear arms and the disparate treatment of groups in exercising that right . . . that challenge is subsumed in the Second Amendment inquiry").  Thus, Plaintiffs' equal protection claim cannot provide an independent basis for relief.  *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at *5 (C.D. Cal. Feb. 23, 2017) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Further, since California's OGM law does not violate the Second Amendment as discussed above, rational basis review applies.  *Nordyke v. King,* 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc).  And because the law survives the more stringent intermediate scrutiny, an equal protection claim must also fail under rational basis review.  *See National Rifle Association v. McGraw*, 719 F.3d 338, 348-50 (5th Cir. 2013).

In addition, as noted in Defendants' summary judgment motion, Plaintiffs' equal protection claim boils down to their argument that they are not treated the same as one of the exempt entities – motion picture and television companies.

1  Defs' MSJ at 20 (citing Complaint ¶ 138).  However, Plaintiffs do not present any

2  argument or evidence regarding how they are similarly situated to those companies.

3  For this reason alone, Plaintiffs' equal protection claim fails as a matter of law.

4  *Safeway Inc. v. City and County of San Francisco*, 797 F. Supp. 2d 964, 971-72

5  (N.D. Cal. 2011) ("If the groups are not similarly situated for purposes of the law at

6  issue, an equal protection claim fails") (citation omitted).

7        Even if Plaintiffs were similarly situated to motion picture and television

8  companies (they are not), the State has noted several basis for the exemption.  Defs'

9  MSJ at 22-23.  Without even attempting to meet their burden of negating every

10 conceivable basis for the exemption, Plaintiffs improperly claim they only need to

11 address the basis stated in the legislative history.  Pltfs' Opp'n at 25.  Under

12 rational basis review, the government can proffer any basis to support the

13 challenged law.  *See Gallinger v. Becerra*, 898 F.3d 1012, 1017 (9th Cir. 2018)

14 (stating that, in applying rational basis review, the court can "consider reasons for

15 the classification beyond the Legislature's stated purpose," including "hypothetical

16 rational basis for the exception") (citations omitted).  The burden is on Plaintiffs to

17 negate those bases.  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 320 (1993).

18 Because they fail to do so in this case, Defendants are entitled to summary

19 judgment on Plaintiffs' equal protection claim.

20                              **CONCLUSION**

21       For these reasons and the reasons stated in their motion, the Court should grant

22 Defendants' motion for summary judgment and deny Plaintiffs' motion for

23 summary judgment.

24

25

26

27

28

Dated:  May 13, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Jerry T. Yen*
JERRY T. YEN
Deputy Attorney General
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

Defendants' Reply ISO Motion for Summary Judgment (3:20-cv-02470)

# CERTIFICATE OF SERVICE

Case Name:  **Nguyen, Michelle, et al. v. Rob Bonta, et al.**          No.   **3:20-cv-02470**

I hereby certify that on <u>May 13, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 13, 2022</u>, at Sacramento, California.


Eileen A. Ennis

Declarant

Signature

SA2020305120
36171583.docx