Raymond M. DiGuiseppe
California State Bar No. 228457
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE NGUYEN, et al, Plaintiffs<br><br>vs.<br><br>ROB BONTA, Attorney General of California, et al, Defendants. | Case No. 3:20-cv-02470-WQH-MDD<br><br>PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: May 20, 2022<br>Time: No oral argument unless requested by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B |

## I. Introduction

From the start, Plaintiffs have contended that California's 30-day ban between purchases of firearms under its one-gun-per-month ("OGM") law ultimately represents nothing more than another layer of regulatory excess within the State's regulatory behemoth that increasingly chokes off the flow of Second Amendment rights behind a veil of pretextual and untailored claims of promoting public safety. This is not mere hyperbole. *See Jones v. Bonta*, __ F.4th __, 2022 WL 1485187 (9th Cir. May 11, 2022) (finding that California's ban on the sale of semiautomatic centerfire rifles to young adults "regulates so much more conduct than necessary to achieve its goal, the law is unlikely to be a reasonable fit for California's objectives"); *id.* at *24 (Lee, J., concurring) ("California's legal position has no

1

logical stopping point and would ultimately erode fundamental rights enumerated in our Constitution."). In fact, Defendants' sweepingly broad defenses of the OGM law in their opposition to Plaintiffs' motion ("PMSJ") and their cross-motion for summary judgment ("DMSJ") demonstrate beyond cavil that the law is and always has been flatly unconstitutional under the long-settled precedents. The undisputed and indisputable facts in the record now before the Court drive home this reality. The moment of judgment is at hand and Plaintiffs pray that this Court grants it.

## II.  The OGM Law is Blatantly Unconstitutional

Defendants make no bones about actively enforcing the OGM law's 30-day purchase ban to its fullest extent against law-abiding citizens and licensed firearms dealers like Plaintiffs. R-SOMF (Plaintiffs' Reply to Defendants' Response to Plaintiffs' SOMF) ¶¶1-8. And Defendants do not dispute that the Second Amendment protects the arms targeted by the OGM law, going as far as to concede the OGM law "implicates" the Second Amendment. R-SOMF ¶9; Def. Opp. to PMSJ at 1 & n. 1. They also never dispute that the Second Amendment protects the conduct involved—the purchase and sale of the protected arms targeted under the law. Nor could they because the law implicates the acquisition rights at the heart of the right to keep and bear arms under the governing Supreme Court and Ninth Circuit authorities laid out in Plaintiffs' MSJ. PMSJ at 4-6; *accord Jones*, 2022 WL 1485187, *7 ("the right to keep and bear arms includes the right to purchase them"). Defendants do not directly challenge any of the material historical facts either.[1] They

---

[1]  Defendants claim that "Plaintiffs provide an incomplete, and sometimes inaccurate, discussion on the ability to purchase firearms without restrictions on

2

readily admit that no quantity or quantity-over-time restrictions existed for the purchase or sale of protected arms by ordinary citizens during the founding era, as part and parcel to the "fundamental" right to keep and bear arms and as an "attribute of free citizenship." R-SOMF ¶¶ 10, 11, 18, 19, 20, 21, 22, 23. They admit that the first such regulation appeared in 1975 in South Carolina (and repealed in 2004), that 1996 was the earliest year of enactment in the small handful of other jurisdictions with such laws, and that one of those was struck down in 2015 as unconstitutional. R-SOMF ¶¶13-17. Defendants also have not credibly disputed or produced anything to counter the evidence showing it was common during this era for people to purchase and sell multiple firearms in single or frequent transactions. R-SOMF ¶¶ 24-28.[2] Nor do they directly deny the fundamental principle that the nature and scope

---

quantity or frequency during the founding era and OGM laws in American history," referring to Plaintiffs' SOMF ¶¶10-28. Def. Opp. at 2, n. 3. However, Defendants flat-out admit the facts asserted in SOMF ¶¶10, 11, 12, 13, 18, 19, 20, 22, 23, and 25. They take issue with SOMF ¶¶ 14, 15, and 16 solely on technical grounds regarding minor differences in statutory enactment or repeal dates. They add a case quotation to SOMF ¶17, but in no way dispute the substantive fact asserted. Finally, Defendants admit the substantive facts asserted in SOMF ¶¶ 21 and 24 and just balk at natural extrapolations from those facts which are not subject to legitimate dispute.

[2]   While Defendants resist this unavoidable conclusion from the historical evidence, *see* R-SOMF ¶ 24 and Def. Opp. at 2, n. 3, any denial of it is unreasonable and cannot be logically squared with the evidence itself which, by Defendants' own admissions to the SOMF, shows ordinary people regularly advertised the sale of large quantities of arms, commonly carried multiple arms with them, and were free to establish a personal "arsenal," and that a general in the Vermont militia purchased and distributed 20,000 muskets to the general population in 1796. R-SOMF ¶¶ 24-28. As these undisputed facts illustrate, for example, "[s]ymbolic of the times" were "regularly" published newspaper ads offering for sale "a quantity of good HORSE PISTOLS AND CARBINES" and "100 Pair Horsemens Pistols." R-SOMF ¶24-25.

3

of the Second Amendment protection is established based on how the rights at stake were defined and understood at the time the amendment was adopted.

The only place where Defendants care to take any real stab at the significance of the historical dimension of the case is in their subterranean footnote commentary, where they claim "[t]here is no basis" for tying "fundamental guarantees" of the Second Amendment to the founding era, Def. Opp. at 2 & n. 2, and that, in any event, the OGM law is "permissible under *Heller*" as a presumptively lawful regulation "imposing conditions and qualifications on the commercial sale of arms," *id.* at 1, n. 1. These attempts to artificially bolster their case with whispers of substantive arguments that Defendants did not see fit to include in the body of their brief should be rejected as forfeited claims. *See City of Emerson v. Robinson*, 621 F.3d 1251, 1262, n. 10 (9th Cir. 2010); *Isabel v. Reagan*, 987 F.3d 1220, 1225, n. 7 (2021); *Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 4571876, *4 (W.D. Wash. 2011).

Anyway, the "basis" for relying on the historical record of the founding era in defining the nature and scope of the Second Amendment's protection is the controlling judicial precedent. *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008); *United States v. Singh*, 979 F.3d 697, 724 (9th Cir. 2020); *Jones*, 2022 WL 1485187, *8 ("In our historical analysis, the Framers' understanding of the Second Amendment at and around the time of ratification has special significance."). And the undisputed facts within the historical record here flatly refute any notion that California's OGM law is "permissible" under *Heller*. *Yukutake v. Conners*, 2021 WL 3625307, *10 (D. Hawaii 2021) (citing *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) ("in order to be deemed presumptively valid, [citations], the law must be sufficiently similar to historical regulations to demonstrate that the law's restrictions accord with historical understanding of the scope of the Second Amendment right.").

Beyond these spurious attempts to insulate the OGM law from any scrutiny at all, Defendants attempt to ratchet down the level of any scrutiny to "intermediate" with disingenuous arguments aimed at diminishing the burdens imposed. The Second

4

Amendment right to *keep and bear* arms is not limited to a home-bound right of self-defense, as they say. Def. Opp. at 2. *Heller* made clear that to "keep" means to "possess" wherever necessary for self-defense, and "bear" means to "carry[] for a particular purpose—confrontation; i.e., "being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 582-84.[3] And, by directly targeting the right of acquisition in the first instance, the OGM law burdens the entire spectrum of conduct protected under the Second Amendment.

The possibility that Plaintiffs could obtain firearms through *other* channels, Def. Opp. at 3, is, again, beside the point. Defendants must prove the State has lawfully cut off the channels of exercise that it has, *Heller*, 554 U.S. at 629, 634-45. And the exemptions do nothing to "lessen[]" the burdens. Def. Opp. at 3 (citing *Pena*, 898 F.3d at 979). Where Defendants cite *Pena* for this point, the court was drawing from *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), which concerned a statute prohibiting firearms possession by domestic violence misdemeanants. What "lessened" the burden there was that the exemptions ensured the prohibition only applied to those who had been involuntary committed for posing a danger to society or themselves. *Id.* at 1139-40. No such relief valve exists within the OGM law.

The *Duncan* case, 19 F.4th 1087, is a similarly inapt comparison. *See* Def. Opp. at 4. Quite unlike in *Duncan*, which concerned California's "large capacity" magazine ban, there has never been any claim that the arms at issue are not

---

[3] Defendants also cite the opinion *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) for additional support of their myopic views. Def. Opp. at 2-3 (citing *Duncan*, 19 F.4th at 1103). However, there *Duncan* was citing *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018), where the court was drawing from *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016), and *Silvester* was in turn drawing from the seminal *Heller* opinion, 554 U.S. at 628-29, in discussing the nature and scope of the right.

5

"commonly used" or "suitable" for lawful self-defense or that the challenged law "has no effect whatsoever on which firearms may be owned." *Id.* at 1104, 1107.

Defendants ultimately do nothing to justify removing the OGM law from the realm of *Heller's* test that would dismantle it as unconstitutional *per se* in one fell swoop; nor do they even justify sparing the law from the demands of strict scrutiny that Defendants make no attempt to claim the law could ever survive.

### III. The Law Resoundingly Fails Even Under "Intermediate" Scrutiny

Unable or unwilling to defend the law any other way, Defendants cling to "intermediate" scrutiny as their refuge—and the same watered-down version they have applied to date. *See Jones*, 2022 WL 1485187, *24 (Lee, J., concurring) ("If we accept the state's argument, it redefines intermediate scrutiny as a rational basis review with a small sprinkle of skepticism in Second Amendment cases."). Their strategy is to double-down on their enforcement of the OGM law as a "reasonable measure" that is "aimed"—however loosely—at "reduc[ing] illegal firearms trafficking and mak[ing] it more difficult for criminals to acquire firearms." Def. Opp. at 4, 5, 6. The very statement of the thesis reveals its irremediable fallacy: even if the evidence did show that California's OGM law advances these plain vanilla public safety purposes in a direct and material way, which it does not, the claimed interests are far too generic and far too broad to pass constitutional muster even under the most lenient of the potentially applicable standards of "intermediate" scrutiny.

Again, true intermediate scrutiny compels the government to bear the burden of proving "the recited harms are real ... and that the regulation will in fact alleviate these harms in a direct and material way,'" *Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994)), and that the challenged law is "'narrowly tailored to serve a significant government interest,'" *Porter v. Gore*, 517 F.Supp.3d 1109, 1127 (S.D. Cal. 2012) (quoting *Playboy Entm't Grp.*, 529 U.S. 803, 816–17 (2000)). To be narrowly tailored, the law must "not 'burden substantially more [protected conduct] than is necessary.'"

6

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948 (9th Cir. 2011) (quoting *Turner* at 665)); *Jones*, 2022 WL 1485187, *18 (emphasizing that "the does-not-burden-more-conduct-than-necessary part" is the "essence" of intermediate scrutiny). Even then, the restriction must fail unless the government shows it "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

The blatant lack of necessary tailoring shuts it all down for Defendants. They simply cannot rest on such sweepingly broad justifications, for virtually anything would go if the government need only claim that a restriction "*reduces* illegal firearms trafficking and *makes it more difficult* for criminals to acquire firearms." *See McCullen*, 573 U.S. at 495 (rejecting as wholesale insufficient claims that a law would make it "easier" for general law enforcement purposes). Yet, they do just that, in essentially "omitt[ing] one-half of the inquiry." *Jones*, 2022 WL 1485187 at *13; *id.* ("When we omit the second part of the inquiry, we neglect to consider fit at all.").

Defendants also make a host of damaging admissions. They admit actively enforcing a litany of laws and regulations directly targeted at the very same interests. R-SOMF ¶¶ 32-39. Their only comeback is a cringe-worthy distortion of the standards that baldly declares the rest of the firearms regulatory regime "irrelevant" and whimsically shifts the burden onto the Plaintiffs to prove that the State's other laws and regulations "are just as effective as OGM laws." Def. Opp. at 6.

Defendants also admit there is no evidence "to show that a five-day or a seven-day or a ten-day is not alone as effective as a 30-day" limitation in meeting the claimed justifications behind California's OGM law. R-SOMF ¶69. Indeed, the record shows that any risks associated with multiple-firearm purchases exist only in relation to multiple purchases made on the same day or within short window of time, generally five days or fewer—all of which the ATF already actively monitors—and there is no evidence that a period greater than five days but less than 30 days would not be just as effective. PMSJ at 22-23; PMSJ, Ex. 14 at 190. Defendants insist it's

enough that "the State has referred to a number of studies and provided expert reports showing that OGM laws help reduce illegal firearms trafficking and make it more difficult for criminals to obtain firearms"—essentially conceding that the State has failed or refused to seriously consider, much less undertaken to actually rely on, any of the numerous less restrictive alternatives. Def. Opp. at 7. That may be enough in their minds, but it is not enough for the constitution. *McCullen*, 573 U.S. at 494.

Defendants are forced to reach even beyond the Ninth Circuit for support on their hyper-deferential "it's-up-to-the-Legislature" view, but they can only find a trio of cases all based on the constitutionally suspect reasoning employed to uphold "proper cause" firearm licensing standards, which is currently under close scrutiny at the Supreme Court in *New York State Rifle & Pistol Association, Inc. (NYSRPA) v. Corlett (Bruen)*, Case No. 20-843. Def. Opp. at 5, 7 (relying on *Kachalsky v. Cnty. Of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012), *Wollard v. Gallagher*, 712 F.3d 865, 881 82 (4th Cir. 2014), and *Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017)). As the Ninth Circuit just reminded us, we "defer to the legislature's judgment only on the effect of a law, and not on the law's fit." *Jones*, 2022 WL 1485187, *20.

Beyond the fatal lack of tailoring, Defendants have not even carried their preliminary burden of proving "the recited harms are real ... and that the regulation will in fact alleviate these harms in a direct and material way," *Harris*, 772 F.3d at 577. First, Defendants again say, in another improper footnote argument, they can backfill the law's purported benefits with other potentially important government interests regardless of whether they were considered. Def. Opp. at 3, n. 6. With all their prior intimations of a ghostly connection to "mass" shootings, DMSJ at 4, 8, 10, 16, 22 one might think that's the angle. But, they never mention it, apparently having (finally) abandoned this theory that they admit is completely unsupported, R-SOMF ¶¶59-64, and they never claim any other *post hoc* justification actually exists.

So, we are back to their *stated* generic interests, which is where the focus lies anyway. *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must

8

be genuine, not hypothesized or invented *post hoc* in response to litigation."). On this subject, Defendants boast that "Plaintiffs' MSJ does nothing to call into question the State's evidence supporting the law." Def. Opp. at 1. Hardly. Defendants are referring to the same studies and reports that are self-defeating based on their inherently unreliable and contradictory contents that either directly undermine or are devoid of *material* support for their case, as Plaintiffs have explained throughout the briefing on these cross-motions for summary judgment. Notably, Defendants concede virtually all of these deficiencies, R-SOMF ¶¶44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 59, 60, 61, save for a few half-hearted quarrels over semantics and technicalities that don't add up to anything material, R-SOMF ¶¶42, 43, 54. They also do not dispute the findings and conclusions of Plaintiffs' expert statistician, Dr. Moody, which further undermine Defendants' evidence. R-SOMF ¶¶65, 66, 67, 68. Having no "significant" statistics to support them, they just keep up the charade that the presence or absence of statistical significance should be disregarded. Def. Opp. at 5-6; *contra In re Roundup Products Liability Litigation*, 390 F.Supp.3d 1102, 1117 (N.D. Cal. 2018) ("statistical significance remains a useful metric for determining whether the results of a given study likely show a real association").

**IV.  The Undisputed Arbitrariness of the Law Violates Equal Protection**

Defendants have also failed to carry their burden to defeat judgment on the equal protection claim. They admit that the only justifications in the record for the OGM law's exemptions are: the State's generic "salutary" benefits claim, which would apply to virtually any law, R-SOMF ¶10; Klarevas's "imaginings" about economic benefits from the movie industry exception, which would equally apply to a litany of other businesses, including the Plaintiff retailers in this case, R-SOMF ¶¶72; Klarevas's "imaginings" about firearm "safety protocols" in the movie industry, which law-abiding citizens, like the individual Plaintiffs in this case, must follow on pain of criminal penalty, R-SOMF ¶¶73-74; and Bisbee's rationale, the logic of

9

which would necessarily compel exemptions for all those, like Plaintiffs, who "have rarely, if ever, been involved in the criminal misuse of firearms," R-SOMF ¶75.

Equal protection isn't just about drawing lines across traditionally "suspect" classes, as Defendants continue to portray the situation. Def. Opp. at 8. Courts must strictly scrutinize a legislative classification "when the classification impermissibly interferes with the exercise of a fundamental right *or* operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (italics added); *Nordyke v. King*, 681 F.3d 1041, 1043, n. 2 (9th Cir. 2012) ("because the ordinance does not classify shows or events on the basis of a suspect class, *and* because we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies") (italics added).

The *Pena* majority on which Defendants rely, Def. Opp. at 7, found the exemptions to California's Unsafe Handgun Act "sufficient to satisfy rational basis scrutiny," but it "express[ed] no view how these exceptions might fare under more exacting standards of scrutiny." 898 F.3d at 987. The "more exacting" standard of strict scrutiny applies here because the OGM law violates the Second Amendment. Even under rational basis, Defendants' own speculative and irrational justifications for the exemptions show their "relationship to the asserted goal is so attenuated as to render the decision arbitrary or irrational," which is a violation of equal protection. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

Plaintiffs respectfully request the summary judgment to which they are entitled. Respectfully submitted May 13, 2022,

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorney for Plaintiffs*

10