ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official
capacity as California Attorney General, and
Blake Graham, in his official capacity as
Acting Director of the Department of Justice
Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE NGUYEN, et al.,** | Case No. 3:20-cv-02470-WQH-MDD |
| Plaintiffs, | |
| **v.** | **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **ROB BONTA, in his official capacity as Attorney General of California; and BLAKE GRAHAM[1], in his official capacity as Acting Director of the Department of Justice Bureau of Firearms,** | Time: No oral argument unless requested by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B<br>Action Filed: Dec. 18, 2020 |
| Defendants. | |

---

[1] Blake Graham is hereby substituted for former Bureau of Firearms Director Luis Lopez. *See* Fed. R. Civ. P. 25(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction...........................................................................................................1

Factual and Procedural Background.......................................................................2

Argument ...............................................................................................................3

    I.    *Bruen* Altered the Legal Standard for Analyzing Second Amendment Claims...............................................................................3

    II.   Applying the Standard in *Bruen*, Defendants' Motion for Summary Judgment Should be Granted ...............................................5

    III.  California's OGM Law is a Regulation on the Commercial Sale of Firearms ................................................................................9

    IV.  Additional Expert Discovery on the Nation's Historical Tradition Will Be Necessary if the Court Concludes That the OGM law Implicates the Text of the Second Amendment..................12

Conclusion ...........................................................................................................15

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Bauer v. Becerra*

5
  858 F.3d 1216 (9th Cir. 2017) ............................................................................ 8

6

*District of Columbia v. Heller*

7
  554 U.S. 570 (2008) ................................................................................... *passim*

8

*Heller v. District of Columbia (Heller II)*
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................... 10, 11

9

10

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*
  5 F.4th 407 (4th Cir. 2021) ................................................................................ 9

11

12

*Jackson v. City & Cty. of San Francisco*
  746 F.3d 953 (9th Cir. 2014) ............................................................................. 8

13

*Jones v. Bonta*

14
  34 F.4th 704 (9th Cir. 2022) .............................................................................. 8

15

*McDonald v. City of Chicago*

16
  561 U.S. 742 (2010) ......................................................................... 3, 5, 7, 8

17

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms,*

18
  *& Explosives*

19
  700 F.3d 185 (5th Cir. 2012) ............................................................................ 9

20

*New York Rifle & Pistol Ass'n., Inc. v. Bruen*
  142 S. Ct. 2111 (2022) .............................................................................. *passim*

21

22

*New York State Club Ass'n, Inc. v. City of New York*
  487 U.S. 1 (1988) ................................................................................................ 6

23

*Pena v. Lindley*

24
  898 F.3d 969 (9th Cir. 2018) ........................................................................ 9, 10

25

*Renna v. Becerra*

26
  535 F. Supp. 3d 931 (S.D. Cal. 2021) ........................................................ 10, 11

27

*Silvester v. Harris*

28
  843 F.3d 816 (9th Cir. 2016) ........................................................................... 11

ii

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

1

2

# <u>TABLE OF AUTHORITIES</u>
## (continued)

<div align="right"><u>Page</u></div>

3

*Teixeira v. County of Alameda*

4

    873 F.3d 670 (9th Cir. 2017) ............................................................................. 6, 7

5

**STATUTES**

6

California Penal Code

7

    § 27535 ................................................................................................................. 1

    § 27535(b)(8) ....................................................................................................... 9

8

    § 27540(g) ......................................................................................................... 1, 9

9

**CONSTITUTIONAL PROVISIONS**

10

United States Constitution

11

    Second Amendment...................................................................................*passim*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

1

## INTRODUCTION

2  Pursuant to the Court's June 30, 2022 and August 8, 2022 Orders (Dkt. Nos.

3  38 and 42), Defendants submit this supplemental brief regarding the standard that

4  applies to Plaintiffs' Second Amendment claim after the Supreme Court's decision

5  in *New York Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and the

6  effect of that standard on the parties' pending summary judgment motions.  In

7  *Bruen*, the Supreme Court announced a new framework for analyzing Second

8  Amendment claims.  In lieu of the "two-step test" that the Ninth Circuit and most

9  other federal courts of appeals had adopted for resolving those claims, *Bruen* held

10  that courts must apply a standard "rooted in the Second Amendment's text, as

11  informed by history."  *Id.* at 2127.  Under this new approach, courts must initially

12  assess whether the "Second Amendment's plain text covers" the regulated conduct.

13  *Id.* at 2129.  If the answer is no, there is no violation of the Second Amendment.  If

14  the answer is yes, the government can still justify its regulation—and overcome a

15  constitutional challenge—by showing that the challenged law is "consistent with

16  the Nation's historical tradition of firearm regulation."  *Id.* at 2130.  The Court also

17  provided important guidance about how that historical analysis should be

18  conducted.  *See id.* at 2131-2134.

19  Applying *Bruen* to this case, California's one-gun-a-month (OGM) law[2] is not

20  covered by the "plain text" of the Second Amendment because it does not prevent

21  "people" from "keep[ing]" or "bear[ing]" "Arms."  Moreover, it is a presumptively

22  lawful regulation on the commercial sale of firearms.  Accordingly, the law does

23  not violate the Second Amendment and the Court should grant Defendants' motion

24  for summary judgment (Dkt. No. 29).  In the alternative, Defendants request that

25

26  _____

27  [2] California's OGM law primarily refers to California Penal Code sections
27535 and 27540(g), which limits the purchase of handguns and semiautomatic

28  centerfire rifles from licensed firearms dealers to one every thirty days.

1

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

the Court permit the parties to conduct focused expert discovery to prepare a full record responsive to the historical standard and analysis set forth in *Bruen*.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this case against the California Attorney General and the Director of the California Department of Justice's Bureau of Firearms (collectively, the California Attorney General) challenging California's OGM law. *See* Complaint, Dkt. No. 1. The plaintiffs comprise four individuals – Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti (collectively, Individual Plaintiffs); two firearm retailers – PWGG, L.P. and North County Shooting Center, Inc. – and their respective owners – John Phillips and Darin Prince (collectively, Retailer Plaintiffs); and three nonprofit entities focused on Second Amendment rights – Firearms Policy Coalition, San Diego County Gun Owners PAC, and Second Amendment Foundation (collectively, Institutional Plaintiffs). *Id*. ¶¶ 7-17. Plaintiffs assert two causes of action: (1) a Second Amendment claim; and (2) Fourteenth Amendment Equal Protection claim.[3] *Id*. at ¶¶ 94-143.

Fact discovery concluded on November 19, 2021, and expert discovery concluded on January 21, 2022. *See* Dkt. No. 18. The parties then simultaneously filed summary judgment motions. Dkt Nos. 23 and 29. The California Attorney General also filed a *Daubert* motion to preclude the testimony of Plaintiffs' expert Professor George A. Mocsary. Dkt No. 30. Plaintiffs filed their opposition to the *Daubert* motion and the parties filed their respective summary judgment oppositions. Dkt. Nos. 32, 33, and 34. The California Attorney General filed a

---

[3] *Bruen*'s new framework for analyzing Second Amendment claims has no impact on the parties' summary judgment arguments related to Plaintiffs' Equal Protection claim and their argument that the Individual Plaintiffs are similarly situated to the entertainment industry and no justification exists for treating those two groups differently. Defendants have addressed these arguments in the previously filed summary judgment briefs.

2

reply in support of his *Daubert* motion and the parties filed their replies in support of their motions for summary judgment.  Dkt. Nos. 35, 36, and 37.

On June 23, 2022, the Supreme Court issued its decision in *Bruen*.  This Court then ordered the parties to submit supplemental briefing addressing the impact of *Bruen* on the parties' pending summary judgment motions.  Dkt. No. 38.

## ARGUMENT

### I.   *BRUEN* ALTERED THE LEGAL STANDARD FOR ANALYZING SECOND AMENDMENT CLAIMS

In *Bruen*, petitioners challenged the constitutionality of a New York law requiring that individuals show "proper cause" to obtain a license to carry a firearm in public.  *Bruen*, 142 S. Ct. at 2123.  The petitioners claimed that the law violated their Second Amendment rights.  *Id.* at 2125.  Before turning to the merits, the Supreme Court recognized that most federal courts of appeals had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."  *Id.*  The Court "decline[d] to adopt" that "'two-step' framework" and explained that its earlier decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "d[id] not support applying means-end scrutiny in the Second Amendment context."  142 S. Ct. at 2126-2127.  It then announced a new standard for analyzing Second Amendment claims "centered on constitutional text and history."  *Id.* at 2128-2129.  Under this new approach,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–2130.  The Court also provided guidance on how the historical inquiry and analysis should be performed, and noted that governments are not required to

3

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

1    identify a "historical twin," but only need to identify a "well-established and

2    representative historical analogue." *Id*. at 2131-2133.

3       Applying this new approach to the case before it, the Court held that New

4    York's "proper cause" requirement was inconsistent with the Second Amendment's

5    text and history, and therefore unconstitutional. *Id.* at 2134–2156. New York

6    defined "proper cause" as a showing of "special need for self-protection

7    distinguishable from that of the general community." *Id.* at 2123. This was a

8    "demanding" standard, *id.*, and made it "virtually impossible for most New

9    Yorkers" "to carry a gun outside the home for self-defense," *id.* at 2156 (Alito, J.,

10   concurring). The Supreme Court had "little difficulty" concluding that the "plain

11   text" of the Second Amendment protected the conduct that the *Bruen* plaintiffs

12   wished to engage in—"carrying handguns publicly for self-defense"—reasoning

13   that the term "'bear' naturally encompasses public carry." *Id.* at 2134. The Court

14   explained that because "self-defense is 'the *central component* of the [Second

15   Amendment] right itself," and because "[m]any Americans hazard greater danger

16   outside the home than in it," it would make "little sense" to confine that right to the

17   home. *Id.* at 2135.

18       Because the plain text of the Second Amendment covered the regulated

19   conduct in *Bruen*, the burden then shifted to the government to show that the

20   prohibition was consistent with an accepted historical tradition of firearm

21   regulation. *Id*. at 2135. After conducting a lengthy survey of "the Anglo-American

22   history of public carry," the Court held that New York had failed to justify its

23   proper-cause requirement. *Id.* at 2156. The Court concluded that this history

24   showed that the Second Amendment guaranteed a right to bear "commonly used

25   arms" in public, "subject to certain reasonable, well-defined restrictions," which

26   had not historically included a requirement that "law-abiding, responsible

27   citizens . . . 'demonstrate a special need for self-protection distinguishable from that

28   of the general community' in order to carry arms in public.'" *Id.*

4

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

While *Bruen* announced a new method for analyzing Second Amendment claims, it also made clear that governments may continue to adopt reasonable gun regulations. The Court recognized that the Second Amendment is not a "regulatory straightjacket." *Id.* at 2133. Nor is it a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Id.* at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636). And he emphasized that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill"; laws "forbidding the carrying of firearms in sensitive places"; laws "imposing conditions and qualifications on the commercial sale of arms"; and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[4]

## II. APPLYING THE STANDARD IN *BRUEN*, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

The Supreme Court's decision in *Bruen*, with its emphasis on the *plain text* of the Second Amendment, supports Defendants' argument that California's OGM law does not violate the Second Amendment. As noted above, under the new text-and-history approach laid out in *Bruen*, courts must first assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at

---

[4] *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun."); *accord McDonald*, 561 U.S. at 785 (the Second Amendment "by no means eliminates" state and local governments' "ability to devise solutions to social problems that suit local needs and values").

5

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

2126—in other words, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms."  U.S. Const. amend. II.

In applying this new approach to New York's "proper cause" requirement in *Bruen*, the Court held, at the threshold stage of the inquiry, that the regulated conduct was covered by the "plain text" of the Second Amendment.  142 S. Ct. at 2134.  No party disputed that the "ordinary, law-abiding, adult citizens" who were plaintiffs in the case were "part of 'the people' whom the Second Amendment protects."  *Id.*  And no party disputed that the handguns that the plaintiffs sought to carry in public qualified as protected "Arms" because handguns are "'in common use' today for self-defense."  *Id.* (citing *Heller*, 554 U.S. at 627, *and Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016)).  The only textual question remaining for the Court to resolve was whether the plaintiffs' "proposed course of conduct— carrying handguns publicly for self-defense"—fell within the terms "keep" or "bear."  *Id.*

The same situation applies here.  The Attorney General has no reason to dispute that the Individual Plaintiffs are part of "the People."[5]  *See* Defs' Response to Plfs' statement of material facts, Dkt. No. 33-1, at No. 3.  The Attorney General also does not dispute that the Individuals Plaintiffs seek to purchase "Arms."  *Id*. at No. 5.  Thus, the only question remaining is whether California's OGM law prevents the Individual Plaintiffs from "keep[ing]" or "bear[ing]" "Arms."  The

---

[5] The Retailer Plaintiffs do not have a freestanding right to sell firearms under the Second Amendment.  *See Teixeira v. County of Alameda*, 873 F.3d 670, 682, 686-87 (9th Cir. 2017).  Any Second Amendment right to sell a firearm in this case would be connected to the Individual Plaintiffs' right to "keep" and "bear" arms.  *See id*.  The Institutional Plaintiffs allegedly have an interest in protecting the Second Amendment rights of their members, which include the Individual Plaintiffs.  Complaint ¶¶ 7-10, 104.  Thus, the Institutional Plaintiffs appear to be invoking the doctrine of associational standing and their interest in this case is coextensive with the Individual Plaintiffs' Second Amendment right.  *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988).

6

1   answer is no.  The right to "keep arms" refers to possessing arms, and the right to

2   "bear arms" refers to carrying arms "for a particular purpose—confrontation."

3   *Heller*, 554 U.S. at 583-584.  The Court in *Bruen* also emphasized that "self-

4   defense is 'the *central component* of the [Second Amendment] right itself."  142 S.

5   Ct. at 2135 (citations omitted).  Although the ability to acquire firearms is

6   necessary in order to keep and bear arms for self-defense, it is not an unconditional

7   right.  *See Teixeira*, 873 F.3d at 677-78.  And the imposition of conditions, such as

8   waiting for completion of a background check or licensing requirements, does not

9   impede an individual's right to "keep" or "bear" arms once those conditions have

10  been satisfied.

11       In this case, California's OGM law only limits individuals to the purchase of

12  one handgun or semiautomatic centerfire rifle every thirty days from licensed

13  firearm dealers.  It does not prevent anyone from acquiring firearms for self-

14  defense, keeping them for those purposes, and bearing the firearms for

15  confrontation.  Indeed, the Individuals Plaintiffs even admit that the OGM law still

16  allows them to own and obtain a firearm for self-defense.  DX-33, DX-34, DX-35,

17  and DX-36 (Individual Plaintiffs' Responses to Requests for Admission).[6]  They

18  also admit that they could obtain more than one firearm within a thirty-day period

19  through other types of transactions (e.g., private party sale).  *Id*.  Thus, the proposed

20  course of conduct – purchasing more than one handgun or one semiautomatic

21  centerfire rifle from a licensed firearms dealer within a thirty-day period – does not

22  interfere with an individual's ability to "keep" or "bear" arms and is not covered by

23  the plain text of the Second Amendment.

24       This conclusion that Plaintiffs' challenge fails as a textual matter is consistent

25  with the Supreme Court's Second Amendment precedents.  *Heller* and *McDonald*

26

27       [6] "DX" followed by the exhibit number refers Defendants' exhibits attached
     to the Declaration of Jerry T. Yen in support of Defendants' Motion for Summary
28   Judgment (Dkt. No. 29-4).

1    invalidated unusually "severe" restrictions that "totally ban[ned] handgun

2    possession in the home." *Heller*, 554 U.S. at 628-629; *see also McDonald*, 561

3    U.S. at 750-751.  Those laws "amount[ed] to a destruction of the Second

4    Amendment right" to "keep" firearms for "the core lawful purpose of self-defense"

5    by "law-abiding, responsible citizens." *Jackson v. City & Cty. of San Francisco*,

6    746 F.3d 953, 961 (9th Cir. 2014) (quoting *Heller*, 554 U.S. at 629, 635).

7    Similarly, the "proper cause" requirement challenged in *Bruen* made it "virtually

8    impossible for most New Yorkers" "to carry a gun outside the home for self-

9    defense," 142 S. Ct. at 2156 (Alito, J., concurring), and therefore effectively

10   "nullif[ied] half of the Second Amendment's operative protections"—*i.e.*, the right

11   to "bear" arms, *id.* at 2135.  In contrast to the laws challenged in *Heller*, *McDonald*,

12   and *Bruen*, which effectively operated as a restraint on the ability of most law-

13   abiding citizens to "keep" firearms for self-defense or to "bear" "arms" outside the

14   home, California's OGM law places no limit on the number of firearms that the

15   Individual Plaintiffs can "keep" nor does not it place any limit on their ability to

16   "bear" arms.  *Cf. Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (a $19 fee

17   on firearms transfers does not "ha[ve] any impact on the plaintiffs' actual ability to

18   obtain and possess a firearm"); *see also Jones v. Bonta*, 34 F.4th 704, 724 (9th Cir.

19   2022), *vacated and remanded*, 2022 WL 4090407 (9th Cir. Sept. 7, 2022)

20   (requiring that young adults ages 18-20 secure a hunting license before they can

21   acquire some firearms from dealers "does not impose a significant burden on the

22   Second Amendment right to keep and bear arms").

23        At bottom, California's OGM law does not prevent law-abiding citizens from

24   keeping or bearing arms of any sort.  Accordingly, under *Bruen*, the burden does

25   not shift to the government to support the regulations with a historical analysis and

26   Plaintiffs' Second Amendment challenge fails at the threshold stage of the inquiry.

27

28

8

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

### III. CALIFORNIA'S OGM LAW IS A REGULATION ON THE COMMERCIAL SALE OF FIREARMS

Even if the OGM law were considered to impose a burden on the right to keep and bear arms, that slight burden is due to the law imposing merely a "condition[] and qualification[] on the commercial sale of arms," which makes the law among those "presumptively lawful regulatory measures" that governments may adopt consistent with the Second Amendment. *Heller*, 554 U.S. at 626-627, 627 n.26; *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting this part of *Heller* stating that "nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms. [Footnote 26: We identify these presumptively lawful regulatory measures only as examples]"). Although courts have generally avoided defining the scope of the commercial sales category, *see Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018), the Fourth Circuit noted that "a law's substance, not its form, determines whether it qualifies as a condition on commercial sales."[7] *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021) (citation omitted). In other words, a commercial regulation is considered a "condition on commercial sales" if it does not operate as a functional prohibition or total ban on buying a gun. *See id.* Here, California's OGM law is not a total ban on purchasing a firearm or a ban on any particular type of firearm. It essentially regulates *when* licensed firearms dealers may sell a handgun or semiautomatic centerfire rifle to someone who previously purchased one from a licensed dealer. Cal. Penal Code § 27540(g). And, as noted earlier, the OGM law does not apply to private party transactions. Cal. Penal Code § 27535(b)(8). Thus, far from a total ban,

---

[7] A longstanding regulation on the commercial sales of firearms does not need to mirror the regulations from the Founding era. *See Bruen*, 142 S. Ct. at 2333; *see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-197 (5th Cir. 2012) (citations omitted) (noting that *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding even though they were not enacted until the 1960s).

9

1   California's OGM law merely places a "presumptively lawful" condition on the

2   commercial sale of firearms.  *See Pena*, 898 F.3d at 1009 (Bybee, J., concurring in

3   part and dissenting in part) (presumptively lawful restrictions on commercial sales

4   "go to *where* and *when* such [] sales can take place" as opposed to "*what* can be

5   sold . . . [which] comes much closer to the core of the Second Amendment.").

6       At times, courts have struggled to determine what "presumptively lawful"

7   means.  In *Pena*, Judge Bybee, concurring in part and dissenting in part, analyzed

8   the possible meanings offered by several Courts of Appeals. 898 F.3d at 1004-06.

9   The Third Circuit concluded that a "presumptively lawful" regulation was an

10  exception to the right to bear arms, but that the presumption was rebuttable in the

11  context of an as-applied challenge.  *Id*. at 1005 (citing *United States v. Marzzarella*,

12  614 F.3d 85, 91 (3d Cir. 2010) and *United States v. Barton*, 633 F.3d 168, 172-73

13  (3d Cir. 2011)).  The Fifth Circuit stated that a presumptively lawful regulation was

14  "likely to fall outside the ambit of the Second Amendment."  *Id*. (quoting *Nat'l*

15  *Rifle Ass'n*, 700 F.3d at 196).  The D.C. Circuit found that a plaintiff may rebut the

16  presumption "by showing the regulation [has] more than a de minimis effect upon

17  his right."  *Id*. at 1006 (quoting *Heller v. District of Columbia (Heller II)*, 670 F.3d

18  1244, 1253 (D.C. Cir. 2011)).  Ultimately, Judge Bybee concluded that "the better

19  approach to the conditions and qualifications on commercial sale category is that

20  taken by the D.C. Circuit in *Heller II*."  *Id*. at 1010.

21      In this district, in the context of ruling on a Rule 12(b)(6) motion to dismiss,

22  Judge Sabraw agreed with Judge Bybee's analysis and adopted the approach taken

23  in *Heller II*.  *Renna v. Becerra*, 535 F. Supp. 3d 931, 939-40 (S.D. Cal. 2021).

24  Under that approach, a plaintiff may rebut a presumptively lawful regulation on the

25  commercial sales of firearms "by showing that the regulation [has] more than a de

26  minimis effect upon his [Second Amendment] right."  *Id*. at 940 (citation omitted).

27  In *Renna*, the plaintiffs challenge the constitutionality of California's Unsafe

28  Handgun Act, which essentially requires the state to maintain a list of "safe"

10

1    handguns that can be sold in the state.  *Id*. at 935.  Defendants filed a Rule 12(b)(6)

2    motion and argued, in part, that the law was a presumptively lawful regulation on

3    the commercial sale of firearms.  *Id*. at 939.  The court was not persuaded, at least

4    for purposes of ruling on the Rule 12(b)(6) motion, because it viewed particular

5    allegations in the plaintiffs' complaint about the law's effect on the handgun supply

6    in California—which the court was required to accept as true at that stage of the

7    proceedings—as rebutting that presumption.  *Id*. at 940-41.  *Renna* is ongoing, and

8    it remains to be seen if the plaintiffs there can actually prove the allegations in their

9    complaint.

10        Here, in contrast, the proceedings have advanced to the summary judgment

11   stage, and the Individual Plaintiffs have failed to present any material facts to rebut

12   California's presumptively lawful OGM law.  On the contrary, they essentially

13   admit that the OGM law does not infringe on their ability to acquire firearms for

14   self-defense.  *See* DX-33, DX-34, DX-35, and DX-36 (Individual Plaintiffs'

15   Responses to Requests for Admission).  In fact, they are able to purchase and keep

16   as many firearms as they wish.  Once they have purchased a handgun or

17   semiautomatic centerfire rifle from a licensed firearms dealer, they only have to

18   wait thirty days to purchase another one.  They can also purchase additional

19   firearms from a private party at any time.  Thus, the OGM law has nothing more

20   than a de minimis effect, if any, on the Individual Plaintiffs' Second Amendment

21   right.  *Cf. Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016) ("The actual effect

22   of the [10-day waiting period to take possession of a firearm] on Plaintiffs is very

23   small").  Applying the approach in *Heller II*, Plaintiffs cannot and have not rebutted

24   the presumption that California's OGM law is a lawful condition on the commercial

25   sale of firearms.

26

27

28

Defendants' Suppl. Brief ISO Motion for Summary Judgment (3:20-cv-02470)

**IV. ADDITIONAL EXPERT DISCOVERY ON THE NATION'S HISTORICAL TRADITION WILL BE NECESSARY IF THE COURT CONCLUDES THAT THE OGM LAW IMPLICATES THE TEXT OF THE SECOND AMENDMENT**

If the Court were to conclude that the text of the Second Amendment covers the OGM law and that the law is not a presumptively lawful condition on commercial sale, California would still be able to defend its law by showing that it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.  But this would require additional expert discovery directed at *Bruen*'s text-and-history standard as well as supplemental briefing discussing the results of that discovery.[8]  As the Court recognized, the parties litigated this case under the now-defunct two-step approach (Dkt. No. 38, at 2), and thus it would serve the interests of the parties to allow them a full and fair opportunity to address the new approach required under *Bruen*.

As discussed in *Bruen*, in some cases, the historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Id*. at 2131.  But in others— particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132.  In particular, governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." 142 S. Ct. at 2333 (emphasis omitted).  And while the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it did identify "two metrics:  how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*  Under *Bruen*, a modern regulation is

---

[8] If the Court prefers to decide the summary judgment motions with all arguments before it (and declines to decide the textual argument without having the historical analysis), the additional expert discovery would be necessary to bring the historical analysis before the Court.

consistent with the Second Amendment if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.*; *see also id.* (modern-day regulation need not be a "dead ringer" for historical precursors or a "historical *twin*" to "pass constitutional muster").

Moreover, as *Bruen* recognizes, "'applying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins.'" *Id.* at 2134 (quoting *Heller II*, 670 F.3d at 1275 (Kavanaugh, J., dissenting)).  California's OGM law concerns such conditions.  Specifically, California's Legislature passed the OGM law in order to curtail straw purchases[9] and illegal firearms trafficking. *See* Defs.' Summary Judgment Motion, Dkt. No. 29, at p. 3.  Those issues did not become a major concern until after Congress passed the Gun Control Act of 1968, which set forth requirements for the purchase and sale of firearms.  *See* DX-19 (Bisbee Expert Rept.) at ¶ 9.  Thus, the historical analysis in this case would require additional expert discovery to address the historical analogues and analogical methodology prescribed in *Bruen*.

*Bruen* also left open other questions when it comes to any historical analysis, including "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791.  *Id.* at 2138.  More broadly, the Court "d[id] not resolve" the "manner and circumstances in which postratification practice may bear on the original meaning of the Constitution."  *Id.* at 2162-2163 (Barrett, J., concurring).  In resolving these and other historical

---

[9] A straw purchase generally involves the purchase of several firearms for another person who does not have the ability to legally buy a gun.  *See* Defendants' Notice of Legislative Facts, Dkt. No. 29-3, Exh. 12 (Assemb. B. 202, March 16, 1999 Assembly Committee on Public Safety Hearing, 1999-2000 Reg. Sess. (Cal. 1999)) at 3.

questions, *Bruen* directs courts to follow "various evidentiary principles and default rules," including "the principle of party presentation," and base their decisions on a "historical record compiled by the parties." *Id.* at 2130 n.6 (majority opinion).

Preparing a historical record in this case will likely involve original historical research, which can be a challenging and time-consuming process. *See* Declaration of Zachary Schrag, *Miller v. Becerra*, No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022), ECF No. 129-1 (describing the historical research process needed to address the historical questions raised in *Bruen*). As *Bruen* recognizes, the types of source material that will elucidate whether a historical statute imposes a comparable burden on Second Amendment rights or has a comparable justification might not be limited to the plain text of historical statutes. They may also include legal and non-legal source materials, such as newspaper articles, books, and manuscripts, establishing the existence of a societal problem involving arms, whether that problem has historically been addressed by non-legal means, or whether there have been disputes over the lawfulness of an arms regulation. *See Bruen*, 141 S. Ct. at 2131, 2133. In addition, the accessibility of these sources can vary greatly, especially for archival materials dating back to the 18th and 19th centuries.

Further, review and interpretation of source materials would require historical expertise. Although attorneys and judges are accustomed to performing textual analysis of laws, historical scholars are better situated to interpret 18th- and 19th-century statutes within their broader historical context, referencing what events or circumstances contributed to a law's enactment or the law's enforcement history.

To be clear, Defendants do not seek to re-start discovery. But further expert discovery would directly address the historical questions raised by *Bruen*. The parties would be free to rely on the existing record to support their claims and defenses, to the extent that evidence remains relevant.

1  In sum, further expert discovery and briefing is necessary to develop the

2  record and arguments *Bruen* requires, and for the Court to apply a "more nuanced"

3  analogical approach in this case.

4  <center>**CONCLUSION**</center>

5  Because California's OGM law does not limit the Individual Plaintiffs' ability

6  to "keep" and "bear" "Arms," it does not implicate the plain text of the Second

7  Amendment.  To the extent there is any effect, it is only de minimis and the OGM

8  law is a presumptively lawful condition on the commercial sale of firearms.  Thus,

9  for the reasons stated above and in their motion, the Court should grant Defendants'

10  motion for summary judgment.

11  To the extent the Court finds that the Second Amendment covers California's

12  OGM law and that it is not a presumptively lawful condition on the sale of firearms

13  (or declines to address those issues without considering the historical analysis), the

14  Court should permit the parties to meet and confer on a schedule to conduct

15  additional expert discovery and at an appropriate time submit additional briefing

16  regarding the historical questions and analysis required by *Bruen*.

17

18  Dated:  September 16, 2022                 Respectfully submitted,

19                                            ROB BONTA
20                                            Attorney General of California
                                              ANTHONY R. HAKL
21                                            Supervising Deputy Attorney General

22

23                                            */s/ Jerry T. Yen*

24                                            JERRY T. YEN
25                                            Deputy Attorney General
                                              *Attorneys for Rob Bonta, in his*
26                                            *official capacity as California*
                                              *Attorney General, and Blake Graham,*
27                                            *in his official capacity as Acting*
                                              *Director of the Department of Justice*
28                                            *Bureau of Firearms*

<center>15</center>

# CERTIFICATE OF SERVICE

Case Name:   **Nguyen, Michelle, et al. v. Rob**          No.   **3:20-cv-02470**
             **Bonta, et al.**

I hereby certify that on <u>September 16, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 16, 2022</u>, at Sacramento, California.

|  |  |
|---|---|
| Ksenia Lavrushchak | */s/ Ksenia Lavrushchak* |
| Declarant | Signature |

SA2020305120
36561818.docx