Rob Bonta
Attorney General of California
Anthony R. Hakl
Supervising Deputy Attorney General
Jerry T. Yen
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Blake Graham, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE NGUYEN, et al.,** | Case No. 3:20-cv-02470-WQH-MDD |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF** |
| **ROB BONTA, Attorney General of California, et al.,** | Time: No oral argument unless requested by the Court |
| Defendants. | Judge: Hon. William Q. Hayes<br>Courtroom: 14B<br>Action Filed: Dec. 18, 2020 |

**TABLE OF CONTENTS**

Page

Introduction ..................................................................................................................1

Argument .....................................................................................................................1

    I.    California's OGM Law Does Not Implicate The "Plain Text" of the Second Amendment ........................................................................2

    II.    California's OGM Law is a Presumptively Lawful Regulation ...........4

    III.    Plaintiffs' Interpretation And Application of *Bruen*'s Historical Standard Are Flawed ..........................................................................5

        A.    There is No Basis for Plaintiffs' Proposed Restrictions on Historical Evidence ...............................................................5

        B.    Plaintiffs' Historical Evidence and Analysis Are Incomplete .............................................................................7

    IV.    Plaintiffs' Equal Protection Claim is Subsumed By Their Second Amendment Claim .................................................................8

Conclusion ...................................................................................................................9

i

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Binderup v. Att'y Gen.*
    836 F.3d 336 (3d Cir. 2016) .................................................................................. 7

*Burdick v. Takushi*
    504 U.S. 428 (1992) ............................................................................................. 3

*Clark v. Cmty. for Creative Non-Violence*
    468 U.S. 288 (1984) ............................................................................................. 3

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ......................................................................................... 1, 4

*Flanagan v. Harris*
    No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at *5 (C.D.
    Cal. Feb. 23, 2017) .............................................................................................. 9

*Kennedy v. Bremerton Sch. Dist.*
    142 S. Ct. 2407 (2021) ........................................................................................ 3

*Medtronic, Inc. v. Lohr*
    518 U.S. 470 (1996) ............................................................................................. 7

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
    142 S. Ct. 2111 (2022) ................................................................................*passim*

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018) ........................................................................... 4, 9

*Teixeira v. County of Alameda*
    822 F.3d 1047 (9th Cir. 2016) ............................................................................. 9

*Teixeira v. County of Alameda*
    873 F.3d 670 (9th Cir. 2017) ............................................................................... 9

*United States ex rel. Leckner v. General Dynamics Information
Technology, Inc.*
    Case No. 21cv1109-LL-BLM, 2022 WL 4280660 (S.D. Cal. Sept.
    15, 2022) .............................................................................................................. 2

ii

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Lucas-Hernandez*
    Case No. 19MJ24522-LL, 2020 WL 6161150 (S.D. Cal. Oct. 21,
    2020) ..................................................................................................................2

*Zablocki v. Redhail*
    434 U.S. 374 (1978) ...........................................................................................3

**STATUTES**

California Penal Code
    § 27535 ...............................................................................................................1
    § 27540(g) ..........................................................................................................1

iii

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

## INTRODUCTION

California's limit on the purchases of handguns and semiautomatic centerfire rifles from licensed firearms dealers to one every thirty days (OGM law[1]) does not prevent the Individual Plaintiffs[2] from keeping or bearing arms. Plaintiffs have not presented any argument or material facts to the contrary. Accordingly, the Individual Plaintiffs' desire to purchase more than one handgun or semiautomatic rifle within a thirty-day period is not protected by the "plain text" of the Second Amendment.

Further, under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), California's OGM regulates the commercial sale of firearms and is thus presumptively lawful. Plaintiffs also fail to rebut that presumption. But to the extent the Court disagrees that the Second Amendment does not cover California's OGM law and that it is not a presumptively lawful condition on the sale of firearms (or declines to address those issues without considering the historical analysis), the Court should grant the parties time to conduct additional expert discovery about whether the challenged statutes are "consistent with th[is] Nation's historical tradition of firearm regulation," *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022)—an analysis that the Supreme Court has emphasized "can be difficult," *id.* (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 803-804 (2010) (Scalia, J., concurring)).

## ARGUMENT

As discussed in Defendants' supplemental brief, the Individual Plaintiffs have not shown how California's OGM law prevents them from keeping and bearing arms. Defendants' Supplemental Brief (Defs.' Suppl. Br.), Dkt. No. 43, at 5-8.

---

[1] California's OGM law primarily refers to California Penal Code sections 27535 and 27540(g).

[2] Individual Plaintiffs refer to Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti.

1

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

Moreover, Plaintiffs' strained reading of *Bruen* and self-serving statements regarding their historical research simply fail to support their summary judgment arguments.[3] At the very least, further expert discovery would provide the parties a full and fair opportunity to address the historical questions raised in *Bruen*.

### I. CALIFORNIA'S OGM LAW DOES NOT IMPLICATE THE "PLAIN TEXT" OF THE SECOND AMENDMENT

*Bruen* "decline[d] to adopt" the "two-step" framework that most federal courts of appeals utilized for analyzing Second Amendment challenges. 142 S. Ct. at 2126-2127. In its place, the Supreme Court announced a new standard for analyzing Second Amendment claims "centered on constitutional text and history." *Id.* at 2128-2129. The parties agree that this new standard begins with the "plain text" of the Second Amendment and whether it covers the "proposed course of conduct." *See* Plaintiffs' Supplemental Brief (Pls.' Suppl. Br.), Dkt. No. 44, at 7; Defs.' Suppl. Br. at 5-6.

Here, the "proposed course of conduct" – purchasing more than one handgun or one semiautomatic centerfire rifle from a licensed firearms dealer within a thirty-day period – is not covered by the "plain text" of the Second Amendment. As explained in Defendants' supplemental brief, limiting the purchase of handguns and semiautomatic centerfire rifles to one every thirty days does not interfere with the Individual Plaintiffs' ability to "keep" or "bear" arms for self-defense. Defs.' Suppl. Br. at 6-8. It only limits purchases from licensed firearms dealers and does not impact other types of transactions (e.g., private party sales). It also does not

---

[3] Plaintiffs' 25-page supplemental brief exceeds the 20-page limit in the Court's supplemental briefing order. Dkt. No. 38, at 2. Thus, the Court could strike Plaintiffs' supplemental brief or ignore any arguments presented after page 20. *See United States v. Lucas-Hernandez*, Case No. 19MJ24522-LL, 2020 WL 6161150 (S.D. Cal. Oct. 21, 2020) (striking motions for exceeding the page limits); *United States ex rel. Leckner v. General Dynamics Information Technology, Inc.*, Case No. 21cv1109-LL-BLM, 2022 WL 4280660, *1 (S.D. Cal. Sept. 15, 2022) (striking pages of plaintiff's opposition for exceeding the page limit).

2

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

place any limit on the number of firearms that the Individual Plaintiffs can "keep" or their ability to "bear" arms. Plaintiffs do not present any arguments or material facts to the contrary.

This is important because, before proceeding to any additional analysis on their Second Amendment claims, Plaintiffs are required to show that the challenged regulation burdens conduct protected by the "plain text" of the Second Amendment. This accords with how the Supreme Court "protect[s] other constitutional rights." *Bruen*, 142 S. Ct. at 2130. For example, when scrutinizing free exercise claims, the Court first asks whether the plaintiff has shown that the government "has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-2422 (2021). In another example, plaintiffs who assert free speech claims are "oblig[ed]" to "demonstrate that the First Amendment even applies" to the "assertedly expressive conduct" in which they wish to engage. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). And in assessing whether an election law burdens the right to vote, the Court first asks whether the regulation imposes a "severe" burden on that right or only a "reasonable, nondiscriminatory restriction[]" to determine the appropriate level of scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Zablocki v. Redhail*, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."). The same mode of analysis applies in the Second Amendment context given *Bruen*'s repeated instruction that the Constitution "presumptively protects" conduct covered by the "Second Amendment's plain text." 142 S. Ct. at 2129-2130; *id.* at 2126, 2134, 2135.

In this case, Plaintiffs fail to show that California's OGM implicates the "plain text" of the Second Amendment. Plaintiffs' supplemental brief simply jumps to the conclusion that the text of the Second Amendment permits a law-abiding person to purchase firearms without any limitation on frequency or quantity. Pls.' Suppl. Br.

3

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

at 12.  There is no support for such a conclusion or any discussion of how California's OGM law prevents the Individual Plaintiffs from keeping or bearing arms.  Thus, Plaintiffs fail to meet their burden and the analysis ends.  There is no Second Amendment violation.

## II.   CALIFORNIA'S OGM LAW IS A PRESUMPTIVELY LAWFUL REGULATION

There is no dispute that, under *Heller*, laws imposing a condition or qualification on the commercial sale of firearms are presumptively lawful.  554 U.S. at 626–27, 627 n.26.  And the Supreme Court's decision in *Bruen* emphasized that *Heller* remains good law.  *See Bruen*, 142 S. Ct. at 2122 (noting that its holding is "consistent with *Heller* and *McDonald*"); *id.* at 2157 (Alito, J., concurring) (stating "Nor have we disturbed anything that we said in *Heller* . . . ."); *id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that the *Bruen* decision does not disturb *Heller*'s discussion of "presumptively lawful" prohibitions).

However, a presumptively lawful condition on the commercial sale of firearms can be overcome where the laws are unreasonable or amount to an effective ban on gun purchases by law-abiding citizens.  *See, e.g., Pena v. Lindley*, 898 F.3d 969, 1007-08, 1009 (9th Cir. 2018) (providing examples of unreasonable conditions on the commercial sale of firearms, such as a restriction that firearms sales may only take place between 11 p.m. and midnight on Tuesdays or placing a $1,000,000 tax on purchase of firearms) (Bybee, J., concurring in part and dissenting in part).  That is not the case here.  The OGM law does not effectively ban gun purchases or limit the total number of arms that a person may keep.  The law simply limits the number of handguns and semiautomatic centerfire rifles that can be purchased from a licensed firearms dealer within a thirty-day period.

Further, as discussed in Defendants' supplemental brief, Plaintiffs have not shown that the OGM law has anything more than a "de minimis effect," if any, on the Individual Plaintiffs' Second Amendment right.  Defs.' Suppl. Br. at 11.  They merely make the conclusory statement that the presumption "is sharply rebutted for

4

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

all the same reasons that the law fails under *Bruen*." Pls.' Suppl. Br. at 24. This assumes that the OGM law implicates the Second Amendment, which, as discussed earlier, it does not. At bottom, Plaintiffs fail to rebut the presumption that the OGM law is a lawful condition on the commercial sale of firearms.

### III. PLAINTIFFS' INTERPRETATION AND APPLICATION OF *BRUEN*'S HISTORICAL STANDARD ARE FLAWED

If the Court concludes that California's OGM law implicates the Second Amendment and is not a presumptively lawful regulation on the commercial sale of firearms (or elects to consider the arguments supporting the law at once), only then does it need to address the historical analysis discussed in *Bruen*. In this case, that analysis would involve showing that the OGM law is "relevantly similar" to a "well-established and representative historical analogue." *Bruen*, 142 S. Ct. at 2133. This "can be difficult," *id.* at 2130 (quoting *McDonald*, 561 U.S. at 803-804 (Scalia, J., concurring)), and would require additional expert discovery and briefing, Defs.' Suppl. Br. at 12-15.

#### A. There is No Basis for Plaintiffs' Proposed Restrictions on Historical Evidence

The Supreme Court provided some guidance for the historical analogue analysis. For example, it identified "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense" for determining if a modern regulation is "relevantly similar" to a historical law. *Id.* at 2133. However, Plaintiffs appear to place restrictions on what type of evidence may be used in the historical analysis and how that evidence should be analyzed. Pls.' Suppl. Br. at 8-11. There is no basis for this. Plaintiffs simply cherry-pick statements from *Bruen* to reach their "guiding principles" on how to view historical evidence.

For example, Plaintiffs claim that "conflicts in the evidence . . . should be resolved in favor of [] protective interpretation." Pls.' Suppl. Br. at 10. Plaintiffs do not explain what is meant by "protective interpretation." Their phrasing

5

suggests a position that the required historical analysis involves some sort of default resolution in favor of one side or the other in the event of conflicting evidence. Yet Plaintiffs cite no authority supporting that position. Moreover, *Bruen* does not speak in terms of "protective interpretation." It explains that depending on the nature of the challenged regulation, the analysis may require "nuanced judgments about which evidence to consult and how to interpret it." *Bruen*, 142 S. Ct. at 2130 (quoting *McDonald*, 561 U.S. at 803-804 (Scalia, J., concurring)).

    Plaintiffs also appear to claim that the government cannot justify a regulation with historical regulations that were not enacted by the majority of jurisdictions at the time or never subjected to judicial scrutiny. Pls.' Suppl. Br. at 11. The statements from *Bruen* cited by Plaintiffs in connection with that claim do not support such restrictions on the use of historical evidence. The Supreme Court made those statements as part of its analysis of the entire historical record, and ultimately discounted the evidence because they contradicted the "overwhelming weight of other evidence." *Bruen*, 142 S. Ct. at 2153 (citing *Heller*, 554 U.S. at 632). In addition, the Supreme Court's statements regarding the lack of judicial scrutiny focused on "temporary territorial laws that were enacted nearly a century after the Second Amendment's adoption." *Id*. at 2155. The Supreme Court never suggested that historical regulations must have been subjected to a court challenge for them to qualify as valid historical evidence.

    Ultimately, when conducting the historical analysis, it is a judgment about whether the evidence demonstrates that a regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. In *Bruen* and *Heller*, the historical analogies were "relatively simple," but cases "implicating unprecedented societal concerns . . . may require a more nuanced approach." *Id*. at 2132. And in such a case, the government can support a challenged regulation if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id*.

6

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

### B. Plaintiffs' Historical Evidence and Analysis Are Incomplete

Because the OGM law addresses the relatively modern issues of straw purchases and illegal firearms trafficking, *see* Defs.' Suppl. Br. at 13, any historical analysis in this case would involve a "reasoning by analogy" approach and require determining whether there is a proper historical analogue, *Bruen*, 142 S. Ct. at 2333. As discussed in Defendants' supplemental brief, this would require additional expert discovery and briefing. Defs.' Suppl. Br. at 12-15.

Plaintiffs apparently take the position that there is no more historical research or analysis that could be done. They assert that there is no historical support for California's OGM law because they themselves could not find any.[4] Pls.' Suppl. Br. at 12-23. On this point, Plaintiffs vaguely claim to "have conducted an even more in-depth investigation of the historical record" and that the "research was objectively conducted." *Id*. at 14. Yet the result of their "research" apparently uncovered seven publications. See Pls.' Suppl. Br., Index of Exhibits, Dkt. No. 44-2. Their round-up of founding era firearm regulations, and organization of them into a limited set of nine categories, is selective and self-serving. Pls.' Suppl. Br. at 17-23. For example, their analysis makes no mention of regulations prohibiting "unvirtuous citizens" from possessing firearms. *See Binderup v. Att'y Gen.*, 836 F.3d 336, 343 (3d Cir. 2016) (citations omitted). Plaintiffs also fail to provide any detail as to the research methodology or who conducted the research. In short,

---

[4] Plaintiffs appear to argue that the OGM law cannot be consistent with the "Nation's historical tradition of firearm regulations" because OGM laws were first enacted in the twentieth century and only a small number of states have an OGM law. Pls.' Suppl. Br. at 12-13. This is wrong. A modern-day regulation need not be a "dead ringer" for historical precursors or a "historical *twin*" to "pass constitutional muster." *Bruen*, 142 S. Ct. at 2333. In addition, the number of states that have an OGM law is not dispositive because each state passes laws to address issues in that state. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) ("States have exercised their police powers . . . [to address] matter[s] of local concern") (citations omitted).

7

there is no assurance that their "research" suffices for the purposes of the analysis required under *Bruen*, which underscores the need for additional expert discovery.

Moreover, the limited historical evidence cited by Plaintiffs does not even support the conclusions Plaintiffs draw from it. For example, in an attempt to make out a historical tradition of purchasing multiple firearms at the same time, Plaintiffs point to publications discussing ownership of multiple firearms, and assume that the people obtained those firearms by purchasing them at the same time. Pls.' Suppl. Br. at 14, 15-17. There is no basis to make such an assumption. Ownership of multiple guns does not necessarily mean that the guns were all purchased at the same time. One of the publications cited by Plaintiffs refers to firearms production issues and that some men were hired out as servants until they earned enough to purchase a single gun. Pls.' Suppl. Br., Exh. 2, Dkt. No. 44-4 (Nicholas J. Johnson, et al., *Firearms Law and the Second Amendment: Regulation, Rights, and Policy*, Third Edition, 2021) at 242, 243. Thus, that apparent evidence—cited by Plaintiffs—at least suggests that the economics during the founding era prevented individuals from purchasing multiple guns at one time.

Plaintiffs' historical evidence is obviously incomplete and their arguments hardly comport with the "more nuanced" analogical approach required under *Bruen*. Accordingly, additional expert discovery and briefing is needed – assuming that the Court finds that the Second Amendment covers California's OGM law and that it is not a presumptively lawful condition on the sale of firearms (or declines to address those issues without considering the historical analysis).

### IV. PLAINTIFFS' EQUAL PROTECTION CLAIM IS SUBSUMED BY THEIR SECOND AMENDMENT CLAIM

Plaintiffs' arguments in their supplemental brief clearly base their equal protection claim on their Second Amendment claim. Pls.' Suppl. Br. at 24-25. In that case, Plaintiffs' equal protection claim cannot provide an independent basis for relief. *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at

8

*5 (C.D. Cal. Feb. 23, 2017) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Pena*, 898 F.3d at 986 ("[t]o the extent that the Equal Protection challenge is based on the Second Amendment's fundamental right to bear arms and the disparate treatment of groups in exercising that right . . . that challenge is subsumed by the Second Amendment inquiry"). Accordingly, the subsumed equal protection claim is subject to dismissal. *See Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016), *on reh'g en banc*, 873 F.3d 670 (9th Cir. 2017) (affirming dismissal of subsumed equal protection claim while reversing dismissal of Second Amendment claim).[5]

To the extent Plaintiffs' equal protection claim is not based on their Second Amendment right, *Bruen* should not have an impact on the parties' equal protection arguments in their previously filed summary judgment briefs. And for the reasons stated in Defendants' summary judgment briefs, the Court should grant summary judgment to Defendants on Plaintiffs' equal protection claim.

## CONCLUSION

Plaintiffs fail to show that California's OGM law limits the Individual Plaintiffs' ability to "keep" and "bear" "Arms," and thus the law does not implicate the plain text of the Second Amendment. To the extent there is any effect, it is only de minimis and the OGM law is a presumptively lawful condition on the commercial sale of firearms. Thus, the Court should deny Plaintiffs' motion for summary judgment motion and grant Defendants' motion for summary judgment.

As noted in Defendants' supplemental brief, to the extent the Court decides that the historical analysis is necessary in this case, the Court should permit the parties to meet and confer on a schedule to conduct additional expert discovery and

---

[5] Following the initial panel decision, plaintiff in *Teixeira* did not seek rehearing of the panel's rejection of his equal protection claims, which the en banc panel, in any event, affirmed. *Teixeira v. County of Alameda*, 873 F.3d 670, 676 (9th Cir. 2017).

9

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

1 at an appropriate time submit additional briefing regarding the historical questions
2 and analysis required by *Bruen*.

4 Dated:  October 10, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Jerry T. Yen*

JERRY T. YEN
Deputy Attorney General
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Blake Graham, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*

10

Defendants' Response to Plaintiffs' Suppl. Brief (3:20-cv-02470)

# CERTIFICATE OF SERVICE

Case Name:  **Nguyen, Michelle, et al. v. Rob Bonta, et al.**   No.   **3:20-cv-02470**

I hereby certify that on <u>October 10, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 10, 2022</u>, at Sacramento, California.

| Ksenia Lavrushchak | */s/ Ksenia Lavrushchak* |
|---|---|
| Declarant | Signature |

SA2020305120
36628029.docx