UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE NGUYEN, an individual; DOMINIC BOGUSKI, an individual; JAY MEDINA, an individual; FRANK COLLETTI, an individual; JOHN PHILLIPS, an individual; PWGG, L.P., a California Limited Partnership; DARIN PRINCE, an individual; NORTH COUNTY SHOOTING CENTER, INC., a California Corporation; FIREARMS POLICY COALITION, INC.; SAN DIEGO COUNTY GUN OWNERS PAC; and SECOND AMENDMENT FOUNDATION,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ROB BONTA, in his official capacity as Attorney General of California; and LUIS LOPEZ, Director of the Attorney General's Department of Justice Bureau of Firearms,<br><br>　　　　　　　　　　Defendants. | Case No. 3:20-cv-02470-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the cross-Motions for Summary Judgment (ECF Nos. 23, 29), Defendants' *Daubert* Motion to Preclude Testimony of George

A. Mocsary (ECF No. 30), and Plaintiffs' Motion for Leave to File Declaration in Support of the Exhibits to Plaintiffs' Motion for Summary Judgment (ECF No. 31).

**I.   BACKGROUND**

On December 18, 2020, Plaintiffs initiated this action by filing a Complaint against Defendants in their official capacities as California state officials, challenging the constitutionality of California's one-gun-a-month law (the "OGM law"), Cal. Penal Code §§ 27535, 27540(g). (ECF No. 1.) The OGM law prohibits individuals from "mak[ing] an application to purchase more than one handgun or semiautomatic centerfire rifle within any 30-day period." Cal. Penal Code § 27535(a); *see also id.* § 27540(g) (prohibiting dealers from delivering such firearms to individuals to whom Section 27535 applies when notified by the California Department of Justice). The OGM law exempts several entities from this prohibition, including "[a]ny motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm." *Id.* § 27535(b). Plaintiffs are individuals who desire to purchase firearms, firearms retailers, and non-profit entities focused on Second Amendment rights. The Complaint brings two claims against Defendants pursuant to 42 U.S.C. § 1983: (1) violation of the Second Amendment right to keep and bear arms, as incorporated to the states by the Fourteenth Amendment; and (2) violation of the Fourteenth Amendment right to equal protection. Plaintiffs seek declaratory and injunctive relief restraining the enforcement of the OGM law.

On April 8, 2022, the parties filed their cross-Motions for Summary Judgment.[1] (ECF Nos. 23, 29.) On the same day, Defendants filed the *Daubert* Motion to Preclude Testimony of George A. Mocsary (the "*Daubert* Motion"). (ECF No. 30.) On April 9, 2022, Plaintiffs filed the Motion for Leave to File Declaration

---

[1] The Court denies Defendants' request that the Court take judicial notice of documents containing the text of state laws relevant to Plaintiffs' claims (ECF No. 29-2) because consideration of these documents is not necessary to this Order.

in Support of the Exhibits to Plaintiffs' Motion for Summary Judgment.[2] (ECF No. 31.)

On April 11, 2022, Plaintiffs filed a Response in opposition to the *Daubert* Motion. (ECF No. 32.) On April 29, 2022, the parties filed Responses in opposition to the cross-Motions for Summary Judgment. (ECF Nos. 33, 34.)

On May 13, 2022, the parties filed Replies in support of their cross-Motions for Summary Judgment, (ECF Nos. 36, 37), and Defendants filed a Reply in support of the *Daubert* Motion, (ECF No. 35).

On June 30, 2022, the Court issued an Order requesting supplemental briefing on the effect of the Supreme Court's decision in *N.Y. Rifle & Pistol Assn., Inc. v. Bruen*, 142 S.Ct. 2111 (2022), on the resolution of the parties' cross-Motions for Summary Judgment. (ECF No. 38.) Specifically, the Court ordered the parties to address the following questions: "1) What standard applies to Plaintiffs' Second Amendment claim after Bruen? 2) How does that standard apply to resolve the Motions for Summary Judgment (ECF Nos. 23, 29)?" *Id.* at 2.

On September 16, 2022, the parties filed Supplemental Briefs.[3] (ECF Nos. 43, 44.) On October 10, 2022, the parties filed Responses to the Supplemental Briefs. (ECF Nos. 47, 48.)

## II. SUMMARY JUDGMENT LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an

---

[2] In their Motion for Leave to File Declaration in Support of the Exhibits to Plaintiffs' Motion for Summary Judgment, Plaintiffs request to submit a Declaration that had been inadvertently omitted from their Motion for Summary Judgment. The Court finds good cause to grant the Motion for Leave to File Declaration in Support of the Exhibits to Plaintiffs' Motion for Summary Judgment.

[3] Plaintiffs' Supplemental Brief exceeds the page limit set by the Court. Any future noncompliance may result in the Court striking all or part of the offending filing.

element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

### III. SECOND AMENDMENT CLAIM

Defendants contend that the OGM law "is not covered by the 'plain text' of the Second Amendment because it does not prevent 'people' from 'keep[ing]' or bear[ing]' 'Arms.'" (ECF No. 43 at 5 (alterations in original).) Defendants contend that the OGM law "is a presumptively lawful regulation on the commercial sale of

firearms" under *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Id.* Defendants contend that for both reasons, "the law does not violate the Second Amendment." *Id.* Defendants contend that "[i]f the Court were to conclude that the text of the Second Amendment covers the OGM law and that the law is not a presumptively lawful condition on commercial sale," Defendants should be permitted "to conduct focused expert discovery to prepare a full record to the historical standard and analysis set forth in *Bruen*." *Id.* at 6, 16. Defendants contend that further discovery is justified because "the parties litigated this case under the now-defunct two-step approach" that was in place prior to *Bruen*. *Id.* at 16. Defendants contend that the historical evidence presented by Plaintiffs to date is incomplete.

Plaintiffs contend that the scope of the Second Amendment's "protection plainly covers the conduct at issue." (ECF No. 47 at 7 (emphasis omitted).) Plaintiffs contend that "[i]n no event can Defendants claim 'presumptively lawful' status for [the OGM law] and any presumption that could possibly arise evaporates in the face of this reality." *Id.* at 11. Plaintiffs contend that additional discovery is not needed because "Defendants have not produced any evidence … since the Court issued its order for the parties to provide supplemental briefing." *Id.* at 12 (emphasis omitted). Plaintiffs contend that "Defendants could not carry [their] burden to affirmatively justify the OGM law even if they tried" because the existing evidence establishes that the OGM law is not consistent with the Nation's historical tradition of firearm regulation. *Id.*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

After the Supreme Court's 2008 decision in *Heller*, the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 142 S.Ct. at 2125. "At the first step, the government [could] justify its regulation by establishing

that the challenged law regulate[d] activity falling outside the scope of the right as originally understood." *Id.* at 2126 (quotation and alteration omitted). However, if the historical evidence was inconclusive or suggested that the regulated activity was protected, courts would proceed to the second step, at which they would typically apply some level of heightened scrutiny based on an analysis of "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (quotation omitted).

The Supreme Court recently "decline[d] to adopt that two-part approach" in *Bruen*, holding that the second step, in which means-end scrutiny is applied, is inconsistent with the decision in *Heller*. *Id.* at 2127 ("Despite the popularity of this two-step approach, it is one step too many."). In the wake of *Bruen*, the standard for determining the constitutionality of a government regulation under the Second Amendment is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S.Ct. at 2129-30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Accordingly, a court analyzing a Second Amendment challenge must: (1) define the proposed course of conduct of the party that is challenging the regulation; (2) determine whether the plain text of the Second Amendment covers (i.e. presumptively protects) that conduct; and (3) if so, assess whether the government has shown that the challenged regulation is consistent with our Nation's historical tradition of firearm regulation.

Prior to *Bruen*, binding authority in this Circuit dictated that Plaintiffs' Second Amendment claim be analyzed under the two-step legal standard established by the Court of Appeals. *See, e.g., Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018).

Defendants reasonably relied on this existing legal standard in conducting discovery and formulating their legal position that the OGM law did not violate the Second Amendment because it "easily withst[ood] the applicable level of scrutiny, intermediate scrutiny, at step two" of the analysis.[4] (ECF No. 29 at 20.) However, after the close of discovery and after the parties had fully briefed the cross-Motions for Summary Judgment, *Bruen* rejected any consideration of means-end scrutiny— the basis for Defendants' existing defense of the OGM law.

Under the new framework established by *Bruen*, Defendants can instead prevail "by demonstrating that [the OGM law] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130. Defendants have not had the opportunity to conduct expert discovery directed at this standard. While the Court requested supplemental briefing and permitted the parties to present additional evidence in response to the change in controlling law in its June 30, 2022, Order, (*see* ECF No. 38), the deadline for expert discovery had passed, (*see* ECF No. 18 (setting the cutoff on January 21, 2022)), and the Court did not request or authorize further expert discovery at that time.

While the existing evidence presented by the parties establishes that OGM laws were first enacted in the 1970s, "[w]hen confronting … present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Bruen*, 142 S.Ct. at 2132; *id.* at 2133 ("[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). In determining whether a modern-day regulation is relevantly similar to historical precursors, *Bruen* instructs courts to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The evidence currently in the record does not foreclose the possibility that Defendants may be able to carry their burden of demonstrating

---

[4] In the initial briefing on the cross-Motions for Summary Judgment, Defendants assumed "[f]or the purposes of this motion only" that the OGM law implicated the Second Amendment "at step one of the analysis." *Id.*

historical consistency through analogical reasoning. The Court concludes that both parties may conduct additional expert discovery concerning whether the OGM law is consistent with the Nation's historical tradition of firearm regulation.[5]

## IV. EQUAL PROTECTION CLAIM

Defendants contend that "[t]o the extent [ ] Plaintiffs' equal protection claim is based on a Second Amendment right, that claim would be subsumed in their Second Amendment claim." (ECF No. 29 at 30 n.13.) Defendants contend that to the extent the equal protection claim is instead not based on a Second Amendment right, the equal protection claim fails because Plaintiffs "are not similarly situated with another group that is exempt from California's OGM law." (ECF No. 29 at 29.) Defendants contend that even if Plaintiffs were similarly situated, the equal protection claim is "not based on a suspect classification" so "rational basis review applies." *Id.* at 29-30. Defendants contend that Plaintiffs' challenge fails under rational basis review because Plaintiffs have failed to "negat[e] every conceivable basis for allowing" an exemption to the law. *Id.* at 31.

Plaintiffs contend that the OGM law's "favored classifications are subject to strict scrutiny under the Equal Protection Clause" because the law "interferes with the exercise of a fundamental right." (ECF No. 23-1 at 31 (quotation omitted).) Plaintiffs contend that the law fails even under rational basis review because the exemption classifications in the law, particularly the exemption for the movie industry, "can only be seen as arbitrary or irrational." *Id.* (quotation omitted).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)

---

[5] Defendants assert in the alternative that they are entitled to summary judgment on Plaintiffs' Second Amendment claim because Plaintiffs' proposed conduct is not covered by the plain text of the Second Amendment and because the OGM law is presumptively lawful as a regulation on the commercial sale of firearms. While additional discovery is not necessary to decide these issues, the Court declines to conduct the analysis proscribed by *Bruen* in a piecemeal manner.

(quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). This principle "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). As a result, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.*

In this case, Plaintiffs' equal protection challenge appears to be based on the disparate treatment of groups in exercising the same right that is the subject of Plaintiffs' Second Amendment claim. (*See* Complaint, ECF No. 1 ¶ 138 (alleging that the OGM law discriminates against Plaintiffs, "who seek to acquire firearms in exercise of their fundamental right to keep and bear arms"); ECF No. 23-1 at 31 (contending that the law violates equal protection because it "interferes with the exercise of a fundamental right"). However, "[t]o the extent that the Equal Protection challenge is based on the Second Amendment's fundamental right to bear arms and the disparate treatment of groups in exercising that right … that challenge is subsumed in the Second Amendment inquiry." *Pena*, 898 F.3d at 986; *see Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) (affirming dismissal of equal protection challenge based on infringement of the right to bear arms despite reversing dismissal of corresponding Second Amendment claim because "the equal protection challenge [was] 'no more than a [Second] Amendment claim dressed in equal protection clothing'" (quoting *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001))), *on reh'g en banc*, 873 F.3d 670, 676 n.7 (9th Cir. 2017) (affirming dismissal of the equal protection claim "for the reasons given in the panel opinion"); *cf. Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

To the extent that Plaintiffs' equal protection claim is not based on their Second Amendment right, rational basis review applies because Plaintiffs have failed to identify any suspect class targeted by the OGM law. Under rational basis review "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)). "A statute is presumed constitutional, and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." *Id.* at 320-21 (alteration in original) (quotations and citations omitted).

Defendants have identified several bases for the OGM law's exemptions, including the exemption for motion picture, television, and other entertainment companies—namely, that "those companies benefit an important sector of the California economy, weapons used in film and television are not intended to be used for live fire, and the entertainment industry has not been involved in illegal firearms trafficking." (ECF No. 33 at 12.) Plaintiffs do not address several of these asserted bases, let alone negate a presumption of constitutionality. *See Pena*, 898 F.3d at 987 (rejecting equal protection challenge under rational basis review to law regulating handguns that had exemptions for "sworn members of law enforcement agencies, sales of curios and relics, and use in movie and television productions" on similar grounds). The Court concludes that Defendants are entitled to summary judgment on Plaintiffs' equal protection claim.

V.  **DEFENDANTS'** *DAUBERT* **MOTION**

In their *Daubert* Motion (ECF No. 30), Defendants request that the Court preclude the testimony of George A. Mocsary on the basis that his opinions concerning the American history and tradition of firearms regulations do not reflect specialized knowledge, are not based on sufficient facts or data, and are not the

product of reliable principles and methods. *See* Fed. R. Evid. 702. The Court denies this motion as premature because it relates to the Second Amendment analysis on which the Court has granted the parties additional expert discovery.

## VI. CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 23) is denied.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (ECF No. 29) is granted in part and denied in part. The motion is granted as to the equal protection claim. The motion is otherwise denied.

IT IS FURTHER ORDERED that Defendants' *Daubert* Motion to Preclude Testimony of George A. Mocsary (ECF No. 30) is denied.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Declaration in Support of the Exhibits to Plaintiffs' Motion for Summary Judgment (ECF No. 31) is granted.

IT IS FURTHER ORDERED that each party may engage in additional expert discovery concerning whether the challenged law is consistent with the Nation's historical tradition of firearm regulation. The Magistrate Judge is directed to hold a status conference regarding such discovery and issue a scheduling order regulating the expert discovery period and the filing of renewed motions for summary judgment and/or *Daubert* motions.

Dated: January 5, 2023

Hon. William Q. Hayes
United States District Court