# Memorandum of Points and Authorities in Support of Plaintiffs' Renewed Motion for Summary Judgment

# Exhibit 11
## *Legislative History*

BILL ANALYSIS

---
AB 202
Page  1

Date of Hearing:  March 16, 1999
Chief Counsel:    Harry M. Dorfman

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Mike Honda, Chairman

AB 202 (Knox) - As Amended:  March 10, 1999

SUMMARY  :  Prohibits any person from applying for more than one
concealable firearm within a 30-day period, and no delivery
shall be made to any person who has made an application to
purchase more than one concealable firearm within 30 days.
Specifically,  this bill  :

1) Prohibits making an application to purchase more than one
   pistol, revolver, or other firearm capable of being concealed
   on the person within any 30-day period.

2) Prohibits delivery to any person who has made an application
   to purchase more than one pistol, revolver, or other firearm
   capable of being concealed on the person within any 30-day
   period.

3) Provides that no person can make an application to purchase a
   pistol, revolver or other firearm capable of being concealed
   on the person within any 30-day period.  Exempts law
   enforcement, entertainment/theatrical companies, licensed
   collectors, and the exchange, replacement or return of a
   concealable firearm under specified conditions.

4) Provides penalties for making an application for more than one
   concealable firearm in any 30-day period:

   a)   A first violation is an infraction punishable by a fine
        of $50;

   b)   A second violation is an infraction punishable by a fine
        of $100; and,

   c)   A third or subsequent violation is a misdemeanor
        (punishable in the county jail up to six months, or by a
        fine not greater than $1,000, or both, pursuant to Penal
        Code Section 19).

5) Provides that each application to purchase a concealable

---
AB 202
Page  2

firearm shall be deemed a separate offense.

EXISTING LAW  :

1) Prohibits the sale, lease, or transfer of firearms without a
   state firearms dealer's license.  (Penal Code Section
   12070(a).)  Violation is a misdemeanor, punishable by six
   months in the county jail; a $1,000 fine; or both.  (Penal
   Code Section 12070(a) and Penal Code Section 19.)

2) Provides that the duly constituted licensing authority of a
   city, county, or city and county shall accept applications
   for, and may grant, licenses permitting, licensees to sell
   firearms at retail.  The authority shall inform applicants who
   are denied licenses the reasons for the denial in writing.
   (Penal Code Section 12071(a)(2).)

3) Prohibits the supply, delivery, sale, giving possession or
   control of a firearm to any person within the classes of
   prohibition described in Penal Code Sections 12021 or 12021.1
   (Penal Code Section 12072(a)(1).)  Violation is a felony,
   punishable by two, three, or four years in state prison.
   (Penal Code Section 12072(g)(2)(A).)

4) Prohibits the sale, loan, or transfer of a firearm to a minor.
   (Penal Code Section 12072(a)(3)(A).)  Violation is an
   alternate misdemeanor/felony, punishable as a misdemeanor by
   imprisonment up to one year in county jail; a fine of $1,000;
   or both; or as a felony, by imprisonment for 16 months, 2 or 3
   years in state prison; a fine of $1,000; or both.  (Penal Code
   Section 12072(g)(3)(B).)

5) Prohibits the sale, loan, or transfer of a firearm to any
   person who is not the actual purchaser or transferee if the
   intent is to avoid the statutory requirements for lawful
   transfer.  (Penal Code Section 12072(a)(4).)  Violation is an
   alternate misdemeanor/felony, punishable the same as #4 above.

AG_Nguyen-0000001

(Penal Code Section 12072(g)(3)(A).)

6) Prohibits the supplying, selling, delivering, or giving
possession or control of a pistol, revolver, or firearm
capable of being concealed to any person under 21 years of
age, or any other firearm to any person under 18 years of age.
(Penal Code Section 12072(b))  Violation is a felony,
punishable by two, three, or four years in state prison.

---
AB 202
Page  3

(Penal Code Section 12072(g)(2)(D).)

7) Prohibits the delivery of a firearm to a person within 10 days
of the application to purchase.  (Penal Code Section
12072(c)(1).)  Violation is an alternate misdemeanor/felony,
punishable the same as #4 above.  (Penal Code Section
12072(g)(3)(D).)

8) Exempts certain persons and entities from the prohibitions of
Penal Code Section 12072 such as peace officers, lawful
importers, inter-family sales or bequests, auctions, etc.
(Penal Code Section 12078)

9) Provides Penal Code Section 12072 violations are misdemeanors
(Penal Code Section 12072(g)(1), except for specified felonies
such as transferring a firearm to a person previously
convicted of a felony (Penal Code Section 12072(g)(2)(A)), or
except for specified "wobblers" (which may be charged either
as a misdemeanor or a felony at the prosecutor's discretion)
such as selling, loaning or transferring a firearm to a minor
(Penal Code Section 12072(g)(3)(B).)

FISCAL EFFECT  :  Unknown

COMMENTS  :

 1) Author's Statement  .  According to the author, "There is no
limit on the number of handguns that may be purchased from a
dealer.  This makes it easy for straw purchasers to acquire
guns for another person or for street dealers to acquire guns
legitimately.  Handguns make up an overwhelming share of crime
guns and a significant number are traceable to dealer
transactions.  AB 202 will curtail the illegal gun market,
disarm criminals, and save lives by preventing multiple
purchases of handguns through legitimate channels.  Preventing
multiple purchases takes the profit out of black market sales
and puts gun traffickers and straw purchasers out of
business."

 2) Limiting Bulk Purchases to Cut Down on Straw Transactions.
The goal of this bill is to stop one gun purchaser from buying
several firearms and transferring a firearm to another person
who does not have the legal ability to buy a gun him/herself.
Such a transfer is referred to as a "straw transaction."
Typically, straw transactions involve a third party who is

---
AB 202
Page  4

under 21 years of age, has a disqualifying prior conviction,
has a mental disorder, or is not a resident.
 3) Straw Transactions Violate Federal Law.  The Federal Gun
Control Act forbids straw transactions.  Federal law prevents
a person from purchasing guns in a state with lax laws and
then returning to his or her state of residency.  If a gun has
been transported across state lines, a licensed federal
firearms dealer must process the transaction.  Additionally, a
person who is not a federal firearms licensee cannot deliver a
firearm to a resident of another state who is not federally
licensed.  The only way that such a transaction can occur is
if the transaction is brokered through a federal firearms
licensee in the recipient's state of residence.  Federal law
criminalizes acquisition of firearms in one state, the return
to a different state and sale of those firearms.

 4) South Carolina and Virginia  .  In 1975, South Carolina banned
gun dealers from selling more than one handgun in a 30-day
period to the same person.  In 1993, Virginia passed a "one
gun a month" law with some exemptions.  Neither state has a
waiting period; both use a "quick check" system.  Nor do those
states regulate private transactions, as does California.

 5) Do the Proposed Exemptions to Penal Code Section
 12072(a)(9)(A) Effectively Gut the Bill?  No.  This bill

AG_Nguyen-0000002

amends Penal Code Section 12072 to prohibit more than one
application for a concealable firearm in a 30-day period.  The
bill also provides numerous exemptions which are salutary
because they encourage a person who may be involved lawfully
in multi-gun exchanges to go to a licensed dealer, or to the
local sheriff, in order to facilitate the exchange.  Those
exempt institutions, persons and situations include:

a)    Any law enforcement agency;

b)    Any agency authorized to perform law enforcement duties;

c)    Any state or local correctional facility;

d)    Any private security business licensed to conduct
  business in state;

e)    Any peace officer;

f)    Any motion picture, television, or video production

                                          AB 202
                                          Page   5

    company whose production involves a firearm;

g)    Any person who may claim a waiting-period exemption
  pursuant to Penal Code Section 12078;

h)    Any transaction conducted through a dealer pursuant to
  Penal Code Section 12082;

i)    Any transaction conducted through a law enforcement
  agency pursuant to Penal Code Section 12084;

j)    Any licensed collector;

k)    The exchange of a concealable firearm where the purchase
  occurred within 30 days of the exchange;

l)    The replacement of a concealable firearm where the gun
  was reported lost or stolen before the completion of the
  new application; and,

m)    The return of any concealable firearm to its owner.

Despite the exemptions, the bill still hinders bulk purchase
straw transactions by limiting applications for concealable
firearms to one application per 30-day period.

6)Limiting Applications Will Not Stop Straw Transactions
  Entirely.   This bill will not stop bulk purchases to
facilitate straw transactions.  Those persons determined to
violate the law are still able to do so.  For example, assume
six friends all want concealable guns.  Assume further that
three of those friends own guns currently and the other three
friends are legally disqualified due to prior felony
convictions.  The three friends who can legally buy guns can
go to a store and fill out individual applications to purchase
one new handgun each.  They receive the guns and turn them
over to their friends.  Or, assume one person wants to obtain
a gun for each of his or her four friends who cannot legally
purchase themselves.  With a little patience, he or she makes
a new application every 31st day and then turns over a gun to
each friend in a few months.

7)Prior Legislation   .  AB 532 (Knox), of the 1997-98 Legislative
Session, was substantially similar to this bill and would have
made it a misdemeanor to take title to more than one

                                          AB 202
                                          Page   6

concealable firearm in a 30-day period.  In addition, AB 532
would have made it an alternate felony/misdemeanor for a
dealer to deliver a handgun after being notified that a person
was attempting to take title to more than one handgun in a
30-day period.  AB 532 failed passage on the Assembly floor,
was granted reconsideration, and died on the Assembly Inactive
File.

SB 513 (Hayden), of the 1997-98 Legislative Session, was
substantially similar to this bill and would have made it a
misdemeanor to purchase more than one concealable firearm in a
30-day period.  In addition, SB 513 would have made it a
misdemeanor for a dealer to deliver a handgun after being

AG_Nguyen-0000003

notified that a purchaser had applied to purchase a gun within
the last 30 days.  SB 513 was gutted on the Assembly floor and
became a bill relating to California Habeas Resource Center.

REGISTERED SUPPORT / OPPOSITION :

Support

American Civil Liberties Union
California Nurses Association
California Peace Officers' Association
California Police Chiefs' Association
City of Los Angeles
Handgun Control, Inc.
Legal Community Against Violence
Los Angeles County District Attorney's Office
Los Angeles Police Department
Trauma Foundation
Women Against Gun Violence

Opposition

California Rifle and Pistol Association
Peace Officers Research Association of California
One Private Citizen

Analysis Prepared by :  Harry Dorfman / PUB. S. / (916) 319-3744

AG_Nguyen-0000004

BILL ANALYSIS

AB 202
Page 1

Date of Hearing:  March 24, 1999

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Carole Migden, Chairwoman

AB 202 (Knox) - As Amended: 3/10/99

Policy Committee:                       Public
SafetyVote: 5 - 2

Urgency:    No                State Mandated Local
Program:YesReimbursable:          No

SUMMARY

This bill makes it an infraction or a misdemeanor, punishable by
fines and/or county jail, for any person to apply for more than
one concealable gun within a 30-day period, and for a dealer to
deliver a concealable gun to any person who has made an
application to purchase more than one concealable gun within 30
days. The bill triggers felony punishment based on specified
prior offenses. The bill also provides specified exemptions for
law enforcement , licensed collectors, etc.

FISCAL EFFECT

Minor annual costs - likely less than $150,000 - for new state
prison commitments.

Since there were no state prison admissions for similar
prohibited gun transfers in 1997-98, it is unlikely this bill
would have a significant impact on state prison admissions.

COMMENTS

1)Purpose  . The goal of this bill is to stop one gun purchaser
from buying several guns and transferring weapons to another
person who does not have the legal ability to buy a gun. These
transfers are called  straw purchases, which often involve a
third party under 21 years of age, a person with a
disqualifying prior conviction or a mental disorder, or a
person who is not a California resident. According to the
author, preventing multiple purchases takes the profit out of
black market sales and will help put gun traffickers and straw
purchasers out of business.

AB 202
Page 2

2)Prior Legislation  . AB 532 (Knox, 1998) would have made it a
misdemeanor to take title to more than one concealable gun in
a 30-day period, and would have made it an alternate
felony/misdemeanor for a dealer to deliver a handgun after
being notified that a person was attempting to take title to
more than one gun in a 30-day period.  AB 532 failed passage
on the Assembly floor.

SB 513 (Hayden, 1998), would have made it a misdemeanor to
purchase more than one concealable gun in a 30-day period and
would have made it a misdemeanor for a dealer to deliver a gun
after being  notified that a purchaser had applied to purchase
a gun within the last 30 days.  SB 513 was amended on the
Assembly floor into a bill relating to the California Habeas
Resource Center.

Analysis Prepared by  :   Geoff Long / APPR. / (916)319-2081

AG_Nguyen-0000005

AG_Nguyen-0000006

BILL ANALYSIS

```
                                              AB 202
                                              Page  1


ASSEMBLY THIRD READING
AB 202 (Knox)
As Amended April 6, 1999
Majority vote

PUBLIC SAFETY      5-2       APPROPRIATIONS      13-5

 ---------------------------------------------------------------
|Ayes:|Honda, Cedillo, Keeley, |Ayes:|Migden, Knox, Davis,   |
|     |Romero,                 |     |Hertzberg, Kuehl, Papan, |
|     |Washington              |     |Romero, Shelley,       |
|     |                        |     |Steinberg, Thomson,    |
|     |                        |     |Wesson, Wiggins Longville |
|     |                        |     |                       |
|-----|------------------------+-----+-------------------------|
|Nays:|Battin, Oller           |Nays:|Brewer, Ashburn, Runner, |
|     |                        |     |Margett, Zettel        |
|     |                        |     |                       |
 ---------------------------------------------------------------
```

 SUMMARY  :  Prohibits any person from applying for more than one
concealable firearm within a 30-day period, and no delivery
shall be made to any person who has made an application to
purchase more than one concealable firearm within 30 days.
Specifically,  this bill  :

1) Prohibits making an application to purchase more than one
   pistol, revolver, or other firearm capable of being concealed
   on the person within any 30-day period.

2) Prohibits delivery to any person who has made an application
   to purchase more than one pistol, revolver, or other firearm
   capable of being concealed on the person within any 30-day
   period.

3) Provides that no person can make an application to purchase a
   pistol, revolver, or other firearm capable of being concealed
   on the person within any 30-day period.  Exempts law
   enforcement, entertainment/theatrical companies, licensed
   collectors, and the exchange, replacement or return of a
   concealable firearm under specified conditions.

4) Provides penalties for making an application for more than one
   concealable firearm in any 30-day period:  a) a first
   violation is an infraction punishable by a fine of $50; b) a
   second violation is an infraction punishable by a fine of

```
                                              AB 202
                                              Page  2
```

   $100; and, c) a third or subsequent violation is a misdemeanor
   punishable in the county jail up to six months, or by a fine
   not greater than $1,000, or both.

5) Provides that each application to purchase a concealable
   firearm shall be deemed a separate offense.

 EXISTING LAW  :

1) Prohibits the sale, lease, or transfer of firearms without a
   state firearms dealer's license.  Violation is a misdemeanor,
   punishable by six months in the county jail, or a $1000 fine,
   or both.

2) Provides that the duly constituted licensing authority of a
   city, county, or city and county shall accept applications
   for, and may grant, licenses permitting, licensees to sell
   firearms at retail.  The authority shall inform applicants who
   are denied licenses the reasons for the denial in writing.

3) Prohibits the supply, delivery, sale, giving possession or
   control of a firearm to any person within the classes of
   prohibition described in Penal Code Sections 12021 or 12021.1.
   Violation is a felony punishable by two, three, or four years
   in state prison.

4) Prohibits the sale, loan, or transfer of a firearm to a minor.
   Violation is an alternate misdemeanor/ felony punishable as a
   misdemeanor by imprisonment up to one year in county jail, or
   a fine of $1000, or both, or, as a felony, by imprisonment for
   16 months, two or three years in state prison, a fine of
   $1000, or both.

5) Prohibits the sale, loan, or transfer of a firearm to any
   person who is not the actual purchaser or transferee if the
   intent is to avoid the statutory requirements for lawful
   transfer.  Violation is an alternate misdemeanor/felony

AG_Nguyen-0000007

punishable the same as #4 above.

6) Prohibits the supplying, selling, delivering, or giving
   possession or control of a pistol, revolver, or firearm
   capable of being concealed to any person under 21 years of
   age, or any other firearm to any person under 18 years of age.
   Violation is a felony punishable by two, three, or four years
   in state prison.

                                                    AB 202
                                                    Page  3

7) Prohibits the delivery of a firearm to a person within 10 days
   of the application to purchase.  Violation is an alternate
   misdemeanor/felony punishable the same as #4 above.

8) Exempts certain persons and entities from the prohibitions of
   Penal Code Section 12072 such as peace officers, lawful
   importers, inter-family sales or bequests, auctions, etc.

9) Provides Penal Code Section 12072 violations are misdemeanors,
   except for specified felonies such as transferring a firearm
   to a person previously convicted of a felony, or except for
   specified "wobblers" (which may be charged either as a
   misdemeanor or a felony at the prosecutor's discretion) such
   as selling, loaning or transferring a firearm to a minor.

   FISCAL EFFECT  :  According to the Assembly Appropriations
Committee analysis:

1) Minor annual costs, likely less than $150,000, for new state
   prison commitments.

2) Since there were no state prison admissions for similar
   prohibited gun transfers in 1997-98, it is unlikely this bill
   would have a significant impact on state prison admissions.

   COMMENTS  :  According to the author, "There is no limit on the
number of handguns that may be purchased from a dealer.  This
makes it easy for straw purchasers to acquire guns for another
person or for street dealers to acquire guns legitimately.
Handguns make up an overwhelming share of crime guns and a
significant number are traceable to dealer transactions.  AB 202
will curtail the illegal gun market, disarm criminals, and save
lives by preventing multiple purchases of handguns through
legitimate channels.  Preventing multiple purchases takes the
profit out of black market sales and puts gun traffickers and
straw purchasers out of business."

Please see the policy committee analysis for a more
comprehensive discussion of this bill.

Analysis Prepared by  :  Harry Dorfman / PUB. S. / (916) 319-3744

                              FN: 0000335

                                                    AB 202
                                                    Page  4

AG_Nguyen-0000008

AG_Nguyen-0000009

BILL ANALYSIS

SENATE COMMITTEE ON Public Safety
        Senator John Vasconcellos, Chair    A
        1999-2000 Regular Session           B

                                            2
                                            0
                                            2
AB 202 (Knox)
As Amended April 6, 1999
Hearing date:  June 8, 1999
Penal Code
SH:br


                HANDGUN PURCHASES -

      LIMIT TO ONE PER INDIVIDUAL PER 30-DAY PERIOD


                    HISTORY

Source:   Author

Prior Legislation: SB 513 (Hayden) - provisions
subsequently deleted (1997-98)
        AB 532 (Knox) - died on Assembly floor
inactive file (1997-98)
        SB 1277 (Hart) - died on Senate floor
(1993-94)

Support:  City of Oakland; Santa Clara County Board of
    Supervisors; League of            California
    Cities; California Teachers Association; City of West
        Hollywood; Handgun Control; City of Los Angeles;
    Los Angeles Police        Department; California Nurses
    Association; California Peace Officers'
        Association; California Police Chiefs'
    Association; ACLU; Legal    Community Against
    Violence; Los Angeles County District Attorney's
    Office; Attorney General's Office; California Church
    IMPACT; California        Child, Youth and Family


                                    (More)


                            AB 202 (Knox)
                            Page 2


    Coalition; Violence Prevention Coalition of
    Greater Los Angeles; Trauma Foundation; Orange County
    Citizens for the    Prevention of Gun Violence;
    California District, American Academy of
    Pediatrics; Mayor, City of Hayward; Gray Panthers of
    Northern California; City of Alameda; Women Against
    Gun Violence; Physicians    for a Violence-free
    Society; individual letters

Opposition:        California Shooting Sports
    Association; California Rifle and Pistol Association;
    National Rifle Association; Gun Owners of Californian;
        Peace Officers Research Association of
    California; individual letters

Assembly Floor Vote:  Ayes  42 - Noes  30


                    KEY ISSUE

SHOULD HANDGUN PURCHASES FROM LICENSED DEALERS IN CALIFORNIA BE LIMITED TO NO
MORE THAN ONE PER PERSON PER MONTH, AS SPECIFIED?


                    PURPOSE

The purpose of this bill is to generally limit purchases of
handguns from licensed firearms dealers in California to no
more than one per person per month, as specified.

  Existing law  governs the sale and purchase of firearms in
California.  Various restrictions are placed on the
purchase of firearms, including a pistol, revolver, or
firearm capable of being concealed upon the person, such as
a background check, a waiting period, and generally the
presentation of a basic firearm safety certificate.

AG_Nguyen-0000010

Transactions between private parties are subject to those
restrictions as well and must be made through a licensed
dealer or a law enforcement agency in smaller counties.


                                              (More)



                                         AB 202 (Knox)
                                             Page 3


Persons in prohibited categories may not purchase or
possess firearms at all.  (Penal Code sections 12070 -
12086)

   This bill  prohibits any person from applying to purchase
more than one concealable firearm from a licensed firearms
dealer within a 30-day period and provides that no delivery
shall be made to any person who has made an application to
purchase more than one concealable firearm within 30 days,
as follows:

    1)  Provides that no person shall make an application
    to purchase more than one pistol, revolver or other
    firearm capable of being concealed on the person from
    a licensed firearms dealer within any 30-day period.
    Exempts private party transactions (which must be made
    through a licensed firearms dealer or a sheriff's
    office in smaller counties); law enforcement;
    entertainment/theatrical companies; licensed
    collectors; and the exchange, replacement or return of
    a concealable firearm under specified conditions.

    2)  Provides the following penalties for making an
    application for more than one concealable firearm in
    any 30-day period:

      a)  A first violation is an infraction punishable by
      a fine of $50;

      b)  A second violation is an infraction punishable
      by a fine of $100; and,

      c)  A third or subsequent violation is a misdemeanor
      (punishable in the county jail up to six months, or
      by a fine not greater than $1,000, or both, pursuant
      to Penal Code section 19).

    3)  Provides that each application to purchase a
    concealable firearm in violation of these provisions
    shall be deemed a separate offense.



                                              (More)



                                         AB 202 (Knox)
                                             Page 4


    4)  Prohibits delivery of such firearms by a licensed
    dealer to any person who has made an application to
    purchase more than one pistol, revolver, or other
    firearm capable of being concealed on the person
    within any 30-day period when the dealer is notified
    by the Department of Justice that a person has made
    more than one application to purchase such firearms
    within that time period (punishable as a
    misdemeanor/felony).

    5)  Makes related changes and additions to law,
    including a requirement that licensed firearms dealers
    must post a notice about the provisions of this bill.

                    COMMENTS

1.   Need for This Bill

According to the author:

    There is no limit on the number of handguns that may
    be purchased from a dealer.  This makes it easy for
    straw purchasers to acquire guns for another person or
    for street dealers to acquire guns legitimately.
    Handguns make up an overwhelming share of crime guns
    and a significant number are traceable to dealer

AG_Nguyen-0000011

transactions.  AB 202 will curtail the illegal gun
market, disarm criminals, and save lives by preventing
multiple purchases of handguns through legitimate
channels.  Preventing multiple purchases takes the
profit out of black market sales and puts gun
traffickers and straw purchasers out of business.

2.   Existing Law Pertaining to Firearms Purchases

The sale, loan or transfer of a firearm must generally be
conducted by or through a state licensed firearms dealer or
through a local sheriff's department in counties of less
than 200,000 persons.  As part of this process, the 10-day

(More)


                              AB 202 (Knox)
                              Page 5


waiting period/background check/handgun safety certificate
are required prior to delivery of the firearm.  In
addition, handguns are centrally registered with DOJ as
part of this process.

A violation of these provisions as to handguns is an
alternate felony/misdemeanor punishable by up to one year
in the county jail or by imprisonment in the state prison
punishable by 16 months, two or three years.

Bulk purchase limits are aimed at so-called "straw
transactions".  A straw transaction usually involves "A"
buying the gun for "B" because "B" may not legally buy the
gun.  These types of transactions may occur in various
circumstances.  Typically, they occur because the true
purchaser is under age 21, has a specified prior
conviction, has a mental disorder, or is not a resident.

Straw transactions violate state law.

Straw transactions also violate federal law.  It is
reported that people travel to a state with weaker gun
laws, acquire guns in that state, and then transport them
back into their state of residency.

The federal Gun Control Act is designed to, among other
provisions, require residents of a state to acquire
firearms in their own state of residence.  It does so by
two means.  First, a person cannot acquire a firearm in one
state and then personally transport it into his/her own
state of residency.  He or she cannot receive the gun
unless the gun is being processed through a federal
firearms dealer in that state, who must follow state law on
gun deliveries.

In addition, a person who is not a federal firearms
licensee cannot deliver a firearm to a resident of another
state who is not federally licensed.  The only way that
such a transaction can occur is if the transaction is
brokered through a federal firearms licensee in the

(More)


                              AB 202 (Knox)
                              Page 6


recipient's state of residence.

The 1994 federal crime bill made it an enhanced criminal
offense for an individual to go into another state to
acquire firearms and then return to his or her own state
and sell those firearms.  (See 18 USC 923(m).)

3.   Assumptions about Limits on Purchases of Handguns

The State of Virginia enacted a "one-handgun-a-month" law
in 1993 (before the Federal Brady Bill, which required at
least a five day waiting period plus a background check for
states without such requirements).  That state had weak
restrictions on handgun sales and it has been stated that
gun traffickers from New York City routinely traveled to
Virginia to purchase quantities of weapons to take back for
illegal sale in other states.  Purchases of more than one

handgun per 30-day period in Virginia is allowed upon
completion of an "enhanced" background check when the
purchase is for lawful business or personal use, for
purposes of collectors, bulk sales and purchases from
estates, to replace a lost or stolen weapon, and similar
situations.

Supporters of limits on purchases of handguns assume that
the Virginia limits and the limits in this bill would only
affect a very small proportion of legitimate handgun
purchasers.  A family of two adults could still purchase 24
handguns a year under the provisions of both this bill and
the Virginia law.

4.   Multiple Handgun Purchases in California

Information provided by the Department of Justice indicates
that in 1998, there were 141,823 lawful handgun purchases
in California which involved one transferee and one handgun
in a single calendar month.  There were 12,989 transactions
involving one tranferee who obtained two handguns in single
calendar month; 2,282 involved three handguns in a single
month transferred to the same individual; and 91 transfers

                                        (More)

                                AB 202 (Knox)
                                        Page 7

which involved one transferee and more than 10 handguns in
a single calendar month.  Other multiple handgun
transactions include one person in July of 1998 who
obtained 41 to 80 handguns.

Those figures include persons who would be exempted by this
bill, such as a licensed collector, and transactions
between private parties which were lawfully made through a
licensed dealer or a sheriff's office.

Previous information for the Department of Justice provided
to this Committee indicated that in 1992 there were 2,784
persons who purchased five or more handguns and in 1993
there were 2,877 persons who purchased five or more
handguns.

Since this bill would allow twelve handgun purchases a
year, it would appear that this bill would have affected a
relatively small number of purchasers in any given year.
It could, of course, inconvenience some of those purchasers
if their desire is to purchase all twelve handguns at one
time.

The DOJ figures also indicate that in 1993, 245 individuals
purchased 12 or more handguns.  The number of persons who
purchased 20 or more handguns dwindles rapidly with only 83
purchasing more than 20 handguns in 1993.  However, one
person did purchase 84 handguns that year.

5.   Local Ordinances Limiting Handgun Purchases

Some local ordinances limiting handgun purchases in local
areas have been enacted in California.  For example,
background provided by the author includes a copy of Los
Angeles Municipal Code Section 55.14 on which is
handwritten "1/27/99 LA Council approved."  That ordinance
is very similar to AB 202 as currently amended, although
the LA ordinance does contain an exemption for "collector's
series or a bulk purchase from an estate" and the penalty
dealer violations is assumed to be a misdemeanor.  AB 202

                                        (More)

                                AB 202 (Knox)
                                        Page 8

does not contain that exemption and the penalty for dealer
violations in the bill is an alternate misdemeanor/felony.

Government Code section 53071 declares the ". . . intention
of the Legislature to occupy the whole field of regulation
of the registration or licensing of commercially
manufactured firearms as encompassed by the provisions of

AG_Nguyen-0000013

the Penal Code, and such
provisions shall be exclusive of all local regulations,
relating to registration or licensing of commercially
manufactured firearms . . ." which would indicate that AB
202 would preempt such local ordinances.  The City of Los
Angeles is in support of AB 202, presumably because a local
ordinance would not stop city residents from purchasing
handguns outside of the city or any other city which
individually has adopted such a restriction.

6.   Additional Issues Raised by This Bill

As noted above, this bill does not contain an exemption for
collector's series or bulk purchases from an estate.
Individuals would be allowed to make those kinds of
purchases from other individuals under this bill - through
a dealer, as required - and those handguns could be sold
either to a dealer, possibly an auction house, or to a
dealer or other entity out of state.  However, individuals
would not be allowed to make such purchases from licensed
firearms dealers.  Both the Los Angeles ordinance cited
above and SB 513 from last year provided an exception, as
follows:

   The purchase of firearms in a collector's series or a
bulk purchase from an
   estate sale.

WOULD IT BE APPROPRIATE TO ADD SUCH AN EXCEPTION TO THIS
BILL?

[NOTE:  AB 295 (Corbett) is going to be heard in this
Committee at a future hearing; as passed by the Assembly,

                                           (More)




                                    AB 202 (Knox)
                                       Page 9

it would appear to generally require any bulk sales to be
made only by a licensed dealer, which, if enacted, would
change the impact of AB 202 on such transactions.]


This bill makes an alternate misdemeanor/felony penalty
applicable to a licensed firearms dealer who delivers a
handgun to a purchaser after the Department of Justice has
notified the dealer that the purchaser has made another
application to purchase a handgun in violation of the
30-day period limit.  Since a licensed firearms dealer may
not be granted a license if the dealer has any prior felony
conviction - as well as specified misdemeanor penalties -
there is no common "three-strikes" issue raised by this
bill.  SB 513 from last session contained a misdemeanor
penalty for such violations.

[NOTE:  The Legislative Counsel's Digest for AB 202
indicates the dealer penalty is a misdemeanor; that is
partially correct since the actual penalty would be an
alternate misdemeanor/felony.]

7.   How Would This Bill Work if Enacted?

The prohibition on handgun purchases in this bill is
triggered by the "application" to purchase which presumably
is manifest by the transmission of the background request
to the Department of Justice by the licensed dealer.  This
bill does not limit transactions in a 30-day period by the
actual delivery of a handgun to a purchaser.  SB 29
(Peace), as amended on April 27, 1999, added language which
would allow the Department of Justice to require licensed
dealers to report to the department when a handgun is
actually delivered to a purchaser.  Current law -SB 63
(Peace)/Chapter 908, Statutes of 1998 - does require that
dealers notify customers that federal law requires a
subsequent background check if actual possession of a
firearm is not taken within 30 days of the completion of
the background check and does require a dealer to notify
the department if a firearm is not delivered within that
30-day period.



                                           (More)




                                    AB 202 (Knox)

Page 10

It is foreseeable that some purchasers change their minds and do not actually take possession of a handgun which they have initially agreed to purchase and which has resulted in an "application" being forwarded to the department. Whether or not the "application" alone, and not the actual transfer of the handgun, would preclude such a purchaser from "applying" to purchase another handgun with the 30-day limit is possibly unclear.  It may be that the department would administratively devise a method to "void" an "application" and it may also be that such occurrences would be relatively rare.

Whether or not a limit on purchases in a 30-day period would be "fairer" if it applied to "delivery" or taking possession is debatable.

8.   Opposition to This Bill

The National Rifle Association opposition to this bill includes:

    [AB 32] proposes that no person could "take title" to
    more than one handgun during a 30-day period.
    However, [AB 32] would also exempt a daunting list of
    people, agencies, firearms and specific types of
    transactions from that restriction.  The underlying
    notions that drive AB 32 are:
    - The existing background check, registration and
    waiting period for handguns is ineffective and/or
    - Law enforcement makes little or no effort to
    investigate "straw" sales.

    Once again the rationale for a new gun control bill is
    the "failure of the old".

The NRA goes on to ask why so many peace officers, including for example "a county water district security officer (830.34 Penal Code)" who collects guns should be able to purchase unlimited handguns while a concealed

                                                (More)

                                    AB 202 (Knox)
                                    Page 11

weapons permit holder or a retired peace officer could not.

AG_Nguyen-0000015

(More)

AB 202 (Knox)
Page 12

The NRA has also suggested that if "straw" sales are of
concern, multiple purchases of handguns could involve a
20-day waiting period, a set time and date for transfer,
and notification to local law enforcement about when the
transfer is scheduled to take place.
The presumption is that a purchaser buying more than one
relatively expensive handgun is not as likely to be engaged
in straw sales as a purchaser of relatively inexpensive
handguns.

The California Rifle and Pistol Association asserts that
existing penalties are already sufficient to deter illegal
sales in general.

9.   Other Legislation which Amends Penal Code Section 12071

This bill amends Penal Code section 12071 by adding another
notice which dealers must post.

Other bills which also amend Penal Code section 12071 - and
have moved to the second house during 1999, include AB 32
(Scott); AB 295 (Corbett); AB 988 (Lowenthal),
AB 1142 (Soto); and SB 29 (Peace).  SB 666 is the annual
maintenance of the codes bill and it too amends Penal Code
section 12071, however that bill contains a general
"repealer" for any code section it amends and which is also
amended by any other bill during the session year.

Given the number of bills, which amend section 12071, there
will need to be some creative work accomplished if several
of those bills are sent to the Governor and if conflict
issues are to be resolved.

                    ***************

AG_Nguyen-0000016

```
                                                    BILL ANALYSIS
```

```
                SENATE COMMITTEE ON Public Safety
                  Senator John Vasconcellos, Chair   A
                  1999-2000 Regular Session          B

                                                     2
                                                     0
                                                     2
```

AB 202 (Knox)
As Amended April 6, 1999
Hearing date:  June 8, 1999
Penal Code
SH:br


HANDGUN PURCHASES -

LIMIT TO ONE PER INDIVIDUAL PER 30-DAY PERIOD


HISTORY

Source:   Author

Prior Legislation: SB 513 (Hayden) - provisions
subsequently deleted (1997-98)
          AB 532 (Knox) - died on Assembly floor
inactive file (1997-98)
          SB 1277 (Hart) - died on Senate floor
(1993-94)

Support:  City of Oakland; Santa Clara County Board of
     Supervisors; League of               California
     Cities; California Teachers Association; City of West
          Hollywood; Handgun Control; City of Los Angeles;
     Los Angeles Police         Department; California Nurses
     Association; California Peace Officers'
          Association; California Police Chiefs'
     Association; ACLU; Legal    Community Against
     Violence; Los Angeles County District Attorney's
     Office; Attorney General's Office; California Church
     IMPACT; California         Child, Youth and Family


                                   (More)




                              AB 202 (Knox)
                                   Page 2


     Coalition; Violence Prevention Coalition of
     Greater Los Angeles; Trauma Foundation; Orange County
     Citizens for the    Prevention of Gun Violence;
     California District, American Academy of
     Pediatrics; Mayor, City of Hayward; Gray Panthers of
     Northern California; City of Alameda; Women Against
     Gun Violence; Physicians     for a Violence-free
     Society; individual letters

Opposition:          California Shooting Sports
     Association; California Rifle and Pistol Association;
     National Rifle Association; Gun Owners of Californian;
          Peace Officers Research Association of
     California; individual letters

Assembly Floor Vote:  Ayes  42 - Noes  30


KEY ISSUE

SHOULD HANDGUN PURCHASES FROM LICENSED DEALERS IN CALIFORNIA BE LIMITED TO NO
MORE THAN ONE PER PERSON PER MONTH, AS SPECIFIED?


PURPOSE

The purpose of this bill is to generally limit purchases of
handguns from licensed firearms dealers in California to no
more than one per person per month, as specified.

Existing law  governs the sale and purchase of firearms in
California.  Various restrictions are placed on the
purchase of firearms, including a pistol, revolver, or
firearm capable of being concealed upon the person, such as
a background check, a waiting period, and generally the
presentation of a basic firearm safety certificate.

AG_Nguyen-0000017

Transactions between private parties are subject to those
restrictions as well and must be made through a licensed
dealer or a law enforcement agency in smaller counties.

(More)

AB 202 (Knox)
Page 3

Persons in prohibited categories may not purchase or
possess firearms at all.  (Penal Code sections 12070 -
12086)

 This bill  prohibits any person from applying to purchase
more than one concealable firearm from a licensed firearms
dealer within a 30-day period and provides that no delivery
shall be made to any person who has made an application to
purchase more than one concealable firearm within 30 days,
as follows:

    1)  Provides that no person shall make an application
    to purchase more than one pistol, revolver or other
    firearm capable of being concealed on the person from
    a licensed firearms dealer within any 30-day period.
    Exempts private party transactions (which must be made
    through a licensed firearms dealer or a sheriff's
    office in smaller counties); law enforcement;
    entertainment/theatrical companies; licensed
    collectors; and the exchange, replacement or return of
    a concealable firearm under specified conditions.

    2)  Provides the following penalties for making an
    application for more than one concealable firearm in
    any 30-day period:

       a)  A first violation is an infraction punishable by
       a fine of $50;

       b)  A second violation is an infraction punishable
       by a fine of $100; and,

       c)  A third or subsequent violation is a misdemeanor
       (punishable in the county jail up to six months, or
       by a fine not greater than $1,000, or both, pursuant
       to Penal Code section 19).

    3)  Provides that each application to purchase a
    concealable firearm in violation of these provisions
    shall be deemed a separate offense.

(More)

AB 202 (Knox)
Page 4

    4)  Prohibits delivery of such firearms by a licensed
    dealer to any person who has made an application to
    purchase more than one pistol, revolver, or other
    firearm capable of being concealed on the person
    within any 30-day period when the dealer is notified
    by the Department of Justice that a person has made
    more than one application to purchase such firearms
    within that time period (punishable as a
    misdemeanor/felony).

    5)  Makes related changes and additions to law,
    including a requirement that licensed firearms dealers
    must post a notice about the provisions of this bill.

                    COMMENTS

1.   Need for This Bill

According to the author:

    There is no limit on the number of handguns that may
    be purchased from a dealer.  This makes it easy for
    straw purchasers to acquire guns for another person or
    for street dealers to acquire guns legitimately.
    Handguns make up an overwhelming share of crime guns
    and a significant number are traceable to dealer

AG_Nguyen-0000018

transactions.  AB 202 will curtail the illegal gun
market, disarm criminals, and save lives by preventing
multiple purchases of handguns through legitimate
channels.  Preventing multiple purchases takes the
profit out of black market sales and puts gun
traffickers and straw purchasers out of business.

2.   Existing Law Pertaining to Firearms Purchases

The sale, loan or transfer of a firearm must generally be
conducted by or through a state licensed firearms dealer or
through a local sheriff's department in counties of less
than 200,000 persons.  As part of this process, the 10-day

                                              (More)


                                        AB 202 (Knox)
                                              Page 5


waiting period/background check/handgun safety certificate
are required prior to delivery of the firearm.  In
addition, handguns are centrally registered with DOJ as
part of this process.

A violation of these provisions as to handguns is an
alternate felony/misdemeanor punishable by up to one year
in the county jail or by imprisonment in the state prison
punishable by 16 months, two or three years.

Bulk purchase limits are aimed at so-called "straw
transactions".  A straw transaction usually involves "A"
buying the gun for "B" because "B" may not legally buy the
gun.  These types of transactions may occur in various
circumstances.  Typically, they occur because the true
purchaser is under age 21, has a specified prior
conviction, has a mental disorder, or is not a resident.

Straw transactions violate state law.

Straw transactions also violate federal law.  It is
reported that people travel to a state with weaker gun
laws, acquire guns in that state, and then transport them
back into their state of residency.

The federal Gun Control Act is designed to, among other
provisions, require residents of a state to acquire
firearms in their own state of residence.  It does so by
two means.  First, a person cannot acquire a firearm in one
state and then personally transport it into his/her own
state of residency.  He or she cannot receive the gun
unless the gun is being processed through a federal
firearms dealer in that state, who must follow state law on
gun deliveries.

In addition, a person who is not a federal firearms
licensee cannot deliver a firearm to a resident of another
state who is not federally licensed.  The only way that
such a transaction can occur is if the transaction is
brokered through a federal firearms licensee in the

                                              (More)


                                        AB 202 (Knox)
                                              Page 6


recipient's state of residence.

The 1994 federal crime bill made it an enhanced criminal
offense for an individual to go into another state to
acquire firearms and then return to his or her own state
and sell those firearms.  (See 18 USC 923(m).)

3.   Assumptions about Limits on Purchases of Handguns

The State of Virginia enacted a "one-handgun-a-month" law
in 1993 (before the Federal Brady Bill, which required at
least a five day waiting period plus a background check for
states without such requirements).  That state had weak
restrictions on handgun sales and it has been stated that
gun traffickers from New York City routinely traveled to
Virginia to purchase quantities of weapons to take back for
illegal sale in other states.  Purchases of more than one

AG_Nguyen-0000019

handgun per 30-day period in Virginia is allowed upon
completion of an "enhanced" background check when the
purchase is for lawful business or personal use, for
purposes of collectors, bulk sales and purchases from
estates, to replace a lost or stolen weapon, and similar
situations.

Supporters of limits on purchases of handguns assume that
the Virginia limits and the limits in this bill would only
affect a very small proportion of legitimate handgun
purchasers.  A family of two adults could still purchase 24
handguns a year under the provisions of both this bill and
the Virginia law.

4.   Multiple Handgun Purchases in California

Information provided by the Department of Justice indicates
that in 1998, there were 141,823 lawful handgun purchases
in California which involved one transferee and one handgun
in a single calendar month.  There were 12,989 transactions
involving one tranferee who obtained two handguns in single
calendar month; 2,282 involved three handguns in a single
month transferred to the same individual; and 91 transfers

(More)

AB 202 (Knox)
Page 7

which involved one transferee and more than 10 handguns in
a single calendar month.  Other multiple handgun
transactions include one person in July of 1998 who
obtained 41 to 80 handguns.

Those figures include persons who would be exempted by this
bill, such as a licensed collector, and transactions
between private parties which were lawfully made through a
licensed dealer or a sheriff's office.

Previous information for the Department of Justice provided
to this Committee indicated that in 1992 there were 2,784
persons who purchased five or more handguns and in 1993
there were 2,877 persons who purchased five or more
handguns.

Since this bill would allow twelve handgun purchases a
year, it would appear that this bill would have affected a
relatively small number of purchasers in any given year.
It could, of course, inconvenience some of those purchasers
if their desire is to purchase all twelve handguns at one
time.

The DOJ figures also indicate that in 1993, 245 individuals
purchased 12 or more handguns.  The number of persons who
purchased 20 or more handguns dwindles rapidly with only 83
purchasing more than 20 handguns in 1993.  However, one
person did purchase 84 handguns that year.

5.   Local Ordinances Limiting Handgun Purchases

Some local ordinances limiting handgun purchases in local
areas have been enacted in California.  For example,
background provided by the author includes a copy of Los
Angeles Municipal Code Section 55.14 on which is
handwritten "1/27/99 LA Council approved."  That ordinance
is very similar to AB 202 as currently amended, although
the LA ordinance does contain an exemption for "collector's
series or a bulk purchase from an estate" and the penalty
dealer violations is assumed to be a misdemeanor.  AB 202

(More)

AB 202 (Knox)
Page 8

does not contain that exemption and the penalty for dealer
violations in the bill is an alternate misdemeanor/felony.

Government Code section 53071 declares the ". . . intention
of the Legislature to occupy the whole field of regulation
of the registration or licensing of commercially
manufactured firearms as encompassed by the provisions of

AG_Nguyen-0000020

the Penal Code, and such
provisions shall be exclusive of all local regulations,
relating to registration or licensing of commercially
manufactured firearms . . ." which would indicate that AB
202 would preempt such local ordinances.  The City of Los
Angeles is in support of AB 202, presumably because a local
ordinance would not stop city residents from purchasing
handguns outside of the city or any other city which
individually has adopted such a restriction.

6.    Additional Issues Raised by This Bill

As noted above, this bill does not contain an exemption for
collector's series or bulk purchases from an estate.
Individuals would be allowed to make those kinds of
purchases from other individuals under this bill - through
a dealer, as required - and those handguns could be sold
either to a dealer, possibly an auction house, or to a
dealer or other entity out of state.  However, individuals
would not be allowed to make such purchases from licensed
firearms dealers.  Both the Los Angeles ordinance cited
above and SB 513 from last year provided an exception, as
follows:

  The purchase of firearms in a collector's series or a
bulk purchase from an
  estate sale.

WOULD IT BE APPROPRIATE TO ADD SUCH AN EXCEPTION TO THIS
BILL?

[NOTE:  AB 295 (Corbett) is going to be heard in this
Committee at a future hearing; as passed by the Assembly,

                                              (More)


                                        AB 202 (Knox)
                                            Page 9


it would appear to generally require any bulk sales to be
made only by a licensed dealer, which, if enacted, would
change the impact of AB 202 on such transactions.]


This bill makes an alternate misdemeanor/felony penalty
applicable to a licensed firearms dealer who delivers a
handgun to a purchaser after the Department of Justice has
notified the dealer that the purchaser has made another
application to purchase a handgun in violation of the
30-day period limit.  Since a licensed firearms dealer may
not be granted a license if the dealer has any prior felony
conviction - as well as specified misdemeanor penalties -
there is no common "three-strikes" issue raised by this
bill.  SB 513 from last session contained a misdemeanor
penalty for such violations.

[NOTE:  The Legislative Counsel's Digest for AB 202
indicates the dealer penalty is a misdemeanor; that is
partially correct since the actual penalty would be an
alternate misdemeanor/felony.]

7.    How Would This Bill Work if Enacted?

The prohibition on handgun purchases in this bill is
triggered by the "application" to purchase which presumably
is manifest by the transmission of the background request
to the Department of Justice by the licensed dealer.  This
bill does not limit transactions in a 30-day period by the
actual delivery of a handgun to a purchaser.  SB 29
(Peace), as amended on April 27, 1999, added language which
would allow the Department of Justice to require licensed
dealers to report to the department when a handgun is
actually delivered to a purchaser.  Current law -SB 63
(Peace)/Chapter 908, Statutes of 1998 - does require that
dealers notify customers that federal law requires a
subsequent background check if actual possession of a
firearm is not taken within 30 days of the completion of
the background check and does require a dealer to notify
the department if a firearm is not delivered within that
30-day period.

                                              (More)


                                        AB 202 (Knox)

https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml

Page 10

It is foreseeable that some purchasers change their minds
and do not actually take possession of a handgun which they
have initially agreed to purchase and which has resulted in
an "application" being forwarded to the department.
Whether or not the "application" alone, and not the actual
transfer of the handgun, would preclude such a purchaser
from "applying" to purchase another handgun with the 30-day
limit is possibly unclear.  It may be that the department
would administratively devise a method to "void" an
"application" and it may also be that such occurrences
would be relatively rare.

Whether or not a limit on purchases in a 30-day period
would be "fairer" if it applied to "delivery" or taking
possession is debatable.

8.   Opposition to This Bill
     ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
The National Rifle Association opposition to this bill
includes:

     [AB 32] proposes that no person could "take title" to
     more than one handgun during a 30-day period.
     However, [AB 32] would also exempt a daunting list of
     people, agencies, firearms and specific types of
     transactions from that restriction.  The underlying
     notions that drive AB 32 are:
     - The existing background check, registration and
     waiting period for handguns is ineffective and/or
     - Law enforcement makes little or no effort to
     investigate "straw" sales.

     Once again the rationale for a new gun control bill is
     the "failure of the old".

The NRA goes on to ask why so many peace officers,
including for example "a county water district security
officer (830.34 Penal Code)" who collects guns should be
able to purchase unlimited handguns while a concealed

                                        (More)



                              AB 202 (Knox)
                              Page 11

weapons permit holder or a retired peace officer could not.

AG_Nguyen-0000022

(More)

AB 202 (Knox)
Page 12

The NRA has also suggested that if "straw" sales are of
concern, multiple purchases of handguns could involve a
20-day waiting period, a set time and date for transfer,
and notification to local law enforcement about when the
transfer is scheduled to take place.
The presumption is that a purchaser buying more than one
relatively expensive handgun is not as likely to be engaged
in straw sales as a purchaser of relatively inexpensive
handguns.

The California Rifle and Pistol Association asserts that
existing penalties are already sufficient to deter illegal
sales in general.

9.   Other Legislation which Amends Penal Code Section 12071

This bill amends Penal Code section 12071 by adding another
notice which dealers must post.

Other bills which also amend Penal Code section 12071 - and
have moved to the second house during 1999, include AB 32
(Scott); AB 295 (Corbett); AB 988 (Lowenthal),
AB 1142 (Soto); and SB 29 (Peace).  SB 666 is the annual
maintenance of the codes bill and it too amends Penal Code
section 12071, however that bill contains a general
"repealer" for any code section it amends and which is also
amended by any other bill during the session year.

Given the number of bills, which amend section 12071, there
will need to be some creative work accomplished if several
of those bills are sent to the Governor and if conflict
issues are to be resolved.

                    ***************

AG_Nguyen-0000023

BILL ANALYSIS

Appropriations Committee Fiscal Summary

AB 202   (Knox)

Hearing Date:6/28/99         Amended:4/6/99
Consultant: Lisa Matocq      Policy Vote:Pub Saf 5-1

BILL SUMMARY:

AB 202 generally limits the number of handguns that may be
purchased from a licensed dealer to one per person per
month, and makes certain violations an infraction,
misdemeanor, or felony, as specified.

Fiscal Impact (in thousands)

| Major Provisions Fund | | 1999-2000 | 2000-01 | 2001-02 |
|---|---|---|---|---|
| Misdemeanor | Unknown increased mandated, nonreim-Local bursable costs for county jail and probation | | | |
| Felony | Unknown increased costs, probably lessGeneral than $150 annually, for incarceration in state prison | | | |

STAFF COMMENTS:   This bill:

 prohibits any person from applying to purchase more than
  one handgun from a licensed firearms dealer within any
  30-day period and makes violation of this provision an
  infraction; a third or subsequent violation would be a
  misdemeanor, and
 prohibits a licensed firearms dealer from providing a
  handgun to a person when the dealer has been notified by
  the Department of Justice (DOJ) that that person has
  applied to purchase a handgun more than once during a
  30-day period.  Generally, a violation of this provision
  would be a wobbler, punishable by up to one year in
  county jail or in state prison, or by a fine of up to
  $1,000, or both.

SB 513 (Hayden) of 1998 was similar to this bill but the
related provisions were amended out of the bill on the
Assembly floor.  AB 532 (Knox) of 1998 was similar to this
bill and failed passage on the Assembly floor.

There were no prison admissions during 1997-98 for similar
prohibitions on gun sales.  Annual incarceration costs are
$21,243 per inmate.  It would take 8 prison admissions to
exceed annual incarceration costs of $150,000.  In some
cases, it may be more appropriate to use the "overcrowding"
rate of $11,321 per inmate year.  Some persons may be
punished by a fine rather than imprisonment.  In addition,
there are unknown increased mandated, nonreimbursable costs
for county jail and probation.

AG_Nguyen-0000024

AG_Nguyen-0000025

BILL ANALYSIS

```
--------------------------------------------------------------
|SENATE RULES COMMITTEE       |                    AB 202|
|Office of Senate Floor Analyses |                      |
|1020 N Street, Suite 524     |                          |
|(916) 445-6614        Fax: (916) |                      |
|327-4478                     |                          |
--------------------------------------------------------------
```

                        THIRD READING

Bill No:  AB 202
Author:  Knox (D), et al
Amended:  4/6/99 in Assembly
Vote:    21


  SENATE PUBLIC SAFETY COMMITTEE  :  5-1, 6/8/99
AYES:  Vasconcellos, Burton, Johnston, McPherson, Polanco
NOES:  Rainey

  SENATE APPROPRIATIONS COMMITTEE  :  9-4, 6/28/99
AYES:   Johnston, Alpert, Bowen, Burton, Escutia, Karnette,
McPherson,
  Perata, Vasconcellos
NOES:   Johnson, Kelley, Leslie, Mountjoy

  ASSEMBLY FLOOR  :  42-30, 4/22/99 - See last page for vote


  SUBJECT  :   Handgun purchases - limit to one per individual
per 30-day
            period

  SOURCE  :   Author


  DIGEST  :   This bill generally limits purchases of handguns
from licensed firearms dealers in California to no more
than one per person per month, as specified.

  ANALYSIS  :   Existing law governs the sale and purchase of
firearms in California.  Various restrictions are placed on
the purchase of firearms, including a pistol, revolver, or
firearm capable of being concealed upon the person, such as
                                    CONTINUED


                            AB 202
                            Page
2

a background check, a waiting period, and generally the
presentation of a basic firearm safety certificate.
Transactions between private parties are subject to those
restrictions as well and must be made through a licensed
dealer or a law enforcement agency in smaller counties.
Persons in prohibited categories may not purchase or
possess firearms at all.  (Penal Code sections 12070 --
12086)

This bill prohibits any person from applying to purchase
more than one concealable firearm from a licensed firearms
dealer within a 30-day period and provides that no delivery
shall be made to any person who has made an application to
purchase more than one concealable firearm within 30 days,
as follows:

1. Provides that no person shall make an application to
   purchase more than one pistol, revolver or other firearm
   capable of being concealed on the person from a licensed
   firearms dealer within any 30-day period.  Exempts
   private party transactions (which must be made through a
   licensed firearms dealer or a sheriff's office in smaller
   counties); law enforcement; entertainment/theatrical
   companies; licensed collectors; and the exchange,
   replacement or return of a concealable firearm under
   specified conditions.

2. Provides the following penalties for making an
   application for more than one concealable firearm in any
   30-day period:

   A.  A first violation is an infraction punishable by a
       fine of $50;

   B.  A second violation is an infraction punishable by a
       fine of $100; and,

AG_Nguyen-0000026

C.   A third or subsequent violation is a misdemeanor
     (punishable in the county jail up to six months, or by
     a fine not greater than $1,000, or both, pursuant to
     Penal Code section 19).

3.  Provides that each application to purchase a
    concealable firearm in violation of these provisions

shall be deemed a separate offense.

4.  Prohibits delivery of such firearms by a licensed
    dealer to any person who has made an application to
    purchase more than one pistol, revolver, or other firearm
    capable of being concealed on the person within any
    30-day period when the dealer is notified by the
    Department of Justice that a person has made more than
    one application to purchase such firearms within that
    time period (punishable as a misdemeanor/felony).

5.  Makes related changes and additions to law, including a
    requirement that licensed firearms dealers must post a
    notice about the provisions of this bill.

    Existing Law Pertaining to Firearms Purchases

    The sale, loan or transfer of a firearm must generally be
conducted by or through a state licensed firearms dealer or
through a local sheriff's department in counties of less
than 200,000 persons.  As part of this process, the 10-day
waiting period/background check/handgun safety certificate
are required prior to delivery of the firearm.  In
addition, handguns are centrally registered with DOJ as
part of this process.

A violation of these provisions as to handguns is an
alternate felony/misdemeanor punishable by up to one year
in the county jail or by imprisonment in the state prison
punishable by 16 months, two or three years.

Bulk purchase limits are aimed at so-called "straw
transactions".  A straw transaction usually involves "A"
buying the gun for "B" because "B" may not legally buy the
gun.  These types of transactions may occur in various
circumstances.  Typically, they occur because the true
purchaser is under age 21, has a specified prior
conviction, has a mental disorder, or is not a resident.

    Straw transactions violate state law

Straw transactions also violate federal law.  It is
reported that people travel to a state with weaker gun
laws, acquire guns in that state, and then transport them

back into their state of residency.

The federal Gun Control Act is designed to, among other
provisions, require residents of a state to acquire
firearms in their own state of residence.  It does so by
two means.  First, a person cannot acquire a firearm in one
state and then personally transport it into his/her own
state of residency.  He or she cannot receive the gun
unless the gun is being processed through a federal
firearms dealer in that state, who must follow state law on
gun deliveries.

In addition, a person who is not a federal firearms
licensee cannot deliver a firearm to a resident of another
state who is not federally licensed.  The only way that
such a transaction can occur is if the transaction is
brokered through a federal firearms licensee in the
recipient's state of residence.

The 1994 federal crime bill made it an enhanced criminal
offense for an individual to go into another state to
acquire firearms and then return to his or her own state
and sell those firearms.  (See 18 USC 923(m).)

    Assumptions about Limits on Purchases of Handguns

The State of Virginia enacted a "one-handgun-a-month" law

in 1993 (before the Federal Brady Bill, which required at
least a five day waiting period plus a background check for
states without such requirements).  That state had weak
restrictions on handgun sales and it has been stated that
gun traffickers from New York City routinely traveled to
Virginia to purchase quantities of weapons to take back for
illegal sale in other states.  Purchases of more than one
handgun per 30-day period in Virginia is allowed upon
completion of an "enhanced" background check when the
purchase is for lawful business or personal use, for
purposes of collectors, bulk sales and purchases from
estates, to replace a lost or stolen weapon, and similar
situations.

Supporters of limits on purchases of handguns assume that
the Virginia limits and the limits in this bill would only
affect a very small proportion of legitimate handgun

                                        AB 202
                                        ─────
                                        Page
─
5

purchasers.  A family of two adults could still purchase 24
handguns a year under the provisions of both this bill and
the Virginia law.

 Multiple Handgun Purchases in California

Information provided by the Department of Justice indicates
that in 1998, there were 141,823 lawful handgun purchases
in California which involved one transferee and one handgun
in a single calendar month.  There were 12,989 transactions
involving one tranferee who obtained two handguns in single
calendar month; 2,282 involved three handguns in a single
month transferred to the same individual; and 91 transfers
which involved one transferee and more than 10 handguns in
a single calendar month.  Other multiple handgun
transactions include one person in July of 1998 who
obtained 41 to 80 handguns.

Those figures include persons who would be exempted by this
bill, such as a licensed collector, and transactions
between private parties which were lawfully made through a
licensed dealer or a sheriff's office.

Previous information for the Department of Justice provided
to this Committee indicated that in 1992 there were 2,784
persons who purchased five or more handguns and in 1993
there were 2,877 persons who purchased five or more
handguns.

Since this bill would allow twelve handgun purchases a
year, it would appear that this bill would have affected a
relatively small number of purchasers in any given year.
It could, of course, inconvenience some of those purchasers
if their desire is to purchase all twelve handguns at one
time.

The DOJ figures also indicate that in 1993, 245 individuals
purchased 12 or more handguns.  The number of persons who
purchased 20 or more handguns dwindles rapidly with only 83
purchasing more than 20 handguns in 1993.  However, one
person did purchase 84 handguns that year.

 Local Ordinances Limiting Handgun Purchases

─

                                        AB 202
                                        ─────
                                        Page
─
6

Some local ordinances limiting handgun purchases in local
areas have been enacted in California.  For example,
background provided by the author includes a copy of Los
Angeles Municipal Code Section 55.14 on which is
handwritten "1/27/99 LA Council approved."  That ordinance
is very similar to AB 202 as currently amended, although
the LA ordinance does contain an exemption for "collector's
series or a bulk purchase from an estate" and the penalty
dealer violations is assumed to be a misdemeanor.  AB 202
does not contain that exemption and the penalty for dealer
violations in the bill is an alternate misdemeanor/felony.

Government Code section 53071 declares the ". . . intention
of the Legislature to occupy the whole field of regulation
of the registration or licensing of commercially
manufactured firearms as encompassed by the provisions of
the Penal Code, and such provisions shall be exclusive of

```
all local regulations, relating to registration or
licensing of commercially manufactured firearms . . ."
which would indicate that AB 202 would preempt such local
ordinances.  The City of Los Angeles is in support of AB
202, presumably because a local ordinance would not stop
city residents from purchasing handguns outside of the city
or any other city which individually has adopted such a
restriction.
```

  Prior legislation  :

```
SB 513 (Hayden) passed the Senate 21-16 on 5/27/97 -
provisions subsequently deleted in the Assembly.

AB 532 (Knox) - died on Assembly Floor inactive file
(1997-98).
```

  FISCAL EFFECT :    Appropriation:  No   Fiscal Com.:  Yes
Local:  Yes

                    Fiscal Impact (in thousands)

| Major Provisions | 1999-2000 | 2000-01 |
|---|---|---|
| 2001-02 | Fund | |
| Misdemeanor | Unknown increased mandated, non- | |
| Local | | |

```
                        Reimbursable costs for county
jail
                    And probation
Felony              Unknown increased costs, probably
     General
                    Less than $150 annually, for
incarcer-
                    ation in state prison
```

  SUPPORT  :   (Verified  6/29/99)

```
City of Oakland
Santa Clara County Board of Supervisors
League of California Cities
California Teachers Association
City of West Hollywood
Handgun Control
City of Los Angeles
Los Angeles Police Department
California Nurses Association
California Peace Officers' Association
California Police Chiefs' Association
ACLU
Legal Community Against Violence
Los Angeles County District Attorney's Office
Attorney General's Office
California Church IMPACT
California Child, Youth and Family Coalition
Violence Prevention Coalition of Greater Los Angeles
Trauma Foundation
Orange County Citizens for the Prevention of Gun Violence
California District, American Academy of Pediatrics
Mayor, City of Hayward
Gray Panthers of Northern California
City of Alameda
Women Against Gun Violence
Physicians for a Violence-free Society
Individual letters
```

  OPPOSITION  :   (Verified  6/29/99)

```
California Shooting Sports Association
California Rifle and Pistol Association
National Rifle Association
```

```
Gun Owners of California
Gun/Truth Association
Peace Officers Research Association of California
Individual letters
```

  ARGUMENTS IN SUPPORT  :   According to the author, there is
no limit on the number of handguns that may be purchased

AG_Nguyen-0000029

from a dealer.  This makes it easy for straw purchasers to
acquire guns for another person or for street dealers to
acquire guns legitimately.  Handguns make up an
overwhelming share of crime guns and a significant number
are traceable to dealer transactions.  AB 202 will curtail
the illegal gun market, disarm criminals, and save lives by
preventing multiple purchases of handguns through
legitimate channels.  Preventing multiple purchases takes
the profit out of black market sales and puts gun
traffickers and straw purchasers out of business.

   ARGUMENTS IN OPPOSITION  : The National Rifle Association
opposition to this bill includes:

      [AB 32] proposes that no person could "take title" to
      more than one handgun during a 30-day period.
      However, [AB 32] would also exempt a daunting list of
      people, agencies, firearms and specific types of
      transactions from that restriction.  The underlying
      notions that drive AB 32 are:

      - The existing background check, registration and
      waiting period for handguns is ineffective and/or

      - Law enforcement makes little or no effort to
      investigate "straw" sales.

      Once again the rationale for a new gun control bill is
      the "failure of the old".

The NRA goes on to ask why so many peace officers,
including for example "a county water district security
officer (830.34 Penal Code)" who collects guns should be
able to purchase unlimited handguns while a concealed
weapons permit holder or a retired peace officer could not.

The NRA has also suggested that if "straw" sales are of

                                             AB 202
                                        Page
 9

concern, multiple purchases of handguns could involve a
20-day waiting period, a set time and date for transfer,
and notification to local law enforcement about when the
transfer is scheduled to take place.

The presumption is that a purchaser buying more than one
relatively expensive handgun is not as likely to be engaged
in straw sales as a purchaser of relatively inexpensive
handguns.

The California Rifle and Pistol Association asserts that
existing penalties are already sufficient to deter illegal
sales in general.

   ASSEMBLY FLOOR  :
AYES:  Alquist, Aroner, Bock, Calderon, Cardenas, Cedillo,
  Corbett, Correa, Davis, Dutra, Firebaugh, Floyd,
  Gallegos, Hertzberg, Honda, Jackson, Keeley, Knox, Kuehl,
  Lempert, Longville, Lowenthal, Mazzoni, Migden, Nakano,
  Papan, Reyes, Romero, Scott, Shelley, Soto, Steinberg,
  Strom-Martin, Thomson, Torlakson, Vincent, Washington,
  Wayne, Wesson, Wiggins, Wildman, Villaraigosa
NOES:  Aanestad, Ackerman, Ashburn, Baldwin, Bates, Battin,
  Baugh, Briggs, Campbell, Cardoza, Cox, Dickerson, Florez,
  Frusetta, Granlund, Havice, House, Kaloogian, Leonard,
  Maldonado, Margett, McClintock, Olberg, Oller, Robert
  Pacheco, Runner, Strickland, Thompson, Wright, Zettel
NOT VOTING:  Brewer, Cunneen, Ducheny, Leach, Machado,
  Maddox, Rod Pacheco, Pescetti

RJG:jk  6/30/99    Senate Floor Analyses

            SUPPORT/OPPOSITION:  SEE ABOVE

               ****  END  ****

AG_Nguyen-0000030

SB 61
Page 1

Date of Hearing:  July 10, 2019

ASSEMBLY  COMMITTEE  ON  APPROPRIATIONS
Lorena Gonzalez,  Chair
SB 61 (Portantino)  – As Amended  June 11, 2019

Policy  Committee:     Public  Safety                                    Vote:     5 - 2

Urgency:  No           State Mandated Local Program:  Yes           Reimbursable:  Yes

**SUMMARY**:

This bill  prohibits  a person from  making an application  to purchase more than one firearm  of any
type within  any 30-day  period.  This bill  specifically  prohibits  a person from making  an
application  to purchase more than one long gun in any 30-day period unless  the person has a
hunting  license issued by the Department  of Fish and Wildlife  and a certificate  of eligibility
issued by the Department  of Justice (DOJ). This bill  also prohibits,  beginning  January 1, 2021,
the sale of a semiautomatic  centerfire  rifle  to any person under 21 years of age.

**FISCAL  EFFECT**:

1)  DOJ estimates  an overall  annual  revenue reduction  of 10% in fee collection  (Firearms  Safety
    and Enforcement  Fund/Dealer  Record  of Sale Special Account) resulting  from fewer firearm
    purchases, equating  to an overall  loss of $2.23 million  dollars annually.

2)  Sales tax revenue loss (GF) likely  in the hundreds  of thousands  of dollars to low millions  of
    dollars annually  due to the limitation  on the number  of firearms  that may be purchased in a
    30-day  period.

3)  One-time  costs (GF/Dealer  Record  of Sale Account)  of $281,000 to the DOJ for limited  term
    information  technology  staff and equipment  to update systems to track both handguns  and
    long guns to ensure only one purchase within  a 30-day  period.

**COMMENTS**:

1)  **Purpose.**  According  to the author:

    More and more shootings  are occurring  with long guns so it is important  that we treat the
    laws of both handguns  and long guns the same.  The law that passed last year requiring
    no one under the age of 21 to purchase a firearm  has exemptions  that we are
    strengthening  and tightening  when it comes to the purchase of semi-automatic  center fire
    rifle  by requiring  the person to obtain  a [certificate  of eligibility]  with the DOJ as well.

2)  **Dealer Record of Sale (DROS)  Special Account.**  The DROS Special Account has
    experienced  significant  revenue decreases in recent years to the extent that it is structurally
    imbalanced.  Penal Code section 30015, subdivision  (a) codified  the allocation  of $24 million
    dollars  from the DROS Special Account to address the APPS backlog  in 2013 largely
    resulting  in the structural  imbalance.  AB 74 (Committee  on Budget),  Chapter 23, Statutes of
    2019, allocates  approximately  $22 million  dollars to backfill  the DROS Special Account.

AG_Nguyen-0000031

Additionally, existing law specifically limits how DOJ may use DROS funds, including costs associated with the Armed Prohibited Persons System (APPS), background checks, inspection for security and safe storage, regulating transfer for sale via the internet, certain public education campaigns, private patrol operator regulations and re-testing for not unsafe handguns. DOJ is not authorized to use DROS funds for general law enforcement purposes.

Over the past five years, there is increasing litigation over whether DOJ is improperly using DROS funds. Case law prohibits taxing a constitutional right unless it is necessary to meet the "expense incident to the administration of the act and to the maintenance of public order in the matter licensed." <u>Cox v. New Hampshire</u> (1941) 312 U.S. 569, 577. Further loss of revenue to the DROS Special Account due to the reduction in the number of firearms sold may result in increased fees and a greater need to use DROS funds for general law enforcement activities. This may result in more litigation and associated costs.

3) **Related Legislation.** AB 1669 (Bonta) creates the Dealers' Record of Sale Supplemental Subaccount within the DROS Special Account to offset the reasonable costs of firearms-related regulatory and enforcement activities related to the sale, purchase, manufacturing, lawful or unlawful possession, loan, or transfer of firearms. AB 1669 is pending hearing in the Senate Public Safety Committee.

4) **Prior Legislation.**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the minimum age, from 18 years to 21 years, for which a person may purchase a long-gun from a licensed dealer, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1674 was vetoed by the Governor.

**Analysis Prepared by**: Kimberly Horiuchi / APPR. / (916) 319-2081

AG_Nguyen-0000032

SENATE THIRD READING
SB 61 (Portantino)
As Amended  September 6, 2019
Majority  vote

## SUMMARY:

Prohibits  the sale of a semiautomatic  centerfire  rifle  to any person under 21 years of age, and prohibits  a person from  making  an application  to purchase more  than one semiautomatic centerfire  rifle  in any 30-day period, except as specified.

**Major Provisions**

1) Prohibits  a person from  making  an application  to purchase more  than one centerfire automatic  rifle  within  any 30-day period and makes conforming  changes to the existing prohibition  against the purchase of more than one handgun  in any 30-day period.

2) Adds the following  entities  to the existing  exemption  to the 30-day prohibition  relating  to sale of handguns:

    a) The purchase of a firearm  other than a handgun  by a person who possesses a valid, unexpired  hunting  license  issued by the Department  of Fish and Wildlife;

    b) The acquisition  of a firearm,  other than a handgun,  at an auction or similar  event conducted  by a nonprofit  public benefit,  or mutual  benefit  corporation  to fund the activities  of that corporation  or local chapter of that corporation;  and,

    c) Clarifies  that for the purpose of the above exemption,  the frame  or receiver of a firearm  is a handgun,  unless  the application  to purchase and delivered  to the recipient  is equipped with, is attached to, or is currently  accompanied  by, a barrel  of 16 inches  or greater in length.

3) Provides that a licensed  firearms  dealer shall not sell, supply, deliver,  or give possession of a firearm  to any person under 21 years of age. This provision  shall not apply to or affect the sale of a firearm  that is not a handgun  or a semiautomatic  centerfire  rifle  to a person 18 years of age or older that possesses a valid  unexpired  hunting  license  issued by the Department  of Fish and Wildlife,  or is an honorably  discharged  member  of the United  States military.

4) States that the provisions  of this bill  are severable.

## COMMENTS:

**According  to the Author:**

"More  and more shootings  are occurring  with  long guns so it is important  that we treat the laws of both handguns  and long guns the same.  The law that passed last year requiring  no one under the age of 21 to purchase a firearm  has exemptions  that we are strengthening  and tightening when  it comes to the purchase of semi-automatic  center fire  rifle  by requiring  the person to obtain a CEO with  the [Department  of Justtice]  as well."

**Arguments in Support:**

According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬- pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**

According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first

**SB 61**
Page 3

firearm.  Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (General Fund (GF)) likely in the hundreds of thousands of dollars annually due to the limitation on the number of centerfire semiautomatic rifles that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of less than $100,000 to the DOJ for limited term information technology staff and equipment to update systems to track centerfire semiautomatic rifles to ensure only one purchase within a 30-day period.

## VOTES:

**SENATE FLOOR:  27-10-1**
**YES:**  Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:**  Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:**  Roth

**ASM PUBLIC SAFETY:  5-2-1**
**YES:**  Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:**  Lackey, Mathis
**ABS, ABST OR NV:**  Kamlager-Dove

**ASM APPROPRIATIONS:  13-5-0**
**YES:**  Gonzalez, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Gabriel, Eduardo Garcia, Maienschein, Petrie-Norris, Quirk, Robert Rivas
**NO:**  Bigelow, Brough, Diep, Fong, Obernolte

## UPDATED:

VERSION: September 6, 2019

CONSULTANT:  Gregory Pagan (Counsel) / PUB. S. / (916) 319-3744          FN: 0002053

SB 61<br>Page  1

SENATE  THIRD  READING
SB 61 (Portantino)
As Amended  September 3, 2019
Majority  vote

## SUMMARY:

Prohibits  the  sale  of a semiautomatic  centerfire  rifle  to any person  under  21 years  of age, and
prohibits  a person  from  making  an application  to purchase  more  than  one semiautomatic
centerfire  rifle  in any 30-day period, except  as specified.

### Major Provisions

1)  Prohibits  a person  from  making  an application  to purchase  more  than  one centerfire
    automatic  rifle  within  any 30-day period  and makes  conforming  changes  to the existing
    prohibition  against  the purchase  of more  than  one handgun  in any 30-day period.

2)  Adds the following  entities  to the existing  exemption  to the 30-day prohibition  relating  to
    sale of handguns:

    a)  The purchase  of a firearm  other  than  a handgun  by a person  who possesses  a valid,
        unexpired  hunting  license  issued  by the Department  of Fish  and Wildlife;

    b)  The acquisition  of a firearm,  other  than  a handgun,  at an auction  or similar  event
        conducted  by a nonprofit  public  benefit,  or mutual  benefit  corporation  to fund  the
        activities  of that corporation  or local chapter  of that corporation;  and,

    c)  Clarifies  that  for the purpose  of the above  exemption,  the frame  or receiver  of a firearm  is
        a handgun,  unless  the application  to purchase  and delivered  to the recipient  is equipped
        with,  is attached  to, or is currently  accompanied  by, a barrel  of 16 inches  or greater  in
        length.

3)  Provides  that a licensed  firearms  dealer  shall  not sell, supply,  deliver,  or give possession  of a
    firearm  to any person  under  21 years  of age. This  provision  shall  not apply  to or affect  the
    sale of a firearm  that  is not a handgun  or a semiautomatic  centerfire  rifle  to a person  18 years
    of age or older  that possesses  a valid  unexpired  hunting  license  issued  by the Department  of
    Fish  and Wildlife,  or is an honorably  discharged  member  of the United  States  military.

4)  States  that the provisions  of this bill are severable.

## COMMENTS:

### According  to the Author:

"More  and more  shootings  are occurring  with  long  guns  so it is important  that we treat the laws
of both handguns  and long  guns  the same.  The law that passed  last year  requiring  no one under
the age of 21 to purchase  a firearm  has exemptions  that we are strengthening  and tightening
when it comes  to the purchase  of semi-automatic  center  fire  rifle  by requiring  the person  to
obtain  a CEO with  the DOJ as well."

AG_Nguyen-0000036

**Arguments in Support:**

According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬- pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**

According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first

firearm.  Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (General Fund (GF)) likely in the hundreds of thousands of dollars annually due to the limitation on the number of centerfire semiautomatic rifles that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of less than $100,000 to the DOJ for limited term information technology staff and equipment to update systems to track centerfire semiautomatic rifles to ensure only one purchase within a 30-day period.

## VOTES:

**SENATE FLOOR: 27-10-1**
**YES:** Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:** Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:** Roth

**ASM PUBLIC SAFETY: 5-2-1**
**YES:** Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:** Lackey, Mathis
**ABS, ABST OR NV:** Kamlager-Dove

**ASM APPROPRIATIONS: 13-5-0**
**YES:** Gonzalez, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Gabriel, Eduardo Garcia, Maienschein, Petrie-Norris, Quirk, Robert Rivas
**NO:** Bigelow, Brough, Diep, Fong, Obernolte

## UPDATED:

VERSION: September 3, 2019

CONSULTANT:  Gregory Pagan (Counsel)/ PUB. S. / (916) 319-3744          FN: 0001642

AG_Nguyen-0000038

SB 61
Page 1

Date of Hearing:  June 25, 2019
Chief Counsel:    Gregory Pagan

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 61 (Portantino) – As Amended June 11, 2019

**SUMMARY:** Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one long gun in any 30-day period, except as specified.   Specifically, **this bill**:

1) Prohibits a person from making an application to purchase more than one firearm of any type within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period. (Pen. Code, § 27535, subd. (a).)

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

   a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

   c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that effective January 1, 2021 a licensed firearms dealer shall not sell, supply, deliver, or give a semiautomatic centerfire rifle to any person under 21 years of age. This provision shall not apply to any of the following persons 18 years of age or older:

   a) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   b) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   d) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the

AG_Nguyen-0000039

individuals in these organizations are properly identified. Proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member; and,

e) A person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife and a certificate of eligibility issued by the Department of Justice (DOJ).

**EXISTING LAW:**

1) Prohibits a licensed firearms dealer from selling, supplying, or giving possession or control of a firearm to any person under 21 years of age. (Pen. Code, § 27510, subd. (a).)

2) Provides that the above prohibition does not apply to or affect the sale, supplying, or giving possession or control of a firearm to any person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife. (Pen. Code, § 27510, subd. (b)(1).)

3) Exempts the sale of a firearm, that is not a handgun, to the following persons that are 18 years of age or older:

   a) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   b) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment; and,

   d) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the individuals in these organizations are properly identified. Proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member. (Pen. Code, §27510, subd. (b)(2).)

4) Prohibits any person from making an application to purchase more than one handgun within any 30-day period. (Pen. Code, § 27535, subd. (a).)

5) Exempts from the above 30-day prohibition any of the following:

   a) Any law enforcement agency;

   b) Any agency duly authorized to perform law enforcement duties;

   c) Any state or local correctional facility;

   d) Any private security company licensed to do business in California;

e) Any person who is a peace officer, as specified, and is authorized to carry a firearm in the course and scope of employment;

f) Any motion picture, television, video production company or entertainment or theatrical company whose production by its nature involves a firearm;

g) Any authorized representative of a law enforcement agency, or a federally licensed firearms importer or manufacturer;

h) Any private party transaction conducted through a licensed firearms dealer;

i) Any person who is a licensed collector and has a current certificate of eligibility issued by the DOJ;

j) The exchange, replacement, or return of a handgun to a licensed dealer within the 30-day period; and,

k) A community college that is certified by the Commission on Peace Officer Standards and Training (POST) to present law enforcement academy basic course or other commission-certified training. (Pen. Code, § 27535, subd. (b).)

6) Provides that a person may request a certificate of eligibility form the DOJ, and requires the department to examine its records and records available to the department in the National Instant Criminal Background Check System (NICS) in order to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. (Pen. Code, § 26710, subds. (a) & (b).)

7) Requires DOJ to issue a certificate of eligibility to an applicant if the if the department's records indicate that the person is not a person who is prohibited by state or federal law from possessing a firearm, and requires the department regulations to administer the certificate of eligibility program and shall recover the full costs of administering the program by imposing fees assessed to applicants who apply for those certificates. (Pen. Code, § 26710, subds. (c) & (d).)

**FISCAL EFFECT**: Unknown

**COMMENTS**:

1) **Author's Statement:** According to the author, "More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

2) **Governor's Vetoes:** AB 1174 (Santiago), of the 2015-2016 Legislative Session, and SB 1177 (Portantino), of the 2017-2018 Legislative Session, each prohibited any person from making more than one application to purchase a long gun within any 30 day period. Both AB 1174 and SB 1177 were vetoed by the Governor.

In regard to AB 1174, the Governor stated in his veto message, "This bill generally prohibits the purchase of more than one firearm within any 30 day period. It should be noted that California already bans the purchase of more than one handgun per month. While well intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need. Given California's restricting gun ownership, I do not believe this additional restriction is needed."

In regard to SB 1177, the Governor stated in his veto message, "This bill prohibits a person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed."

3) **Argument in Support:** According to the *Ventura County Board of Supervisors*, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi--- pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

4) **Argument in Opposition:** According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate

AG_Nguyen-0000042

recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

5) **Prior Legislation:**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the age for which a person can purchase a long-gun from a licensed dealer from 18-21 years of age, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long one within any 30 day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30 day period. SB 1674 was vetoed by the Governor.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

Bay Area Student Activists
Brady California United Against Gun Violence
California Police Chiefs Association
Coalition Against Gun Violence, A Santa Barbara County Coalition
Laguna Woods Democratic Club
Los Angeles City Attorney
Los Angeles County Board of Supervisors
Physicians for Social Responsibility - San Francisco Bay Area Chapter

Ventura  County  Board  of Supervisors
Women For: Orange  County

**Oppose**

California  Rifle  and Pistol Association,  Inc.
California  Sportsman's  Lobby, Inc.
Gun Owners of California,  Inc.
National  Rifle  Association  - Institute  for Legislative  Action
National  Shooting  Sports Foundation,  Inc.
Outdoor Sportsmen's  Coalition  of California
Safari Club International  - California  Chapters

**Analysis  Prepared  by**: Gregory Pagan / PUB. S. / (916) 319-3744

AG_Nguyen-0000044

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Anthony Portantino, Chair
### 2019 - 2020  Regular  Session

**SB 61 (Portantino) - Firearms:  transfers**

**Version:** January 3, 2019               **Policy Vote:** PUB. S. 5 - 2
**Urgency:** No                            **Mandate:** Yes
**Hearing Date:** April 22, 2019           **Consultant:** Shaun Naidu

**Bill Summary:**  SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- Fee revenue loss:  The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million.  See comment below.  (Various special funds)

- Tax revenue loss:  Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase.  (General Fund, local funds)

- System update:  The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses.  (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Background:**  Existing law prohibits any person from making an application to purchase more than one handgun within any 30-day period.  The handgun purchase limitation, however, does not apply to the following:
- Any law enforcement agency;
- Any agency duly authorized to perform law enforcement duties;
- Any state or local correctional facility;
- Any private security company licensed to do business in California;
- Any person who is properly identified as a full-time paid peace officer, as defined, and who is authorized to, and does, carry a firearm during the course and scope of employment as a peace officer;
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm;
- Any person who may claim an exemption from the waiting period set forth in Penal Code section 27540;
- Any private party transaction conducted through a licensed firearms dealer;
- Any person who is licensed as a collector and the regulations issued pursuant thereto and has a current certificate of eligibility issued by DOJ;
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement;

- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase the replacement handgun;
- The return of any handgun to its owner; or
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

The punishment for making an application to purchase more than one handgun within a 30-day period without an exception is as follows:
- A first violation is an infraction punishable by a base fine of $50.
- A second violation is an infraction punishable by a base fine of $100.
- A third or subsequent violation is a misdemeanor punishable by imprisonment in the county jail for up to six months, a base fine of up to $1,000, or both the imprisonment and fine.

Each application to purchase a handgun during the prohibited period is deemed a separate offense.

**Proposed Law:** This bill would extend the limitation of making an application to purchase more than one handgun in a 30-day period, along with the exceptions to the limitation, to all types of firearms. This bill would expand the exception to the limitation relative to long guns to a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife and the acquisition of a long gun at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of the corporation or its local chapter. For the purpose of these two exceptions, the barrel must be at least 16 inches in length.

**Related Legislation:** SB 1177 (Portantino, 2018) and AB 1674 (Santiago, 2016) similarly attempted to extend the limitation of purchasing one handgun within a 30-day period to the purchase of all types of firearms. The Governor vetoed both measures. In his message on AB 1674, the Governor stated that he believed that the bill "would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need[ ]" and that this additional restriction is not needed given the state's stringent laws restricting gun ownership. With respect to SB 1177, the Governor stated that his "views have not changed" since vetoing AB 1674.

**Staff Comments:** The Department of Justice estimates annual reductions of the specified amounts of fee collection for the following special funds resulting from SB 61: a $1.7 million decrease to DROS, a $441,000 decrease to the Firearms Safety and Enforcement Special Fund, and an $88,000 to the Firearm Safety Account is predicted to decrease by $88,000. In addition to experiencing the largest impact with respect to fee revenue loss, DROS also would be used to fund the limited-term position the department anticipates requiring to implement SB 61. The Dealers Record of Sale Special Account has experienced significant revenue decreases in recent years to the extent that it is structurally imbalanced. From FY 2017-18 to FY 2018-19 DROS revenues dropped by 22 percent; proposed revenue for FY 2019-20 is projected to remain consistent with 2018-19, however. The FY 2019-20 proposed budget anticipates a beginning balance of $6.159 million, revenues of $21.471 million,

**SB 61 (Portantino)**                                                     Page **3** of **3**

expenditures of $24.88 million, and an ending reserve of $2.75 million.  Given the operational deficit of DROS, the revenue loss and added expense resulting from SB 61 would create cost pressure on the General Fund to backfill any shortage.

**-- END --**

AG_Nguyen-0000047

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Anthony Portantino, Chair
### 2019 - 2020 Regular Session

**SB 61 (Portantino) - Firearms: transfers**

**Version:** January 3, 2019          **Policy Vote:** PUB. S. 5 - 2
**Urgency:** No                        **Mandate:** Yes
**Hearing Date:** May 16, 2019         **Consultant:** Shaun Naidu

# *********** ANALYSIS ADDENDUM – SUSPENSE FILE ***********
## The following information is revised to reflect amendments
## adopted by the committee on May 16, 2019

**Bill Summary:** SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- <u>Fee revenue loss</u>: The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

- <u>Tax revenue loss</u>: Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

- <u>System update</u>: The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

\* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Author Amendments:** Prohibit the sale of a semiautomatic centerfire rifle to specified exempted persons under age 21 and delay the effective date of specified provisions.

## -- END --

**SENATE RULES COMMITTEE**                                    SB 61
Office of Senate Floor Analyses
(916) 651-1520    Fax: (916) 327-4478

---

UNFINISHED BUSINESS

---

Bill No:    SB 61
Author:     Portantino (D), et al.
Amended:    9/6/19
Vote:       21

---

SENATE PUBLIC SAFETY COMMITTEE:  5-2, 4/2/19
AYES:  Skinner, Bradford, Jackson, Mitchell,  Wiener
NOES:  Moorlach, Morrell

SENATE APPROPRIATIONS COMMITTEE:  4-2, 5/16/19
AYES:  Portantino, Bradford, Hill,  Wieckowski
NOES:  Bates, Jones

SENATE FLOOR:  27-10, 5/22/19
AYES:  Allen, Archuleta, Atkins, Beall,  Bradford, Caballero, Dodd, Durazo,
  Galgiani,  Glazer, Hertzberg, Hill,  Hueso, Hurtado, Jackson, Leyva, McGuire,
  Mitchell,  Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg,
  Wieckowski,  Wiener
NOES:  Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell,  Nielsen, Stone,
  Wilk
NO VOTE RECORDED:  Roth

ASSEMBLY FLOOR:  46-17, 9/13/19
(ROLL CALL NOT AVAILABLE)

---

**SUBJECT:**  Firearms:  transfers

**SOURCE:**   Author

---

**DIGEST:**   This bill prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one semiautomatic centerfire rifle in any 30-day period, except as specified.

SB 61
Page 2

*Assembly Amendments* (1) limit the purchase limitations to one gun a month for semiautomatic centerfire rifles, in addition to handguns which are limited under existing law; (2) remove the language defining frames or receivers as firearms under specified scenarios; and (3) add double-jointing language to prevent chaptering issues with SB 172 (Portantino) and AB 645 (Irwin).

## ANALYSIS:

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to also include semiautomatic centerfire rifles.

2) Exempts the following from the one gun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves

the use of a firearm.

g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun or semiautomatic centerfire rifle where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun or semiautomatic centerfire rifle when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun or semiautomatic centerfire rifle to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

**Background**

*One Gun a Month.* According to the Senate Public Safety Committee analysis of AB 202 (Knox, 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely

traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may

not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*AB 1674 (Santiago, 2015): Veto Message.*  The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*SB 1177 (Portantino, 2018): Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.

> I vetoed a substantially similar bill in 2016, and my views have not changed.

**FISCAL EFFECT:**   Appropriation:   No    Fiscal Com.:   Yes    Local:   Yes

According to the Assembly Appropriations Committee:

- DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

- Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

- One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**SUPPORT:** (Verified  9/12/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles City Attorney
Los Angeles County Board of Supervisors

**OPPOSITION:** (Verified  9/12/19)

California  Rifle  and  Pistol  Association
California  Sportsman's  Lobby
Gun  Owners  of  California
National  Shooting  Sports  Foundation
Outdoor  Sportsmen's  Coalition  of  California
Safari  Club  International
Safari  Club  International  Foundation

**ARGUMENTS IN SUPPORT:**  According to Brady  California  United  Against
Gun Violence:

> In 1999, legislation  (AB 202) was enacted that limits  purchases of
> handguns from  licensed  firearms  dealers  in California  to no more than
> one per person per 30-day period. The purpose of the bill was to curb
> the illegal  flow of handguns by taking the profit out of selling  guns
> from bulk purchases on the black market. SB 61 applies existing law
> under AB 202 to long guns, including  rifles,  shotguns, and lower
> receivers.

> Under SB 61, firearms (handguns *and* long guns) will  not be delivered
> whenever the dealer is notified by the Department of Justice that
> within  the preceding 30-day period, the purchaser had made another
> application  to purchase a firearm.  Private party transactions will
> continue to be exempt. Additionally,  rifle and shotgun (but not lower
> receiver) purchasers with a valid hunting  license  issued by the
> Department of Fish and Wildlife  and the acquisition of a rifle  or
> shotgun at an auction or similar  event conducted by a nonprofit will
> be exempt.

> It stands to reason that a person buying  large quantities of guns at one
> time may be acting as a straw purchaser or gun trafficker.  Moreover,
> firearms acquired this way are frequently used in crime. In fact, an
> ATF study of tracing  data demonstrated that 22% of all handguns
> recovered in crime in 1999 were originally  purchased as part of a
> multiple  sale. A similar  study found that 20% of all handguns
> recovered in crime in 2000 were originally  purchased as part of a
> multiple  sale. Additionally,  a University  of Pennsylvania  report found
> that a quarter of all guns used in crime were purchased as part of a
> multiple-gun  sale and that guns purchased in bulk were up to 64%

more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California

businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by:  Gabe Caswell / PUB. S. /
9/13/19 19:33:29

**** END ****

**SENATE RULES COMMITTEE**                                                SB 61
Office of Senate Floor Analyses
(916) 651-1520    Fax: (916) 327-4478

---

### THIRD READING

---

Bill No:      SB 61
Author:       Portantino (D), et al.
Amended:      5/17/19
Vote:         21

---

SENATE PUBLIC SAFETY COMMITTEE:  5-2, 4/2/19
AYES:  Skinner, Bradford, Jackson, Mitchell,  Wiener
NOES:  Moorlach, Morrell

SENATE APPROPRIATIONS COMMITTEE: 4-2, 5/16/19
AYES:  Portantino, Bradford, Hill,  Wieckowski
NOES:  Bates, Jones

---

**SUBJECT:** Firearms:  transfers

**SOURCE:**   Author

---

**DIGEST:**   This bill is to extends the prohibition on purchasing more than one
handgun a month to include all firearms.

**ANALYSIS:**

Existing law:

1) Prohibits a person from making more than one application to purchase a
   handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering  a handgun to a person whenever the
   dealer is notified by the Department of Justice that within the preceding 30-day
   period the purchaser has made another application to purchase a handgun that
   does not fall within an exception to the 30-day prohibition. A violation of that
   delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

   h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

   i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

   j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

   k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

   l) The return of any handgun to its owner.

   m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

2) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

    a) Any law enforcement agency.

    b) Any agency duly authorized to perform law enforcement duties.

    c) Any state or local correctional facility.

    d) Any private security company licensed to do business in California.

    e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

    f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

    g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

    h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

    i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

    j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

    k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l)  The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer
    Standards and Training to present the law enforcement academy basic
    course or other commission-certified law enforcement training,

3)  Specifies that specified licensees shall not sell, supply, deliver, or give
    possession or control of a semiautomatic centerfire rifle to any person who is
    under 21 years of age, with specified exemptions.

## Background

*One Gun a Month.* According to the Senate Public Safety Analysis of Assembly
Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in
California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993
> (before the Federal Brady Bill, which required at least a five day
> waiting period plus a background check for states without such
> requirements). That state had weak restrictions on handgun sales and
> it has been stated that gun traffickers from New York City routinely
> traveled to Virginia to purchase quantities of weapons to take back for
> illegal sale in other states. Purchases of more than one handgun per
> 30-day period in Virginia is allowed upon completion of an
> "enhanced" background check when the purchase is for lawful
> business or personal use, for purposes of collectors, bulk sales and
> purchases from estates, to replace a lost or stolen weapon, and similar
> situations.

> Supporters of limits on purchases of handguns assume that the
> Virginia limits and the limits in this bill would only affect a very
> small proportion of legitimate handgun purchasers. A family of two
> adults could still purchase 24 handguns a year under the provisions of
> both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent
Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to
> 2012 and prohibited the purchase of more than one handgun per
> person in any 30-day period – significantly reduced the number of

crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun

within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Assembly Bill 1674 (Santiago), of 2015: Veto Message.* The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.
>
> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.
>
> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino), of 2018: Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.
>
> I vetoed a substantially similar bill in 2016, and my views have not changed.

*California Hunting Licenses.* This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

• Complete the California Hunter Education Certification requirements.
• Choose the correct type of hunting license.

- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

**FISCAL EFFECT:**  Appropriation:  No   Fiscal Com.:  Yes   Local:  Yes

According to the Senate Appropriations Committee:

*Fee revenue loss:*  The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million.   See comment below. (Various special funds)

*Tax revenue loss:*  Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

*System update:*  The Department of Justice anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**SUPPORT:** (Verified  5/16/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles County Board of Supervisors
Los Angeles City Attorney

**OPPOSITION:** (Verified  5/16/19)

California Rifle and Pistol Association
California Sportsman's Lobby

Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:** According to Brady California United Against Gun Violence:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.
>
> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.
>
> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's

wildlife.   The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month.  For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive.  Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired

effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by:  Gabe Caswell / PUB. S. /
5/20/19 10:19:57

**** **END** ****

# SENATE COMMITTEE ON PUBLIC SAFETY
### Senator Nancy Skinner, Chair
### 2019 - 2020 Regular

| | | | |
|---|---|---|---|
| **Bill No:** | SB 61 | **Hearing Date:** | April 2, 2019 |
| **Author:** | Portantino | | |
| **Version:** | January 3, 2019 | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | GC | | |

**Subject:** *Firearms: Transfers*

## HISTORY

Source:       Author

Prior Legislation:       SB 1177 (Portantino), 2018, vetoed
                         AB 1674 (Santiago), 2015, vetoed

Support:       Bay Area Student Activists; Brady California United Against Gun Violence; Coalition Against Gun Violence; Giffords Law Center to Prevent Gun Violence; Los Angeles County Board of Supervisors; Los Angeles City Attorney

Opposition:       California Rifle and Pistol Association; California Sportsman's Lobby; National Shooting Sports Foundation; Outdoor Sportsmen's Coalition of California; Safari Club International; Safari Club International Foundation

## PURPOSE

*The purpose of this bill is to extend the prohibition on purchasing more than one handgun a month to include all firearms.*

*Existing law* prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

*Existing law* prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

*This bill* extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

*Existing law* exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

- Any law enforcement agency.
- Any agency duly authorized to perform law enforcement duties.
- Any state or local correctional facility.
- Any private security company licensed to do business in California.
- Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.
- Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.
- Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).
- Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.
- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.
- The return of any handgun to its owner.
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

*This bill* adds the following exceptions to the one gun a month prohibition:

- The purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.
- The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of that corporation or local chapters of that corporation.

## COMMENTS

**1. Need for This Bill**

According to the author:

In California, existing law prohibits applying to purchase more than one handgun within a 30-day period and prohibits a firearms dealer from delivering a handgun to a person who has submitted more than one purchase application within a 30-day period. Unfortunately, when this became law it failed to include long guns. This is a simple fix to existing law that creates a safer process for the purchasing and delivering of all types of firearms in California.

## 2.  One Gun a Month

According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.
>
> Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:
>
> - 71% for guns recovered in New York;
> - 72% for guns recovered in Massachusetts; and
> - 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.
>
> (http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period. . .

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon. . .

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Assembly Bill 1674 (Santiago), of 2015: Veto Message*

The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino), of 2018: Veto Message*

The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.

> I vetoed a substantially similar bill in 2016, and my views have not changed.

## 3. California Hunting Licenses

This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements
- Choose the correct type of hunting license.
- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

## 4. Argument in Support

According to Brady California:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.

> Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons

with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

## 5. Argument in Opposition

According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

-- END –

Bill Lockyer, Attorney General

| | |
|---|---|
| California Department of Justice<br>FIREARMS DIVISION<br>Randy Rossi, Director | # INFORMATION BULLETIN |

| Subject:<br>**Assembly Bill (AB) 202 One Handgun Purchase Per Thirty (30) Days** | *No.:*<br>**99-07-FD** | *For further information contact:*<br>*Firearms Division* |
|---|---|---|
| | *Date:* **12/17/99** | *(916) 227-3703* |

### TO:  ALL FIREARM DEALERS

This is to notify you that effective January 1, 2000, the Department of Justice (DOJ) will begin screening all handgun transactions to ensure compliance with Assembly Bill 202 (Chapter 128, Statutes of 1999).  This new law prohibits California firearm dealers from selling/transferring title of any handgun to any person who has already acquired a handgun within the State of California in the past thirty (30) days.  This law has been incorporated into California Penal Code (PC) sections 12071 and 12072.

DOJ will reject Dealer's Record of Sale (DROS) applications submitted by any firearm dealer when it has been determined that the purchaser has completed a handgun DROS application that has been accepted by DOJ within the past thirty calendar days.  In computing the thirty day period, the date the DROS application is accepted for processing by DOJ shall count as the first day.  As a reminder, a DROS application has been accepted for processing by DOJ when a DROS number has been assigned by either the DROS Entry System (DES) point-of-sale device (PSD) or when MCI issues a DROS number over the telephone for an application that has been processed through the DES telephone call center.

DROS rejections based on violations of the thirty day restriction will be handled in the same manner as a DROS  denial/cancellation.  Accordingly, DOJ will notify the dealer of the DROS rejection by both telephone and U.S. mail.  Those dealers who have been assigned a PSD will receive an additional notice via the PSD e-mail notification system.  In such cases, the dealer will be advised that the rejection is based on a violation of the one handgun per 30-day limitation imposed by PC Section 12071.

There are several categories of persons/entities exempt from the new requirement, listed in PC Section 12072, including:

• 	Any law enforcement agency.

• 	Any agency duly authorized to perform law enforcement duties.

• 	Any state or local correctional facility.

• 	Any private security company licensed to do business in California.

• 	Any person who is properly identified as a full-time paid peace officer, who is authorized to, and does carry a firearm during the course and scope of his or her employment as a peace officer.

**Information Bulletin**
**AB 202- One Handgun Purchase Per Thirty (30) Days**
**Page 2**

- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

- Any person who may, pursuant to PC Section 12078, claim an exemption from the waiting period.

- Any private party sale or transfer conducted through a licensed dealer pursuant to PC Section 12082 (sale or transfer between two non-licensees).

- Any transaction conducted through a law enforcement agency pursuant to PC Section 12084.

- Any person who is a licensed collector pursuant to Chapter 44 of Title 18 of the United States Code and who has a current certificate of eligibility issued to him or her by the Department of Justice pursuant to PC 12071 (curio and relic firearms only).

- The exchange of a pistol, revolver, or other firearm capable of being concealed upon the person where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

- The replacement of a pistol, revolver, or other firearm capable of being concealed upon the person when the person's pistol, revolver, or other firearm capable of being concealed upon the person was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any law enforcement agency within the city or county of residence.

- The return of any pistol, revolver, or other firearm capable of being concealed upon the person to its owner.

The waiting period exemption section on both the PSD DROS entry screen drop-down menu and the hard copy DROS worksheet have been revised to include a new section entitled "30-day Multiple Purchase Exemption." A copy of the revised DROS worksheet is enclosed to assist you in complying with this new requirement. The location of this new exemption box has been highlighted on the enclosed revised DROS worksheet. Please use this worksheet as a "Master" from which you should print or photocopy your supplies of the form. The new DROS worksheet is also available for download from our website at http://caag.state.ca.us/firearms/forms.

The "30-day Multiple Purchase Exemption" should be selected only when completing a DROS on a purchaser who presents valid proof of exemption, as listed above. However, if the purchaser presents valid proof of an exemption from the DROS waiting period defined in PC Section 12078, you should choose the appropriate DROS waiting period exemption selection (e.g., peace officer with an exemption letter) and **not** the "30-day Multiple Purchase Exemption." This is because persons exempt from the ten-day DROS waiting period as defined by PC Section 12078 will also automatically be exempted from the one handgun per thirty day restriction.

**Information Bulletin**
**AB 202- One Handgun Purchase Per Thirty (30) Days**
**Page 3**

       The following is an example when **not** to use the "30-day Multiple Purchase Exemption" selection.  In this instance, the DROS waiting period exemption per PC Section 12078, should be used.

**Example:**

       The purchaser is a peace officer who presents a letter from the head of his/her agency authorizing the purchase of a handgun.   *Do not select the "30-day Multiple Purchase Exemption" selection in this case.  Instead, choose the "Peace Officer Status" DROS waiting period exemption selection to complete the transaction.*

       In order to respond to routine inspections, firearm dealers are required to maintain copies of documentation that substantiate the purchaser's claim of exemption from the 30-day handgun restriction and make them available to DOJ staff conducting firearm dealer inspections.

       If you have any questions regarding the one handgun per 30-day limitation, please contact the Firearms Division at (916) 227-3703.

       Sincerely,

       RANDY ROSSI, Director
       Firearms Division

       For   BILL LOCKYER
       Attorney General

Enclosure

State of California - Department of Justice

# DEALER'S RECORD OF SALE
# OF FIREARM
## WORKSHEET

CFD NUMBER: | | | | | |

DROS NO. ASSIGNED: | | | | | | | |-| | | |

---

FIREARM TYPE:  ☐ HANDGUN   ☐ LONG GUN(S)

TRANSMISSION DATE: _____   TIME: _____

IF RIFLES OR SHOTGUNS, ENTER NUMBER OF FIREARMS IN TRANSACTION _____

TRANSACTION TYPE: ☐ DEALER SALE   ☐ PRIVATE PARTY TRANSFER   ☐ LOAN   ☐ PAWN RETURN

GUN SHOW TRANSACTION? ○ YES ○ NO

PURCHASER CLAIMS THE FOLLOWING WAITING PERIOD EXEMPTION PURSUANT TO 12078 PC (if applicable):

☐ PEACE OFFICER STATUS
☐ FIREARM DELIVERED AT NONPROFIT EVENT (Valid for Rifles and Shotguns Only)
☐ COLLECTOR STATUS (Valid for Curio/Relics Only)

☐ DEALER STATUS Enter CFD number:
☐ SPECIAL WEAPONS PERMIT Enter type of permit and number:
☐ Transaction exempt from the 1-handgun-per-30-day limit?

MAKE (As Stamped on Handgun) (Colt, S&W, etc)        MODEL (647, Redhawk, etc)        CALIBER(S)

SERIAL NUMBER        OTHER NUMBER  (If Different from Serial Number)        HANDGUN TYPE:  ☐ REVOLVER  ☐ SEMI-AUTO  ☐ DERRINGER
                                                                            ☐ SINGLESHOT  ☐ OTHER

HANDGUN COLOR:
☐ BLUE STEEL   ☐ SILVER/NICKEL/ STAINLESS   ☐ OTHER _____

BARREL LENGTH        HANDGUN ORIGIN (USA, Italy, etc)

FRAME ONLY? ○ YES ○ NO    NEW HANDGUN? ○ YES ○ NO    COMMENTS

---

FIRST NAME        MIDDLE NAME        LAST NAME        SUFFIX

ALIAS FIRST NAME        ALIAS MIDDLE NAME        ALIAS LAST NAME        ALIAS SUFFIX

STREET ADDRESS        ZIP CODE

*One of the following forms of identification is required to legally purchase firearms in California:  California Driver's License (CDL), California ID (CID) card issued by the DMV, Military ID (MIL) for active duty military accompanied by permanent duty station orders indicating that the purchaser is stationed in California, or a Diplomatic Passport with a letter from the embassy or consulate.*

ID TYPE (Circle One)        ID NUMBER        ID SOURCE (State or Country)
  CDL    CID    MIL    Diplomatic Passport

TELEPHONE NUMBER ( )        DATE OF BIRTH  MO  DAY  YR        PLACE OF BIRTH        RACE

SEX        EYES        HAIR        HEIGHT        WEIGHT        BFSC NUMBER OR EXEMPTION CODE (Handguns Only)

### Answer the following questions by checking "YES" or "NO"

○ YES ○ NO    HAS PURCHASER EVER BEEN CONVICTED OF A FELONY OR OF AN OFFENSE SPECIFIED IN PENAL CODE SECTION 12021.1, 12021(c)(1),  OR 12001.6?

○ YES ○ NO    IS PURCHASER A MENTAL PATIENT OR ON LEAVE OF ABSENCE FROM A MENTAL HOSPITAL AS DESCRIBED IN WELFARE AND INSTITUTIONS CODE SECTION 8100?

○ YES ○ NO    HAS PURCHASER EVER BEEN ADJUDICATED BY A COURT TO BE A DANGER TO OTHERS, FOUND NOT GUILTY BY REASON OF INSANITY, FOUND INCOMPETENT TO STAND TRIAL, OR PLACED UNDER A CONSERVATORSHIP, PURSUANT TO WELFARE AND INSTITUTIONS CODE SECTION 8103?

○ YES ○ NO    IS PURCHASER CURRENTLY THE SUBJECT OF ANY RESTRAINING ORDER PURSUANT TO FAMILY CODE SECTION 6380?

IN ADDITION, I HAVE READ THE LIST OF PROHIBITED OFFENSES, AND NOTHING WOULD PRECLUDE ME FROM POSSESSING A FIREARM.        SIGNATURE OF PURCHASER

---

FIRST NAME        MIDDLE NAME        LAST NAME        SUFFIX

STREET ADDRESS        ZIP CODE

ID TYPE        ID NUMBER        ID SOURCE (State or Country)        TELEPHONE NUMBER ( )

DATE OF BIRTH  MO  DAY  YR        RACE        SEX

COMMENTS

DEALER TELEPHONE NUMBER ( )

AG_Nguyen-0000081

12/99

**FALSIFICATION OF INFORMATION ON THIS FORM IS A MISDEMEANOR (PENAL CODE 12076)**