Raymond M. DiGuiseppe
California State Bar No. 228457
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE NGUYEN, et al, Plaintiffs<br><br>vs.<br><br>ROB BONTA, Attorney General of California, et al, Defendants. | Case No. 3:20-cv-02470-WQH-MMP<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Date: To be set by the Court<br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.1(f)(3) of the Local Rules, Plaintiffs submit this Response to Defendants' Statement of Undisputed Facts in support of their renewed motion for summary judgment (Dkt. No. 59-1) ("DSUF"). Plaintiffs generally object to the DSUF for failure to state "material" facts in support of the motion based on the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs").

Plaintiffs also specifically dispute and object to all the statements of alleged undisputed material facts concerning any claimed or potential efficacies of the OGM law in advancing California's stated interests in support of the law, on the ground that the subject matter of these assertions is irrelevant to the issues material to a proper resolution of the Second Amendment claim under the controlling legal standards. *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131 (2022).

Subject to these objections and the specific objections stated herein to certain of Defendants' assertions in the DSUF, Plaintiffs provide the following responses.

These responses are intended to respond to the factual assertions in the DSUF by identifying the assertions that Plaintiffs dispute for purposes of Defendants' renewed motion for summary judgment ("D-RMSJ"). Such disputes relate only to the factual assertions that Defendants have proffered and otherwise have no bearing on Plaintiffs' renewed motion for summary judgment ("P-RMSJ") or the factual support Plaintiffs have proffered for their motion in their statement of undisputed material facts in support of their renewed motion for summary judgment ("SOUMF"). Plaintiffs maintain there are no genuine issues of material fact with respect to the grounds entitling them to summary judgment, as set forth in the P-RMSJ and SOUMF.[1]

Defendants' factual assertions and asserted supporting evidence are set out verbatim below with Plaintiffs' responses immediately following:

---

[1] For purposes of these responses to the DSUF, "Reply-SOUMF 1" refers to Plaintiffs' Reply to Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts in support of Plaintiffs' initial motion for summary judgment ("MSJ"). "SOUMF 1" refers to Plaintiffs' SOUMF in support of their initial MSJ, and "D-MSJ 1" refers to the State's initial Motion for Summary Judgment.

**Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Renewed Motion for Summary Judgment**

**DSUF No. 1**

In 1999, California passed a law limiting the purchase of handguns to one every thirty days and prohibited dealers from delivering a handgun to anyone who purchased a handgun within the preceding thirty-day period.

Supporting Citations: Cal. Stats. 1999, ch. 128 (Assemb. B. 202), § 2 (codified as Cal. Penal Code §§ 27535 and 27540(f)).

*Plaintiffs' Response to DSUF No. 1*

Undisputed.

**DSUF No. 2**

In 2019, California expanded the law to include semiautomatic centerfire rifles and limited the purchase of handguns or semiautomatic centerfire rifles to one every thirty days.

Supporting Citations: Cal. Stats. 2019, ch. 737 (S.B. 61), § 5 (amending Cal. Penal Code §§ 27535 and 27540(g)).

*Plaintiffs' Response to DSUF No. 2*

Undisputed.

**DSUF No. 3**

There are some exceptions to California's law that permit specified individuals or companies to purchase more than one handgun or semiautomatic centerfire rifle every thirty days. Some of these exceptions include peace officers, licensed private security businesses, licensed gun collectors, and movie production companies.

Supporting Citations: Cal. Penal Code § 27535(b)

*Plaintiffs' Response to DSUF No. 3*

Plaintiffs do not dispute DSUF No. 3 insofar as it recites the basic fact that California's OGM law creates a series of exemptions to the prohibitions at issue. However, Plaintiffs dispute and object to the State's varying characterizations of these exceptions as contradictory, misleading, and as mischaracterizations of the evidence. Specifically, in the D-RMSJ, the State says "[t]here are some limited exceptions to California's OGM law," and it cites DSUF No. 4 in support of this assertion. D-RMSJ at 3. But then it drops "limited" from DSUF No. 3 and says instead "[t]here as some exceptions." Also, both of these characterizations contrast with the Legislature's own characterization of the exceptions as being "numerous" in nature. Ex. 11 to P-RMSJ (AB 202 Legislative History) at 4. Plaintiffs refer the Court to the legislative record for the complete and accurate statement of the Legislature on this point. *Id.*

**DSUF No. 4**

Some transactions under California law are also exempt from the limit of one handgun or one semiautomatic centerfire rifle every thirty days.

Supporting Citations: Cal. Penal Code § 27535(b)(7) and (8).

*Plaintiffs' Response to DSUF No. 4*

Plaintiffs do not dispute DSUF No. 4 insofar as it recites the basic fact that "some" transactions are exempt from the prohibitions at issue. However, Plaintiffs dispute and object to DSUF No. 4 as misleading, inaccurate, and incomplete insofar as the State's characterization conflicts with the Legislature's characterization of these exemptions. *See* Ex. 11 to P-RMSJ (AB 202 Legislative History) at 4 ("The bill also provides numerous exemptions . . ."). Plaintiffs refer the Court to the legislative record for the complete and accurate statement of the Legislature on this point. *Id.*

**DSUF No. 5**

One of the legislative goals in limiting handgun purchases to one every thirty days is "to stop one gun purchaser from buying serval firearms and transferring a firearm to another person who does not have the legal ability to buy a gun him/herself."

Supporting Citations: Defendants' Notice of Legislative Facts in Support of Their Motion for Summary Judgment ("NLF"), Ex. 1 at 3.

*Plaintiffs' Response to DSUF No. 5*

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 5. However, in DSUF No. 5, the State characterizes the quoted legislative intent as "*one* of the legislative goals" behind AB 202, whereas the factual assertion in the D-RMSJ for which they cite DSUF No. 5 as support employs a different characterization of this intent—that it was the *sole* legislative goal behind the law. D-RMSJ at 3 (italics added) ("*The* purpose of this law is 'to stop one gun purchaser from buying several firearms and transferring a firearm to another person who does not have the legal ability to buy a gun him/herself.'").

To the extent of this contradictory and incomplete statement about the legislative intent of AB 202, Plaintiffs dispute and object to DSUF No. 5 as incomplete, misleading, vague and ambiguous, and as a mischaracterization of the evidence. Plaintiffs refer the Court to Exhibit 11 to the P-RMSJ (Legislative History), pages 1 through 30, for an accurate and complete description of the relevant legislative intent.

**DSUF No. 6**

The author of the bill (AB 202) limiting handgun purchases to one every thirty days noted that "There is no limit on the number of handguns that may be purchased from a dealer. This makes it easy for straw purchasers to acquire guns for another person or for street dealers to acquire guns legitimately. Handguns make up an overwhelming share of crime guns and a significant number are traceable to dealer

transactions. AB 202 will curtail the illegal gun market, disarm criminals, and save lives by preventing multiple purchases of handguns through legitimate channels."

Supporting Citations: NLF, Exh. 1 at 3

*Plaintiffs' Response to DSUF No. 6*

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 6. However, Plaintiffs dispute and object to DSUF No. 6 as incomplete, misleading, vague and ambiguous, and as a mischaracterization of the evidence to the extent it fails to provide an accurate and complete description of the legislative intent behind AB 202, which included, for example, the opponents' unrebutted assertions that "[t]here are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month," "[b]oth California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell," "data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime," and "[r]ather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ." Ex. 11 to P-RMSJ at 34-35. Plaintiffs refer the Court to Exhibit 11 to the P-RMSJ (AB 202 Legislative History) for an accurate and complete description of the relevant legislative history.

**DSUF No. 7**

The author of the bill (SB 61) to add semiautomatic centerfire rifles to the limit on the number that can be purchased every thirty days noted that "More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same."

Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ISO Defendants' Renewed Motion for Summary Judgment

6

Supporting Citations: NLF, Exh. 2 at 3

*Plaintiffs' Response to DSUF No. 7*

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 7. However, Plaintiffs dispute and object to DSUF No. 7 as incomplete, misleading, and as a mischaracterization of the evidence to the extent it fails to present a complete and accurate description of the stated legislative purposes behind SB 61, which included, for example, the opponents' unrebutted assertions that "[t]here are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month," "[b]oth California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell," and [r]ather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ." Ex. 11 to P-RMSJ (SB 61 Leg. History) at 34-35. Plaintiffs refer the Court to Exhibit 11 to the P-RMSJ, for an accurate and complete description of the legislative history.

**DSUF No. 8**

In support of SB 61, the Ventura County Board of Supervisors stated that "the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides."

Supporting Citations:  NLF, Exh. 2 at 4

*Plaintiffs' Response to DSUF No. 8*

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 8. However, Plaintiffs dispute and object to DSUF No. 18 as incomplete, misleading, and as a mischaracterization of the evidence to the extent it suggests this was a statement of the Legislature or anything more than an *argument for* SB 61 by a single proponent of the bill, while also failing to acknowledge the existence of the

arguments *against* SB 61 by its several opponents, including the then-Governor. Ex. 11 to P-RMSJ at 42-43 ("California already bans the purchase of more than one handgun per month" and "this bill would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need"); *id.* at 44 ("Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.").

Plaintiffs further dispute and object to DSUF No. 8 as unsupported by the evidence and speculative to the extent it suggests California's OGM law "reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides," or has otherwise had any impact on the instance of "accidental," "intentional," or "mass homicides," D-RMSJ at 3. As one of the State's own expert witnesses previously conceded, there is no evidence of a causal or correlative relationship between California's OGM law and mass homicides. SOUMF 1 ¶¶ 59-64. Nor has the State produced or identified any evidence at all of such a relationship between California's OGM law and "accidental" or "intentional" homicides.

**DSUF No. 9**

The legislative history of AB 202 states that "The bill also provides numerous exemptions which are salutary because they encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange."

Supporting Citations: NLF, Exh. 1 at 4

***Plaintiffs' Response to DSUF No. 9***

Plaintiffs do not dispute that the legislative record contains the language quoted in DSUF No. 9. However, Plaintiffs dispute and object to DSUF No. 9 as misleading,

inaccurate, and as a mischaracterization of the evidence insofar as the State cites it as factual support for a substantively different assertion in the D-RMSJ. Specifically, the State cites DSUF No. 9 as evidence that "[t]he Legislature provided these exemptions because they are 'salutary' and 'encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange.'" D-RMSJ at 3. But the legislative history that the State cites as support does not say the exemptions were created *because* they are (purportedly) salutary and encourage lawful activity. It simply reflects a legislative statement regarding the purported *effect* of the exemptions; i.e., it's not explaining *why* the exemptions were created in the first instance. Ex. 11 to P-RMSJ at 4 (the quoted language says the exemptions are "salutary because they encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange").

Further, Plaintiffs dispute and object to DSUF No. 9 as inaccurate, unsupported, and as a mischaracterization of the evidence insofar as the States relies on it to claim that all or most of the "numerous exemptions" are in fact "salutary," and/or in fact "encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange." There is no evidence that each and every, or even most, of the exemptions are actually "salutary" in their effect. *See* https://www.merriam-webster.com/dictionary/salutary ("salutary" means "producing a beneficial effect" in the sense of being "remedial" or "promoting health" in the sense of being "curative"). And there is no evidence that multi-gun exchanges conducted in accordance with the exemptions are the *only* such transactions that can or would otherwise be conducted "lawfully."

**DSUF No. 10**

A 1996 study published in *the Journal of the American Medical Association* found a reduction in the likelihood that a crime gun was acquired in Virginia after Virginia's one-gun-a-month law took effect and concluded that "restricting purchases of handguns to 1 per month is an effective way to disrupt the illegal movement of guns across state lines."

Supporting Citations: DX-3 at 1760-61

*Plaintiffs' Response to DSUF No. 10*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 10. However, Plaintiffs dispute and object to the rest of the assertion in DSUF No. 10 as misleading, inaccurate, and incomplete in that it fails to clarify that the referenced the study was limited to crime guns recovered in a handful of southeastern states over a limited number of years before and after the Virginia OGM was enacted. *See* DX-3 at 1759-60. Further, DSUF No. 10, and the assertions in the State's D-RMSJ for which it is cited as the factual support, *see* D-RMSJ at 3-4, are misleading, inaccurate, and incomplete because they fail to acknowledge the "several limitations" to the study, the need for "additional research" to clarify the potential impact of certain factors, and the inherent uncertainty arising from "other unidentified factors," which the authors themselves admit leave their findings and conclusions subject to reasonable doubt. DX-3 at 1761 ("Such factors could lead to results that are inappropriately attributed to implementation of the law.").

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 10 to the extent the State relies on these findings and conclusions about the potential effects of Virginia's OGM law as materially significant factual or legal authority for their position. To that end, Plaintiffs incorporate by reference and reassert as equally applicable the disputes and objections raised in the response to the State's other assertions based on the potential

effects of OGM laws in other jurisdictions—i.e., without any evidence that the referenced Virginia OGM law is or ever has been part of a firearms regulatory scheme involving restrictions substantially similar in nature, scope, or depth to California's firearms regulatory scheme, and without any evidence that it is or ever has been subject to exemptions substantially similar in nature, scope, or depth to the exemptions under California's OGM law, this evidence as a whole is irrelevant and does not state a material fact in support of the State's position regarding the constitutionality of California's OGM law.

**DSUF No. 11**

A study published by the Virginia State Crime Commission reported that "Virginia no longer [was] the main source state for firearms trafficking to New York City since the one-gun-a-month law was passed" and found that the one-gun-a-month law "had its intended effect of reducing Virginia's status as a source state for gun trafficking."

Supporting Citations: DX-4 at 5, 7

*Plaintiffs' Response to DSUF No. 11*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 11. However, Plaintiffs otherwise dispute and object to DSUF No. 11 as misleading, inaccurate, and incomplete to the extent that it fails to acknowledge the limitations or the contrary findings of the study. The purported causal link was ultimately stated in tenuous terms along with a notable disclaimer: "the Virginia law does *not* necessarily reduce the number of guns used in criminal activity," although "gun purchasers who are criminally involved *probably* had to look elsewhere to buy weapons." DX-4 at 6 (italics added). Indeed, this study was apparently based primarily on the findings of the Weil & Knox study which the State previously presented as Exhibit 25 to its D-MSJ 1, at page 6, in which the authors themselves acknowledge significant shortcomings that diminish the reliability of the findings and conclusions. This study

also acknowledged that even with Virginia's OGM law in place, "Virginia counties immediately adjacent to Washington, D.C., continue[d] to be a main source (29.6%) for the flow of firearms into the nation's capitol [*sic*], with Maryland a close second at (26.9%)." Def. Ex. 25 to D-MSJ 1 at 5. Further, DSUF No. 11 misleadingly makes no mention of the opposing statements that challenged the tracing data at the center of these analyses as unreliable in analyzing the impacts of the OGM law and that contended the underlying studies did not properly consider or control for the potential effects of other firearms regulations. Def. Ex. 25 to D-MSJ 1 at E-2 – E-3.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 11 on the same grounds that they dispute and object to DSUF Nos. 10 to the extent the State relies on these findings and conclusions about the potential effects of Virginia's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law.

**DSUF No. 12**

The same study published by the Virginia State Crime Commission noted that "prior to passage of the one-gun-a-month law, South Carolina was a leading source state for guns traced to New York City, accounting for 39% of guns recovered in criminal investigations. Following implementation of the law, South Carolina virtually dropped off of the statistical list of source states for firearms trafficked to the northeast."

Supporting Citations: DX-4 at 3

*Plaintiffs' Response to DSUF No. 12*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 12. However, Plaintiffs otherwise dispute and object to DSUF No. 12 as misleading, inaccurate, incomplete, irrelevant, and as not stating a material fact in support of the

State's case, to the same extent and on the same grounds that Plaintiffs dispute and object to DSUF No. 11.

**DSUF No. 13**

A study published in Criminology and Public Policy concluded that the research "supports the efficacy of OGM laws as a method for disrupting gun trafficking" and that "[a]n OGM law should disrupt straw purchasing operations, thereby reducing the flow of guns from the primary market into criminal channels."

Supporting Citations: DX-5 at 770

*Plaintiffs' Response to DSUF No. 13*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 13. However, Plaintiffs otherwise dispute and object to DSUF No. 13 to the extent that it fails to acknowledge the limitations or the contrary findings. The study itself acknowledged the inherent unreliability of attempting to draw any potential link between Maryland's OGM law and a reduction in firearm violence "because the law was passed simultaneously with other state gun control measures, most notably new restrictions on secondhand gun transfers," DX-5 at 754, n. 12, "including restrictions on secondhand sales of handguns and a state provision explicitly banning straw purchases," *id.* at 772. "Further, non-firearm homicides dropped after the law by more than did firearm homicides," which "implies that factors other than the OGM law may have caused the decline in gun homicides." *Id.* The study disclosed that the data available for studying a link between "multiple sales" and crimes were very limited. *See e.g.*, DX-5 at 753, 754, 771-72 (describing the data as "fragmentary," "scant," "sparse," "cloud[ed]" by the uncertainty of the impact of other various federal and state laws).

Plaintiffs further dispute and object to DSUF No. 13 as misleading, inaccurate, and incomplete because, while study generally considered "multiple sales" to mean "the

purchase of two or more handguns by the same person from any dealer(s) within a thirty-day period," DX-5 at 757, the actual focus was on sales occurring simultaneously or within very short periods of time, *id.* ("82% of the guns purchased in multiple sales as defined herein also met the federal definition of a multiple sale (i.e., the purchase of more than one handgun from the same dealer within five business days), *in almost all cases involving same-day*, same-dealer purchases.") (italics added); *see also id.* at 750 (discussing "multiple sale" as meaning "[t]he *simultaneous or rapid* purchase of multiple guns by one individual") (italics added).

DSUF No. 13 is similarly objectionable and disputed because the ultimate conclusion of the study was stated in clearly tenuous terms: "A 1996 Maryland law restricting handgun buyers to one purchase per month *may* have produced *modest* reductions in the flow of guns to criminals in Maryland and particularly in Washington, D.C." DX-5 at 749 (italics added). In fact, the study actually documented, to the contrary, that "guns sold in multiple sales had a lower risk of being used in crime." *Id.* at 760.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 13 on the same grounds that they dispute and object to DSUF Nos. 10, 11, 12 to the extent the State relies on these findings and conclusions about the potential effects of Maryland's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law. *See* DX-5 at 769 ("We must also be cautious about generalizing these findings to other states. Gun control measures in Maryland, particularly its waiting period on handgun sales and ban on many SNS firearms, may have discouraged repetitive trafficking from retail sources even before the state's OGM law.").

**DSUF No. 14**

The same study published in Criminology and Public Policy showed that "[g]uns sold in multiple sales accounted for about one quarter of crime guns and, more importantly, were at elevated risk for criminal use."

Supporting Citations: DX-5 at 767, 769

*Plaintiffs' Response to DSUF No. 14*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 14. However, Plaintiffs otherwise dispute and object to DSUF No. 14 as misleading, inaccurate, incomplete, irrelevant, and as not stating a material fact in support of the State's case, to the same extent and on the same grounds for the disputes and objections that Plaintiffs raise in response to DSUF No. 13.

**DSUF No. 15**

A study published in the Russell Sage Foundation Journal of the Social Sciences found a reduction the likelihood that a Boston handgun would be traced to Virginia after Virginia's one-gun-a-month law took effect and the results "congruent with the findings of Weil and Knox's 1996 study and suggest that restricting handgun purchases to one per month may change where criminals get their guns."

Supporting Citations: DX-6 at 89-90

*Plaintiffs' Response to DSUF No. 15*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 15. However, Plaintiffs dispute and object to the rest of the assertion in DSUF No. 15 as misleading, inaccurate, and incomplete in that it fails to clarify that the referenced finding was "relative to licensed dealers elsewhere in I-95 southern," because it was focused on crime guns recovered in a handful of southeastern states over a limited number of years while Virginia's initial OGM law was in effect. *See* DX-6 at 89-90. Further, DSUF No. 15 is misleading, inaccurate, and incomplete because it fails to

acknowledge the clear limitations of the study, which the authors repeatedly emphasize: "direct evidence is scant that successful regulatory and enforcement actions against supply lines of guns to criminals and juveniles will actually reduce availability and hence gun use in crime," DX-6 at 77, "[f]urther research on the structure of illegal gun markets and experimentation with market disruption tactics is sorely needed," *id.*, "[e]xperimental evidence also needs to be developed to determine whether interventions designed to limit illegal transfers of firearms can indeed reduce gun violence," *id.* at 79, and "whether these market-based interventions reduced the overall availability of guns to criminals and whether supply-side interventions have a measureable impact on gun violence remain unclear," *id.* at 93. DSUF No. 15 is similarly objectionable because the authors acknowledge that "the bulk of Boston's serious gun violence problem is generated by a relatively small number of criminally active gang members," *id.* at 93, not law-abiding citizens like Plaintiffs' whose rights are actually at stake here.

More broadly, whatever the weight or reliability of this study's findings and conclusions, Plaintiffs dispute and object to DSUF No. 15 on the same grounds that they dispute and object to DSUF No. 10 to the extent the State relies on these findings and conclusions about the potential effects of Virginia's OGM law as materially significant factual or legal authority for their position regarding the constitutionality of California's OGM law.

**DSUF No. 16**

A study published in the Journal of Urban Health found that, in California, "[h]andguns purchased by individuals who bought multiple similar guns were 58% more likely to be used in crime than were handguns purchased by individuals who purchased only one handgun in 1996."

Supporting Citations: DX-7 at 362

*Plaintiffs' Response to DSUF No. 16*

Plaintiffs do not dispute that this study contains the quoted language in DSUF No. 16. However, Plaintiffs otherwise dispute and object to DSUF No. 16 as misleading, inaccurate, and incomplete to the extent it fails to acknowledge the limitations or the contrary findings of the study, in particular the absence of any actual connection between the *one-gun-per-month* restriction of the OGM law. As the quoted language makes plain, this statistic did not concern multiple purchases in *separate* transactions over a period of time, whether one month or some other time interval, but instead concerned only multiple purchases in a *single* transaction.

DSUF No. 16 is similarly objectionable and disputed because this study actually found that "handguns purchased by the same individual within 30 days of another handgun purchase, but not on the same day, were *less* likely to be traced." DX-7 at 356-357 (italics added). More precisely, as the evidence shows, "a handgun acquired in a series of purchases over 30 days has a 38% smaller likelihood of being a trace gun." SOMF1 ¶¶ 45, 46; Ex. 13 to PMSJ at 10.

**DSUF No. 17**

Plaintiffs Dominic Boguski, Jay Medina, and Frank Colletti own at least one firearm that is used for self-defense.

Supporting Citations: DX-12, DX-13, DX-14, and DX-15 (Responses to Request for Admission No. 1).

*Plaintiffs' Response to DSUF No. 17*

Plaintiffs do not dispute that the referenced requests for admission contain the cited admissions. However, Plaintiffs dispute and object to DSUF No. 17 on the several grounds that they have asserted in response to those requests for admissions. DX-12, DX-13, DX-14, DX-15 (Objections to Requests for Admission No. 1).

**DSUF No. 18**

Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti are able to purchase at least one firearm for self-defense.

Supporting Citations: DX-12, DX-13, DX-14, and DX-15 (Responses to Request for Admission No. 2).

*Plaintiffs' Response to DSUF No. 18*

Plaintiffs do not dispute that the referenced requests for admission contain the cited admissions. However, Plaintiffs dispute and object to DSUF No. 34 on the grounds that they have asserted in response to those requests for admissions. DX-12, DX-13, DX-14, DX-15 (Objections to Requests for Admission No. 2).

**DSUF No. 19**

Plaintiffs Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti desire to purchase two or more handguns and semiautomatic rifles in a single transaction within a thirty-day period.

Supporting Citations: Docket No. 1, Complaint ¶¶ 73-77

*Plaintiffs' Response to DSUF No. 19*

Undisputed.

Respectfully submitted October 13, 2023,

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorney for Plaintiffs*