1  ROB BONTA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  JERRY T. YEN
   Deputy Attorney General
4  State Bar No. 247988
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7836
     Fax: (916) 324-8835
7    E-mail: Jerry.Yen@doj.ca.gov
   *Attorneys for Rob Bonta, in his official*
8  *capacity as California Attorney General, and*
   *Allison Mendoza, in her official capacity as*
9  *Director of the Department of Justice Bureau*
   *of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE NGUYEN, et al.,** | Case No. 3:20-cv-02470-WQH-MMP |
| Plaintiffs, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| **ROB BONTA, in his official capacity as Attorney General of California; and ALLISON MENDOZA, in her official capacity as Director of the Department of Justice Bureau of Firearms,** | Date:  December 6, 2023<br>Time:  9:00 a.m.<br>Judge:  Hon. William Q. Hayes<br>Courtroom:  14B<br>Action Filed:  Dec. 18, 2020 |
| Defendants. | |

**TABLE OF CONTENTS**

Page

Introduction ..................................................................................................... 1

Argument ......................................................................................................... 1

    I.    California's OGM Law Does Not Cover Conduct Protected by the Text of the Second Amendment ....................................................... 1

    II.   California's OGM Law Is a Regulation on the Commercial Sale of Firearms ............................................................................................ 3

    III.  California's OGM Law Is Consistent with the Nation's History of Firearm Regulation ........................................................................... 4

        A.   The OGM Law Addresses "Unprecedented Societal Concerns" Requiring A More "Nuanced" Historical Analysis ........................................................................................... 4

        B.   A Number of Historical Regulations Are Analogous to the OGM Law ................................................................................... 6

            1.   Gunpowder Regulations ....................................................... 7

            2.   Sales Restrictions ................................................................. 8

            3.   Taxing and Licensing Regulations ..................................... 9

Conclusion ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Atkins v. Garland*
   70 F.4th 1018 (7th Cir. 2023) ................................................................................ 6

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ............................................................................... 2, 3, 4, 6

*Ezell v. City of Chicago*
   651 F.3d 684 (7th Cir. 2011) ................................................................................ 9

*McDonald v. City of Chicago*
   561 U.S. 742 (2010) ......................................................................................... 6, 7

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*
   700 F.3d 185 (5th Cir. 2012) ................................................................................ 4

*New York State Rifle & Pistol Ass'n v. Bruen*
   142 S. Ct. 2111 (2022) ................................................................................ *passim*

*Teixeira v. Cnty. of Alameda*
   873 F.3d 670 (9th Cir. 2017) ................................................................................ 8

*U.S. v. Carpio-Leon*
   701 F.3d 974 (4th Cir. 2012) ................................................................................ 6

*United States v. Alaniz*
   69 F.4th 1124 (9th Cir. 2023) .............................................................................. 5

*United States v. Brown*
   2023 WL 4826846 (D. Utah July 27, 2023) ........................................................ 5

*United States v. Holton*
   639 F. Supp. 3d 704 (N.D. Tex. 2022) ....................................................... 7, 8, 10

*United States v. Perez-Garcia*
   628 F. Supp. 3d 1046 (S.D. Cal. 2022) ............................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Penal Code
   § 27535 ............................................................................................................. 1
   § 27540, subd. (g) ........................................................................................... 1

**INTRODUCTION**

As explained in Defendants' Motion for Summary Judgment, Dkt. No. 59, California's OGM law[1] does not infringe conduct protected by the "plain text" of the Second Amendment and is a presumptively lawful regulation on the commercial sale of firearms. Defendants have also demonstrated that the law is consistent with Nation's historical tradition of firearm regulation under the "more nuanced" historical analysis approach outlined in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Plaintiffs now argue that the Court should disregard that approach and instead require the State to provide a "historical twin." *See* Pls.' Opp'n, Dkt. No. 62, at 9-13. That is not the standard. Under the *Bruen* standard as it is properly understood, Defendants are entitled to judgment in their favor.

**ARGUMENT**

**I.  CALIFORNIA'S OGM LAW DOES NOT COVER CONDUCT PROTECTED BY THE TEXT OF THE SECOND AMENDMENT**

California's OGM law does not prevent an individual from "keep[ing]" or "bear[ing]" arms. *See Bruen*, 142 S. Ct. at 2134 (describing the "'textual elements' of the Second Amendment's operative clause"). In fact, Plaintiffs do not dispute that, even with the OGM law, the Individual Plaintiffs[2] are able to own and obtain firearms for self-defense. Thus, even though there is an ancillary right to acquire arms for self-defense, Pls.' Opp'n at 2-3, the Individual Plaintiffs do not need to purchase more than one firearm within a thirty-day period in order to give effect to the right to "keep" and "bear" arms.

However, Plaintiffs argue the text of the Second Amendment covers the ability to purchase an unlimited number of firearms from licensed firearms dealers over

---

[1] California's OGM law refers to California Penal Code sections 27535 and 27540, subdivision (g).

[2] Individual Plaintiffs are Michelle Nguyen, Dominic Boguski, Jay Medina, and Frank Colletti.

any given time period simply because the term "Arms" is plural. Pls.' Opp'n at 2-3. As an initial matter, the "right secured by the Second Amendment is not unlimited." *Bruen*, 142 S. Ct. at 2128 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). More importantly, Plaintiffs' argument ignores the words before "Arms"—"bear" and "keep"—which is the "course of conduct" protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2134-35. The right to "keep arms" refers to possessing arms in the home, "at the ready, for self-defense," and the right to "bear arms" refers to carrying arms publicly for self-defense. *Id.*; *Heller*, 554 U.S. at 583-584. The OGM law does not prevent the Individual Plaintiffs from possessing or carrying firearms for self-defense.

Assuming that the Second Amendment covers the ability to purchase an unlimited number of firearms without any time constraint (it does not), Plaintiffs argue that *Heller* rejected the "other options" argument—in this case, that the ability to acquire firearms through other types of transactions (e.g., private party sales) is irrelevant to the Second Amendment analysis. *See* Pls.' Opp'n at 4. *Heller* does not stand for such a proposition. *Heller* involved a law that amounted to a "total ban" on handgun possession in the home and the handgun was considered "to be the quintessential self-defense weapon." 554 U.S. at 628-29. Therefore, the Supreme Court rejected the argument that the law allowed possession of other firearms in the home. *Id.* at 629. Here, the OGM law is not a "total ban" on the possession of any particular firearm or the carrying of a firearm in any particular location. Once a handgun or semiautomatic centerfire rifle has been purchased, an individual can purchase another one through a private party transaction or wait thirty days to purchase one from a licensed firearms dealer. In short, the OGM law does not infringe an individual's right to "keep" or "bear" arms for self-defense and does not prohibit conduct protected by the text of the Second Amendment.[3]

---

[3] Just as they did in their summary judgment motion, Plaintiffs claim that Defendants admitted that the OGM law implicates the Second Amendment in the

## II. CALIFORNIA'S OGM LAW IS A REGULATION ON THE COMMERCIAL SALE OF FIREARMS

California's OGM law is not a total ban on the ability to acquire firearms for self-defense, but merely a "condition[] and qualification[] on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. Plaintiffs claim that the OGM law is not a condition on the sale of a firearm because it is a ban which persists for thirty days. Pls.' Opp'n at 8. That is a mischaracterization. Prior to the thirty-day waiting period, an individual would have already purchased a handgun or semiautomatic centerfire rifle. Moreover, as discussed earlier, during that thirty-day period, the OGM law does not prevent individuals from obtaining those firearms through other types of transactions, e.g., private party transactions. Thus, the law does not ban individuals from obtaining a firearm, but regulates *when* licensed firearms dealers may sell another handgun or semiautomatic centerfire rifle to an individual.

Plaintiffs next argue that, even if the presumption applies, the historical analysis under *Bruen* is still required. Pls.' Opp'n at 8. As discussed in Defendants' Opposition to Plaintiffs' Summary Judgment Motion, the Ninth Circuit has previously relied on the presumption to uphold commercial sales regulations, and the cases that proceeded to the historical analysis involved laws that targeted certain firearms or locations. Dkt. No. 61, at 4 (citations omitted). The OGM law does not impose similar restrictions. Thus, the historical analysis is unnecessary unless Plaintiffs rebut the presumption, which they have not.

Lastly, Plaintiffs argue that the presumption does not apply at all because OGM laws were first enacted in the 1970s and are not "longstanding." Pls.' Opp'n

---

last round of summary judgment briefing. Pls.' Opp'n. at 3. And as Defendants pointed out in their opposition, any such admission was made solely for purposes of that pre-*Bruen* round of summary judgment briefing and in the context of the means-end scrutiny no longer applicable to Second Amendment claims. *See* Defs.' Resp. to Pls.' Statement of Undisputed Material Facts (pre-*Bruen*), Dkt. No. 33-1, at 3-4; Defs.' Summ. J. Mot. (pre-*Bruen*), Dkt. No. 29, at 11 (stating that "[f]or purposes of this motion only, the Attorney General assumes . . . that California's OGM law implicates the Second Amendment").

at 8-9.  However, a presumptively lawful and longstanding regulation does not mean that the law must have been passed before the twentieth century.  In fact, as the Fifth Circuit noted, *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding even though they were not enacted until the 1960s.  *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012) (citations omitted).  So it is here.  OGM laws have existed since the 1970s (and commercial regulations on the sale of firearms since the founding era) and, under *Heller*, they are a "longstanding" and "presumptively lawful" "condition[] and qualification[] on the commercial sale of arms."  554 U.S. at 626-27, 627 n.26.

### III.  CALIFORNIA'S OGM LAW IS CONSISTENT WITH THE NATION'S HISTORY OF FIREARM REGULATION

Even if Plaintiffs' proposed course of conduct were covered by the text of the Second Amendment (it is not) and Plaintiffs' arguments rebutted the presumption that the OGM law is a lawful regulation on the commercial sale of firearms (they do not), the law is consistent with the Nation's history of firearm regulation.

#### A.  The OGM Law Addresses "Unprecedented Societal Concerns" Requiring A More "Nuanced" Historical Analysis

As discussed in Defendants' Motion for Summary Judgment, the OGM law addresses "unprecedented societal concerns" that were not present during the founding era, and any historical analysis requires a "more nuanced" approach.  Defs.' MSJ at 11-14.  Plaintiffs suggest that the "more nuanced" approach does not apply in this case because the "basic problem" addressed by the OGM law—to keep firearms out of the hand of those who cannot legally own or possess them—has been around since the seventeenth century.  Pls.' Opp'n at 10-12.  While that may be one goal of the OGM law, the law was passed to address the problems of straw purchases and illegal firearms trafficking associated with the purchase of multiple firearms at a given time.  *See* Defs.' Statement of Undisputed Facts Nos. 5 and 6.  Those problems were not present during the founding era.

     Moreover, Defendants have shown that individuals during the founding and Reconstruction eras did not typically purchase or own multiple firearms.  Defs.' MSJ at 12-13.  Despite this evidence, Plaintiffs continue to suggest that people commonly owned, possessed, and carried more than one firearm.[4]  Pls.' Opp'n at 22, 24; *see also* Pls.' Mot. Summ. J. (Pls.' MSJ), Dkt. No. 60-1, at 16-18.  This is wrong.  As discussed in Defendants' Opposition to Plaintiffs' Summary Judgment Motion, Plaintiffs reach that conclusion by relying on only a handful of sources, taking statements out of context, and failing to consider the breadth of the historical evidence.  Dkt. No. 61, at 7-9.  When considering all of the historical evidence, it is clear that people did not own multiple firearms during the founding era.

     Plaintiffs also suggest that the Court ignore the economic and market realities of firearm purchases during the founding era.[5]  Pls.' Opp'n at 12-13.  However, ignoring the historical context regarding an individual's ability to purchase multiple firearms would provide an incomplete picture for the "historical tradition" analysis required under *Bruen*.[6]  *See, e.g.*, *Bruen*, 142 S. Ct. at 2143-44 (providing historical context regarding pocket pistols and planters); *United States v. Brown*, 2023 WL 4826846, *8 (D. Utah July 27, 2023) (considering the history of domestic abuse in

---

[4] In a footnote, Plaintiffs dispute that firearms were too expensive for the average person to purchase firearms in bulk.  Pls.' Opp'n at 13 n.4.  Plaintiffs cite two sources suggesting that "trade guns" were inexpensive and individual guns were inexpensive to produce.  *Id*. (citations omitted).  However, the overwhelming evidence and conclusion from historical experts demonstrate that the majority of the people during the founding era owned one or no firearms and could not purchase more than one firearm at a time.  Defs.' MSJ at 12-13.

[5] Plaintiffs also dispute the relevance of *United States v. Alaniz*, 69 F.4th 1124, 1129-30 (9th Cir. 2023) because it involved a sentencing enhancement.  Pls.' Opp'n at 13 n.5.  That distinction does not matter here.  The court in *Alaniz* still addressed and applied the *Bruen* analysis in determining that a "more nuanced approach" was appropriate, which is the same issue in this case.

[6] Plaintiffs argue that the opinions of Defendants' historical experts regarding the absence of such restrictions as an attempt to substitute the expert's judgment for the jury or court.  Pls.' Opp'n at 23.  To the contrary, the historical experts provide explanations and historical context regarding regulations and ownership of firearms based on their expertise.  That is the role of experts.

early America before concluding that domestic violence was a recent problem). In addition, Plaintiffs do not dispute that the economics aspects of firearm purchases and the market conditions during the founding and Reconstruction eras limited an individual's ability to acquire firearms. Thus, it was unnecessary for governments during those eras to address issues related to purchasing multiple firearms.

In the end, the Court should reject Plaintiffs' arguments requiring the State to identify a "historical twin" and apply the "more nuanced" analogical approach.

### B. A Number of Historical Regulations Are Analogous to the OGM Law

Defendants have provided more than sufficient evidence of historical regulations comparable to the OGM law. However, Plaintiffs dismiss those regulations as incomparable because the specific purposes or "motivations" for those laws were not identical to the purpose of the OGM law, and there were no restrictions on the frequency or quantity of firearms purchased. This all amounts to improperly requiring a "historical twin" and wrongly places a "regulatory straightjacket" on the ability of the State to pass regulations to protect the public.

Before addressing the comparable regulations identified by the State, Plaintiffs appear to argue that a state's police powers are irrelevant to the historical analysis.[7] Pls.' Opp'n at 13-16. There is no basis for such an argument and the use of police powers provides historical context to many firearms regulations. In addition, a critical component of the *Bruen*'s analogical analysis is *how* and *why* a law is comparable to other historical regulations.[8] 142 S. Ct. at 2133. Relevant to this

---

[7] Plaintiffs also attempt to discredit one of the sources cited by Defendants because the author, Professor Saul Cornell, has criticized *Heller*, *McDonald*, and *Bruen*. Pls.' Opp'n at 16 n.7. That is irrelevant. Courts have recognized Prof. Cornell's expertise as a historian. *See, e.g., Atkins v. Garland*, 70 F.4th 1018, 1030-31, 1033-34 (7th Cir. 2023) (citing an article by Prof. Cornell); *U.S. v. Carpio-Leon*, 701 F.3d 974, 980 (4th Cir. 2012) (relying on Prof. Cornell's articles regarding colonial laws).

[8] Plaintiffs argue that the effect of the OGM law is not relevant to the *Bruen* historical analysis and that the State is attempting to present an "interest-balancing" argument. Pls.' Opp'n at 5-7. Plaintiffs are mistaken. Discussion about the effect

case, governments have historically used their police powers to enact firearms regulations in order to address many dangers to public safety. *See McDonald v. City of Chicago*, 561 U.S. 742, 900-01 (2010) (Stevens, J., dissenting) ("the ability to respond to the social ills associated with dangerous weapons goes to the very core of the States' police powers"). And addressing the dangers to public safety is *why* the OGM law was passed.

### 1. Gunpowder Regulations

Plaintiffs do not dispute that both gunpowder regulations and the OGM law were passed because governments wanted to protect the public from the dangers of gunpowder and bulk firearm purchases, respectively. Instead, Plaintiffs argue that protecting public safety is "not enough" because the specific goals of the laws (i.e., for gunpowder regulations, preventing accidental explosions and, for the OGM law, preventing straw purchases and illegal firearms trafficking) are not identical. Pls.' Opp'n at 17. Plaintiffs also argue that gunpowder regulations are not similar to the OGM law because they did not impose any "quantity-over-time" limitations. *Id*. However, Plaintiffs identify no authority requiring the laws must have identical goals and identical limitations in order to be comparable. To the contrary, courts have properly found laws to be comparable even though the specific goals and limitations are not identical. *See, e.g.*, *United States v. Perez-Garcia*, 628 F. Supp. 3d 1046, 1054-55 (S.D. Cal. 2022) (discussing how surety laws requiring a bond in order to carry a weapon in public were analogous to the imposition of a pretrial restriction on the possession of a firearm); *United States v. Holton*, 639 F. Supp. 3d 704, 711 (N.D. Tex. 2022) (finding historical regulations analgous to the challenged law even though they were "effected by different means").

As discussed in Defendants' summary judgment motion, gunpowder regulations and the OGM law were intended to protect the public (i.e., the *why*).

---

of the OGM law (e.g., reducing firearms trafficking) is important to the analysis of *why* the law is comparable to other historical firearm laws.

7

Defs.' MSJ at 17-18. And those laws accomplished that goal by limiting the amount or number of ammunition or handguns available for sale or purchase (i.e., the *how*), *id.*, which does not significantly "burden a law-abiding citizen's right to armed self-defense," *Bruen*, 142 S. Ct. at 2133. Accordingly, gunpowder regulations and the OGM are relevantly similar for purposes of the Second Amendment analysis under *Bruen*.

### 2. Sales Restrictions

Plaintiffs claim that the "motivations" and racial undertones behind the restrictions on the sale of firearms to Native Americans must lead to the conclusion that those restrictions are not analogous to the OGM law.[9] Pls.' Opp'n at 17-18. Yet Plaintiffs do not dispute that those laws were passed because, during the colonial and founding era, colonists perceived Native Americans to be a threat to public safety due to hostilities between colonists and Native peoples at the time. *See* Defs.' MSJ at 18-19 (citing DX-10[10] (McCutchen Expert Rept.) ¶¶ 17-22 and *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017)). To address that threat, the colonies and the federal government placed restrictions on the ability of individuals to purchase and sell firearms or ammunition. *Id.* at 19.

Plaintiffs next try to distinguish Reconstruction-era sales restrictions on deadly weapons by arguing that those restrictions targeted "dangerous" or "unusual" weapons whereas the OGM law does not. Pls.' Opp'n at 19-20. This is wrong. The laws did not place restrictions on weapons characterized as "dangerous" or "unusual." Moreover, the restrictions on deadly weapons focused on "concealable weapons associated with interpersonal violence and crime" at the time and, for

---

[9] Plaintiffs also argue that the laws are not relevant because Native Americans were not considered part of the "People" during the founding era. Pls.' Opp'n at 18. However, Plaintiffs' citation to the Indian Trade and Intercourse Act of 1790 does not support such an argument, but even if it were true, there is no dispute the laws were passed out of a concern for the safety of the colonists.

[10] "DX" followed by the exhibit number are citations to Defendants' exhibits accompanying the Declaration of Jerry T. Yen in support of Defendants' Motion for Summary Judgment, Dkt. Nos. 59-3, 59-4, and 59-5.

some laws, included pistols. DX-11 (Rivas Expert Rept.) ¶¶ 11, 15, 16.

Plaintiffs also argue that the laws come too late and only come from "a handful of jurisdictions." Plaintiffs are wrong on both points. First, *Bruen* does not limit the time period for analysis of relevant laws to those in the founding era. Reconstruction-era regulations also bear particular importance because, as noted in *Bruen*, the Second Amendment was made applicable to the states not in 1791, but in 1868, with the ratification of the Fourteenth Amendment. 142 S. Ct. at 2138; *see also id*. at 2136 (stating that "constitutional rights are enshrined with the scope that they were understood to have *when the people adopted them*") (emphasis added); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("*McDonald* confirms that when state- or local-government action is challenged, the focus of the original-meaning inquiry is carried forward in time; the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified."). Second, Defendants' expert, Brennan Rivas, identified restrictions on the sale of deadly weapons from more than ten states.[11] Rivas Expert Rept. ¶¶ 16-20. In the end, Plaintiffs' attempts to distinguish the OGM law from the founding and Reconstruction era restrictions on the sale of firearms and other deadly weapons fall flat.

### 3. Taxing and Licensing Regulations

Turning to the taxing and licensing regulations, Plaintiffs repeat the same arguments that they made regarding the sales restrictions in the previous section. In particular, Plaintiffs again resort to the arguments that (1) the eighteen century regulations were based on racist motives, (2) the nineteenth century taxing and licensing laws are "irrelevant" and "too late," and (3) the OGM law is different

---

[11] In a different section of their opposition, Plaintiffs attempt to discredit the opinions of Dr. Rivas regarding the use of firearm sales regulations to protect the public from gun violence as lacking foundation and improper speculation. Pls.' Opp'n at 15. Such an argument is disingenuous. Dr. Rivas reached her opinions based on the facts and sources detailed in her expert report. *See* Rivas Expert Rept. ¶¶ 14-23.

because taxing regulations only pertain to deadly weapons.[12] Pls.' Opp'n at 20-21. As discussed in the previous section, none of those arguments have merit and Plaintiffs' attempts to distinguish the taxing and licensing regulations from the OGM law also fail.

Plaintiffs next suggest that Defendants rely on *Holton*, 639 F. Supp. 3d 704, to analogize the law at issue in that case (i.e., a federal law criminalizing the possession of a firearm whose original serial number has been removed) with the OGM law. Pls.' Opp'n at 21-22. Plaintiffs misconstrue Defendants' argument and how the *Holton* case applies here. The decision in *Holton* supports Defendants' position that the purpose (i.e., the *why*) of the taxing regulations and laws restricting the sale of firearms are the same as the OGM law—reducing the illegal trading and trafficking of firearms and ensuring dangerous individuals did not obtain firearms. 639 F. Supp. 3d at 711. And, as discussed in Defendants' summary judgment motion, these historical regulations and the OGM law accomplished those purposes by limiting the availability of firearms without imposing a total ban on any particular type of firearm (i.e., the *how*). Defs.' MSJ at 21-22.

In sum, the OGM law is analogous to a number of historical regulations and passes constitutional muster. The Court should reject Plaintiffs' arguments requiring that the government identify a "historical twin," as the historical analysis under *Bruen* is not a "regulatory straitjacket."

## CONCLUSION

For these reasons and the reasons stated in Defendants' summary judgment motion, Defendants respectfully request that the Court grant their motion for summary judgment and deny Plaintiffs' summary judgment motion.

---

[12] Plaintiffs also appear to argue that there cannot be any regulation that effectively bans protected arms. Pls.' Opp'n at 21. That is irrelevant here because the OGM law is not a total ban on firearms.

| | |
|---|---|
| Dated: October 27, 2023 | Respectfully submitted,<br><br>ROB BONTA<br>Attorney General of California<br>ANTHONY R. HAKL<br>Supervising Deputy Attorney General<br><br>*/s/ Jerry T. Yen*<br><br>JERRY T. YEN<br>Deputy Attorney General<br>*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Allison Mendoza, in her official capacity as Director of the Department of Justice Bureau of Firearms* |

## CERTIFICATE OF SERVICE

Case Name: **Nguyen, Michelle, et al. v. Rob Bonta, et al.**     No.   **3:20-cv-02470**

I hereby certify that on October 27, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 27, 2023, at Sacramento, California.

Eileen A. Ennis
Declarant

*Eileen A. Ennis*
Signature

SA2020305120
37627431.docx