Raymond M. DiGuiseppe
California State Bar No. 228457
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE NGUYEN, et al, Plaintiffs

vs.

ROB BONTA, Attorney General of California, et al, Defendants.

Case No. 3:20-cv-02470-WQH-MMP

PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT

Date: To be set by the Court
Judge: Hon. William Q. Hayes
Courtroom: 14B

    Pursuant to Rule 7.1(f) of the Civil Local Rules, Plaintiffs submit the following Reply to Defendants' Response to Plaintiffs' Statement of Material Facts in support of Plaintiffs' Renewed Motion for Summary Judgment ("SOUMF"). All materials referenced herein are already before the Court as part of its docket and are already in the possession of or readily accessible to Defendants, with all the same having previously been lodged by the parties in connection with their respective filings in support of and in opposition to the pending cross-motions for summary judgment. The

"Ex. __" references refer to the exhibits as numbered and presented with this Renewed

Motion, unless otherwise specified that they refer to a previously-filed exhibit.

**Plaintiffs' Reply to Defendants' Response to Plaintiffs' Statement of**

**Undisputed Material Facts in Support of**

**Plaintiffs' Renewed Motion for Summary Judgment**

| SOUMF | Defendants' Response | Plaintiffs' Reply |
|---|---|---|
| **1.** Defendants have enforced and are continuing to enforce California's OGM law.<br><br>Supporting Citations:<br>• Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 18, 19, 73, 74, 75, 76, 77, 103<br>• Answer (Dkt. No. 2) ¶¶ 18, 19, 103, 121, 128 | Undisputed. | Therefore, this fact stands undisputed. |
| **2.** Individual Plaintiffs (Nguyen, Boguski, Medina, Colletti, Phillips, and Prince) are California residents and members of the Institutional Plaintiffs (Firearms Policy Coalition, Inc., San Diego Gun Owners PAC, and Second Amendment Foundation).<br><br>Supporting Citations: | Undisputed. | Therefore, this fact stands undisputed. |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

2

| | | |
|---|---|---|
| • Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 7, 8, 9, 10, 11, 13, 73, 74, 75, 76, 77 | | |
| **3.** None of the Individual Plaintiffs is disqualified from owning or possessing firearms under federal or state law.<br><br>Supporting Citations:<br>• Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 73, 74, 75, 76, 77, 78 | Undisputed solely for purposes of establishing standing and ripeness in this litigation. | Therefore, this fact stands undisputed. |
| **4.** Institutional Plaintiffs bring this action on behalf of their members and supporters similarly situated to Individual Plaintiffs.<br><br>Supporting Citations:<br>• Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 15, 16, 17 | Undisputed. | Therefore, this fact stands undisputed. |
| **5.** Each Individual Plaintiff actively desires and intends to purchase two or more handguns, two or more semiautomatic centerfire | Undisputed. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| rifles, or a combination of two or more of the same in a single transaction within a 30-day period from a licensed dealer, and each would do so but for California's OGM law.<br><br>Supporting Citations:<br>• Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 73, 74, 75, 76, 77, 100, 121, 128 | | |
| **6.** Plaintiffs Prince and Phillips are licensed firearms dealers for Retailer Plaintiffs, North County Shooting Center Inc. ("NCSC") and PWGG L.P. ("PWGG"), respectively.<br><br>Supporting Citations:<br>• Stipulation of Facts (Ex. 1), p. 2<br>• Complaint (Dkt. No. 1) ¶¶ 11, 13, 82, 83<br>• Answer (Dkt. No. 7) ¶¶ 11, 13, 82, 83 | Undisputed that Plaintiffs Prince and Phillips are listed as firearms dealers in the California DOJ's Centralized List of Firearms Dealers for Retailer Plaintiffs North County Shooting Center Inc.("NCSC") and PWGG L.P. ("PWGG"), respectively. | Therefore, this fact stands undisputed. |
| **7.** Plaintiffs NCSC and PWGG are licensed by the Bureau of Alcohol, Tobacco, Firearms, and | Undisputed. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| Explosives ("ATF") as Federal Firearms Licensees ("FFL").<br><br>Supporting Citations:<br><ul><li>Stipulation of Facts (Ex. 1), p. 2</li><li>Complaint (Dkt. No. 1) ¶¶ 12, 14, 82, 83</li><li>Answer (Dkt. No. 7) ¶¶ 11, 13, 82, 83</li></ul> | | |
| **8.** Because of the OGM law, Retailer Plaintiffs are prevented from selling two or more handguns, two or more semiautomatic centerfire rifles, or a combination of two or more of the same in a single transaction within a 30-day period to individuals not otherwise disqualified by federal or state law from owning or possessing firearms.<br><br>Supporting Citations:<br><ul><li>Stipulation of Facts (Ex. 1), p. 3</li><li>Complaint (Dkt. No. 1) ¶¶ 86, 87, 88, 91, 93, 103</li><li>Answer (Dkt. No. 7) ¶¶ 103, 121, 128</li></ul> | Undisputed. | Therefore, this fact stands undisputed. |
| **9.** Assembly Bill No. 1621 will extend the same | Undisputed. | Therefore, this fact stands undisputed. |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

5

| | | |
|---|---|---|
| purchase prohibitions to all arms falling within an expanded definition of "firearm," so as to include "completed frames or receivers" and all other "firearm precursor parts," once it becomes effective on January 1, 2024.

Supporting Citations: The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **10.** During the Founding era, "[t]here was not a law on the books in any of the states which interfered with the keeping or bearing of arms by free citizens, and this right was understood and deemed fundamental despite the lack of a state bill of rights." | Disputed in part. Undisputed that Stephen Halbrook's Vermont Law Review article stated that "[t]here was not a law on the books in any of the states which interfered with the keeping or bearing of arms by free citizens, and this right was understood and deemed fundamental | A. Regarding the "eighteenth-century gun laws" referenced by Cornell in DX-18:

These are limited to: (1) loyalty oath and allegiance conditions, (2) militia laws, (3) "statutes regulating the storage of gunpowder," and (4) |

| | | |
|---|---|---|
| Supporting Citations:<br>• Stephen Halbrook, *The Right to Bear Arms in the First State Bills of Rights: Pennsylvania, North Carolina, Vermont, and Massachusetts*, VERM. L. REV. (1985) at 318; available at https://www.stephenhalbrook.com/law_review_articles/state-bills.pdf ("Right to Bear") (Ex. 5).<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | despite the lack of a state bill of rights."<br>Disputed that that were no laws that "interfered with the keeping or bearing of arms." *See, e.g.*, DX-18, Saul Cornell and Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506-513 (2004) (listing eighteenth-century gun laws); Pltfs.' Ex. 10, Dkt. No. 60-14, at 16-18 (listing "restrictions on the use of firearms in the Colonial law"); Defendants' Summary Judgment Motion Memorandum of Points and Authorities at 14-23 (listing and discussing regulations on the sale and possession of firearms and gun powder). | "[a] smaller number of laws [that] regulated hunting and the discharge of firearms in certain places." *Id.* at 506.<br><br>Founding-Era "Loyalty oath and allegiance conditions" were intended to disarm those who posed a threat to the American cause by either taking up arms directly against the cause or supplying arms to other enemies of the cause. *See United States v. Jackson*, 2023 WL 5605618, at *4 (8th Cir. 2023) (Stras, J., dissenting) ("Loyalists, just like the other groups discussed above, posed a danger. People who could not pledge allegiance were likely to aid the British, or possibly even join their ranks. … Oaths were meant to reduce the danger before the threat materialized into something more."); *see also Kanter v. Barr*, 919 F.3d 437, 457 n. 6 |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

7

(7th Cir. 2019) (Barrett, J., dissenting) (to address such dangers in early America, "[f]irst, the allegiance required was to the Crown, and later, it was to the sovereign and independent states"). And the consequence of violating such laws or conditions was not only disarmament but also forfeiture of other basic civil liberties, like the right to vote or hold public office. *See e.g.*, the Virginia oath law, Act of May 5, 1777, ch. 3 in 9 Hening's Statutes at Large 281, 281-82 (Every person who did not take such an oath was deemed "incapable of holding any office in this state, serving on juries, suing for any debts, electing or being elected, or buying lands, tenements, or hereditaments"). Thus, being understood to have no constitutional rights, these individuals were effectively removed

from the free citizenry and not part of the "People." Accordingly, the loyalty oath and allegiance conditions are irrelevant in defining the right to keep and bear arms by free citizens.

Militia laws were designed to ensure *armament* of the free citizens with *mandates* of firearm ownership, possession, and use throughout the colonies, as detailed in Plaintiffs' Renewed MSJ (Dkt. No. 60-1) at 17-18.

The gunpowder storage regulations on which the State relies clearly were not designed to "interfere with the keeping and bear of *arms* by free citizens," much less the frequency or quantity of arms they could purchase, as explained in Plaintiffs' Opposition to Defendants' Renewed MSJ (Dkt. No. 62) at 16-17.

Cornell provides no detail about the "smaller number" of hunting and firearm discharge. However, the hunting regulations of the time generally just established hunting seasons to protect wildlife and the private lands where it was hunted, and they prevented dangerous hunting methods like the use of "trap guns." *See e.g.*, 1775-1776 N.C. Sess. Laws 168; 1771 Acts of the General Assembly of the Province of New Jersey, Ch. 540, § 10. And laws regulating the discharge of firearms mainly aimed to prohibit indiscriminate shooting that posed unnecessary risks or that could spark unnecessary alarm in the community. *See* Nicholas J. Johnson, *et al.*, *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* at 188 (3d ed. 2021),

| | | |
|---|---|---|
| | | https://www.aspenpublishing.com/Johnson-SecondAmendment3 (Ex. 6 to P-RMSJ; Dkt. No. 60-10) ("*Firearms Law*") at 193-94. Regulations of this nature also did not "interfere with" the lawful exercise of the right to keep and bear arms by free citizens.<br><br>B.  Regarding what the State refers to as a list of "restrictions on the use of firearms in the Colonial law" in Exhibit 10 to Plaintiffs' Renewed MSJ, the only firearms-related regulations cited in this exhibit are militia laws designed to ensure *armament*. Thus, they provide no support for any dispute of the fact asserted in SOUMF No. 10.<br><br>C.  Regarding the "regulations on the sale and possession of firearms and gun powder" cited in the State's Renewed MSJ: |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | The gunpowder regulations are irrelevant for the same reasons discussed above. The "regulations on the sale and possession of firearms" fall into two groups: (1) restrictions on sales and trades with Native Americans, which have no bearing on the meaning or interpretation of the Second Amendment right to keep and bear arms, as explained in Plaintiffs' Opposition to Defendants' Renewed MSJ at 17-18; and (2) restrictions on the sale of "deadly weapons," all of which are from the mid to late *19th* century and thus come too late in time to be relevant, as explained in Plaintiffs' Opposition to Defendants' Renewed MSJ at 19-20.<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 10 and fails to raise any other |
|---|---|---|

| | | material fact in dispute. |
|---|---|---|
| **11**.  "No colony or state restricted arms possession by males who were too young or too old for the militia, nor by females."<br><br>Supporting Citations:<br>• Nicholas J. Johnson, *et al.*, *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* (3d ed. 2021) at 188 (Ex. 6) ("Firearms Law")<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for | Disputed in part. Undisputed that the book *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* stated that "[n]o colony or state restricted arms possession by males who were too young or too old for the militia, nor by females."<br><br>Disputed because evidence related to militia laws is not relevant to an individual's Second Amendment right. *See District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (explaining that the Second Amendment "protect[s] an individual right unconnected with militia service"); *see also id.* at 606-609. | The purported dispute is based on a distortion of *Heller*, which explained that this right did not *arise from* militia service because the Second Amendment was "widely understood to codify a pre-existing right, rather than to fashion a new one." *Heller*, 554 U.S. at 603; *accord Bruen*, 142 S. Ct. at 2127. That is, " '[i]t is a natural right which the people have reserved to themselves, confirmed by the Bill of Rights, to keep arms for their own defence.' " *Heller*, 554 U.S. at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769, in Boston Under Military Rule 79 (O. Dickerson ed.1936) (reprinted 1970). Thus, this right "was by the time of the founding understood to be an individual right protecting against both |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

13

| | | |
|---|---|---|
| the non-moving party"). | | public and private violence." *Id.*<br><br>The State's own evidence documents that firearms were "*the main weapon of choice* for both individual protection as well as defending the colony" Solomon K. Smith, "*Firearms Manufacturing, Gun Use, and the Emergence of Gun Culture in Early North America,*" 4, https://fortyninthparalleljournal.files.wordpress.com/2014/10/solomonsmithautumn2014.pdf (cited in McCutchen's report at DX-10, ¶ 8 n. 9) (emphasis added).<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 11 and fails to raise any other material fact in dispute. |
| **12.**  People in the colonial states commonly offered for sale and sought for purchase | Disputed. During the founding era, the number of firearms available for purchase was very limited. DX-91 (Sweeney | The State's evidence regarding the supposed limited availability or affordability of firearms is based on |

| | | |
|---|---|---|
| multiple firearms in single transactions.<br><br>  Supporting Citations:<br>• "Symbolic of the times, the following newspaper advertisement began to appear regularly: 'WANTED immediately, a quantity of good HORSE PISTOLS AND CARBINES, for which ready money, and a liberal price, will be given . . . Has a quantity of Muskets. . . to sell.'" *Right to Bear* at 266 (quoting Pennsylvania Evening Post (Philadelphia), July 23, 1776, at 366).<br>• Another example of "the unquestioned freedom to have arms" during the Founding era was a sales advertisement for "100 Pair Horsemens Pistols." *Id.* at 304 (citing the | Expert Rept.) ¶¶ 6, 10; *see also* DX-19, William G. Merkel, Forum: Comment, *Mandatory Gun Ownership, the Militia Census of 1806, and Background Assumptions concerning the Early American Right to Arms: A Cautious Response to Robert Churchill*, 25 Law & Hist, Rev. 187, 192-93 (2007) ("militia eligible Americans . . . were unable to [arm themselves] because guns were scarce"). In addition, the cost of a firearm generally prevented people from purchasing more than one firearm at a time. DX-10 (McCutchen Expert Rept.) ¶ 15. Moreover, the statement is not supported by the underlying evidence because dealer advertisements are not evidence of actual transactions. *See* Pltfs.' Ex.5, Dkt. No. 60-9, at 266, 304 (merely discussing advertisements from dealers seeking to acquire and sell pistols). | factors of an *economic* nature—i.e., then-prevailing dynamics of production, distribution, and costs that may have affected the availability or affordability of firearms. However, all that matters are *governmental regulations* imposed as restrictions on the frequency or quantity of commercial firearm purchases that could be made by ordinary, law-abiding citizens who otherwise would have remained at liberty to make such purchases at any time and in any quantity.<br><br>Regarding the claim that people "could not even afford" to purchase multiple firearms during this period, Plaintiffs have already highlighted how multiple sources cited by the State's own expert, McCutchen, document that popular arms of the day were relatively "inexpensive," easy to |

| | | |
|---|---|---|
| Independent Chronicle, June 29, 1780, at 4, col. 3.).<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | produce, and "the main weapon of choice for both individual protection as well as defending the colony." Opp. to D-RMSJ at 23-24.<br><br>The additional sources that the State has proffered in opposition to Plaintiffs' motion for summary judgment similarly rebut this claim. *See* DX-22 (Kevin M. Sweeney, *Firearms, Militias and the Second Amendment, in The Second Amendment on Trial: Critical Essays on District of Columbia v. Heller* 314 (Saul Cornell & Nathan Kozuskanich, eds., University of Massachusetts Press, 2013) ("*Critical Essays*") ("For most men, the cost of a firearm, which ranged between twenty and thirty shillings new […], was not prohibitive.").<br><br>The State acknowledges that Plaintiffs' evidence |

establishes "there was a 'high percentage of gun ownership' " during the Founding era, Opp. at 7 (quoting James Lindgren & Justin L. Heather, *Counting Guns in Early America*, 43 Wm. & Mary L. Rev. 1777, 1780 (2002) (Ex. 8 to P-RMSJ)). The State tries to discount this evidence in favor of a probate analysis by Kevin Sweeney, one of its experts, saying the former is mainly "based on probate data from 1774" while the latter is "based on more expansive data from the 1780s and 1790s." Opp. 7-8. But the actual scope of Lindgren and Heather's analysis extends through <u>1810</u>. Ex. 8 to P-RSMJ at 1838 ("Thus, everywhere and in every time period from 1636 through 1810, we found high percentages of gun ownership in probate inventories.").

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

17

| | | |
|---|---|---|
| | | Nothing about the "probate analysis" of Sweeney undermines this analysis, as further detailed in Plaintiffs' Reply to Defendants' Opposition to P-RMSJ at 7-8. In fact, in Sweeney's later publication that the State proffers as an additional exhibit, DX-22 (*Critical Essays*), he repeatedly documents findings that directly contradict the State's claims that people did not commonly own or purchase multiple firearms during this period, as further detailed in Plaintiffs' Reply to Defendants' Opposition to P-RMSJ at 7-8.<br><br>Another of the State's sources, DX-20 (Randolph Roth, *Guns, Gun Culture, and Homicide: The Relationship between Firearms, the Uses of Firearms, and Interpersonal Violence*, 59 Wm. & Mary Quarterly (2002)), undermines |

its claims by corroborating Lindgren and Heather's conclusions about the prolific nature of firearms in early American. *See e.g.*, *id.* at 225, 228 (where Roth found that their conclusions "from the Providence data are consistent with those of other studies of gun ownership," and that their study of the Vermont probate records was "correct"). In fact, Lindgren and Heather emphasized that the vast majority of the numerous probate estates they analyzed had "*at least* one gun" in operable condition, Ex. 8 to P-RMSJ at 1811, 1838 (emphasis added), just as Roth found, DX-20 at 224, 226, and both noted that some of these numbers may have been "understated" since some of the states exempted firearms from attachment or execution for debts,

| | | |
|---|---|---|
| | | Ex. 8 to P-RMSJ at 1782; DX-20 at 226.

Lastly, the only reasonable interpretation of the sources originally cited in support of SOUMF No. 12 and those additional sources cited above is that people in the colonial states commonly offered for sale and sought for purchase multiple firearms in single transactions.

Moreover, Plaintiffs' claim prevails regardless of people actually offered for sale and sought for purchase multiple firearms in *single* transaction. It is enough that people were not subject to restraints in the frequency or quantity of commercial firearm acquisitions. Indeed, the OGM law goes much further than prohibiting sales or purchases of multiple firearms in single transactions: it |

| | | prohibits the sale or purchase of more than one handgun or semiautomatic centerfire rifle *within any 30-day period*.<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 12 and fails to raise any other material fact in dispute. |
|---|---|---|
| **13.** The free citizenry commonly owned, possessed, and carried on their person more than one firearm during the Founding era.<br><br>Supporting Citations:<br>• "Vermont's founding fathers" "carried a gun and a brace [a pair] of pistols on their persons as a common practice." *Right to Bear* at 291-92.[1] "Pistols in the pocket and an arsenal at home | Disputed. The majority of individuals owned either one gun or no gun at all. DX-9 (Sweeney Expert Rept.) ¶¶ 11, 18, and tbl. 1; *see also* DX-21, Paul G. E. Clements, *The Consumer Culture of the Middle Atlantic, 1760-1820*, 52 Wm. & Mary Quarterly 591, 622-624, tbls. VII, XVII, XVIII, and XIX (2005); Pls.' Ex. 8 at 1800; DX-20, Randolph Roth, *Guns, Gun Culture, and Homicide: The Relationship between* | Plaintiffs incorporate by reference their reply to Defendants' Response to SOUMF No. 12, as equally applicable to Defendants' Response to SOUMF No. 13.<br><br>Additionally, the only reasonable interpretation of the sources originally cited in support of SOUMF No. 13 and those cited in support of SOUMF No. 12 is that free citizens commonly owned, |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

21

| | | |
|---|---|---|
| were options available to every free citizen." *Id.* at 295. "'Arms and military stores are free merchandise, so that any who have property and choose to sport with it, may turn their gardens into parks of artillery, and their houses into arsenals, without danger to Government.'"<br>• Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*, William & Mary Bill of Rights Journal (2022-2023) at 132, https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=2024&context=wmborj (Ex. 7) (quoting Ira Allen, *Particulars of the Capture of the Olive Branch, Laden with a Cargo of Arms* (London 1798), at p. 403)). | *Firearms, the Uses of Firearms, and Interpersonal Violence*, 59 Wm. & Mary Quarterly 223, 228 (2002); DX-22, Kevin M. Sweeney, *Firearms, Militias and the Second Amendment, in* The Second Amendment on Trial: Critical Essays on *District of Columbia v. Heller* 324-325, 340-341, 346-347, 354-355, tbls. 4, 7, 8, and 9 (Saul Cornell & Nathan Kozuskanich, eds., University of Massachusetts Press, 2013). In addition, the statement is not supported by the underlying evidence because it includes assertions made without citation to any sources, *see* Pltfs.' Ex. 5 at 291-292, or in the context of firearms purchases for the state militia, *see* Pltfs.' Ex. 7, Dkt. No. 60-11, at 132; Pltfs.' Ex. 5 at 295. | possessed, and carried on their person more than one firearm during the Founding era.<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 13 and fails to raise any other material fact in dispute. |

| | | |
|---|---|---|
| • "[I]n the late seventeenth and early eighteenth centuries, guns were next in importance after beds, cooking utensils, and pewter-and ahead of chairs and books." James Lindgren and Justin L. Heather, *Counting Guns in Early America*, 43 WM. & MARY L. REV. 1777 (2002) at 1837, https://scholarship.law.wm.edu/wmlr/vol43/iss5/2 (Ex. 8).<br>• They were "more common than chairs or hoes in a poor agricultural county" and "as common as plows" with "eighteenth century mid-Atlantic farmers." *Id.* "Thus, everywhere and in every time period from 1637 through 1810," there were "high percentages of gun ownership." *Id.* | | |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

23

| | | |
|---|---|---|
| • The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **14.** The colonies almost universally *required* firearm ownership.<br><br>Supporting Citations:<br>• "An examination of the Colonial statutes reveals that … almost all colonies required white adult men to possess firearms and ammunition." *Cramer, Clayton E., Colonial Firearms Regulation* (2016) | Disputed. Firearms ownership regulations were mainly targeted to militia. *See* Pltfs.' Ex. 10. In addition, the underlying evidence is an opinion stated in an article without citation to any other sources. *See* Pltfs.' Ex. 9, Dkt. No. 60-13, at 1-2. | The assertion in SOUMF No. 14 is not subject to reasonable dispute, and it is not true that the cited article does not provide support for it. The article specifically provides: "An examination of the Colonial statutes reveals that … almost all colonies required white adult men to possess firearms and ammunition," and then |

| | | |
|---|---|---|
| at 1, https://ssrn.com/abstract=2759961 or http://dx.doi.org/10.2139/ssrn.2759961 (Ex. 9) ("Firearms Regulation").<br><br>• "None of the Colonial laws in any way limited the possession of firearms by the white non-Catholic population; quite the opposite." *Id.* at 2, 6.<br><br>• Thus, "Colonies that did not explicitly require firearms ownership passed laws requiring the carrying of guns under circumstances that implied nearly universal ownership." *Id.* at 1-2.<br><br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing | | proceeds with a lengthy and detailed discussion of numerous statutes establishing such laws during the Founding era. *Cramer, Clayton E., Colonial Firearms Regulation* (2016) at 1-7 (Ex. 9 to P-RMSJ).<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 14 and fails to raise any other material fact in dispute. |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

25

| | | |
|---|---|---|
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **15.** The historical practices or patterns referenced in SOUMF Nos. 10, 11, 12, 13, and 14 were the genesis of militia regulations during the Founding era.<br><br>Supporting Citations:<br>• The supporting citations listed in SOUMF Nos. 10, 11, 12, 13, and 14, incorporated herein.<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 | Disputed. The citations in Plaintiffs' Statement of Undisputed Material Facts Nos. 10, 11, 12, 13, and 14 do not discuss the "genesis of militia regulations during the Founding era." In addition, militia laws were an attempt by the state to protect and ensure the safety of communities. DX-18 at 498, 510 ("the militia served to protect communities" and "militia laws can be seen as another attempt by the state to guarantee the safety of the community"). Further, evidence related to militia laws is not relevant to an individual's Second Amendment right. *See District of Columbia v. Heller*, 554 U.S. 570, 605 | The assertion in SOUMF No. 15 is not subject to reasonable dispute based on the contents of the sources cited in support of SOUMF Nos. 10, 11, 12, 13, and 14, which themselves are not subject to reasonable dispute. Further, the State's attempt to set aside militia laws as irrelevant to the general traditions of the Founding era is based on a fundamental distortion of the *Heller* opinion, as detailed above in Plaintiffs' rely to Defendants' response to SOUMF No. 11, which Plaintiffs incorporate herein as equally applicable to |

| | | |
|---|---|---|
| U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | (2008) (explaining that the Second Amendment "protect[s] an individual right unconnected with militia service"); *see also id*. at 606-609. | Defendants' Response to SOUMF No. 15.<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 15 and fails to raise any other material fact in dispute. |
| **16.** The general aim of militia regulations was to ensure compliance with mandates of firearm ownership, possession, and use by all members of the free citizenry.<br><br>Supporting Citations:<br>• *Firearms Law* (Ex. 6) at 177-188 (cataloguing numerous laws mandating ownership, possession, and use throughout the Colonial and Founding eras, which included the "community service" duties to join the "hue and cry" in pursuing fleeing criminals, "watch and ward" for the general safety of towns and | Disputed. Militia laws were an attempt by the state to protect and ensure the safety of communities. DX-18 at 498, 510 ("the militia served to protect communities" and "militia laws can be seen as another attempt by the state to guarantee the safety of the community"). In addition, the statement is not supported by the underlying evidence. *See* Pltfs.' Exh. 6, Dkt. No. 60-10, at 177-188 (no discussion on the purpose of militia regulations). Further, evidence related to militia laws is not relevant to an individual's Second Amendment right. *See District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (explaining that the Second | The assertion in SOUMF No. 16 is not subject to reasonable dispute based on the contents of the sources cited in support of SOUMF Nos. 10, 11, 12, 13, 14, and 15, which themselves are not subject to reasonable dispute. Further, the State's attempt to set aside militia laws as irrelevant to the general traditions of the Founding era is based on a fundamental distortion of the *Heller* opinion, as detailed above in Plaintiffs' rely to Defendants' response to SOUMF No. 11, which Plaintiffs incorporate herein as equally applicable to |

| | | |
|---|---|---|
| villages, and partake in the *posse comitatus* as called upon to assist with "keeping the peace"). <br> • The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | Amendment "protect[s] an individual right unconnected with militia service"); *see also id.* at 606-609. | Defendants' Response to SOUMF No. 16. <br><br> For these reasons, the State fails to rebut the fact asserted in SOUMF No. 16 and fails to raise any other material fact in dispute. |
| **17.** Several Colonies required their militiamen to be equipped and to keep with them at all times a "case of good pistols"—i.e., multiple firearms. <br><br> Supporting Citations: <br> • *Military Obligation: The* | Disputed. Some colonies required their troops to be *provided with* a "case of good pistols." *See* Pls.' Exh. 10 at 7 Massachusetts), 10 (New Hampshire), 16 (New York), 22 (Virginia). There was no requirement that they keep the "case of good pistols" with them at | The assertion in SOUMF No. 17 is not subject to reasonable dispute based on the contents of the sources cited in support of SOUMF Nos. 10, 11, 12, 13, 14, 15, and 16, which themselves are not subject to reasonable dispute. |

| | | |
|---|---|---|
| *American Tradition*, vol. 2 (Arthur Vollmer ed., 1947) (Ex. 10) (cataloguing laws mandating such requirements in Massachusetts (1693), New Hampshire (1718), Connecticut (1754), Virginia (1755), North Carolina (1756), New Jersey (1777), and New York (1782))<br>• Duke Center for Firearms Law, Repository of Historical Gun Laws (cataloguing laws enacted between 1631 and 1791 mandating constant readiness with one or more firearms: Virginia (https://firearmslaw.duke.edu/laws/1631-va-acts-173-acts-of-february-24th-1631-acts-xlvii-xlviii-li/), Massachusetts (https://firearmslaw.duke.edu/laws/1693-mass-acts-48-an-act-for-regulating-of-the-militia-ch-3- | all times. *See id*. In addition, evidence related to militia laws is not relevant to an individual's Second Amendment right. *See District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (explaining that the Second Amendment "protect[s] an individual right unconnected with militia service"); *see also id*. at 606-609. | Further, the State's attempt to set aside militia laws as irrelevant to the general traditions of the Founding era is based on a fundamental distortion of the *Heller* opinion, as detailed above in Plaintiffs' rely to Defendants' response to SOUMF No. 11, which Plaintiffs incorporate herein as equally applicable to Defendants' Response to SOUMF No. 17.<br><br>For these reasons, the State fails to rebut the fact asserted in SOUMF No. 17 and fails to raise any other material fact in dispute. |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

29

| 1 | %c2%a7%c2%a7-1-5/), Georgia (https://firearmslaw.duke.edu/laws/an-act-for-the-better-security-of-the-inhabitants-by-obliging-the-male-white-persons-to-carry-fire-arms-to-places-of-public-worship-1770-reprinted-in-1775-1770-georgia-colonial-laws-471-1932/), New Jersey (https://firearmslaw.duke.edu/laws/1778-n-j-laws-45-2d-general-assembly-an-act-for-the-regulating-training-and-arraying-of-the-militia-ch-21-%c2%a7-11/), Vermont (https://firearmslaw.duke.edu/laws/1779-vt-acts-and-for-encouragement-of-military-skill-for-the-better-defense-of-this-state/), and Ohio (https://firearmslaw.duke.edu/laws/a-law-for-regulating-and-establishing-the-militia-in-the- | | |

| | | |
|---|---|---|
| territory-of-the-united-states-north-west-of-the-river-ohio-chapter-ib4-in-laws-passed-in-the-territory-of-the-united-states-north-west-o/)).<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **18.** Only four states (South Carolina, Virginia, Maryland, New Jersey) and the District of Columbia, have ever enacted such laws, and only those in Virginia, Maryland, and New Jersey are still in force. | Disputed in part. Undisputed that South Carolina, Virginia, Maryland, and New Jersey have enacted OGM laws, and that the OGM laws in Virginia, Maryland, and New Jersey are still in force. | Therefore, it is undisputed that no more than four states besides California have ever enacted an OGM law, with the earliest being in 1975, and that such laws |

| | | |
|---|---|---|
| Supporting Citations:<br>• South Carolina enacted an OGM law in 1975, but repealed it in 2004.<br>• Virginia enacted one in 1993, repealed it in 2020, and reenacted another one in 2020.<br>• Maryland enacted an OGM law no earlier than 1996.<br>• New Jersey enacted an OGM law no earlier than 2009.<br>• The District of Columbia enacted a pistol registration requirement in 2008 (after *Heller*) that effectively limited residents to one pistol per month, although that was struck down as unconstitutional in 2015.<br>• California's OGM law was enacted as to handguns in 2000 and extended to semiautomatic centerfire rifles effective July 1, 2021. | Disputed that the District of Columbia enacted an OGM law. The District of Columbia enacted a law where a gun owner could not register more than one pistol in a 30-day period. D.C. Code § 7-2502.03(e) (2011). Disputed that only four states have enacted OGM laws. California also enacted an OGM law and it is still in force. Cal. Penal Code § 27535. In addition, New York City also has also enacted an OGM law. New York City Admin. Code § 10-302.1(b). | remain in force in only three of those states. |

| | | |
|---|---|---|
| • The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **19.** California's OGM law is the most restrictive of the jurisdictions with OGM laws as it targets both handguns and long guns.<br><br>Supporting Citations: The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, | Disputed in part. Undisputed that California's OGM law currently applies to handguns and semiautomatic centerfire rifles. Cal. Penal Code § 27535. Disputed that California's OGM law is the most restrictive. *See, e.g.,* Md. Code Ann., Pub. Safety § 5-128(b) (Maryland's OGM law also applies to assault weapons); New York City Admin. Code § 10-302.1(b) (New York | Therefore, it is undisputed that California's OGM law is the only OGM law that applies to all handguns and semiautomatic centerfire rifles. Further, effective January 1, 2024, the law will extend to all "firearms" under Assembly Bill No. 1621, which is also undisputed. |

| | | |
|---|---|---|
| 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | City's law applies to all firearms). | |
| **20.**    The stated purpose of the original OGM law as enacted under Assembly Bill No. 202 in 2000 was to "curtail the illegal gun market, disarm criminals, and save lives by preventing multiple purchases of handguns through legitimate channels," on the rationale that "[p]reventing multiple purchases takes the profit out of black market sales and puts gun traffickers and straw purchasers out of business."<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), p. 2<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing | Undisputed that this is one of the stated purposes of the OGM law. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **21.** More specifically, the stated goal of the law was "to stop one gun purchaser from buying several firearms and transferring a firearm to another person who does not have the legal ability to buy a gun him/herself," in particular those who are underage, have a disqualifying prior conviction, a mental disorder, or are not residents.<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), p. 2<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v.* | Undisputed that this is one of the stated goals of the OGM law, and that the legislative record for Assembly Bill No. 202 stated that straw transactions typically involve "a third party who is under 21 years of age, has a disqualifying prior conviction, has a mental disorder, or is not a resident." | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| *Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **22.** When the law was expanded to semiautomatic centerfire rifles effective July of 2021 under Senate Bill No. 61, the Legislature stated that AB 202 had been "intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market" and that applying this same law to long guns "would be part of the solution in reducing gun violence."<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), p. 34<br>• The above factual assertions are | Disputed. The Ventura County Board of Supervisors made that statement in support of Senate Bill No. 61. Plaintiffs' Exh. 11, Dkt. No. 60-15, at AG_Nguyen-0000034. | The Ventura County Board of Supervisors was reciting the stated intentions of the Legislature regarding Senate Bill No. 61. Therefore, this assertion is not subject to reasonable dispute. |

| | | |
|---|---|---|
| otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **23.** Throughout all relevant times, Defendants have implemented and enforced a multitude of statutes, regulations, and policies that strictly regulate and criminalize the acquisition, possession, and use of firearms by all prohibited persons, including those who become prohibited after a lawful acquisition. *See e.g.*, Cal. Penal Code §§ 29800, 29805, 29815, 29825; 18 U.S.C §§ 922(b)(2), 922(d), 922(g). | Undisputed that Defendants enforce California statutes and regulations on the acquisition and possession of firearms. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| Supporting Citations:<br>• Complaint (Dkt. No. 1) ¶¶ 64, 65<br>• Answer (Dkt. No. 7) ¶¶ 65<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| 24.  Throughout all relevant times, Defendants have also implemented and enforced a multitude of statutes, regulations, policies, and systems that collect, maintain, and monitor identifying information of those who are currently prohibited persons, who lawfully | Undisputed that Defendants enforce California statutes and regulations on the possession of firearms. | Therefore, this fact stands undisputed. |

acquire, sale, and transfer firearms, and who later become prohibited persons, including, for example: Cal. Penal Code §§ 11101, 11105, 11106, 26150, 26185, 26195, 26225, 28220; the Dealer's Record of Sale (DROS) DROS Entry System (DES); the Armed Prohibited Persons System (APPS); Mental Health Reporting System (MHRS); Mental Health Firearms Prohibition System (MHFPS); Prohibited Applicant (PA); and many other such regulatory programs.

Supporting Citations:
- https://des.doj.ca.gov/ (DROS DES)
- Complaint (Dkt No. 1) ¶¶ 46, 47, 49, 50, 51, 52, 53, 54, 55, 67, 68, 69
- Answer (Dkt. No. 7) ¶¶ 46, 47, 49, 50, 51, 52, 53, 54, 55, 67, 68, 69
- The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v.*

| | | |
|---|---|---|
| *Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **25.** The legislative history of AB 202 and SB 61 recognized the existence of these various schemes and how they already compel ordinary law-abiding citizens to obtain special certification, pass a background check, wait ten days, and complete a safe handling demonstration as preconditions to any lawful purchase.<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), pp. 34-35, 109-110<br>• The above factual assertions are otherwise not | Undisputed that the legislative record for Assembly Bill 202 recognizes that there are other laws governing the purchase of firearms, including a background check, a ten-day waiting period, and a basic firearm safety certificate. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **26.** It also recognized the myriad state and federal laws that specifically criminalize straw purchasing and illegal firearms trafficking.<br><br>Record Citations:<br>• Exhibit 11 (Legislative History), pp. 1-2, 12<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v.* | Undisputed that the legislative record for Assembly Bill 202 recognizes that there are California and federal laws prohibiting straw purchases and firearms trafficking. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| *Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **27.** State law separately "[p]rohibits the sale, loan, or transfer of a firearm to any person who is not the actual purchaser or transferee if the intent is to avoid the statutory requirements for lawful transfer," and "[t]he Federal Gun Control Act forbids straw transactions" because it "prevents a person from purchasing guns in a state with lax laws and then returning to his or her state of residency." <br><br> Supporting Citations: <br> • Exhibit 11 (Legislative History), p. 2 <br> • The above factual assertions are | Undisputed that the legislative record for Assembly Bill 202 acknowledges that state law "[p]rohibits the sale, loan, or transfer of a firearm to any person who is not the actual purchaser or transferee if the intent is to avoid the statutory requirements for lawful transfer," "[t]he Federal Gun Control Act forbids straw transactions," and "[f]ederal law prevents a person from purchasing guns in a state with lax laws and then returning to his or her state of residency." | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **28.** Further, all federal licensees must report to ATF and all related state law enforcement agencies all sales, transfers, or disposals of two or more handguns "at one time or during any five consecutive business days," and they must make this report "not later than the close of business on the day that the multiple sale or other disposition occurs." Supporting Citations: • 18 USC 923(g)(3)(A) | Undisputed that 18 U.S.C. § 923(g)(3)(A) requires federal licensees submit a report to ATF "and to the department of State police or State law enforcement agency of the State or local law enforcement agency of the local jurisdiction" "whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more." The report must | Therefore, this fact stands undisputed. |

Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment

43

| | | |
|---|---|---|
| • The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | be submitted "not later than the close of business on the day that the multiple sale or other disposition occurs." | |
| **29.** The legislative history acknowledged that only the District of Columbia and three other states—Virginia, Maryland, and New Jersey—have OGM laws, and they target only handguns, not handguns *and* long guns like California does.<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), pp. 53-54 | Disputed. The legislative record for Senate Bill 61 lists California, the District of Columbia, Maryland, and Virginia as having limits on the number of firearms that can be sold in one month. Plaintiffs' Exh. 11 at AG_Nguyen-0000052-54. Senate Bill 61 also notes that Maryland's limitation also includes assault weapons. *Id.* | Therefore, it is undisputed that the Legislature recognized the small number of other jurisdictions that have enacted such regulations, and the State fails to rebut the essential fact asserted in SOUMF No. 29 and fails to raise any other material fact in dispute on this point. |

| | | |
|---|---|---|
| • The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| 30.   The sole reference to a mass shooting in the legislative record is an argument in support of SB 61 from the Ventura County Board of Supervisors, which referenced one local mass shooting in 2018.<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), pp. 37, 42<br>• The above factual assertions are otherwise not | Undisputed that the legislative record for Senate Bill 61 includes a statement from the Ventura County Board of Supervisors referencing a mass shooting in November 2018. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |
| **31.** And there is no indication that the shooter used multiple firearms—much less multiple firearms acquired within a 30-day period.<br><br>Supporting Citations:<br>• Exhibit 11 (Legislative History), pp. 37, 42<br>• The above factual assertions are otherwise not subject to genuine or reasonable dispute. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. | Undisputed that the statement from the Ventura County Board of Supervisors in the legislative record for Senate Bill 61 did not include information as to whether the mass shooter used multiple firearms. | Therefore, this fact stands undisputed. |

| | | |
|---|---|---|
| 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party"). | | |

Respectfully submitted October 27, 2023,

/s/ *Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Attorney for Plaintiffs*