```
08:50:24   1                    UNITED STATES DISTRICT COURT

           2                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

           3

           4   MICHELLE NGUYEN, ET AL.,           .
                                                  .
           5        PLAINTIFFS,                   . NO. 20-CV-2470-WQH
                                                  .
           6            V.                        . DECEMBER 6, 2023
                                                  .
           7   ROB BONTA, ATTORNEY GENERAL OF     . SAN DIEGO, CALIFORNIA
               CALIFORNIA, ET AL.,                .
           8                                      .
                    DEFENDANTS.                   .
           9   . . . . . . . . . . . . . . . . . .

08:50:24  10

          11

          12                    TRANSCRIPT OF MOTION HEARING
                         BEFORE THE HONORABLE WILLIAM Q. HAYES
          13                 UNITED STATES DISTRICT JUDGE

          14   APPEARANCES:

          15   FOR THE PLAINTIFF:       THE DIGUISEPPE LAW FIRM, P.C.
                                        BY: RAYMOND M. DIGUISEPPE
          16                            116 N. HOWE STREET, SUITE A
                                        SOUTHPORT, NORTH CAROLINA  28461
          17
               FOR THE DEFENDANT:       CA DEPARTMENT OF JUSTICE
          18                            OFFICE OF THE ATTORNEY GENERAL
                                        BY: JERRY YEN
          19                            1300 I STREET
                                        SACRAMENTO, CALIFORNIA  95814
          20

          21
               COURT REPORTER:          JULIET Y. EICHENLAUB, RPR, CSR
          22                            USDC CLERK'S OFFICE
                                        333 WEST BROADWAY, ROOM 420
          23                            SAN DIEGO, CALIFORNIA  92101
                                        JULIET_EICHENLAUB@CASD.USCOURTS.GOV
          24

          25   REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER
```

```
08:50:24   1                    SAN DIEGO, CALIFORNIA; DECEMBER 6, 2023; 8:58 A.M.
           2                                         -O0O-
           3              THE CLERK:  CALLING MATTER NUMBER ONE, 20CV2470,
           4    NGUYEN, ET AL., VS. BONTA, ET AL., FOR MOTION HEARING.
           5              THE COURT:  PRESENT YOUR APPEARANCES.
           6              MR. DIGUISEPPE:  GOOD MORNING, YOUR HONOR.  RAYMOND
           7    DIGUISEPPE ON BEHALF OF PLAINTIFFS.
           8              THE COURT:  GOOD MORNING.
           9              MR. YEN:  GOOD MORNING.  JERRY YEN ON BEHALF OF
          10    DEFENDANTS.
          11              THE COURT:  GOOD MORNING.  THIS MATTER IS ON FOR
          12    CROSS-MOTIONS FOR SUMMARY JUDGMENT.  I READ THE PLEADINGS.  I'M
          13    FAMILIAR WITH THE ARGUMENTS.  COUNSEL, IS THERE ANY ARGUMENT
          14    YOU'D LIKE TO MAKE?
08:58:31  15              MR. DIGUISEPPE:  WELL, THANK YOU, YOUR HONOR.  OUR
          16    POSITION I THINK --
          17              THE COURT:  PLEASE USE THE PODIUM.
          18              MR. DIGUISEPPE:  THANK YOU.  CAN YOU HEAR ME?
          19              THE COURT:  YES.
          20              MR. DIGUISEPPE:  OUR POSITION I THINK IS
          21    WELL-ARTICULATED IN THE BRIEF INSOFAR AS WHAT WE'RE SAYING
          22    HERE.  AND ESSENTIALLY, THE WAY WE SEE IT, THE STATE IS SEEKING
          23    A LICENSE TO BE ABLE TO REGULATE FIREARMS ON A VERY GENERAL,
          24    GENERIC PROPOSITION OF PROMOTING AND PROTECTING PUBLIC SAFETY.
          25    THE WAY IN WHICH THEY'RE TRYING TO JUSTIFY THIS REGULATION
```

08:59:22 1  INSOFAR AS BEING ABLE TO REGULATE PROBLEMS AS THEY ARISE, BUT
2  THE TROUBLE WITH THE POSITION IS THAT IT'S NOT TAKING ACCOUNT
3  FOR THE PROPER HISTORICAL CONTEXT OF, THAT'S DEMANDED BY <u>BRUEN</u>
4  AND <u>HELLER</u>.
5              SO IT'S REALLY BOILING DOWN TO A CLAIM THAT THE STATE
6  IS SAYING, "WE THINK THIS IS GOOD FOR THE PUBLIC AND WE SHOULD
7  BE ALLOWED TO DO IT AND THAT'S GOOD ENOUGH;" WHERE WE'RE TAKING
8  IT BACK TO A MEANS-END INTEREST BALANCING TEST THAT WAS
9  REJECTED IN <u>BRUEN</u>.  I'M HAPPY TO TALK ABOUT THE INS AND OUTS OF
10 THIS ARGUMENT SO FAR, BUT I THINK THAT THE TEXTUAL PRONG SHOULD
11 BE PRETTY STRAIGHT FORWARD.
12             I UNDERSTAND THE STATE HAS AN ARGUMENT, BUT AS I
13 POINTED OUT IN THE BRIEFING, THERE'S NO TEXTUAL ARGUMENT GOING
14 ON.  IT'S AN ARGUMENT THAT CONFLATES THE TWO DIFFERENT PRONGS.
09:00:09 15 AND WHEN WE GET TO THE TEXTUAL ISSUE, IT'S VERY SIMPLE.  "KEEP
16 AND BEAR ARMS," IN THE PLURAL.  WE KNOW THAT THE ANCILLARY
17 RIGHT TO ACQUIRE ARMS IS PROTECTED WITHIN THE MEANING OF THE
18 SECOND AMENDMENT.  VERY SIMPLY REACHED THE CONCLUSION THAT
19 THERE'S AN INFRINGEMENT IN THE TEXT, FOR EXAMPLE, OF "SHALL NOT
20 BE INFRINGED."
21             I DON'T KNOW IF THIS COURT HAS SEEN THE MORE RECENT
22 *MARYLAND SHALL* ISSUE, OPINION THAT CAME OUT A COUPLE WEEKS AGO,
23 BUT THEY GET INTO A DISCUSSION OVER DICTIONARY DEFINITIONS OF
24 "INFRINGED" AT THE TIME OF THE FOUNDING, BETWEEN THE LATE 1700S
25 AND EARLY 1800S, AND IT JUST SIMPLY MEANS "TO HINDER."  SO

```
09:00:49   1   INSOFAR AS THE LAW IS DESIGNED TO HINDER THE ABILITY TO ACQUIRE
           2   ARMS, YOU HAVE A TEXTUAL PROTECTION AND THAT TAKES US DOWN INTO
           3   THE HISTORICAL PRONG.
           4           I KNOW THAT THERE IS ALSO DISCUSSION OVER THE
           5   COMMERCIAL CONDITIONS, PRESUMPTIVELY LAWFUL COMMERCIAL
           6   CONDITIONS ON SALE, AND WE'VE DISCUSSED THAT AS WELL AND OUR
           7   POSITION REMAINS THE SAME IN THAT, FIRST OF ALL, IT'S JUST
           8   DICTA FROM HELLER THAT'S NOT CONTROLLING, PER SE; AND REALLY,
           9   THE FOCUS OF THOSE TYPES OF EXCEPTIONS, IF YOU CAN CALL IT AN
          10   EXCEPTION, IS FOR TRUE CONDITIONS ON COMMERCIAL SALE, LIKE
          11   TAXES OR LICENSES AND WHATNOT.
          12           AND IT'S A LITTLE TRICKY TOO BECAUSE IT SEEMS LIKE
          13   WHAT'S HAPPENING IS THAT THE STATE IS TRYING TO USE THAT DICTA
          14   FROM HELLER TO ESSENTIALLY SAY THAT THE REGULATION'S REALLY
09:01:43  15   JUST TARGETING SALES, AND THEREFORE, IT TIES TO THE BEHAVIOR OR
          16   CONDUCT OF THE RETAILER AS OPPOSED TO THE IMPACT ON THE SECOND
          17   AMENDMENT, THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS.  AND
          18   THEY CAN'T CIRCUMVENT THE SCRUTINY UNDER THE SECOND AMENDMENT
          19   BY SAYING AND CHARACTERIZING IT AS AN IMPACT ON THE RETAILER
          20   FROM THE SALE PERSPECTIVE.  IT'S PREVENTING PURCHASES WHICH IS
          21   ACQUISITION.
          22           AGAIN, IT'S JUST A PRESUMPTION, IF ANYTHING, WHICH
          23   CAN BE AND IS REBUTTED IF THE LAW DOESN'T OTHERWISE SURVIVE THE
          24   PARAMETERS OF THE TEST THAT APPLY.
          25           YOU KNOW, I THINK THERE'S BEEN GOOD DISCUSSION ON
```

|  |  |
|---|---|
| 09:02:23 | 1 WHAT IT MEANS IF, FOR A MORE NUANCED APPROACH.  THAT'S A |
|  | 2 STRUGGLE IN THE BRIEFING AS TO WHAT THAT MEANS.  THE END POINT |
|  | 3 FOR US IS THAT EVEN IF THERE'S ANY KIND OF NUANCE THAT'S IN |
|  | 4 PLACE, IT'S NOT GOING ON AFFECT THE ANALYSIS.  ONE THING THAT'S |
|  | 5 IMPORTANT TO NOTE IS THAT ONE OF THE PURPOSES OF THAT |
|  | 6 DISCUSSION IN BRUEN ABOUT MORE NUANCED ANALYSIS WAS TO |
|  | 7 HIGHLIGHT OR REEMPHASIZE THAT HELLER'S POINT THAT THE SECOND |
|  | 8 AMENDMENT PROTECTIONS HAVE TO KEEP UP WITH THE TIMES AND |
|  | 9 PROTECT ALL BEARABLE INSTRUMENTS THAT ARE IN COMMON USE FOR |
|  | 10 LAWFUL PURPOSES TODAY, EVEN IF THEY WEREN'T IN EXISTENCE IN THE |
|  | 11 PAST AT THAT TIME.  SO THAT'S ONE OF THE PURPOSES OF IT. |
|  | 12        TO THE EXTENT THAT THE NUANCED, MORE NUANCED ANALYSIS |
|  | 13 COMES INTO PLAY, THAT'S GOING TO BE TRIGGERED, ACCORDING TO THE |
|  | 14 STATE, BY VIRTUE OF THESE UNPRECEDENTED SOCIETAL CONCERNS. |
| 09:03:20 | 15 WE'VE TALKED ABOUT HOW, IN OUR BRIEFING, THERE AREN'T ANY |
|  | 16 UNPRECEDENTED CONCERNS BECAUSE THE STATE ITSELF HAS BOXED |
|  | 17 ITSELF INTO THE CONCERNS BEING OF A GENERIC, GENERAL NATURE, |
|  | 18 PROMOTING PUBLIC SAFETY AND PROTECTING PUBLIC SAFETY, AND THOSE |
|  | 19 AREN'T THINGS THAT ARE ANYTHING NEW. |
|  | 20        AND HELLER MAKES CLEAR AND BRUEN MAKES CLEAR THAT |
|  | 21 WHEN A PROBLEM HAS PERSISTED SINCE THE 18TH CENTURY AND THERE'S |
|  | 22 NOTHING DISTINCTLY SIMILAR IN THE HISTORICAL RECORD, THEN |
|  | 23 THAT'S GOOD EVIDENCE THAT THE REGULATION AT ISSUE IS |
|  | 24 INCONSISTENT WITH THE SECOND AMENDMENT, AND I THINK THAT SETS |
|  | 25 IT ASIDE. |

```
09:03:57   1              ONE GOOD WAY TO KIND OF CONCEPTUALIZE THE WHOLE THING
           2   FROM 40,000 FEET, PERHAPS, IS TO CONSIDER A SITUATION WHERE
           3   LET'S SAY THIS WAS A PROHIBITION ON BUYING BOOKS FROM A RETAIL
           4   STORE, NO MORE THAN ONE BOOK PER MONTH; BUT IT'S OKAY BECAUSE
           5   YOU CAN GO TO A LIBRARY OR YOU CAN GO BORROW A BOOK FROM
           6   GRANDMA OR WRITE A BOOK OF YOUR OWN.  OBVIOUSLY, THAT WOULD NOT
           7   BE TOLERATED UNDER ANY CONTEXT WITH RESPECT TO THE FIRST
           8   AMENDMENT, AND IT'S ESSENTIALLY WHAT'S HAPPENING HERE.
           9              THE GOVERNMENT CAN'T CONTINUE TO TRY TO JUSTIFY ITS
          10   POSITION IN THE REGULATION ON THE BASIS THAT THERE EXIST THE
          11   OPPORTUNITIES OR POSSIBILITIES TO ACQUIRE FIREARMS ELSEWHERE.
          12   THEY HAVE TO JUSTIFY WHAT THEY'RE TAKING AWAY.  THEY CAN'T JUST
          13   RELY UPON WHAT THEY'VE LEFT IN PLACE; OTHERWISE, THE BOOK
          14   SCENARIO TURNS OUT TO WHERE IT'S OKAY TO SAY, HEY, YOU CAN ONLY
09:04:58  15   BUY A BOOK FROM A RETAILER ONCE A MONTH, THE REST OF THE TIME
          16   YOU'RE LIMITED TO WHATEVER LIMITED COLLECTION IS OUT THERE YOU
          17   CAN FIND.
          18              IT'S ALSO CONTRADICTORY TO THE STATED PURPOSE OF THE
          19   OGM LAW INSOFAR AS THE ARGUMENT IS THAT THE OGM LAW IS DESIGNED
          20   TO LIMIT THE NUMBER OF FIREARMS THAT PEOPLE ACQUIRE OVER A
          21   PERIOD OF TIME AND WITH QUANTITY SO AS TO COMBAT ILLEGAL
          22   TRAFFICKING, STRAW PURCHASING AND SUCH; TO THEN TURN AROUND AND
          23   SAY, "BUT IT'S NOT REALLY A PROBLEM BECAUSE PRIVATE PARTY SALES
          24   ARE STILL AVAILABLE;" SO WE'RE SAYING THAT IT'S NOT A PROBLEM
          25   BECAUSE YOU CAN GO AHEAD AND STILL BUY MORE BUT IN AN
```

```
09:05:35   1   UNREGULATED MARKET?  IS THAT SMART EVEN?
           2           FIRST OF ALL, IT'S INCONSISTENT WITH THE PURPOSE AND
           3   REFLECTS THAT THE LAW IS NOT REALLY DOING WHAT IT'S STATED TO
           4   DO BECAUSE IT DOESN'T ACTUALLY PREVENT PEOPLE NECESSARILY FROM
           5   GETTING MORE THAN ONE, IF THAT'S THE ARGUMENT.  AND THEN
           6   THEY'RE RELEGATED TO A SECONDARY MARKET WHICH DOESN'T HAVE THE
           7   OVERSIGHT, THE REGULATION.  IF ANYTHING, YOU'RE JUST INVITING
           8   MORE POTENTIAL PROBLEMS BY SETTING UP THE SITUATION LIKE THAT.
           9           SO YOU GOT THAT IRONICAL CIRCUMSTANCE ALONG WITH THE
          10   FACT THAT THERE'S A WEB OF STATE AND FEDERAL REGULATIONS THAT
          11   ALREADY COVER THIS VERY TYPE OF CONDUCT WHICH IS OF CONCERN.
          12   SO I THINK THAT IF WE FOCUS ON THE FUNDAMENTAL SIDE OF IT, WE
          13   CAN SEE HOW THIS IS JUST NOT A SUSTAINABLE LAW.
          14           THERE'S A LOT OF DISCUSSION IN THE STATE'S BRIEFING
09:06:28  15   ABOUT HOW THAT OUR PROBLEM WITH OUR ARGUMENT IS THAT WE'RE
          16   SEEKING A TWIN; WE'RE FORCING THE COURT TO FIND A HISTORICAL
          17   TWIN, AN EXACT MIRROR MATCH.  AND WE'RE NOT DOING THAT.  WE'RE
          18   NOT DOING THAT.  WE'RE TRYING TO FOLLOW THE ACTUAL TEST WHICH
          19   IS THE "HOW" AND THE "WHY," THE DISTINCTLY SIMILAR, THE
          20   RELEVANTLY SIMILAR, AND LOOKING AT WHAT IS A WELL-ESTABLISHED
          21   REPRESENTATIVE.  THAT'S JUST WHAT IT SOUNDS LIKE.  IT DOESN'T
          22   HAVE TO BE A MIRROR.  NOBODY IS SAYING IT'S A MIRROR.  NOBODY
          23   IS SAYING IT'S A TWIN.
          24           BUT AT A MINIMUM, IT HAS TO BE A BASELINE SIMILARITY,
          25   A BASELINE INSOFAR AS SOMETHING THAT ACTUALLY DEALS WITH, AT
```

09:07:09  1  THE LOWEST LEVEL, LIMITING THE QUANTITY OR THE PERIOD OF TIME
2  OVER WHICH PEOPLE CAN ACQUIRE FIREARMS. THERE'S ABSOLUTELY
3  NOTHING, AND THAT'S UNDISPUTED IN THE RECORD. THERE'S NOTHING
4  THAT EVEN COMES CLOSE TO THAT.
5         SO IT'S NOT A MIRROR WE'RE LOOKING FOR. WE'RE
6  LOOKING FOR A WELL-ESTABLISHED REFERENCE. WHETHER WE LIKE IT
7  OR NOT, THAT'S THE TEST THAT WE HAVE TO RESPECT AND ABIDE BY,
8  AND WE DON'T FIND THAT ANYWHERE WITHIN THE RECORD IN THE "HOW"
9  AND THE "WHY."
10         SO IT'S STRIKING TO ME, AGAIN, THAT WITH THIS
11  CASE -- I DO A LOT OF DIFFERENT FIREARMS CASES SO I'M FAMILIAR
12  WITH HOW THIS IS ALL PLAYING OUT IN BRUEN NOW. AND THIS
13  STRIKES ME AS PARTICULARLY TROUBLING BECAUSE THERE'S SUCH A
14  CLEAR ABSENCE IN THE HISTORICAL RECORD. AND WE CAN EVEN SET
09:07:58  15  ASIDE THE DEBATE ON THAT POINT ABOUT WHAT'S THE SCOPE OF A
16  HISTORICAL RECORD. YOU KNOW, IS IT JUST THE FOUNDING? IS IT
17  RECONSTRUCTION? IS IT SOMEWHERE IN BETWEEN? CAN YOU CONSIDER
18  19TH CENTURY, 18TH CENTURY, 20TH CENTURY? BECAUSE THERE'S JUST
19  NOTHING THERE. IT'S CONCEDED WITH THE STATE THAT UP THROUGH
20  THE 1970'S THERE'S NOTHING THERE.
21         SO WE CAN EVEN SET IT ASIDE AND GET TO THE SAME
22  PLACE, BUT WHAT STRIKES ME IS THAT BECAUSE THERE IS SUCH AN
23  ABSENCE, A CLEAR ABSENCE, YOU HAVE A REALLY STRONG PUSH ON THE
24  STATE SIDE FROM THE EXTREME, MORE EXTREME THAN I'VE SEEN IN ANY
25  OTHER CASE BECAUSE THEY HAVE TO IN ORDER TO JUSTIFY IT. THEY

```
09:08:37   1   HAVE TO GO TO THE HIGHEST LEVEL OF GENERALITY AS POSSIBLE IN
           2   TERMS OF PROMOTING AND PROTECTING PUBLIC SAFETY.  THAT'S OUR
           3   OBJECTIVE HERE.  WE NEED TO BE AND ARE SIMPLY JUST RESPONDING
           4   TO THE PROBLEMS THAT EXIST NOW, AND GOVERNMENTS NEED
           5   FLEXIBILITY TO DO SO.
           6           NOBODY SAYING THEY DON'T HAVE FLEXIBILITY TO RESPOND
           7   TO PROBLEMS THAT EXIST.  BUT WHAT BRUEN SAYS IS THAT WHEN SUCH
           8   A REGULATION OR REGULATIONS ARE PUT IN PLACE, WE AT LEAST HAVE
           9   TO LOOK FOR WHETHER THAT REGULATION HAS A SOLID ENOUGH FOUNDING
          10   IN THE NATION'S HISTORY SO THAT THERE IS A NATIONAL TRADITION
          11   AS TO THE CONDUCT AT ISSUE.  AND THERE'S JUST SIMPLY NO
          12   TRADITION THAT CAN BE GLEANED FROM ANY OF THE LAWS THAT HAVE
          13   BEEN PUT FORTH AS PURPORTED ANALOGS.
          14           WE'VE DISCUSSED IT AT LENGTH IN THE BRIEFING.  I
09:09:31  15   DON'T THINK THAT IT NEEDS TO BE BEAT DOWN FURTHER, BUT I'M
          16   HAPPY TO ADDRESS ANY QUESTIONS THE COURT MAY HAVE ON THAT.  BUT
          17   I THINK WHAT'S STARK IS THAT -- LOOK AT THE EFFORTS THE
          18   GOVERNMENT HAS TO MAKE TO JUSTIFY THE LAW THERE.  THEY'RE VERY
          19   EXTREME BECAUSE THEY HAVE TO BE.  THEY'RE TAKING ALL THESE
          20   MEASURES THAT THEY CAN TO TRY TO MINIMIZE THE DEGREE OF THE
          21   BURDEN, ALTER THE TEST, AND THEN USE THE HIGHEST LEVEL OF
          22   GENERALITY POSSIBLE FOR PURPOSES OF CLAIMING THAT THE LAW IS
          23   JUSTIFIED ADEQUATELY.
          24           SO IT'S NOT ABOUT WHAT WE THINK, AND WHAT WE PREFER,
          25   AND WHAT WE MIGHT LIKE AND WHAT THE STATE'S POLICIES ARE AND
```

```
09:10:08   1    WHAT THE STATE PREFERS TO DO.  IT'S IS THERE TEXTUAL
           2    PROTECTION?  YES.  IS THERE A NATIONAL TRADITION THAT CAN BE
           3    FOUND IN THE RELEVANT AND HISTORICAL RECORD TO SUPPORT IT?  IF
           4    THERE'S NOT, THEN IT CAN'T BE SUSTAINED.  AND AGAIN, TO THE
           5    EXTENT THAT WE EVEN CONSIDER THINGS LIKE PROTECTING PUBLIC
           6    SAFETY AND BEING CONCERNED ABOUT WHAT HAPPENS IF THE OGM LAW
           7    GOES AWAY, WELL, AGAIN, THERE'S A WEB OF STATE AND FEDERAL LAWS
           8    OUT THERE THAT COVER THE VERY SAME THING.
           9           AND THE STATE ITSELF HAS UNDERMINED ITS POSITION BY
          10    HIGHLIGHTING THE PURPOSES OF THE LAW AND THEN TRYING TO JUSTIFY
          11    IT BY SAYING, WELL, THERE'S A SECONDARY UNREGULATED MARKET OVER
          12    HERE YOU CAN GO TO TO BUY SOME MORE, SO DON'T WORRY ABOUT IT.
          13    SO THEY THEMSELVES ARE LEAVING OPEN A SITUATION WHICH IS
          14    POTENTIALLY PROBLEMATIC FROM THEIR PERSPECTIVE, BUT IT REALLY
09:11:05  15    ISN'T EVEN BECAUSE YOU'VE GOT STATE AND FEDERAL LAWS THAT
          16    ALREADY MONITOR AND TRACK PURCHASES AND QUANTITIES AND WHATNOT.
          17           SO OUR POSITION IS THAT THERE ISN'T A MATERIAL FACT
          18    IN DISPUTE THAT WOULD PREVENT SUMMARY JUDGMENT FOR OUR POSITION
          19    AND REQUIRE DENIAL OF THEIR SUMMARY JUDGMENT MOTION.  ALL OF
          20    THE FACTS THAT ARE IN -- THERE ARE A LOT OF FACTS THAT ARE IN,
          21    BUT THERE'S NOTHING MATERIALLY IN DISPUTE THAT PREVENTS
          22    JUDGMENT IN OUR FAVOR, AND OUR POSITION IS THAT JUDGMENT IN OUR
          23    FAVOR IS COMPELLED UNDER THE CIRCUMSTANCES.
          24           DOES THE COURT HAVE ANY QUESTIONS?
          25           THE COURT:  AT THIS POINT, I DO NOT.  THANK YOU FOR
```

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 09:11:47 | 1  | YOUR ARGUMENT.  I'LL HEAR FROM DEFENSE COUNSEL, AND THEN I'LL |
|          | 2  | GIVE YOU AN OPPORTUNITY TO RESPOND, IF NECESSARY.             |
|          | 3  | MR. DIGUISEPPE:  THANK YOU.                                   |
|          | 4  | MR. YEN:  GOOD MORNING, YOUR HONOR.                           |
|          | 5  | THE COURT:  GOOD MORNING.                                     |
|          | 6  | MR. YEN:  SO THE ONE-GUN-A-MONTH LAW IS DESIGNED TO           |
|          | 7  | KEEP GUNS OUT OF DANGEROUS PEOPLE.  THAT'S FUNDAMENTALLY THE  |
|          | 8  | REASON BEHIND THE ONE-GUN-A-MONTH LAW.  CALIFORNIA ADOPTED THAT |
|          | 9  | APPROACH AFTER SEEING WHAT OTHER STATES DID AND SEEING THAT   |
|          | 10 | THAT RESULTED IN A REDUCTION IN FIREARMS TRAFFICKING.  CONTRARY |
|          | 11 | TO WHAT MY COLLEAGUE SAYS, THE ONE-GUN-A-MONTH LAW DOES NOT   |
|          | 12 | INFRINGE ON -- IT DOESN'T COVER THE CONDUCT THAT'S PROTECTED BY |
|          | 13 | THE TEXT OF THE SECOND AMENDMENT.                             |
|          | 14 | THE TEXT OF THE SECOND AMENDMENT COVERS KEEPING AND          |
| 09:12:49 | 15 | BEARING ARMS.  THE INDIVIDUAL PLAINTIFFS HAVE PRETTY MUCH    |
|          | 16 | ADMITTED THAT THEY CAN OBTAIN ARMS FOR THE PURPOSES OF       |
|          | 17 | SELF-DEFENSE AND THAT THE ONE-GUN-A-MONTH LAW DOES NOT INFRINGE |
|          | 18 | ON THEIR ABILITY TO KEEP OR POSSESS ARMS IN THE HOME FOR     |
|          | 19 | SELF-DEFENSE OR CARRY ARMS IN PUBLIC.  THE ONE-GUN-A-MONTH LAW |
|          | 20 | DOES NOT TOUCH THOSE ISSUES.                                 |
|          | 21 | IF YOU LOOK AT IT FROM THE BIG PICTURE PERSPECTIVE,          |
|          | 22 | THE ONE-GUN-A-MONTH LAW JUST LIMITS A RETAILER AND OBVIOUSLY |
|          | 23 | THE PURCHASER FROM ONLY OBTAINING ONE GUN A MONTH.  THAT'S A |
|          | 24 | CONDITION ON A SALE OF A PURCHASE OF A FIREARM FROM A RETAILER, |
|          | 25 | FROM A FIREARMS RETAILER.  THAT JUST MEANS THAT IF YOU'VE    |

11

```
09:13:41   1   PURCHASED ONE GUN, THEN YOU JUST HAVE TO WAIT 30 DAYS BEFORE
           2   YOU CAN PURCHASE ANOTHER ONE.  THAT'S CLEARLY A CONDITION ON
           3   THE SALE OF A PURCHASE OF A FIREARM.
           4            COMMERCIAL REGULATIONS ON FIREARMS ARE DEEPLY ROOTED
           5   IN THE NATION'S HISTORY AND TRADITION, AND WE'VE PROVIDED
           6   SEVERAL EXAMPLES IN OUR BRIEFING OF THOSE REGULATIONS.  WE'VE
           7   BROUGHT UP THE REGULATIONS ON GUN POWDER.  WE'VE BROUGHT UP
           8   REGULATIONS ON SALES TO NATIVE AMERICANS AND ON TAXING AND
           9   LICENSING --
          10            THE COURT:  WELL, PUTTING ASIDE THE TAXING, THE SALE
          11   OF GUN POWDER, ISN'T THAT MORE FAIRLY UNDERSTOOD TO HAVE BEEN
          12   THAT THERE WAS A CONCERN ABOUT GUN POWDER BECAUSE IT'S
          13   EXPLOSIVE NOT, NOT -- NO ONE WAS TRYING TO REGULATE THE SALE OF
          14   FIREARMS BY REGULATING GUN POWDER.  ISN'T IT -- WOULDN'T IT BE
09:14:41  15   UNDERSTOOD THAT BECAUSE GUN POWDER IS AN EXPLOSIVE THAT WHAT
          16   WAS BEING REGULATED WAS THE GUN POWDER NOT THE FIREARMS?
          17            MR. YEN:  THAT'S CORRECT, BUT THE GUN POWDER WAS
          18   REQUIRED FOR USE OF THE FIREARMS.  SO IN ESSENCE, IT'S STILL
          19   RELATED TO THE ISSUE OF REGULATION OF FIREARMS BECAUSE YOU
          20   NEEDED THE GUN POWDER TO USE FIREARMS.  IF YOU DIDN'T HAVE GUN
          21   POWDER, YOU COULDN'T USE FIREARMS.
          22            AND YOUR HONOR IS CORRECT THAT, YES, THE SPECIFIC
          23   GOAL OF THE GUN POWDER REGULATIONS WAS TO PREVENT EXPLOSIONS OR
          24   MASS CASUALTIES, AND YOU KNOW, BECAUSE OF THE DANGEROUSNESS OF
          25   HAVING THEM ALL STORED TOGETHER OR PURCHASED TOGETHER OR
```

```
09:15:26   1    POSSESSED TOGETHER; I WOULD SAY THAT SIMILARLY THE
           2    ONE-GUN-A-MONTH LAW PROTECTS AGAINST THE DANGEROUSNESS OF BULK
           3    PURCHASES WHICH RESULTS IN FIREARMS TRAFFICKING AND STRAW
           4    PURCHASES.  SO THOSE ARE THE DANGERS THAT ARE BEING PROTECTED.
           5            SECONDARILY, I WOULD SAY THAT IF YOU TAKE IT ANOTHER
           6    STEP FURTHER, YOUR HONOR, THE EXPLOSIVE NATURE OF THE GUN
           7    POWDERS COULD RESULT IN MASS CASUALTIES.  SIMILARLY, WITH BULK
           8    PURCHASES, THAT COULD RESULT IN A PERSON ACCUMULATING FIREARMS
           9    IN A SHORT PERIOD OF TIME AND THEN EXERT MASS CASUALTY EVENTS.
          10    SO THERE IS THAT LINE OF REASONING THAT MAKES THE GUN POWDER
          11    REGULATION A LITTLE BIT SIMILAR TO THE ONE-GUN-A-MONTH LAW.
          12            THE COURT:  I GUESS, PERHAPS.  I UNDERSTAND YOUR
          13    ARGUMENT.  BUT IT DOES SEEM THAT GUN POWDER BY ITSELF -- IT
          14    SEEMED TO ME THAT THE REGULATION CONCERNED GUN POWDER FOR
09:16:31  15    UNDERSTANDABLE REASONS, BECAUSE IT WAS EXPLOSIVE SO THEY WERE
          16    TRYING TO LIMIT THE AMOUNT AND WHERE YOU COULD KEEP IT AND A
          17    HOST OF ALL THOSE OTHER THINGS.  OBVIOUSLY, IF YOU NEED THE GUN
          18    POWDER FOR THE FIREARMS, IT HAS AN INDIRECT IMPACT ON HOW
          19    FIREARMS COULD BE USED, BUT I -- I JUST -- TO THE EXTENT YOU
          20    SAY, WELL, THEY WERE TRYING TO PREVENT MASS CASUALTIES BY GUN
          21    POWDER EXPLOSIONS AND THE ONE-GUN-A-MONTH RULE IS TRYING TO
          22    PREVENT, YOU KNOW, MASS CASUALTIES BY SOMEBODY ACQUIRING A
          23    LARGE AMOUNT OF FIREARMS AND THEN USING THEM ALL AT ONCE, I CAN
          24    UNDERSTAND THE ARGUMENT, BUT THERE'S A FEW INFERENCES THAT ONE
          25    HAS TO MAKE.  BUT I UNDERSTAND YOUR ARGUMENT.
```

09:17:18  1    MR. YEN: THANK YOU, YOUR HONOR. I WOULD JUST POINT
2    OUT THAT THAT'S KIND OF THE POINT OF THE BRUEN HISTORICAL
3    ANALYSIS. WE'RE NOT GOING TO FIND A HISTORICAL TWIN OR
4    SOMETHING THAT'S EXACTLY COMPARABLE WITH THE SAME EXACT GOALS
5    AND MEANS OF EFFECTING THOSE GOALS.
6         THE COURT: I UNDERSTAND.
7         MR. YEN: BUT IN GENERAL, AGAIN, PUTTING ASIDE THE
8    GUN POWDER, THERE ARE OTHER REGULATIONS OUT THERE, AS WE'VE
9    POINTED OUT IN OUR BRIEFING, THAT WE ALSO BELIEVE ARE
10   COMPARABLE. AND IF YOU LOOK AT IT FROM JUST THE TRADITION OF
11   REGULATION AND ALSO -- WITH THAT TRADITION, YOU ALSO HAVE TO
12   LOOK AT JUST THE CONTEXT OF THE REGULATIONS, AND WE FEEL LIKE
13   THAT ONE IMPORTANT ASPECT OF THAT IS JUST THE AVAILABILITY OF
14   FIREARMS AT THE TIME AND THE ECONOMICS OF FIREARM PURCHASES AND
09:18:17 15   THE FIREARMS MARKET AT THE TIME.
16        I KNOW THAT GOES PROBABLY MORE TOWARDS THE MORE
17   NUANCED, WHETHER OR NOT A MORE NUANCED APPROACH IS REQUIRED,
18   BUT I FEEL LIKE THAT PROVIDES SOME CONTEXT IN TERMS OF JUST THE
19   OVERALL MARKET AND JUST WHAT THE TRADITION OF FIREARMS
20   OWNERSHIP WAS BACK THEN. AND YOU KNOW, PEOPLE JUST DIDN'T OWN
21   A LOT OF FIREARMS AND SO HAVING A ONE-GUN-A-MONTH LAW WOULD BE
22   CONSISTENT WITH THAT JUST GENERAL TRADITION OF FIREARMS
23   OWNERSHIP IN THE FIREARMS MARKET AT THE TIME.
24        I THINK THAT -- JUST TO REITERATE AGAIN, WE'RE NOT
25   LOOKING FOR A HISTORICAL TWIN OR A DEAD RINGER. WE'RE LOOKING

```
09:19:06   1    FOR SOMETHING THAT'S COMPARABLE.  AND IF WE WERE TO KIND OF
           2    FOLLOW UP WITH WHAT THE PLAINTIFFS HAVE SET OUT IN THEIR
           3    BRIEFING, THEN WE WOULD NOT BE ABLE TO -- IT'D PUT A REGULATORY
           4    STRAITJACKET BASICALLY ON THE ABILITY OF THE STATE TO REGULATE
           5    A MARKET, A COMMERCIAL SALE OF FIREARMS THAT THE LEGISLATURE
           6    HAS DEEMED AS AN IMPORTANT WAY, AT LEAST IN CALIFORNIA, OF
           7    REDUCING FIREARMS TRAFFICKING, REDUCING STRAW TRAFFICKING AND
           8    POTENTIALLY REDUCING THE ABILITY OF SOMEONE TO ACCUMULATE A
           9    LARGE AMOUNT OF FIREARMS IN A SHORT PERIOD OF TIME THAT COULD
          10    BE USED TO EXERT MASS CASUALTIES.
          11              UNLESS YOUR HONOR HAS ANY OTHER QUESTIONS --
          12              THE COURT:  YOU BEGAN YOUR ARGUMENT I THINK BY
          13    TALKING ABOUT THE PURPOSE OF THE ONE-GUN-A-MONTH AND THAT IT'S
          14    FOR PUBLIC SAFETY, AND YOU KNOW, THAT IT'S EFFECTIVE.  BUT
09:20:12  15    WHERE DOES THAT COME INTO PLAY IN ANY ANALYSIS IN THIS CASE?
          16    TO THE EXTENT THAT THE LAW IS WELL-INTENTIONED, THAT IT
          17    ADDRESSES PUBLIC SAFETY AND ASSUME THAT IT HAS A POSITIVE
          18    IMPACT ON PUBLIC SAFETY -- SO ASSUME ALL THOSE THINGS -- BUT
          19    EVEN TAKING THAT, WHERE DOES THAT COME INTO THE ANALYSIS IN
          20    THIS CASE?
          21              MR. YEN:  AND WE'RE TALKING ABOUT THE HISTORICAL
          22    ANALYSIS HERE; SO IN BRUEN, WE HAVE, IN TERMS OF DETERMINING
          23    THE COMPARABLE JUSTIFICATION AND THE COMPARABLE BURDEN, WHICH
          24    IS BASICALLY THE JUSTIFICATION WOULD BE THE "WHY" AND THE
          25    BURDEN WOULD BE THE "HOW," SO ALL THAT STUFF WOULD BE RELATED
```

09:20:58  1  TO "WHY." BASICALLY, WHY WAS THE LAW PASSED, WHAT'S THE
2  PURPOSE OF THE LAW AND PURPOSE OF THE ONE-GUN-A-MONTH LAW?
3  FIREARMS TRAFFICKING, STRAW PURCHASES, REGULATING SALES OF
4  FIREARMS.
5       THE COURT: THANK YOU. ANYTHING ELSE? ANY OTHER
6  COMMENTS YOU'D LIKE TO MAKE, SIR?
7       MR. YEN: I DON'T HAVE ANYTHING ELSE, YOUR HONOR.
8       THE COURT: THANK YOU. I'LL GIVE PLAINTIFF'S COUNSEL
9  AN OPPORTUNITY IF THERE'S ANYTHING YOU'D LIKE TO SAY IN
10 RESPONSE.
11      MR. DIGUISEPPE: THANK YOU. I'LL TRY TO BE BRIEF
12 ABOUT THAT. I THINK YOUR HONOR IS RIGHT TO BE SKEPTICAL ABOUT
13 GUN POWDER REGULATIONS BEING SUFFICIENTLY RELEVANTLY SIMILAR
14 GIVEN THE NATURE, THE REASON FOR THOSE; AND ALSO, AGAIN, THE
09:21:38 15 FOCUS OF THIS AND THE BASELINE SIMILARITY I THINK WE HAVE TO
16 FIND FOR IT TO BE A WELL-ESTABLISHED REPRESENTATIVE IS A
17 QUANTITY OVER TIME RESTRICTION, SOMETHING THAT CONNECTS THE
18 AMOUNT OF TIME THAT PASSES TO THE AMOUNT OF GUNS THAT ARE
19 REQUIRED.
20      ALSO, IF YOU NOTICE, MUCH OF THE JUSTIFICATION OVER
21 HERE FOR MR. YEN MAKING THE COMPARISON IS ABOUT BULK PURCHASES.
22 "BULK PURCHASES," WE HEARD HIM SAY THAT NUMEROUS TIMES. THE
23 ONE-GUN-A-MONTH LAW DOES NOT JUST TARGET BULK PURCHASES. IT'S
24 ONE GUN A MONTH. IT ONLY APPLIES IF YOU WANT TO BUY 15, 20, 30
25 OR 40 AT A GIVEN TIME. IT'S ONE PER MONTH. SO WE NEED TO BE

16

```
09:22:20   1  CAREFUL ABOUT THAT.
           2          AND IT ALSO SHOWS HOW THE ARGUMENT FROM THERE, "OH,
           3  WE'RE TRYING TO PREVENT MASS CASUALTIES," AGAIN, THIS ISN'T
           4  ABOUT -- THE LAW DOESN'T JUST TRY TO GO AFTER AMASSING HUGE
           5  AMOUNTS OF ARMS THAT COULD LEAD TO MASS CASUALTIES.  ALSO, WANT
           6  TO BE CAREFUL NOT TO SUGGEST, AS HE SEEMS TO IMPLY, THAT YOU
           7  MIGHT HAVE A CONCERN ABOUT MASS SHOOTINGS BECAUSE THE STATE HAS
           8  BASICALLY ABANDONED THE EFFORT THAT IT PREVIOUSLY WAS MAKING TO
           9  TRY TO MAKE A LINK BETWEEN THE OGM LAW AND MASS SHOOTINGS.
          10  THERE'S JUST NO EVIDENCE OF THAT, AND THEY'RE NOT PUSHING FOR
          11  THAT ANYMORE.
          12          AS FAR AS ECONOMICS, AGAIN, AS I POINT OUT IN
          13  BRIEFING, THIS ISN'T ABOUT MARKET CONDITIONS.  THIS IS ABOUT
          14  GOVERNMENTAL REGULATIONS, TO THE EXTENT THEY EXISTED.  WE'RE
09:23:09  15  NOT LOOKING FOR A HISTORICAL TWIN.  I AGREE WITH MR. YEN.
          16  NOBODY IS SAYING THAT.  WE'RE LOOKING FOR A BASELINE,
          17  WELL-ESTABLISHED REPRESENTATIVE LAW.  AND THAT DOESN'T EXIST.
          18          NATIVE AMERICAN ISSUES, CERTAINLY NOT RELEVANT.  ALL
          19  OF THE OTHER REGULATIONS RELATED TO WHAT IN CERTAIN COLONIES OF
          20  CERTAIN TIMES WERE CONSIDERED TO BE DANGEROUS WEAPONS.  AGAIN,
          21  THAT'S NOT SUSTAINABLE ANYMORE AFTER BRUEN IN TERMS OF, TO THE
          22  EXTENT THAT THOSE TARGETED ARMS THAT ARE IN COMMON USE FOR
          23  LAWFUL PURPOSES TODAY OR THEN, IT JUST WAS NOT INCORPORATED
          24  INTO THE SECOND AMENDMENT'S MEANING OR THE HISTORICAL NATURE
          25  FOR PURPOSES OF THE ANALYSIS.
```

```
09:23:50   1              THERE'S NO REGULATORY STRAITJACKET.  THAT'S NOT WHAT
           2   OUR ARGUMENT WOULD REQUIRE ACCEPTING.  THE REALITY IS IT'S NOT
           3   LIKE THERE ISN'T A HUGE ARRAY OF LAWS ALREADY THAT TARGET THIS.
           4   THAT'S JUST NOT TRUE.  THE REGULATORY STRAITJACKET IS SOMETHING
           5   THAT NO ONE IS ASKING FOR HERE AND THAT WOULD NOT BE IMPOSED BY
           6   SIMPLY APPLYING THE ANALYSIS OF BRUEN TO THE RESULT, WHETHER WE
           7   LIKE IT OR NOT, THAT THIS IS NOT A LAW THAT HAS A
           8   WELL-ESTABLISHED REPRESENTATIVE IN THE PAST AT ANY TIME, EVEN
           9   UP UNTIL THE POINT THAT THE FIRST LAW WAS ENACTED.
          10              ANOTHER POINT, HE STARTED OUT THE ARGUMENT, "WELL,
          11    CALIFORNIA DID THIS BECAUSE IT SAW HOW THE LAW WAS EFFECTIVE
          12   IN SOME OTHER STATE."  AGAIN, THE EFFECTIVENESS OF THE LAW IS
          13   NOT REALLY EVEN DIRECTLY RELEVANT, AND THERE'S A LOT OF
          14   QUESTION ABOUT WHETHER IT IS EFFECTIVE, FOR ALL THE REASONS
09:24:42  15   ALREADY STATED.  BUT ONLY THREE STATES HAVE ONE.
          16              SO WHAT DO WE SEE WITH THAT?  WE SEE THAT THERE'S NOT
          17   EVEN A MODERN ANALOG OR A MODERN TRADITION.  IT'S JUST
          18   SOMETHING THAT EXISTS IN A FEW STATES, AND IT'S JUST A MATTER
          19   OF TIME BEFORE THOSE REGULATIONS, IF THEY COME UNDER THE TEST
          20   OF BRUEN, ARE GOING TO HAVE TO JUST GO AWAY.
          21              SO AGAIN, OF COURSE, STATES HAVE THEIR POLICIES, AND
          22   THEY NEED THEIR ABILITY TO ADDRESS ISSUES OF PUBLIC CONCERN,
          23   AND THEY CAN STILL DO SO.  BUT IN THE FIREARMS CONTEXT, THEY
          24   HAVE TO FOLLOW THE BRUEN FRAMEWORK, AND THAT FRAMEWORK DICTATES
          25   IN A CASE LIKE THIS, IN THE ABSOLUTE ABSENCE OF ANY RELEVANTLY
```

18

```
09:25:31   1  SIMILAR ANALOG, THE LAW CAN'T STAND.
           2           THE COURT:  ALL RIGHT.  THANK YOU.  ARE THERE ANY
           3  COMMENTS THAT YOU WANT TO MAKE, COUNSEL?  ANY, ANY POINTS THAT
           4  WERE RAISED THAT YOU WANTED TO ADDRESS THAT YOU DIDN'T HAVE AN
           5  OPPORTUNITY TO ADDRESS EARLIER?
           6           MR. YEN:  YOUR HONOR, I DO HAVE ONE THING.  IT WASN'T
           7  ADDRESSED --
           8           THE COURT:  SURE.  SURE.
           9           MR. YEN:  THANK YOU, YOUR HONOR.  I WAS LOOKING OVER
          10  MY NOTES AND I DID NEGLECT TO ADDRESS ONE THING THAT MR.
          11  DIGUISEPPE MENTIONED, MORE RELATED TO THE PRIVATE SALES ISSUE.
          12  I THINK, JUST TO CLARIFY, THE PRIVATE SALE ISSUE, IT'S NOT LIKE
          13  AN INDIVIDUAL CAN JUST GO OUT AND JUST FIND SOMEONE TO SELL HIM
          14  A GUN AND THEN THEY CAN GET A GUN.  THAT'S NOT WHAT PRIVATE
09:26:15  15  SALE COVERS.  THERE'S CERTAIN CRITERIA THAT STILL NEEDS TO GO.
          16  THEY STILL NEED TO GO THROUGH A LICENSED FIREARMS DEALER.  THEY
          17  STILL NEED TO GO THROUGH BACKGROUND CHECKS.  SO IT'S NOT LIKE A
          18  FREE-FOR-ALL WHERE THEY CAN GO AND GET FIREARMS AND ACCUMULATE
          19  FIREARMS IN BULK EITHER.
          20           AND AS MR. DIGUISEPPE NOTED, I'M NOT SURE OF WHAT THE
          21  FIREARMS MARKET IS IN THE PRIVATE ARENA, BUT IT MOST CERTAINLY
          22  IS PROBABLY LESS THAN IN THE FIREARMS ARENA.  SO IT'S PROBABLY
          23  WHY THE LEGISLATURE DECIDED THAT THAT DID NOT RISE TO THE LEVEL
          24  OF CONCERN AS THE SALES THAT WERE GOING THROUGH DIRECTLY FROM
          25  FIREARMS DEALERS.
```

```
09:26:59   1            THE COURT:  ALL RIGHT.  THANK YOU.  ALL RIGHT.
           2   COUNSEL, THANK YOU FOR YOUR APPEARANCES.  YOUR BRIEFING WAS
           3   WELL DONE.  IT WAS VERY HELPFUL, AND THANK YOU FOR YOUR
           4   APPEARANCES.  YOUR ARGUMENTS WERE ALSO VERY HELPFUL; I
           5   APPRECIATE YOUR ARGUMENTS.  AND I'LL ISSUE A WRITTEN DECISION.
           6   THANK YOU.  ENJOY THE REST OF YOUR DAY, COUNSEL.
           7            ALL COUNSEL:  THANK YOU, YOUR HONOR.
           8            (MATTER CONCLUDED.)
           9                    C-E-R-T-I-F-I-C-A-T-I-O-N
          10         I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
              AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
          11  DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
              TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
          12  THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
              STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
          13  WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
              CONFERENCE.
          14         DATED: MAY 1, 2024, AT SAN DIEGO, CALIFORNIA.

          15                         /S/ JULIET Y. EICHENLAUB
                                     JULIET Y. EICHENLAUB, RPR, CSR
          16                         OFFICIAL COURT REPORTER
                                     CERTIFIED SHORTHAND REPORTER NO. 12084
          17
          18
          19
          20
          21
          22
          23
          24
          25
```